1   Michael A. Tomasulo (State Bar No. 179389)
    TomasuloM@dicksteinshapiro.com
2   DICKSTEIN SHAPIRO LLP
    2049 Century Park East, Suite 700
3   Los Angeles, CA 90067-3109
    Phone: (310) 772-8300
4   Facsimile:  (310) 772-8301
5
    Charles W. Saber, admitted *pro hac vice*
6   SaberC@dicksteinshapiro.com
    Salvatore P. Tamburo, admitted *pro hac vice*
7   TamburoS@dicksteinshapiro.com
    Megan S. Woodworth, admitted *pro hac vice*
8   WoodworthM@dicksteinshapiro.com
    S. Gregory Herrman, admitted *pro hac vice*
9   HerrmanG@dicksteinshapiro.com
    DICKSTEIN SHAPIRO LLP
10  1825 Eye Street NW
    Washington, DC 20006
11  Phone:  (202) 420-2200
    Facsimile: (202) 420-2201
12
13
    Attorneys for Defendant/Counterclaimant
14  ARTHREX, INC.
15
16              UNITED STATES DISTRICT COURT
17            SOUTHERN DISTRICT OF CALIFORNIA

18  KFX MEDICAL CORP.                    | Case No. 3:11-CV-01698 DMS-BLM
19              Plaintiff,               | Hon. Dana M. Sabraw
20        vs.
21  ARTHREX, INC.                        | **DEFENDANT ARTHREX, INC.'S
                                          | ANSWER TO PLAINTIFF KFX
22              Defendant.               | MEDICAL CORP.'S FIRST AMENDED
                                          | COMPLAINT FOR PATENT
23                                        | INFRINGEMENT AND
                                          | COUNTERCLAIMS**
24
25                                        | **JURY TRIAL DEMANDED**
26
27
28

DICKSTEIN
SHAPIRO LLP

For its Answer to Plaintiff KFx Medical Corporation's ("KFx" or "Plaintiff") First Amended Complaint for Patent Infringement and Jury Demand ("Complaint"), Defendant and Counterclaimant Arthrex, Incorporated ("Defendant" or "Arthrex") responds as follows, with each paragraph of the Answer below responding to the corresponding numbered paragraphs of the Complaint:

## I.  JURISDICTION AND VENUE

1.      Arthrex admits that this Court has jurisdiction pursuant to the statutes identified.

2.      Arthrex admits that this Court has personal jurisdiction but not that Defendant has committed the acts giving rise to KFx's claim for patent infringement within and directed to this judicial district.  Arthrex denies the remaining allegations of paragraph 2 of the Complaint.

3.      Arthrex admits that venue is proper under the statutes identified.

## II.  THE PARTIES

4.      Arthrex is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4 of the Complaint, and accordingly, denies the same.

5.      Arthrex admits the allegations of paragraph 5 of the Complaint.

## III.  GENERAL ALLEGATIONS

6.      Arthrex admits that U.S. Patent No. 7,585,311 (" the '311 Patent") issued on September 8, 2009 and is entitled "System and Method for Attaching Soft Tissue to Bone."  Arthrex is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 6 of the Complaint, and accordingly, denies the same.

7.      Arthrex admits that U.S. Patent No. 8,100,942 ("the '942 Patent") issued on January 24, 2012 and is entitled "System and Method for Attaching Soft Tissue to Bone."  Arthrex is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 7 of the Complaint, and accordingly, denies the same.

8.      Arthrex admits that U.S. Patent No. 8,109,969 ("the '969 Patent") issued on February 7, 2012 and is entitled "System and Method for Attaching Soft Tissue to Bone."  Arthrex is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 8 of the Complaint, and accordingly, denies the same.

9.      Arthrex admits that the '311, '942 and '969 Patents name Michael L. Green, Joseph

DICKSTEIN
SHAPIRO LLP

C. Tauro and Bart Bojanowski as inventors.

10.     Arthrex denies that the '311, '942 and '969 Patents are attached to the Complaint. Arthrex admits that KFx is identified as Assignee on the '311, '942 and '969 Patents.  Arthrex is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 10 of the Complaint, and accordingly, denies the same.

11.     Arthrex denies the allegations of paragraph 11 of the Complaint.

## IV.  **FIRST CLAIM FOR RELIEF**

(Alleged Induced Infringement of the '311 Patent

Under 35 U.S.C. § 271(b))

12.     Arthrex admits that KFx re-alleges paragraphs 1 through 11 of the Complaint. Arthrex repeats, reasserts and incorporates by reference its answers to paragraphs 1 through 11 of the Complaint as set forth above.

13.     Arthrex admits it has knowledge of the '311 Patent, but denies the remaining allegations of paragraph 13 of the Complaint.

14.     Arthrex denies the allegations of paragraph 14 of the Complaint.

15.     Arthrex denies the allegations of paragraph 15 of the Complaint.

16.     Arthrex denies the allegations of paragraph 16 of the Complaint.

17.     Arthrex denies the allegations of paragraph 17 of the Complaint.

18.     Arthrex denies the allegations of paragraph 18 of the Complaint.

19.     Arthrex admits it has knowledge of the '311 Patent but denies the remaining allegations of paragraph 19 of the Complaint.

20.     Arthrex denies the allegations of paragraph 20 of the Complaint.

21.     Arthrex denies the allegations of paragraph 21 of the Complaint.

## V.  **SECOND CLAIM FOR RELIEF**

(Alleged Contributory Infringement of the '311 Patent

under 35 U.S.C. § 271(c))

22.     Arthrex admits that KFx repeats and re-alleges paragraphs 1 through 21 of the Complaint.  Arthrex repeats, reasserts and incorporates by reference its answers to paragraphs 1

through 21 of the Complaint as set forth above.

23.    Arthrex denies the allegations of paragraph 23 of the Complaint.

24.    Arthrex denies the allegations of paragraph 24 of the Complaint.

25.    Arthrex denies the allegations of paragraph 25 of the Complaint.

26.    Arthrex denies the allegations of paragraph 26 of the Complaint.

27.    Arthrex admits it has knowledge of the '311 Patent, but denies the remaining allegations of paragraph 27 of the Complaint.

28.    Arthrex denies the allegations of paragraph 28 of the Complaint.

29.    Arthrex denies the allegations of paragraph 29 of the Complaint.

## VI.  <u>THIRD CLAIM FOR RELIEF</u>

(Alleged Induced Infringement of the '942 Patent

Under 35 U.S.C. § 271(b))

30.    Arthrex admits that KFx re-alleges paragraphs 1 through 11 of the Complaint. Arthrex repeats, reasserts and incorporates by reference its answers to paragraphs 1 through 11 of the Complaint as set forth above.

31.    Arthrex admits it has knowledge of the '942 Patent, but denies the remaining allegations of paragraph 31 of the Complaint.

32.    Arthrex denies the allegations of paragraph 32 of the Complaint.

33.    Arthrex denies the allegations of paragraph 33 of the Complaint.

34.    Arthrex denies the allegations of paragraph 34 of the Complaint.

35.    Arthrex denies the allegations of paragraph 35 of the Complaint.

36.    Arthrex denies the allegations of paragraph 36 of the Complaint.

37.    Arthrex admits it has knowledge of the '942 Patent but denies the remaining allegations of paragraph 37 of the Complaint.

38.    Arthrex denies the allegations of paragraph 38 of the Complaint.

39.    Arthrex denies the allegations of paragraph 39 of the Complaint.

## VII.  <u>FOURTH CLAIM FOR RELIEF</u>

(Alleged Contributory Infringement of the '942 Patent

under 35 U.S.C. § 271(c))

40.     Arthrex admits that KFx repeats and re-alleges paragraphs 1 through 11 and 30 through 39 of the Complaint.  Arthrex repeats, reasserts and incorporates by reference its answers to paragraphs 1 through 11 and 30 through 39 of the Complaint as set forth above.

41.     Arthrex denies the allegations of paragraph 41 of the Complaint.

42.     Arthrex denies the allegations of paragraph 42 of the Complaint.

43.     Arthrex denies the allegations of paragraph 43 of the Complaint.

44.     Arthrex denies the allegations of paragraph 44 of the Complaint.

45.     Arthrex admits it has knowledge of the '942 Patent, but denies the remaining allegations of paragraph 45 of the Complaint.

46.     Arthrex denies the allegations of paragraph 46 of the Complaint.

47.     Arthrex denies the allegations of paragraph 47 of the Complaint.

## VIII.  <u>FIFTH CLAIM FOR RELIEF</u>

(Alleged Induced Infringement of the '969 Patent

Under 35 U.S.C. § 271(b))

48.     Arthrex admits that KFx re-alleges paragraphs 1 through 11 of the Complaint. Arthrex repeats, reasserts and incorporates by reference its answers to paragraphs 1 through 11 of the Complaint as set forth above.

49.     Arthrex admits it has knowledge of the '969 Patent, but denies the remaining allegations of paragraph 49 of the Complaint.

50.     Arthrex denies the allegations of paragraph 50 of the Complaint.

51.     Arthrex denies the allegations of paragraph 51 of the Complaint.

52.     Arthrex denies the allegations of paragraph 52 of the Complaint.

53.     Arthrex denies the allegations of paragraph 53 of the Complaint.

54.     Arthrex denies the allegations of paragraph 54 of the Complaint.

55.     Arthrex admits it has knowledge of the '969 Patent but denies the remaining allegations of paragraph 55 of the Complaint.

56.     Arthrex denies the allegations of paragraph 56 of the Complaint.

57.     Arthrex denies the allegations of paragraph 57 of the Complaint.

## IX.  SIXTH CLAIM FOR RELIEF

(Alleged Contributory Infringement of the '969 Patent

under 35 U.S.C. § 271(c))

58.     Arthrex admits that KFx repeats and re-alleges paragraphs 1 through 11 and 49 through 57 of the Complaint.  Arthrex repeats, reasserts and incorporates by reference its answers to paragraphs 1 through 11 and 49 through 57 of the Complaint as set forth above.

59.     Arthrex denies the allegations of paragraph 59 of the Complaint.

60.     Arthrex denies the allegations of paragraph 60 of the Complaint.

61.     Arthrex denies the allegations of paragraph 61 of the Complaint.

62.     Arthrex denies the allegations of paragraph 62 of the Complaint.

63.     Arthrex admits it has knowledge of the '969 Patent, but denies the remaining allegations of paragraph 63 of the Complaint.

64.     Arthrex denies the allegations of paragraph 64 of the Complaint.

65.     Arthrex denies the allegations of paragraph 65 of the Complaint.

## X.  GENERAL DENIAL

66.     Arthrex denies all allegations contained in KFx's Complaint except those expressly admitted in its Answer herein.  Further, Arthrex denies that KFx is entitled to any of the relief sought in its pray for judgment.

## AFFIRMATIVE DEFENSES

67.     Without altering any burdens of proof, Arthrex asserts the following affirmative defenses.  Arthrex reserves any and all rights to modify and/or expand these defenses and to take further positions and raise additional defenses in this matter.

## I.  FIRST AFFIRMATIVE DEFENSE - NON-INFRINGEMENT

(No Direct Infringement of the '311 Patent)

68.     The use of no product made, used, imported, offered for sale, or sold by Arthrex directly infringes the '311 Patent, either literally or under the doctrine of equivalents.

(No Induced Infringement of the '311 Patent)

69.     Arthrex does not induce others to infringe the '311 Patent under 35 U.S.C. § 271(b).

(No Contributory Infringement of the '311 Patent)

70.     Arthrex does not contribute to others' infringement of the '311 Patent under 35 U.S.C. § 271(c).

(No Direct Infringement of the '942 Patent)

71.     The use of no product made, used, imported, offered for sale, or sold by Arthrex directly infringes the '942 Patent, either literally or under the doctrine of equivalents.

(No Induced Infringement of the '942 Patent)

72.     Arthrex does not induce others to infringe the '942 Patent under 35 U.S.C. § 271(b).

(No Contributory Infringement of the '942 Patent)

73.     Arthrex does not contribute to others' infringement of the '942 Patent under 35 U.S.C. § 271(c).

(No Direct Infringement of the '969 Patent)

74.     The use of no product made, used, imported, offered for sale, or sold by Arthrex directly infringes the '969 Patent, either literally or under the doctrine of equivalents.

(No Induced Infringement of the '969 Patent)

75.     Arthrex does not induce others to infringe the '969 Patent under 35 U.S.C. § 271(b).

(No Contributory Infringement of the '969 Patent)

76.     Arthrex does not contribute to others' infringement of the '969 Patent under 35 U.S.C. § 271(c).

## II.  SECOND AFFIRMATIVE DEFENSE - INVALIDITY

77.     Each of the asserted claims of the '311, '942 and '969 Patents are invalid for failure to comply with one or more of the conditions and requirements of patentability as set forth in the United States Patent Laws, Title 35 U.S.C. §§ 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto.

## III.  THIRD AFFIRMATIVE DEFENSE – INEQUITABLE CONDUCT

78.     Upon information and belief, the '311, '942 and '969 Patents are unenforceable due to inequitable conduct committed before the U.S. Patent and Trademark Office (PTO) during

prosecution of the applications which eventually issued as the '311, '942 and '969 Patents.

79.     37 C.F.R. § 1.56 ("Rule 56") states:

Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section.

80.     Rule 56 further states that "[i]ndividuals associated with the filing or prosecution of a patent application" includes "[e]very other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor [or] with the assignee."

81.     Application No. 11/143,007 ("the '007 Application"), which issued as the '311 Patent on September 8, 2009, was filed on June 1, 2005 by Paul C. Steinhardt of Knobbe Martens Olson & Bear, LLP (Registration No. 30,806).

82.     The face of the '311 Patent identifies Provisional Application No. 60/610,924, filed on September 17, 2004 ("Provisional Application"), under a section titled "Related U.S. Application Data."

83.     On January 30, 2007, Ryan Melnick, of Knobbe Martens Olson & Bear, LLP (Registration No. 58,621) signed and filed an Information Disclosure Statement in the '007 Application ("January 2007 IDS").

84.     The January 2007 IDS listed 151 references on six pages.

85.     The January 2007 IDS included an article co-authored by Peter J. Millett, M.D. and entitled "Mattress Double Anchor Footprint Repair: A Novel Arthroscopic Rotator Cuff Repair Technique;" Arthroscopy: The Journal of Arthroscopic and Related Surgery, Vol. 20, No. 8 (October), 2004: pp. 875-879.  ("Millett Article").

86.     The Millett Article is listed as item #147 in the January 2007 IDS.

87.     The date on the face of the Millett Article is October 2004 and is later than the date on the Provisional Application of September 17, 2004.

88.     The Examiner identified specific prior art references in rejecting claims during prosecution of the '007 Application.

89.     The Examiner did not specifically identify the Millett Article in rejecting any claims

during prosecution of the '007 Application.

90.    The '311 Patent issued on September 8, 2009.

91.    On January 11, 2011, a request for ex parte reexamination of the '311 Patent was filed with the PTO and assigned control number 90/011,430 ("the Reexamination").

92.    A copy of the request for ex parte reexamination was served on KFx Medical Corporation, c/o Knobbe Martens Olson & Bear LLP on January 11, 2011.

93.    On February 16, 2011, an order granting a request for ex parte reexamination of the '311 Patent was mailed to Knobbe Martens Olson & Bear LLP.

94.    On March 28, 2011, the PTO issued a Notice of Intent to Issue Ex Parte Reexamination Certificate in the Reexamination.

95.    On April 12, 2011, an Information Disclosure Statement was filed by Ryan E. Melnick of Knobbe Martens Olson & Bear LLP in the Reexamination ("April 12 IDS").

96.    The April 12 IDS included a Statement of Tate Scott, dated April 12, 2011 ("the Scott Statement").

97.    Tate Scott is the CEO of KFx, the alleged assignee of the '311 Patent.

98.    Paragraph 2 of the Scott Statement states: "An Information Disclosure Statement was filed on January 30, 2007 in the application that issued as U.S. Patent No. 7,585,311.  That Information Disclosure Statement included as item #147 an article authored by Peter Millett et al., entitled  "Mattress double anchor footprint repair: a novel, arthroscopic rotator cuff repair technique," Arthroscopy" The Journal of Arthroscopic and Related Surgery, 20(8):875-879 (2004)."

99.    The article identified in paragraph 2 of the Scott Declaration is the Millett Article.

100.    Paragraph 4 of the Scott Statement states: "I had a conversation with Peter Millett during which he told me that the procedures referenced in the 2004 article had been performed in the two years preceding publication of the article."

101.    Paragraph 5 of the Scott Statement states: "[Peter Millett] also confirmed that all of the procedures were performed by tying knots as described in the 2004 article."

102.    "The 2004 article" identified in paragraphs 4 and 5 of the Scott Statement is the Millett Article.

103.    Paragraph 6 of the Scott Statement states: "I declare that all statements made herein of my knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful statements may jeopardize the validity of the above-identified application and any patents issuing thereon."

104.    The PTO refused to consider the April 12 IDS.

105.    On April 28, 2011, a Petition Under 37 CFR § 1.182 was filed on behalf of KFx and signed by Ryan E. Melnick ("the Petition").

106.    The Petition was filed "to have the Examiner consider" the April 12 IDS.

107.    In the Petition, KFx, through its counsel, Ryan E. Melnick, stated "Patentee submits that consideration of this information by the Examiner is appropriate."

108.    On July 15, 2011, the PTO issued a Decision on Petition dismissing the April 28 Petition in part because "[t]here is no showing as to when patent owner first became aware of the existence of the items of information now being submitted, and no explanation as to why the information could not have been submitted earlier." [emphasis in original].

109.    In or about August 2005, Tate Scott contacted Peter Millet to learn further information about the procedures described in the Millett Article.  At the time, and in a series of subsequent discussions while the examination of the '007 Application was ongoing, Peter Millett informed Tate Scott that the procedures referenced in the Millett Article had been performed long before publication of the Millett article beginning in March 2003 ("the Withheld Information").  The Withheld Information was not disclosed to the PTO prior to the issuance of the '311 Patent.

110.    Tate Scott, CEO of KFx, the alleged assignee of the '311 Patent, is "associated with the inventor [or] with the assignee," and as such is an "individual associated with the filing and prosecution of a patent application" under Rule 56.

111.    Because Mr. Scott is an "individual associated with the filing and prosecution of a patent application" under Rule 56, Mr. Scott had a duty to disclose "all information known to [Mr. Scott] to be material to patentability" during prosecution of the '007 Application.

112.    The Withheld Information was material to the patentability of the claims of the '007 Application during prosecution.

113.    Mr. Scott knew the Withheld Information was material.  Mr. Scott identified, in paragraph 5 of the Scott Statement, that "all of the procedures were performed by tying knots as described in the 2004 article," as the only limitation of claims of the '311 Patent that is not disclosed by the Withheld Information.  In fact, the Withheld Information disclosed all limitations of claims of the '311 Patent with the exception of "fixedly securing the first length of suture to the second anchor without tying any knots."

114.    The Withheld Information was highly material because it disclosed more limitations of the pending claims of the '007 Application than any other prior art references specifically identified by the Examiner in rejecting claims.

115.    Had the Withheld Information been disclosed to the PTO during examination of the '007 Application, pending claims would not have been allowed to issue as it would have been obvious to a person of ordinary skill in the art to combine any missing limitations with the Withheld Information to render the claims unpatentable.

116.    Since the Withheld Information was material to patentability, Mr. Scott had a duty to disclose it to the PTO during prosecution of the '007 Application.

117.    Mr. Scott failed to disclose the Withheld Information during prosecution of the '007 Application knowingly, deliberately and with the specific intent to deceive the PTO, as evidenced by Mr. Scott's actions described in paragraphs 96-113.

118.    During the Reexamination, Mr. Scott had a second opportunity to disclose when he first learned of the Withheld Information.  Mr. Scott failed, yet again, to do so, as noted by the PTO in dismissing the Petition.  That Mr. Scott failed to disclose the same material information on two separate occasions further evidences his specific intent to deceive the PTO.

119.    Application No. 13/245,620 ("the '620 Application"), which issued as the '942 Patent on January 24, 2012, and Application No. 13/245,622 ("the '622 Application"), which issued as the '969 Patent on February 7, 2012, were filed on September 26, 2011 by Ryan Melnick of Knobbe Martens Olson & Bear, LLP.

120.    Both the '620 Application and the '622 Application claim priority back to the '007 Application and the Provisional Application on their face under the heading "Related U.S. Application Data."

121.    Both the '620 Application and the '622 Application claim priority back to the '007 Application and the Provisional Application at column 1 under the heading "Related Applications."

122.    The claims of the '622 Application are actually entitled to a priority date of June 1, 2005.

123.    On December 1, 2011, Mr. Melnick signed and filed an Information Disclosure Statement in each of the '620 and '622 Applications ("December 2011 IDS").

124.    Ryan Melnick is an "individual associated with the filing and prosecution of a patent application" under Rule 56.

125.    Because Mr. Melnick is an "individual associated with the filing and prosecution of a patent application" under Rule 56, Mr. Melnick had a duty to disclose "all information known to [Mr. Melnick] to be material to patentability" during prosecution of the '620 and '622 Applications.

126.    The December 2011 IDS listed 201 references.

127.    The Scott Statement is listed as item #197 in the December 2011 IDS.

128.    The December 2011 IDS stated that the Scott Statement was "submitted in Re-Examination No. 90/011,430."

129.    The December 2011 IDS did not disclose to the Examiner that the PTO refused to consider the Scott Statement during the Reexamination.

130.    The December 2011 IDS also did not disclose to the Examiner the reasons why the PTO refused to consider the Scott Statement during the Reexamination.

131.    On September 26, 2011, Mr. Melnick filed a Request for First Action Interview in connection with both the '620 and '622 Applications.

132.    On December 1, 2011 Mr. Melnick conducted a telephonic interview with the Examiner in both the '620 and '622 Applications ("the Interview").

133.    During the Interview, Mr. Melnick discussed U.S. Patent Nos. 5,569,306 ("Thal") and 5,634,926 ("Jobe") with the Examiner.

134.    Both Thal and Jobe were specifically applied by the Examiner during prosecution of the '007 Application.

135.    The Examiner for the '620 and '622 Applications was the same Examiner as the '007 Application and different from the Examiner during the Reexamination.

136.    Mr. Melnick did not discuss the Scott Statement with the Examiner during the Interview.

137.    In discussing Thal and Jobe with the Examiner, Mr. Melnick diverted the Examiner's attention from the Scott Statement since the Examiner was led to believe that Thal and Jobe were the most material references disclosed in the December 2011 IDS.

138.    The Examiner knew that the claims of the '007 Application were allowed in light of Thal and Jobe.

139.    Since the contents of the Scott Statement were not disclosed to the PTO during prosecution of the '007 Application, the Examiner would have no reason to believe that the work performed for the Millett Article was any more material in connection with the '620 and '622 Applications than he believed it was in the '007 Application.

140.    Without having the Scott Statement or the work performed for the Millett Article specifically brought to his attention in the '620 and '622 Applications, the Examiner again did not specifically apply the work performed for the Millett Article in rejecting the pending claims.

141.    Mr. Melnick also did not inform the Examiner that the claims of the '622 Application were entitled to a priority date of September 1, 2005.

142.    The date on the Millett Article is October 2004, which pre-dates the June 1, 2005 priority date for the '622 Application.

143.    Had the Examiner known that the '622 Application was only entitled to a priority date of June 1, 2005, he would have applied the Millett Article in rejecting the pending claims.

144.    On December 14, 2011, the PTO issued a Notice of Allowance in the '620 Application ("'620 Notice of Allowance").

145.    On December 29, 2011, the PTO issued a Notice of Allowance in the '622 Application ("'622 Notice of Allowance").

146.    Both the '620 Notice of Allowance and '622 Notice of Allowance state that the claims are allowed because "neither Thal nor Jobe disclose after inserting the second anchor, tensioning the first length of suture to compress an area of tissue to bone between the edge of the soft tissue and the first anchor," and that "[t]he prior art of record nor the prior art at large, alone or in combination, cannot remedy the deficiencies of the Thal and Jobe references and thus the claims are allowed."

147.    The Examiner's reasons for allowing the claims of the '620 and '622 Applications were the same reasons for allowing the '007 Application.

148.    The Millett Article itself, as well as the work performed for the Millett Article, discloses the subject matter that the Examiner stated was missing from Thal and Jobe.

149.    The Scott Statement, the Millett Article and the work performed for the Millett Article are material to the patentability of the claims of the '620 and '622 Applications.

150.    On December 16, 2011, Mr. Melnick filed Comments on Examiner's Statement of Reasons for Allowance in the '620 Application ("'620 Comments").

151.    On December 29, 2011, Mr. Melnick filed Comments on Examiner's Statement of Reasons for Allowance in the '622 Application ("'622 Comments").

152.    Neither the '620 Comments nor the '622 Comments refer to the Millett Article, the work performed for the Millett Article or the Scott Statement.  Thus, Mr. Melnick failed yet again to bring the Millett Article, the work performed for the Millett article and the Scott Statement to the Examiner's attention.

153.    Mr. Melnick's failure to bring the Millett Article, the work performed for the Millett Article and the Scott Statement to the attention of the Examiner during the Interview and in the '620 Comments or the '622 Comments along with Mr. Melnick's failure to disclose the actual priority date for the '622 Application while at the same time diverting the Examiner's attention to two other references (Thal and Jobe) previously overcome in the '007 Application with claim limitations similar to those in the '620 and '622 Applications was done knowingly, deliberately and with the specific intent to deceive the PTO as to which references were the most material.

154.    On December 29, 2011, Mr. Melnick filed the issue fee payment in the '622

Application.

155.    On January 30, 2012, Arthrex served on KFx its Preliminary Invalidity Contentions regarding the '311 Patent in this lawsuit ("Invalidity Contentions").

156.    The Invalidity Contentions alleged, among other things, that each asserted claim of the '311 patent is anticipated under 35 U.S.C. § 102 by information and documents previously unknown to KFx and not previously considered by the PTO during prosecution of the '007, '620 or '622 Applications.

157.    The information and documents disclosed in Arthrex's Invalidity Contentions are material to the patentability of the claims of the '620 and '622 Applications as well as the '311 Patent.

158.    On February 6, 2012, an Information Disclosure Statement was filed by Mr. Melnick in the '622 Application including the Invalidity Contentions ("February 6, 2012 IDS").

159.    The February 6, 2012 IDS stated:  "Submitted herewith in the above-identified application is an Information Disclosure Statement listing references for consideration."

160.    The February 6, 2012 IDS also stated:  "Please place these references in the file in accordance with 37 CFR 1.97(i)."

161.    37 CFR 1.97(i) states "If an information disclosure statement does not comply with either this section or § 1.98, it will be placed in the file but will not be considered by the Office."

162.    Mr. Melnick knew that references submitted under 37 CFR 1.97(i) would not be considered by the patent office when he stated in the February 6, 2012 IDS that the references were being submitted "for consideration."

163.    MPEP 609.04(b) states that:

        Information disclosure statements filed after payment of the issue fee in an application will not be considered but will merely be placed in the application file. See MPEP § 609.05(b). The application may be withdrawn from issue at this point, pursuant to 37 CFR 1.313(c)(2) or 1.313(c)(3) so that the information can be considered in the application upon the filing of a RCE under 37 CFR 1.114 or in a continuing application filed under 37 CFR 1.53(b) (or 37 CFR 1.53(d) if the application is a design application). In this situation, a RCE, or a CPA (if the prior application is a design application), or a continuing application filed under 37 CFR 1.53(b) could be filed even though the issue fee had already been paid.

164.    To have the references cited in the February 6, 2012 IDS including the Invalidity Contentions considered by the Patent Office in the '622 Application, KFx would have had to file a petition to withdraw the '622 Application from issue and file either a Request for Continued Examination (RCE) under 37 CFR 1.114 or a continuing application under 37 CFR 1.53(b).

165.    KFx did not file a petition to withdraw the '622 Application from issue.

166.    KFx did not file an RCE in the '622 Application under 37 CFR 1.114.

167.    KFx did not take any action required by the MPEP or PTO Rules in order to ensure the February 6, 2012 IDS would be considered by the PTO in the '622 Application.

168.    Mr. Melnick's knowingly false statement that the Invalidity Contentions were being submitted "for consideration," and his failure to take any of the required actions in order to actually have the Invalidity Contentions considered by the PTO, were done knowingly, deliberately and with the specific intent to deceive the PTO.

## IV.  <u>RESERVATION OF ADDITIONAL DEFENSES</u>

169.    Arthrex reserves all defenses under the Patent Laws of the United States, Title 35 of the United States Code, the Federal Rules of Civil Procedure, and any other defenses, at law or in equity, that may now exist or come to light in the future based on discovery and further investigation into KFx's allegations.

## V.  <u>ANSWER TO PRAYER FOR RELIEF</u>

170.    Arthrex denies that KFx is entitled to any relief from Arthrex and prays that this Court deny all relief demanded by KFx in the Complaint.

## COUNTERCLAIMS BY DEFENDANT/COUNTERCLAIMANT

## ARTHREX, INC.

For its Counterclaims against Plaintiff/Counterdefendant KFx, Defendant and Counterclaim Plaintiff Arthrex, alleges as follows:

1.     Defendant/Counterclaimant Arthrex is a Delaware corporation with its principal place of business at: 1370 Creekside Blvd., Naples, Florida 34108.

2.     Plaintiff/Counterdefendant KFx has alleged in its Complaint that it is a Delaware corporation with a principal place of business at 5845 Avenida Encinas, Carlsbad, California 92008, and that it does business within this judicial district.

## I.  JURISDICTION AND VENUE

3.     Venue is proper in this Judicial District under 28 U.S.C. §§ 1391 and 1400.

4.     These Counterclaims arise under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201-02.  An actual, substantial, and continuing justiciable controversy exists between Arthrex and KFx with respect to which Arthrex requires a declaration of rights by this Court.

5.     This Court has jurisdiction over this Counterclaim under 28 U.S.C. §§ 1331, 1338, 1367, and 2201-02.

## II.  FIRST COUNTERCLAIM: DECLARATORY JUDGMENT

## NON-INFRINGEMENT

6.     Arthrex re-alleges and incorporates by reference herein the allegations of paragraphs 1-5 above.

7.     KFx contends that it owns the '311, '942 and '969 Patents and further asserts that Arthrex has induced and/or contributed to the infringement of the '311, '942 and '969 Patents.

(No Direct Infringement of the '311 Patent)

8.     The use of Arthrex's products does not directly infringe any claim of the '311 Patent, either literally or under the doctrine of equivalents.

(No Induced Infringement of the '311 Patent)

9.     Arthrex has not induced others to infringe the '311 Patent under 35 U.S.C. § 271(b).

(No Contributory Infringement of the '311 Patent)

10.     Arthrex does not contribute to others' infringement of the '311 Patent under 35 U.S.C. § 271(c).

(No Direct Infringement of the '942 Patent)

11.     The use of Arthrex's products does not directly infringe any claim of the '942 Patent, either literally or under the doctrine of equivalents.

(No Induced Infringement of the '942 Patent)

12.     Arthrex has not induced others to infringe the '942 Patent under 35 U.S.C. § 271(b).

(No Contributory Infringement of the '942 Patent)

13.     Arthrex does not contribute to others' infringement of the '942 Patent under 35 U.S.C. § 271(c).

(No Direct Infringement of the '969 Patent)

14.     The use of Arthrex's products does not directly infringe any claim of the '969 Patent, either literally or under the doctrine of equivalents.

(No Induced Infringement of the '969 Patent)

15.     Arthrex has not induced others to infringe the '969 Patent under 35 U.S.C. § 271(b).

(No Contributory Infringement of the '969 Patent)

16.     Arthrex does not contribute to others' infringement of the '969 Patent under 35 U.S.C. § 271(c).

17.     Arthrex seeks a judicial determination and declaration of the respective rights and duties of the parties based on Arthrex's contentions.  Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the non-infringement of the claims of the '311, '942 and '969 Patents.

### III.  SECOND COUNTERCLAIM: DECLARATORY JUDGMENT

### INVALIDITY

18.     Arthrex re-alleges and incorporates by reference herein the allegations of paragraphs 1-5 above.

19.     The claims of the '311 Patent are invalid for failing to comply with the conditions and requirements for patentability as set forth in the United States Patent Laws, Title 35 U.S.C. §§ 102,

103, and/or 112, and the rules and regulations and laws pertaining thereto.

20.     The claims of the '942 Patent are invalid for failing to comply with the conditions and requirements for patentability as set forth in the United States Patent Laws, Title 35 U.S.C. §§ 102, 103, and/or 112, and the rules and regulations and laws pertaining thereto.

21.     The claims of the '969 Patent are invalid for failing to comply with the conditions and requirements for patentability as set forth in the United States Patent Laws, Title 35 U.S.C. §§ 102, 103, and/or 112, and the rules and regulations and laws pertaining thereto.

22.     Arthrex seeks a judicial determination and declaration of the respective rights and duties of the parties based on Arthrex's contentions.  Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the invalidity of the claims of the '311, '942 and '969 Patents.

## IV.  THIRD COUNTERCLAIM: DECLARATORY JUDGMENT UNENFORCEABILITY

23.     Upon information and belief, the '311, '942 and '969 Patents are unenforceable due to inequitable conduct committed before the U.S. Patent and Trademark Office (PTO) during prosecution of the applications which eventually issued as the '311, '942 and '969 Patents.

24.     37 C.F.R. § 1.56 ("Rule 56") states:

Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section.

25.     Rule 56 further states that "[i]ndividuals associated with the filing or prosecution of a patent application" includes "[e]very other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor [or] with the assignee."

26.     Application No. 11/143,007 ("the '007 Application"), which issued as the '311 Patent on September 8, 2009, was filed on June 1, 2005 by Paul C. Steinhardt of Knobbe Martens Olson & Bear, LLP (Registration No. 30,806).

27.     The face of the '311 Patent identifies Provisional Application No. 60/610,924, filed on September 17, 2004 ("Provisional Application"), under a section titled "Related U.S. Application

Data."

28.     On January 30, 2007, Ryan Melnick, of Knobbe Martens Olson & Bear, LLP (Registration No. 58,621) signed and filed an Information Disclosure Statement in the '007 Application ("January 2007 IDS").

29.     The January 2007 IDS listed 151 references on six pages.

30.     The January 2007 IDS included an article co-authored by Peter J. Millett, M.D. and entitled "Mattress Double Anchor Footprint Repair: A Novel Arthroscopic Rotator Cuff Repair Technique;" Arthroscopy: The Journal of Arthroscopic and Related Surgery, Vol. 20, No. 8 (October), 2004: pp. 875-879.  ("Millett Article").

31.     The Millett Article is listed as item #147 in the January 2007 IDS.

32.     The date on the face of the Millett Article is October 2004 and is later than the date on the Provisional Application of September 17, 2004.

33.     The Examiner identified specific prior art references in rejecting claims during prosecution of the '007 Application.

34.     The Examiner did not specifically identify the Millett Article in rejecting any claims during prosecution of the '007 Application.

35.     The '311 Patent issued on September 8, 2009.

36.     On January 11, 2011, a request for ex parte reexamination of the '311 Patent was filed with the PTO and assigned control number 90/011,430 ("the Reexamination").

37.     A copy of the request for ex parte reexamination was served on KFx Medical Corporation, c/o Knobbe Martens Olson & Bear LLP on January 11, 2011.

38.     On February 16, 2011, an order granting a request for ex parte reexamination of the '311 Patent was mailed to Knobbe Martens Olson & Bear LLP.

39.     On March 28, 2011, the PTO issued a Notice of Intent to Issue Ex Parte Reexamination Certificate in the Reexamination.

40.     On April 12, 2011, an Information Disclosure Statement was filed by Ryan E. Melnick of Knobbe Martens Olson & Bear LLP in the Reexamination ("April 12 IDS").

41.     The April 12 IDS included a Statement of Tate Scott, dated April 12, 2011 ("the Scott

Statement").

42.     Tate Scott is the CEO of KFx, the alleged assignee of the '311 Patent.

43.     Paragraph 2 of the Scott Statement states: "An Information Disclosure Statement was filed on January 30, 2007 in the application that issued as U.S. Patent No. 7,585,311.  That Information Disclosure Statement included as item #147 an article authored by Peter Millett et al., entitled  "Mattress double anchor footprint repair: a novel, arthroscopic rotator cuff repair technique," Arthroscopy" The Journal of Arthroscopic and Related Surgery, 20(8):875-879 (2004)."

44.     The article identified in paragraph 2 of the Scott Declaration is the Millett Article.

45.     Paragraph 4 of the Scott Statement states: "I had a conversation with Peter Millett during which he told me that the procedures referenced in the 2004 article had been performed in the two years preceding publication of the article."

46.     Paragraph 5 of the Scott Statement states: "[Peter Millett] also confirmed that all of the procedures were performed by tying knots as described in the 2004 article."

47.     "The 2004 article" identified in paragraphs 4 and 5 of the Scott Statement is the Millett Article.

48.     Paragraph 6 of the Scott Statement states: "I declare that all statements made herein of my knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful statements may jeopardize the validity of the above-identified application and any patents issuing thereon."

49.     The PTO refused to consider the April 12 IDS.

50.     On April 28, 2011, a Petition Under 37 CFR § 1.182 was filed on behalf of KFx and signed by Ryan E. Melnick ("the Petition").

51.     The Petition was filed "to have the Examiner consider" the April 12 IDS.

52.     In the Petition, KFx, through its counsel, Ryan E. Melnick, stated "Patentee submits that consideration of this information by the Examiner is appropriate."

53.     On July 15, 2011, the PTO issued a Decision on Petition dismissing the April 28

Petition in part because "[t]here is no showing as to when patent owner first became aware of the existence of the items of information now being submitted, and no explanation as to why the information could not have been submitted earlier." [emphasis in original].

54.     In or about August 2005, Tate Scott contacted Peter Millet to learn further information about the procedures described in the Millett Article.  At the time, and in a series of subsequent discussions while the examination of the '007 Application was ongoing, Peter Millett informed Tate Scott that the procedures referenced in the Millett Article had been performed long before publication of the Millett article beginning in March 2003 ("the Withheld Information").  The Withheld Information was not disclosed to the PTO prior to the issuance of the '311 Patent.

55.     Tate Scott, CEO of KFx, the alleged assignee of the '311 Patent, is "associated with the inventor [or] with the assignee," and as such is an "individual associated with the filing and prosecution of a patent application" under Rule 56.

56.     Because Mr. Scott is an "individual associated with the filing and prosecution of a patent application" under Rule 56, Mr. Scott had a duty to disclose "all information known to [Mr. Scott] to be material to patentability" during prosecution of the '007 Application.

57.     The Withheld Information was material to the patentability of the claims of the '007 Application during prosecution.

58.     Mr. Scott knew the Withheld Information was material.  Mr. Scott identified, in paragraph 5 of the Scott Statement, that "all of the procedures were performed by tying knots as described in the 2004 article," as the only limitation of claims of the '311 Patent that is not disclosed by the Withheld Information.  In fact, the Withheld Information disclosed all limitations of claims of the '311 Patent with the exception of "fixedly securing the first length of suture to the second anchor without tying any knots."

59.     The Withheld Information was highly material because it disclosed more limitations of the pending claims of the '007 Application than any other prior art references specifically identified by the Examiner in rejecting claims.

60.     Had the Withheld Information been disclosed to the PTO during examination of the '007 Application, pending claims would not have been allowed to issue as it would have been

DICKSTEIN
SHAPIRO LLP

obvious to a person of ordinary skill in the art to combine any missing limitations with the Withheld Information to render the claims unpatentable.

61.     Since the Withheld Information was material to patentability, Mr. Scott had a duty to disclose it to the PTO during prosecution of the '007 Application.

62.     Mr. Scott failed to disclose the Withheld Information during prosecution of the '007 Application knowingly, deliberately and with the specific intent to deceive the PTO, as evidenced by Mr. Scott's actions described in paragraphs 96-113.

63.     During the Reexamination, Mr. Scott had a second opportunity to disclose when he first learned of the Withheld Information.  Mr. Scott failed, yet again, to do so, as noted by the PTO in dismissing the Petition.  That Mr. Scott failed to disclose the same material information on two separate occasions further evidences his specific intent to deceive the PTO.

64.     Application No. 13/245,620 ("the '620 Application"), which issued as the '942 Patent on January 24, 2012, and Application No. 13/245,622 ("the '622 Application"), which issued as the '969 Patent on February 7, 2012, were filed on September 26, 2011 by Ryan Melnick of Knobbe Martens Olson & Bear, LLP.

65.     Both the '620 Application and the '622 Application claim priority back to the '007 Application and the Provisional Application on their face under the heading "Related U.S. Application Data."

66.     Both the '620 Application and the '622 Application claim priority back to the '007 Application and the Provisional Application at column 1 under the heading "Related Applications."

67.     The claims of the '622 Application are actually entitled to a priority date of June 1, 2005.

68.     On December 1, 2011, Mr. Melnick signed and filed an Information Disclosure Statement in each of the '620 and '622 Applications ("December 2011 IDS").

69.     Ryan Melnick is an "individual associated with the filing and prosecution of a patent application" under Rule 56.

70.     Because Mr. Melnick is an "individual associated with the filing and prosecution of a patent application" under Rule 56, Mr. Melnick had a duty to disclose "all information known to

[Mr. Melnick] to be material to patentability" during prosecution of the '620 and '622 Applications.

71.    The December 2011 IDS listed 201 references.

72.    The Scott Statement is listed as item #197 in the December 2011 IDS.

73.    The December 2011 IDS stated that the Scott Statement was "submitted in Re-Examination No. 90/011,430."

74.    The December 2011 IDS did not disclose to the Examiner that the PTO refused to consider the Scott Statement during the Reexamination.

75.    The December 2011 IDS also did not disclose to the Examiner the reasons why the PTO refused to consider the Scott Statement during the Reexamination.

76.    On September 26, 2011, Mr. Melnick filed a Request for First Action Interview in connection with both the '620 and '622 Applications.

77.    On December 1, 2011 Mr. Melnick conducted a telephonic interview with the Examiner in both the '620 and '622 Applications ("the Interview").

78.    During the Interview, Mr. Melnick discussed U.S. Patent Nos. 5,569,306 ("Thal") and 5,634,926 ("Jobe") with the Examiner.

79.    Both Thal and Jobe were specifically applied by the Examiner during prosecution of the '007 Application.

80.    The Examiner for the '620 and '622 Applications was the same Examiner as the '007 Application and different from the Examiner during the Reexamination.

81.    Mr. Melnick did not discuss the Scott Statement with the Examiner during the Interview.

82.    In discussing Thal and Jobe with the Examiner, Mr. Melnick diverted the Examiner's attention from the Scott Statement since the Examiner was led to believe that Thal and Jobe were the most material references disclosed in the December 2011 IDS.

83.    The Examiner knew that the claims of the '007 Application were allowed in light of Thal and Jobe.

84.    Since the contents of the Scott Statement were not disclosed to the PTO during prosecution of the '007 Application, the Examiner would have no reason to believe that the work

performed for the Millett Article was any more material in connection with the '620 and '622 Applications than he believed it was in the '007 Application.

85.    Without having the Scott Statement or the work performed for the Millett Article specifically brought to his attention in the '620 and '622 Applications, the Examiner again did not specifically apply the work performed for the Millett Article in rejecting the pending claims.

86.    Mr. Melnick also did not inform the Examiner that the claims of the '622 Application were entitled to a priority date of September 1, 2005.

87.    The date on the Millett Article is October 2004, which pre-dates the June 1, 2005 priority date for the '622 Application.

88.    Had the Examiner known that the '622 Application was only entitled to a priority date of June 1, 2005, he would have applied the Millett Article in rejecting the pending claims.

89.    On December 14, 2011, the PTO issued a Notice of Allowance in the '620 Application ("'620 Notice of Allowance").

90.    On December 29, 2011, the PTO issued a Notice of Allowance in the '622 Application ("'622 Notice of Allowance").

91.    Both the '620 Notice of Allowance and '622 Notice of Allowance state that the claims are allowed because "neither Thal nor Jobe disclose after inserting the second anchor, tensioning the first length of suture to compress an area of tissue to bone between the edge of the soft tissue and the first anchor," and that "[t]he prior art of record nor the prior art at large, alone or in combination, cannot remedy the deficiencies of the Thal and Jobe references and thus the claims are allowed."

92.    The Examiner's reasons for allowing the claims of the '620 and '622 Applications were the same reasons for allowing the '007 Application.

93.    The Millett Article itself, as well as the work performed for the Millett Article, discloses the subject matter that the Examiner stated was missing from Thal and Jobe.

94.    The Scott Statement, the Millett Article and the work performed for the Millett Article are material to the patentability of the claims of the '620 and '622 Applications.

95.    On December 16, 2011, Mr. Melnick filed Comments on Examiner's Statement of

Reasons for Allowance in the '620 Application ("'620 Comments").

96.     On December 29, 2011, Mr. Melnick filed Comments on Examiner's Statement of Reasons for Allowance in the '622 Application ("'622 Comments").

97.     Neither the '620 Comments nor the '622 Comments refer to the Millett Article, the work performed for the Millett Article or the Scott Statement.  Thus, Mr. Melnick failed yet again to bring the Millett Article, the work performed for the Millett article and the Scott Statement to the Examiner's attention.

98.     Mr. Melnick's failure to bring the Millett Article, the work performed for the Millett Article and the Scott Statement to the attention of the Examiner during the Interview and in the '620 Comments or the '622 Comments along with Mr. Melnick's failure to disclose the actual priority date for the '622 Application while at the same time diverting the Examiner's attention to two other references (Thal and Jobe) previously overcome in the '007 Application with claim limitations similar to those in the '620 and '622 Applications was done knowingly, deliberately and with the specific intent to deceive the PTO as to which references were the most material.

99.     On December 29, 2011, Mr. Melnick filed the issue fee payment in the '622 Application.

100.    On January 30, 2012, Arthrex served on KFx its Preliminary Invalidity Contentions regarding the '311 Patent in this lawsuit ("Invalidity Contentions").

101.    The Invalidity Contentions alleged, among other things, that each asserted claim of the '311 patent is anticipated under 35 U.S.C. § 102 by information and documents previously unknown to KFx and not previously considered by the PTO during prosecution of the '007, '620 or '622 Applications.

102.    The information and documents disclosed in Arthrex's Invalidity Contentions are material to the patentability of the claims of the '620 and '622 Applications as well as the '311 Patent.

103.    On February 6, 2012, an Information Disclosure Statement was filed by Mr. Melnick in the '622 Application including the Invalidity Contentions ("February 6, 2012 IDS").

104.    The February 6, 2012 IDS stated:  "Submitted herewith in the above-identified

application is an Information Disclosure Statement listing references for consideration."

105.    The February 6, 2012 IDS also stated:  "Please place these references in the file in accordance with 37 CFR 1.97(i)."

106.    37 CFR 1.97(i) states "If an information disclosure statement does not comply with either this section or § 1.98, it will be placed in the file but will not be considered by the Office."

107.    Mr. Melnick knew that references submitted under 37 CFR 1.97(i) would not be considered by the patent office when he stated in the February 6, 2012 IDS that the references were being submitted "for consideration."

108.    MPEP 609.04(b) states that:

> Information disclosure statements filed after payment of the issue fee in an application will not be considered but will merely be placed in the application file. See MPEP § 609.05(b). The application may be withdrawn from issue at this point, pursuant to 37 CFR 1.313(c)(2) or 1.313(c)(3) so that the information can be considered in the application upon the filing of a RCE under 37 CFR 1.114 or in a continuing application filed under 37 CFR 1.53(b) (or 37 CFR 1.53(d) if the application is a design application). In this situation, a RCE, or a CPA (if the prior application is a design application), or a continuing application filed under 37 CFR 1.53(b) could be filed even though the issue fee had already been paid.

109.    To have the references cited in the February 6, 2012 IDS including the Invalidity Contentions considered by the Patent Office in the '622 Application, KFx would have had to file a petition to withdraw the '622 Application from issue and file either a Request for Continued Examination (RCE) under 37 CFR 1.114 or a continuing application under 37 CFR 1.53(b).

110.    KFx did not file a petition to withdraw the '622 Application from issue.

111.    KFx did not file an RCE in the '622 Application under 37 CFR 1.114.

112.    KFx did not take any action required by the MPEP or PTO Rules in order to ensure the February 6, 2012 IDS would be considered by the PTO in the '622 Application.

113.    Mr. Melnick's knowingly false statement that the Invalidity Contentions were being submitted "for consideration," and his failure to take any of the required actions in order to actually have the Invalidity Contentions considered by the PTO, were done knowingly, deliberately and with the specific intent to deceive the PTO.

114.    Arthrex seeks a judicial determination and declaration of the respective rights and

duties of the parties based on Arthrex's contentions. Such a determination and declaration is necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the invalidity of the claims of the '311 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Counterclaimant Arthrex prays for the following:

A. A judgment that Plaintiff take nothing by its Complaint;

B. A judgment that Plaintiff's Complaint against Arthrex be dismissed with prejudice and that all relief requested by Plaintiff be denied with prejudice;

C. An order adjudging that the use of the accused Arthrex products does not directly infringe (either literally or under the doctrine of equivalents) any claim of the '311, '942 or '969 Patents;

D. An order adjudging that Arthrex does not contribute to others' infringement, nor does it induce other to infringe any claim of the '311, '942 or '969 Patents;

E. An order adjudging that the claims of the '311, '942 and '969 Patents are invalid;

F. An order adjudging that the '311, '942 and '969 Patents are unenforceable due to KFx's inequitable conduct;

G. An order adjudging that KFx, and its agents, employees, representatives, counsel, and all persons in active concert or participation with any of them, directly or indirectly, be enjoined from threatening or charging infringement of, or instituting any action for infringement of the '311, '942 and '969 Patents against Arthrex, its suppliers, customers or any distributor or user of its products;

H. An order adjudging that this case to be an exceptional case within the meaning of 35 U.S.C. § 285, entitling Arthrex to an award of its reasonable attorneys' fees, along with any other and further relief as the Court deems just and proper;

I. An order that Arthrex be awarded its costs as the prevailing party; and

J. Such other and further relief, at law or in equity, to which Arthrex is justly entitled.

Dated:  April 23, 2012                         By:     /s/  Salvatore P. Tamburo_____

                                               Salvatore P. Tamburo
                                               DICKSTEIN SHAPIRO LLP
                                               1825 Eye Street NW
                                               Washington, DC 20006-5403
                                               Tel: (202) 420-2200
                                               Fax: (202) 420-2201
                                               TamburoS@dicksteinshapiro.com

                                               Attorney for Defendant/Counterclaimant
                                               Arthrex, Inc.

ARTHREX'S ANSWER TO KFX'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS        3:11-cv-1698

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2012, I caused the foregoing **DEFENDANT ARTHREX, INC.'S ANSWER TO PLAINTIFF KFX MEDICAL CORP.'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND COUNTERCLAIMS** to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record.

**Counsel for Plaintiff KFx Medical Corporation**

Joseph F Jennings
jjennings@kmob.com
Phillip A Bennett
phillip.bennett@kmob.com
KNOBBE MARTENS OLSON AND BEAR
LitKFXL.064L@kmob.com

By:   _/s/  Salvatore P. Tamburo_____

Salvatore P. Tamburo
DICKSTEIN SHAPIRO LLP