Joseph F. Jennings (State Bar No. 145,920)
jjennings@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Phillip A. Bennett (State Bar No. 241,809)
phillip.bennett@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
12790 El Camino Real
San Diego, CA  92130
Phone: (858) 707-4000
Facsimile: (858) 707-4001

Attorneys for Plaintiff
KFx Medical Corporation

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KFX MEDICAL CORPORATION, a Delaware corporation,<br><br>    Plaintiff and Counterdefendant,<br><br>    v.<br><br>ARTHREX, INCORPORATED., a Delaware corporation,<br><br>    Defendant and Counterclaimant. | ) Case no. 11cv1698 DMS (BLM)<br>)<br>) **MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES IN SUPPORT OF**<br>) **PLAINTIFF'S MOTION TO (A)**<br>) **DISMISS DEFENDANT'S**<br>) **COUNTERCLAIM FOR**<br>) **INEQUITABLE CONDUCT IN**<br>) **CONNECTION WITH U.S. PATENTS**<br>) **8,100,942 AND 8,109,969; (B) STRIKE**<br>) **THE CORRESPONDING**<br>) **AFFIRMATIVE DEFENSE; AND (C)**<br>) **EXTEND TIME TO ANSWER**<br>) **REMAINING COUNTERCLAIM**<br>) **ALLEGATIONS**<br>)<br>)<br>) Date:  July 13, 2012<br>) Time:  1:30 p.m.<br>) Courtroom 10, 2nd Floor<br>) Honorable Dana M. Sabraw |

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ...................................................................................1

II.    LEGAL STANDARD ............................................................................2

       A.     Motions to Dismiss and Strike under Rules 12(b)(6) and Rule 12(f) of Federal Rules of Civil Procedure.........................................................2

       B.     Inequitable Conduct Requires Materiality and Intent.............................3

       C.     Pleadings of Inequitable Conduct are Held to a High Standard ...............3

III.   ARTHREX'S INEQUITABLE CONDUCT ALLEGATIONS .........................4

       A.     The Interview and Information Related to the Millett Article................5

       B.     The Priority Date for the '622 Application..........................................7

       C.     The '311 Patent Invalidity Contentions ..............................................8

IV.    ARTHREX'S INEQUITABLE CONDUCT CLAIMS FOR THE '942 AND '969 PATENTS SHOULD BE DISMISSED .......................................9

       A.     Arthrex Fails to State a Claim Based on a Failure to Bring the Millett Article and Scott Statement to the Specific Attention of the Examiner ...............9

              1.     Arthrex's Theory Fails as a Legal Matter...................................9

              2.     Arthrex has Not and Cannot Allege Facts Supporting any Intent to Deceive in Connection with the Submitted Information ......................11

       B.     Arthrex Fails to State a Claim Based on the '622 Application Priority Date....................................................................................12

              1.     The Priority Date is Not Material per Arthrex's Allegations ...................12

              2.     Referencing Prior Applications in a Patent Specification Priority Claim without Affirmatively Representing the Priority Date for Continuation Claims is Not Inequitable Conduct......................14

              3.     Arthrex Alleges No Facts to Support its Premise that the Examiner Assumed a Priority Based upon the Second Provisional Application ...............................................16

              4.     Arthrex's Conclusory Allegation of Intent to Deceive also Fails as a Matter of Law ...................................................16

       C.     Arthrex Fails to State a Claim Based on KFx's Submission of the Arthrex Invalidity Contentions to the PTO ...................................18

              1.     Arthrex's Theory is Unrecognized ...........................................18

1

2

<u>**TABLE OF CONTENTS**</u>
(*cont'd*)

**Page No.**

3           2.    Arthrex has Failed to Plead the Requisite Materiality.............................18

4           3.    Arthrex's Allegations Regarding Intent to Deceive Concerning the Invalidity Contentions are Insufficient ................................19

5

6    V.    ARTHREX SHOULD NOT BE GIVEN LEAVE TO AMEND BECAUSE NO AMENDMENT COULD LEAD TO ANY VIABLE CLAIM OF INEQUITABLE CONDUCT ...............................................20

7

8    VI.   THE DATE FOR KFX'S ANSWER TO REMAINING COUNTERCLAIMS SHOULD BE EXTENDED...........................................................21

9    VII.  CONCLUSION..........................................................................................21

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>TABLE OF AUTHORITIES</u>**

**Page No(s).**

*Am. CalCar, Inc. v. Am. Honda Motor Co.*,
   651 F.3d 1318 (Fed. Cir. 2011) ................................................................. 18

*Ashcroft v. Iqbal*,
   566 U.S. 662, 129 S. Ct. 1937 (2009)......................................................... 2

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) ......................................................................... 5

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
   655 F.3d 1337 (Fed. Cir. 2011) ................................................................... 4

*Encyclopedia Britannica, Inc. v. Alpine Elecs. of America, Inc.*,
   609 F.3d 1345 (Fed. Cir. 2010) ................................................................. 15

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) ......................................................... passim

*Fiskars, Inc. v. Hunt Mfg. Co.*,
   221 F.3d 1318 (Fed. Cir. 2000) ........................................................... 10, 11

*Gerlach v. Mich. Bell Tel. Co.*,
   448 F. Supp. 1168 (E.D. Mich. 1978) ........................................................ 21

*In re Giacomini*,
   612 F.3d 1380 (Fed. Cir. 2010) ................................................................. 15

*Godlewski v. Affiliated Computer Servs., Inc.*,
   210 F.R.D. 571 (E.D. Va. 2002) ................................................................ 21

*Ideal Instruments, Inc. v. Rivard Instruments, Inc.*,
   434 F. Supp. 2d 598 (N.D. Iowa 2006) ...................................................... 21

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ..................................................................... 5

*Molins PLC v. Textron, Inc.*
   48 F.3d 1172 (Fed. Cir. 1995) ................................................................... 11

*Multimedia Patent Trust v. Microsoft Corp.*,
   525 F.Supp.2d 1200 (S.D. Cal. 2007).......................................................... 3

*Nilssen v. Osram Sylvania, Inc.*,
   504 F.3d 1223 (Fed. Cir. 2007) ........................................................... 15, 16

*Polich v. Burlington Northern, Inc.*,
   942 F.2d 1467 (9th Cir.1991) .................................................................... 20

**TABLE OF AUTHORITIES**
(*cont'd*)

Page No(s).

*Purdue Pharma v. Boehring Ingelheim GMBH*,
   237 F.3d 1359 (Fed. Cir 2000) ......................................................................... 14, 15, 17

*Scripps Clinic & Research Found. v. Genentech, Inc.*
   927 F.2d 1565 (Fed. Cir. 1991) ............................................................................. 9, 13

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) (*en banc*) ........................................................... passim

*Trading Technologies Int'l. Inc. v. eSpeed, Inc.*,
   595 F.3d 1340 (Fed. Cir. 2010) ................................................................................. 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9 ............................................................................................. 1, 3, 18, 20

Fed. R. Civ. P. 12 ....................................................................................................... passim

MPEP § 202.02 ........................................................................................................... 15, 17

MPEP § 609.02 ................................................................................................................. 9

MPEP § 609.05 ............................................................................................................... 13

# I. <u>INTRODUCTION</u>

Plaintiff KFx invented new bone anchors and methods that enable tissue fixation with a minimum of suturing and manipulation. KFx brought this lawsuit against Defendant Arthrex for infringement of U.S. Patent No. 7,585,311 ("the '311 patent") entitled, "System and Method for Attaching Soft Tissue to Bone."   After the filing of the lawsuit, KFx was awarded two additional patents on its novel surgical methods, U.S. Pat. Nos. 8,100,942 ("the '942 patent) and 8,109,969 ("the '969 patent").   These patents were recently added to the lawsuit.

The KFx patents generally relate to improved surgical methods of attaching soft tissue to bone, e.g., as in a torn rotator cuff, using knotless suture capturing anchors.  The methods include passing a length of suture from a first anchor over the soft tissue to a second anchor inserted beyond the edge of the soft tissue, tensioning the suture and securing it to the second anchor without tying knots.

This motion is directed to Arthrex's counterclaim and affirmative defense charging KFx and its patent counsel with inequitable conduct in obtaining these two additional patents.[1]  Inequitable conduct is an extremely serious charge that includes elements of deceit and material misrepresentation or omission.  Because inequitable conduct is akin to fraud, a party must plead inequitable conduct with particularity and satisfy Rule 9(b) of the Federal Rules of Civil Procedure.  The Federal Circuit recently explained that "the habit of charging inequitable conduct in almost every major patent case has become an absolute plague" and it is "a doctrine that has been overused to the detriment of the public." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289-90 (Fed. Cir. 2011) (*en banc*) (internal quotations omitted).  The Federal Circuit noted how it "increas[es] the complexity, duration and cost of patent infringement litigation that is already notorious for its complexity and high cost."  *Id.* at 1288.  In light of these "far reaching consequences", the Federal Circuit in

---

[1] Arthrex also alleges KFx's '311 patent is unenforceable for inequitable conduct. That defense is more appropriately resolved by considering evidence outside the pleadings and will therefore be the subject of a summary judgment motion.

*Therasense* imposed a higher legal standard for both elements of inequitable conduct, materiality and intent. *Id.* at 1290.

Arthrex's allegations raise three theories of alleged inequitable conduct based on: (1) failure to draw the Examiner's attention to certain information that was properly disclosed in an Information Disclosure Statement ("IDS") and considered by the Examiner during examination; and (2) "failure to disclose the actual priority date" for the claims of one of the KFx continuation applications; and (3) failure to withdraw a patent application from issue so that Arthrex's Invalidity Contentions in this lawsuit would be considered by the PTO and not merely placed in the application file.

Arthrex's theories of inequitable conduct find no support in the case law and fall far short of the strict requirements of *Therasense*.   Because Arthrex's pleading fails to state a viable claim of inequitable conduct as to the '942 and '969 patents, its inequitable conduct counterclaim as to these patents should be dismissed and the corresponding affirmative defense stricken.

## II.  LEGAL STANDARD

**A.**     **Motions to Dismiss and Strike under Rules 12(b)(6) and Rule 12(f) of Federal Rules of Civil Procedure**

"To survive a motion to dismiss, a [pleading] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal quotations omitted).  The Supreme Court has suggested a two-step approach to a motion to dismiss:  A court first distinguishes between the well-pleaded factual allegations and those allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950.  Then, assuming the veracity of only the well-pleaded factual allegations, the court must "determine whether they plausibly give rise to an entitlement to relief." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.

Rule 12(b)(6) refers to the dismissal of "claim[s]." Fed. R. Civ. P. 12(b)(6).  Arthrex alleges inequitable conduct both as a claim for relief, e.g. counterclaim, and as an affirmative

defense.   Pursuant to Rule 12(f) this Court "may strike from a pleading any insufficient defense."  Fed. R. Civ. P. 12(f).  It is proper to strike an affirmative defense where the defense is insufficient as a matter of law.  *See, e.g., Multimedia Patent Trust v. Microsoft Corp.*, 525 F.Supp.2d 1200 (S.D. Cal. 2007).

**B.    Inequitable Conduct Requires Materiality and Intent**

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent."  *Therasense*, 649 F.3d at 1285.  "The substantive elements of inequitable conduct are:  (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO [Patent and Trademark Office]."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009).

As mentioned above, the Federal Circuit recently heightened the materiality requirement and tightened the standard for determining intent to deceive.  *See Therasense*, 649 F.3d at 1290-96.   The requisite materiality to establish inequitable conduct is now "but-for materiality."  *Id.* at 1291.  In other words, the information must be so material that "but for" the information being withheld from the PTO, the patent would not have been granted. As for intent, the Federal Circuit held that the party charging inequitable conduct must prove that the patentee acted with the specific intent to deceive the PTO, and that such specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence."  *Id.* at 1290-1291.  The court also made clear that "intent" and "materiality" were separate requirements, and that a strong showing of materiality cannot buttress a weak showing of intent, and vice versa.  *Id.* at 1290.

**C.    Pleadings of Inequitable Conduct are Held to a High Standard**

Allegations of inequitable conduct must be pleaded with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.  *Exergen*, 575 F.3d at 1326–28.  To satisfy the heightened pleading requirements of Rule 9(b), a pleading "must identify the specific who, what, when, where, and ***how*** of the material misrepresentation or omission committed

1    before the PTO." *Id.* at 1328 (emphasis added).  "A charge of inequitable conduct based on a

2    failure to disclose will survive a motion to dismiss ***only if*** the plaintiff's complaint recites

3    facts from which the court may reasonably infer that a specific individual both knew of

4    ***invalidating information*** that was withheld from the PTO and withheld that information with

5    a specific intent to deceive the PTO."  *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655

6    F.3d 1337, 1350 (Fed. Cir. 2011) (emphases added).

7                        **III.  ARTHREX'S INEQUITABLE CONDUCT ALLEGATIONS**

8            Arthrex asserts three theories of inequitable conduct with respect to the '942 and '969

9    patents that KFx recently added to this case.[2]   First, Arthrex alleges that KFx's patent

10   attorney Ryan Melnick committed inequitable conduct by not affirmatively raising certain

11   information to the specific attention of the Examiner during an interview with the Examiner

12   or in comments submitted in response to the Examiner's reasons for allowance.   The

13   information in question, however, was submitted in an Information Disclosure Statement

14   ("IDS") and considered by the Examiner during examination.

15           Arthrex's second theory of inequitable conduct relates to KFx's claim of priority

16   included in KFx's '622 continuation application.  The '622 application referenced a series of

17   earlier applications, including three provisional applications.  The provisional applications do

18   not disclose all features recited in the '622 application claims.  Arthrex alleges Melnick

19   committed inequitable conduct because he "fail[ed] to disclose the actual priority date" for

20   the '622 application.

21           And finally, Arthrex alleges Melnick committed inequitable conduct by not

22   withdrawing the '622 patent application from issuance after Arthrex served its Invalidity

23   Contentions for the '311 patent initially asserted in this case.  Arthrex served the Invalidity

---

25           [2]   Arthrex's Third Affirmative Defense alleges inequitable conduct.  *See* Arthrex's
26   Answer to KFx's First Amended Complaint and Counterclaims ("Answer") at ¶¶ 78-168.  *See*
     Docket Entry 28.  The same allegations are repeated in Arthrex's Third Counterclaim for
27   Declaratory Judgment of Unenforceability.  *See* Answer ¶¶ 23-114.  In this Memorandum
     KFx cites to Arthrex's allegations in the Third Affirmative Defense, namely paragraphs 78–
28   168 at pages 6-15 of the Answer.

1    Contentions for KFx's '311 patent after the examination of the '622 application was closed,

2    namely after the Examiner had allowed the application and after KFx had paid the required

3    patent issue fee.  KFx promptly submitted those Invalidity Contentions to the PTO to be

4    placed in the PTO file as provided by Patent Office Rules of Practice (37 C.F.R. §1.97(i)).

5    Arthrex alleges that KFx committed inequitable conduct by submitting the Invalidity

6    Contentions without also affirmatively withdrawing the '622 patent application from issuance

7    so that the Invalidity Contentions could be considered by the Examiner.

8         The specific allegations relating to these theories of inequitable conduct are discussed

9    in more detail below.  For ease of reference, a chronology of the various patent applications

10   and events leading to the '311 patent are included in Appendix A hereto.  A chronology of the

11   applications and prosecution events for the '969 and '942 continuation patents are included in

12   Appendix B hereto.

13   **A.**      **The Interview and Information Related to the Millett Article**

14        The first theory of inequitable conduct centers around a publication, which the Answer

15   refers to as the "Millett Article."  Answer at ¶ 85.  The Millett Article was submitted to the

16   PTO both in connection with the original '311 patent and during examination of the

17   applications leading to the '942 and '969 continuation patents.  *Id* at ¶¶ 85, 86; *see also*

18   Bennett Decl. Ex. 1 at 3, Ex. 2 at 39, and Ex. 3 at 74 (listing Millett Article among the

19   References Cited for each of three patents in suit).[3]  In connection with the continuation

20   applications, KFx also submitted a statement from its CEO, Tate Scott, regarding a

21   conversation Scott had with Dr. Millett, one of the authors of the Millett Article.  In the

22   statement, Scott explained that Millett informed him that the "procedures referenced in the

23   2004 article had been performed in the two years preceding publication for the article" and

24   that "all of the procedures were performed by tying knots as described in the 2004 article."

25   Answer. at ¶¶ 100-101.

26

27        [3] Although not physically attached to Arthrex's pleading, documents referenced
therein may be considered in ruling on a Rule 12 (b)(6) motion to dismiss.  *See Branch  v.*
28   *Tunnell*, 14 F.3d 449 (9th Cir. 1994); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

The Millett Article and Scott Statement were both submitted to the Examiner in a December 1, 2011 IDS for each of the '620 and '622 applications. *See* Bennett Decl. Ex. 4 at 115, Ex. 5 at 125. Melnick also conducted an interview with the Examiner on December 1, 2011. Answer at ¶ 132. During the interview, the Examiner discussed two prior art references with Melnick, the Thal and Jobe references. *Id.* at ¶ 133. The Thal and Jobe references previously had been applied by the Examiner in the parent '007 application. *Id.* at ¶ 134. Arthrex alleges Melnick "diverted the Examiner's attention from the Scott Statement since the Examiner was led to believe that Thal and Jobe were the most material references disclosed in the December 1, 2011 IDS." Answer at ¶ 137. According to Arthrex, without having the Scott Statement or the work performed for the Millett Article specifically brought to his attention in the '620 and '622 applications, the Examiner did not specifically apply the work performed for the Millett Article in rejecting the pending claims. Answer at ¶ 140.

The Examiner, however, noted that he did consider the Millett Article and Scott Statement before allowing the '620 and '622 applications. Bennett Decl. Ex. 8 at 141, 142, (indicating that all references listed in the IDS for the '620 application had been considered unless specifically lined through); Ex. 9 at 148, 149 (same for '622 application). Shortly after signing off on the IDSs, the Examiner issued notices of allowance in both the '620 and '622 applications. Answer at ¶¶ 144-145.

The Examiner cited the following reasons for allowing the claims: "neither Thal nor Jobe disclose after inserting the second anchor, tensioning the first length of suture to compress an area of tissue to bone between the edge of the soft tissue and the first anchor," and that "[t]he prior art of record nor the prior art at large, alone or in combination, cannot remedy the deficiencies of the Thal and Jobe references and thus the claims are allowed." Answer at ¶ 146. The Examiner's reasons for allowing the claims were the same as the stated reasons for allowing the claims of the '311 patent. Answer at ¶ 147.

According to Arthrex's allegations, the Millett Article, as well as the work performed for the Millett Article, discloses the subject matter that the Examiner stated was missing from Thal and Jobe. *Id* at ¶ 148. The Scott Statement, the Millett Article, and the work performed

for the Millett Article therefore were "material to the patentability of the claims of the '620 and '622 Applications." Answer at ¶ 149.

After allowance, Melnick filed comments on the Examiner's statement of reasons for allowance in the '620 and '622 applications. *Id.* at ¶¶ 151-152. The comments did not refer to the Millett Article, the work performed for the Millett Article or the Scott Statement, *id.* at ¶ 152, which by then had already been considered by the Examiner.

From these allegations, Arthrex contends that KFx committed inequitable conduct as follows:

> Mr. Melnick's failure to bring the Millett Article, the work performed for the Millett Article and the Scott Statement to the attention of the Examiner during the Interview and in the '620 Comments or the '622 Comments along with Mr. Melnick's failure to disclose the actual priority date for the '622 Application while at the same time diverting the Examiner's attention to two other references (Thal and Jobe) previously overcome in the '077 Application with claim limitations similar to those in the '620 and '622 Applications was done knowing, deliberately and with the specific intent to deceive the PTO as to which references were the most material.

Answer at ¶ 153.

## B.   The Priority Date for the '622 Application

The specification of the '622 application begins with a section titled "Related Applications", which refers to each of KFx's prior applications as follows:

> This application is a continuation of U.S. application Ser. No. 12/549,105, filed Aug. 27, 2009, which is a divisional of U.S. application Ser. No. 11/143,007, now U.S. Patent No. 7,585,311, filed June 1, 2005, which claims priority to U.S. Provisional Application Nos. 60/576,477 filed on June 2, 2004; 60/610,924, filed on Sep. 17, 2004, and 60/634,174, filed on Dec. 7, 2004; all of which are incorporated herein by reference in their entirety.

*See* Answer at ¶ 66; *see also* Bennett Decl. Ex. 3 at 99 col. 1, lines 6-13.

Arthrex alleges the '622 application claimed priority to one of the three provisional applications KFx filed, namely the second provisional application that was filed September 17, 2004. Answer at ¶¶ 120 and 121; *see also id.* at ¶ 82 (defining "Provisional Application" as the provisional application filed on September 17, 2004). The September 17, 2004 provisional application is the application that preceded the publication of the Millett Article. Answer at ¶ 87; *see also* chronology in Appendix A hereto.

Arthrex alleges inequitable conduct because Melnick did not affirmatively inform the Examiner that the claims of the '622 application were entitled to a priority date of September 1, 2005, which is the filing date of KFx's regular application filed after the three provisional applications.  Answer at ¶ 141.  According to Arthrex, had the Examiner known that the '622 application was entitled only to a priority date of June 1, 2005, he would have applied the Millett Article to reject the pending claims and would not have allowed the application. Answer at ¶ 143.

## C.    The '311 Patent Invalidity Contentions

Arthrex alleges that KFx also committed inequitable conduct with respect to the '622 application in submitting the Arthrex Invalidity Contentions served in this case for the '311 patent.   The '622 application had been examined and allowed when Arthrex served its Invalidity Contentions for the '311 patent. See Answer at ¶ 155.  The Invalidity Contentions alleged that the claims of the '311 patent were anticipated by information and documents not previously considered by the PTO.  *Id.*  ¶ 156.  Arthrex now alleges in a conclusory fashion that these Invalidity Contentions are material to the '622 application.  Answer at ¶ 157.

On February 6, 2012, Melnick filed an IDS disclosing the Invalidity Contentions to the PTO, stating "[s]ubmitted herewith in the above-identified application, is an Information Disclosure Statement listing references for consideration" and further requesting that the PTO "[p]lease place these references in the file in accordance with 37 C.F.R. § 1.97(i)" ("Rule 97(i)").  Answer at ¶¶ 158-160.

Arthrex alleges that Rule 97(i) indicates that the references would not be considered and that Mr. Melnick knew that references would not be considered by the PTO when he stated that the references were being submitted "for consideration."    Answer at ¶¶ 161-162.  Because examination of the '622 application was closed when Arthrex served the '311 patent Invalidity Contentions, KFx would have needed to file a petition to withdraw the '622 application from issue along with a Request for Continued Examination or a Continuation Application in order to have the Invalidity Contentions considered by the PTO. Answer at ¶¶ 163-167.

In light of these allegations, Arthrex contends that "Mr. Melnick's knowingly false statement that the Invalidity Contentions were being submitted 'for consideration' and his failure to take any of the required actions in order to actually have the Invalidity Contentions considered by the PTO, were done knowingly, deliberately and with the specific intent to deceive the PTO." Answer at ¶ 168.

## IV.   ARTHREX'S INEQUITABLE CONDUCT CLAIMS
## FOR THE '942 AND '969 PATENTS SHOULD BE DISMISSED

**A.    Arthrex Fails to State a Claim Based on a Failure to Bring the Millett Article and Scott Statement to the Specific Attention of the Examiner**

### 1.    Arthrex's Theory Fails as a Legal Matter

In its first theory, Arthrex does not allege that KFx failed to disclose any prior art reference or information to the PTO.  Arthrex acknowledges that the Millett Article and the Scott Statement were disclosed in an IDS.  Answer at ¶ 85-86 ("The Millett Article is listed as item #147 in the January 2007 IDS.")[4] and at ¶ 127 ("The Scott Statement is listed as item #197 in the December 2011 IDS.").  Arthrex instead alleges that KFx committed inequitable conduct because it failed to bring this information to the ***specific attention*** of the Examiner. This does not state a claim for inequitable conduct as a matter of law.

A party that properly submits a prior art reference or information in an IDS cannot be deemed guilty of withholding material information from the Examiner by not drawing the Examiner's specific attention to the submitted information.  *See Scripps Clinic & Research Found. v. Genentech, Inc.* 927 F.2d 1565, 1582 (Fed. Cir. 1991) ("[w]hen a reference was

/ / /

---

[4]   This paragraph of the Answer states that the Millett Article was submitted in the parent '007 application.  It was also submitted in the December 1, 2011 IDS in the '620 and '622 applications.  Bennett Decl. Ex. 4 at 115, Ex. 5 at 125.  Further, the PTO rules provide that any reference submitted in a parent application is considered to have been submitted in any continuing application claiming priority to the parent application, which is the case here. MPEP § 609.02 ("[t]he examiner will consider information which has been considered by the Office in a parent application when examining: (A) a continuation application filed under 37 CFR 1.53(b), (B) a divisional application filed under 37 CFR 1.53(b), or (C) a continuation-in-part application filed under 37 CFR 1.53(b)").

1   before the examiner, whether through the examiner's search or the applicant's disclosure, it

2   can not be deemed to have been withheld from the examiner").

3          On circumstances similar, but even less favorable to the patentee than present here,

4   the Federal Circuit has explicitly rejected the theory asserted by Arthrex.  In *Fiskars, Inc. v.*

5   *Hunt Mfg. Co.*, 221 F.3d 1318 (Fed. Cir. 2000), the Federal Circuit considered a case where

6   the defendant alleged inequitable conduct based on the patentee's "obligation to stress to the

7   examiner the relevance of [certain prior art disclosed to the Examiner]."  *Id.* at 1327.  The

8   Federal Circuit rejected this argument, holding that "[a]n applicant can not be guilty of

9   inequitable conduct if the reference was cited to the examiner, whether or not it was a ground

10  of rejection by the examiner."  *Id.*

11         In *Fiskars*, the Examiner actually did not consider the allegedly material references

12  submitted by the applicant, and instead drew a line through the references on the listing form

13  indicating that they were not considered.  *Id.* at 1327 ("Hunt argues that the examiner did not

14  consider [the reference], pointing to the line drawn through this listing on Form 1449.").  The

15  *Fiskars* defendant argued that the Examiner's failure to consider the references "placed on

16  [the patentee] the obligation to stress to the [E]xaminer the relevance of [the reference]."  *Id.*

17  The court rejected the argument.  Thus, even where the Examiner *did not consider* the

18  allegedly material reference, the Federal Circuit rejected the notion that a patentee has an

19  obligation to bring the reference to the specific attention of the Examiner.

20         In contrast to *Fiskars*, the Examiner here expressly acknowledged considering the

21  information in question.  *See* Bennett Decl., Exs. 8, 9 at 141-142, 148-149 (where Examiner

22  noted his consideration of the submitted references as follows: "All References Considered

23  Except Where Lined Through. / GA [Examiner's initials]"); s*ee also* Answer at ¶ 146 ("[t]he

24  prior art of record nor the prior art at large, alone or in combination, cannot remedy the

25  deficiencies of the Thal and Jobe references and thus the claims are allowed.").

26         If the failure of an Examiner to consider a submitted reference does not create an

27  obligation to bring the unconsidered reference to the specific attention of the Examiner (as

28  was the case in *Fiskars*), then undoubtedly there can be no obligation to bring a reference to

the Examiner's specific attention where it was considered as is the case here.  "An applicant is not required to tell the PTO twice about the same prior art, on pain of loss of the patent for inequitable conduct."  *Fiskars*, 221 F.3d at 1327.  Thus, Melnick's alleged "failure" to bring the Millett Article and the Scott Statement to the attention of the Examiner cannot be material as a matter of law and cannot form the basis for an inequitable conduct claim.

## 2.   Arthrex has Not and Cannot Allege Facts Supporting any Intent to Deceive in Connection with the Submitted Information

Arthrex's allegations of inequitable conduct regarding the Millett Article and Scott Statement also fail to meet the threshold for establishing intent.   Under the pleading requirements set forth in *Exergen*, "[a]lthough 'knowledge' and 'intent' may be averred generally, [Federal Circuit] precedent, like that of several regional circuits, requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind."  *Exergen*, 575 F.3d at 1327.  Arthrex does not allege specific facts demonstrating an intent to deceive on the part of Melnick.  Rather, it generally avers an intent to deceive, stating only that Melnick's actions were "done knowingly, deliberately, and with the specific intent to deceive the PTO as to which references were the most material."  Answer at ¶¶ 153.  This allegation is legally insufficient.

As discussed above, Arthrex's allegations do not dispute that Melnick disclosed both the Millett Article and the Scott Statement to the Examiner.  Based on this fact alone, it is hardly reasonable to infer that by disclosing the Millett Article and Scott Statement, Melnick intended to deceive the Examiner as to their relevance.  *See Exergen*, 575 F.3d at 1329 n.5 ("A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith.")  The disclosure of this information is a clear and objective indication of Melnick's candor and good faith.  Thus, the facts and circumstances that Arthrex has alleged "do not plausibly suggest any 'deliberate decision to withhold a known material reference' or to make a knowingly false misrepresentation – a necessary predicate for inferring deceptive intent."  *Exergen*, 575 F.3d at 1331 citing *Molins PLC v. Textron, Inc.* 48 F.3d 1172, 1181 (Fed. Cir. 1995).  Arthrex's

first theory of inequitable conduct therefore also fails to state a claim under the intent to deceive element of *Therasense*.

**B.      Arthrex Fails to State a Claim Based on the '622 Application Priority Date**

For its second theory of inequitable conduct, Arthrex contends that KFx failed to inform the Examiner that the actual priority date for the '622 application was June 4, 2005, the filing date of the KFx's first non-provisional application (the '007 application).  *See* Answer at ¶ 122, ¶ 141.  According to Arthrex, this information is "but-for" material because the Examiner would have relied on the Millett Article to reject the claims had he known the correct priority.  Answer at ¶ 143.

Arthrex's theory is wrong at numerous levels.  First, Arthrex's allegation regarding the significance of the priority date is inconsistent with its allegation regarding the materiality of when Millett performed the work for his article.  The Millet work Arthrex relies upon was prior to *any* of the KFx's applications.  Second, KFx had no duty to affirmatively represent which particular prior filing supported the claims of the '622 application.  Third, Arthrex has alleged no basis to pick and choose the second of the three provisional applications as the one the Examiner was supposedly led to believe supported the '622 patent application claims.  And finally, as with the all of its inequitable conduct claims, Arthrex has alleged no facts that justify the requisite intent to deceive.

**1.      The Priority Date is Not Material per Arthrex's Allegations**

In order for Arthrex to state a claim with respect to KFx's failure to provide an affirmative representation regarding priority, the facts as alleged must demonstrate, at a minimum, that the patent would not have issued if the Examiner had been made aware of the June 4, 2005 priority date.  *See Therasense*, 649 F.3d at 1291.  Arthrex's own allegations demonstrate this is not so.  It was immaterial whether the Examiner accorded the claims of the '622 Application a priority date of June 4, 2005, or September 17, 2004, or some other filing date, because the Millett work described in the Scott Statement predated *all* KFx applications.

/ / /

1    Arthrex's allegations establish the immateriality of the priority date.  Arthrex alleges,

2    "[w]ithout having the Scott Statement or the work performed for the Millett Article

3    specifically brought to his attention in the '620 and '622 Applications, the Examiner again

4    did not specifically apply the work performed for the Millett Article in rejecting the pending

5    claims."  Answer at ¶ 140.[5]  Thus, according to Arthrex, the Examiner reasonably would have

6    considered and applied the Millett work described in the Millett Article as prior art to the KFx

7    applications if the Examiner were provided with the information in the Scott Statement.

8        The Scott Statement was provided to the Examiner.  And, as discussed above, Federal

9    Circuit precedent leaves no doubt that the Scott Statement was considered by the Examiner.

10   *See Scripps Clinic*, 927 F.2d at 1582 ("[w]hen a reference was before the examiner, whether

11   through the examiner's search *or the applicant's disclosure*, it can not be deemed to have

12   been withheld from the examiner") (emphasis added); *accord* MPEP § 609.05 ("Examiners

13   must consider all citations submitted in conformance with the rules….").  Having considered

14   the Scott Statement, the Examiner was made aware that the Millett work described in the

15   Millett Article was performed prior to the earliest of any of the applications filed by KFx.

16   Accordingly, any failure to inform the Examiner of the June 1, 2005 priority date is

17   immaterial and would not have impacted prosecution of the patent.  *Cf. Trading Technologies

18   Int'l. Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1362 (Fed. Cir. 2010) (affirming [under less

19   stringent materiality standard] district court ruling that non-disclosed software was immaterial

20   because it would not have changed the Examiner's analysis).

21   ///

22   ///

23   ///

24   ─────────────

25       [5] Additional allegations made by Arthrex further demonstrate that the Scott Statement
26   made it evident to any reasonable reader that the Millett work was performed prior to <u>any
     priority date</u> sought by KFx because the procedures in questions were performed "in the two
     years preceding publication of the [Millett] article."  Answer at ¶ 100 ("Paragraph 4 of the
27   Scott Statement states: 'I had a conversation with Peter Millett during which he told me that
     the procedures referenced in the 2004 article had been performed in the two years preceding
28   publication of the article.").

2.   **Referencing Prior Applications in a Patent Specification Priority Claim without Affirmatively Representing the Priority Date for Continuation Claims is Not Inequitable Conduct**

Arthrex's second theory of inequitable conduct presupposes a duty that does not exist. Accepting Arthrex's theory would establish a rule that an applicant is always obligated to state the date of priority affirmatively for each claim in an application where the application includes reference to one or more earlier applications.  Thus, in any case where a claim made in a later application is not entitled to priority back to all prior referenced applications, such fact would justify a claim for inequitable conduct against the applicant under Arthrex's reasoning.  There is no such rule and KFx's failure to affirmatively state the priority date for the '622 application claims during prosecution cannot form the basis for an inequitable conduct claim.

Where the Federal Circuit has addressed the issue of inequitable conduct in the context of priority claims, the court has made clear that it requires more than merely referencing the disclosure of earlier applications for the benefit of priority.  The Federal Circuit decision in *Purdue Pharma v. Boehring Ingelheim GMBH*, 237 F.3d 1359 (Fed. Cir 2000) is particularly instructive.  There, the Federal Circuit affirmed a finding that an inequitable conduct defense based on an improper claim of priority lacked substantial merit. *Id.* at 1366-67.  In doing so, the court stated that "[t]here is no evidence that [the patentee] actively misled the examiner into believing that the '331 parent is not prior art, or that [the patentee] argued that the claims of the asserted patents are entitled to the priority date of the '331 parent."  *Id* at 1367.

The facts alleged by Arthrex are no different from those in *Purdue Pharma.*  Just as the patentee in *Purdue Pharma* did not actively mislead the Examiner into believing a reference was not prior art, Arthrex makes no allegation here that Melnick actively misled the Examiner into believing that Millett was not prior art.[6]  Additionally, just as the patentee in

---

[6] Arthrex alleges that "Mr. Melnick diverted the Examiner's attention from the Scott

*Purdue Pharma* did not argue that the claims of the asserted patents are entitled to the priority date of the parent application, Arthrex makes no allegation here that Mr. Melnick presented such an argument.  Arthrex alleges only that "Mr. Melnick also did not inform the Examiner that the claims of the '622 Application were entitled to a priority date of September 1, 2005 [sic]."  Answer at ¶ 141.  Because the facts alleged by Arthrex in its Answer are no different than those in *Purdue Pharma,* it has failed to state a claim of inequitable conduct.  *See Purdue Pharma*, 237 F.3d at 1367 ("These facts do not make out a case of inequitable conduct.")

The holding of *Purdue* makes complete sense because a priority claim in an application serves numerous purposes.  For example, it permits the applicant to maintain continuity of priority in order to claim in a later continuation application what was disclosed in the earliest application with an effective filing date of that earliest application.  *See Encyclopedia Britannica, Inc. v. Alpine Elecs. of America, Inc.*, 609 F.3d 1345, 1351 (Fed. Cir. 2010) (an applicant must maintain continuity of priority back to any application to which priority is later sought).  The priority claim also affects the date an application or patent effectively becomes prior art as to other applications.  *See In re Giacomini*, 612 F.3d 1380, 1383-84 (Fed. Cir. 2010); *see also Purdue Pharma*, 237 F.3d at 1367.  Further, the Manual of Patenting Examining Procedure ("MPEP") specifically provides that "[t]he inclusion of prior application information in the patent does not necessarily indicate that the claims are entitled to the benefit of the earlier filing date."  MPEP § 202.02.

Consistent with *Purdue Pharma*, where priority has factored into a finding of inequitable conduct there has been more than mere reference to earlier applications for the benefit of priority.  For example, in *Nilssen v. Osram Sylvania, Inc*., 504 F.3d 1223 (Fed. Cir.

---

Statement since the Examiner was led to believe that Thal and Jobe were the most material references disclosed in the December 2011 IDS."  Answer at ¶ 137.  However, this is not an allegation that Melnick misled the Examiner into believing that Millett was not prior art because Arthrex makes no such claim.  At most, this paragraph alleges that Melnick led the Examiner to believe that Thal and Jobe were the most material references.  Because there is no duty to specifically call the most material references to the attention of the Examiner (see discussion in Section IV.A.1 *supra*), this conduct cannot be considered materially misleading.

1    2007), the Federal Circuit affirmed inequitable conduct based, in part, on priority claims,

2    albeit under the less exacting pre – *Therasense* standard.  The applications at issue there

3    failed to comply with the statutory co-pendency and cross reference requirements and the

4    inventor also wrote letters contemporaneous with the priority claims evidencing his concern

5    about securing patents for new designs in light of unspecified prior art.  *Id*. at 1233.

6          In sum, Arthrex's allegations regarding the priority claim at issue here are insufficient

7    as a matter of law to state a claim for inequitable conduct.

8          **3.    Arthrex Alleges No Facts to Support its Premise that the Examiner**

9                **Assumed a Priority Based upon the Second Provisional Application**

10         Arthrex's theory is premised on the assumption, which is supported by no factual

11   allegations, that the Examiner relied upon the second of three provisional applications as the

12   priority date.  The second provisional application was filed *before* the publication of the

13   Millett Article.  But the third provisional application was filed *after* publication of the Millett

14   Article and thus could not have impacted the Examiner's consideration of whether the Millett

15   Article was prior art.  Arthrex makes no allegation as to why or how the Examiner would

16   ignore the contents of the three provisional applications and simply conclude the second

17   provisional application provided the priority date for the '622 patent application.  For this

18   additional reason, Arthrex has not, and cannot, establish the materiality of KFx's failure to

19   affirmatively inform the Examiner as to which prior art application provided the priority date

20   for the '622 application claims.

21         **4.    Arthrex's Conclusory Allegation of Intent to Deceive also Fails as a**

22                **Matter of Law**

23         Arthrex's allegations of intent to deceive based on the priority date also fail to state a

24   claim because it is not plausible to infer that Melnick intended to deceive the Examiner based

25   on the facts alleged.  There are several "objective indications of candor and good faith"

26   reflected in Arthrex's allegations which make unreasonable any inference that Melnick acted

27   with deceptive intent.  *See Exergen*, 575 F.3d at 1329 n.5 ("A reasonable inference is one that

28   / / /

is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith.")

The first objective indication of candor and good faith is the fact that Melnick was not obliged or otherwise required to affirmatively represent the date of priority, even if the continuation claims were not entitled to the filing date of the earlier filed provisional applications. *See Purdue Pharma*, 237 F.3d at 1367 (no inequitable conducts "in the mere act of claiming priority to an earlier patent….").

The second objective indication of candor and good faith arises out of the PTO rules governing priority claims.   As noted previously, "[t]he inclusion of prior application information in the patent does not necessarily indicate that the claims are entitled to the benefit of the earlier filing date."  MPEP § 202.02.   Thus, it would be illogical to infer that Melnick believed that by making the priority claim, the PTO would be deceived as to the materiality of the Millett Article and the Scott Statement.

The third objective indication of candor and good faith stems from Melnick's submission of the Scott Statement in the December 1, 2011 IDS.  The Scott Statement indicated that Millett had told Scott that "procedures referenced in the 2004 article had been performed in the two years preceding publication for the article" and that "all of the procedures were performed by tying knots as described in the 2004 article." Answer at ¶¶ 100-101.  Because the Scott Statement made it evident that the Millett work was performed prior to the earliest KFx application, it is implausible to infer that Melnick intended to deceive the Examiner regarding the prior art status of Millett.

In sum, Arthrex has not alleged facts from which an intent to deceive is a plausible inference.  Rather, the facts alleged include objective indications of candor and good faith inconsistent with an intent to deceive.  Accordingly, Arthrex's second theory of inequitable conduct also fails to state a claim under the intent to deceive element.

/ / /

/ / /

/ / /

**C.**      **Arthrex Fails to State a Claim Based on KFx's Submission of the Arthrex Invalidity Contentions to the PTO**

    **1.**      **Arthrex's Theory is Unrecognized**

After the Federal Circuit's admonition in *Therasense* that inequitable conduct had become an overused plague in patent cases, Arthrex seeks once again to expand the doctrine with its third theory of inequitable conduct.  Arthrex's third theory of inequitable conduct would leave applicants facing inequitable conduct charges any time they do not affirmatively withdraw an application from issuance if they learn of any information arguably relevant to the application after examination has closed.  Because the law imposes no such duty to withdraw an application from issuance, inequitable conduct cannot be grounded on an alleged failure to comply with such duty.

A finding of inequitable conduct requires that the applicant be found to have *misrepresented or withheld material information*.  *See Am. CalCar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1334 (Fed. Cir. 2011) (emphasis added).  Here, no material information has been alleged to have been withheld or misrepresented.  *See* Answer at ¶¶ 158-160.  The alleged wrong was KFx's failure to petition the PTO to withdraw its patent from issuance so that the Examiner could consider the Arthrex '311 patent Invalidity Contentions, which were served on KFx after examination had closed.  Recognizing such a theory would put KFx and other applicants in an unworkable scenario where they could never allow a patent application to issue without later facing an inequitable conduct charge where their competitor provided notice of arguably relevant information shortly before issuance.

    **2.**      **Arthrex has Failed to Plead the Requisite Materiality**

Arthrex's allegations regarding the Invalidity Contentions also fail due to Arthrex's failure to plead materiality as required by *Exergen*.  *Exergen*, 575 F.3d at 1327 ("in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO").  Arthrex merely alleges the Invalidity Contentions "are material." *See* Answer at ¶ 157.  This is insufficient under *Exergen*.  Arthrex does not provide any reason why the

Invalidity Contentions for the '311 patent are "but-for" material with respect to the continuation application which has different claims.   For this additional, albeit less fundamental, reason, the affirmative defense should be stricken and the counterclaim of inequitable conduct dismissed for failing to adequately plead the requisite amount of detail to establish materiality.

3.   **Arthrex's Allegations Regarding Intent to Deceive Concerning the Invalidity Contentions are Insufficient**

In its continued effort to accuse a professional of deceptive intent with no facts to support the accusation, Arthrex characterizes a phrase in the IDS Melnick submitted with the Invalidity Contentions as an alleged "knowingly false representation."   Answer at ¶ 168. Arthrex alleges that Melnick's statement that the IDS was "listing references for consideration" was "a knowingly false representation" because Melnick knew that the references would not be considered but merely placed in the file.  Answer at ¶¶ 159-162, 168. Arthrex must blind itself to the rest of the four sentence document to somehow justify this accusation.  The document shows Arthrex's labeling of the representation as "false" has no basis in fact.  The entire substance of the document submitting the IDS is as follows:

> **References and Listing**
>
> Submitted herewith in the above-identified application is an Information Disclosure Statement listing references for consideration.  Copies of any listed foreign and non-patent literature references are being submitted.
>
> **Timing of Disclosure**
>
> This Information Disclosure Statement is being filed after the mailing date of a final action or after the mailing date of a Notice of Allowance.  Please place these references in the file in accordance with 37 CFR 1.97(i).

*See* Bennett Decl. Ex. 10 at 150-151.

Melnick specifically referenced the applicable rule and noted the IDS was filed after the mailing of a Notice of Allowance.  Melnick also requested that the PTO "place these references in the file in accordance with 37 C.F.R. 1.97(i)."  Arthrex's allegations of a "false representation" is nothing more than a characterization or label unsupported by fact.

Further, Melnick's use of the phrase "for consideration" also cannot provide the foundation for inequitable conduct because Arthrex fails to connect the alleged deception with the PTO's decision to allow the '622 application to issue. *See* Answer at ¶ 168. Arthrex does not allege that the Melnick's statement that the Invalidity Contentions were submitted "for consideration" had any impact on the PTO's decision to issue the patent. If anything, this allegedly misleading statement could be interpreted as attempting to deceive the PTO into actually considering the Invalidity Contentions after examination was closed.

Finally, Arthrex's allegation also fails to satisfy the rigorous pleading requirements of *Exergen.* Pleading intent under Rule 9(b) requires that "[t]he relevant 'conditions of mind' for inequitable conduct include: (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1326–28. Although Arthrex alleges that Melnick knew of the "falsity" of his use of the phrase "for consideration" in submitting the IDS to be placed in the file, but Arthrex does not allege that Melnick knew the alleged falsity of the statement was **material to patentability**. Accordingly, Arthrex has failed to adequately plead that Melnick had knowledge of the alleged materiality, and its allegations fail to state a claim.

## V. ARTHREX SHOULD NOT BE GIVEN LEAVE TO AMEND BECAUSE NO AMENDMENT COULD LEAD TO ANY VIABLE CLAIM OF INEQUITABLE CONDUCT

Arthrex may seek leave to amend its allegations to correct the defects in its inequitable conduct allegations. It should not be permitted to do so. Although parties are generally granted leave to amend where pleadings are dismissed under Rule 12, there is an important exception to that rule. A party should not be permitted to amend where any amendment would be futile and could not save the claim. *Polich v. Burlington Northern, Inc.*, 942 F.2d 1467, 1472 (9th Cir.1991). In this case, there are no additional facts that Arthrex could plead in order to cure the fatal flaws in its allegations of inequitable conduct. The acts alleged to be inequitable conduct are simply insufficient as a matter of law to set forth any viable claim of inequitable conduct.

## VI.  THE DATE FOR KFX'S ANSWER TO REMAINING
## COUNTERCLAIMS SHOULD BE EXTENDED

The law is not entirely settled with respect to a party's obligation to file an answer when a motion to dismiss is filed with respect to some, but not all, claims of a pleading.  *See Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F. Supp. 2d 598, 637-640 (N.D. Iowa 2006) (holding that "a motion pursuant to Rule 12(b), even one that challenges less than all of the claims asserted in the complaint or other pleading, extends the time to answer as to all claims in the pleading"); *Godlewski v. Affiliated Computer Servs., Inc.*, 210 F.R.D. 571, 572 (E.D. Va. 2002) (holding that Rule 12(b)(6) motions extend time for answering entire pleading); *cf. Gerlach v. Mich. Bell Tel. Co.*, 448 F. Supp. 1168, 1174 (E.D. Mich. 1978) (holding that Rule 12(b) motion does not alter the time for filing an answer).   Further, it would be inefficient for KFx to now answer portions of Arthrex's counterclaim and then possibly answer other portions after this motion is resolved.  Accordingly, KFx respectfully moves for a continuance to file a single answer to Arthrex's counterclaims following a decision on the instant motion to dismiss.

## VII.  CONCLUSION

For the foregoing reasons, KFx respectfully requests that this Court grant its motion to dismiss Arthrex's inequitable conduct counterclaims as to the '942 and '969 patents without leave to amend and also strike the corresponding affirmative defense.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  May 24, 2012                 By:  s/Joseph F. Jennings
                                            Joseph F. Jennings
                                            Phillip A. Bennett

                                     Attorneys for Plaintiff
                                     KFx Medical Corporation





'620 Application and '622 Application filed
September 26, 2011

Examiner Interview conducted
December 1, 2011

IDS filed disclosing Millett Article and Scott Statement
in both '620 and '622 Applications
December 1, 2011

Examiner Notes Consideration of IDS
in '620 and '622 Applications
December 2 and 13, 2011

'620 Application allowed
December 14, 2011

'620 Comments filed
December 16, 2011

'622 Application allowed
December 29, 2011

'622 Comments filed
December 29, 2011

'620 Application issues as '942 patent
January 24, 2012

Arthrex serves invalidity contentions
January 30, 2012

KFx submits invalidity contentions to PTO
February 6, 2012

'622 Application issues as '969 patent
February 7, 2012

**APPENDIX B**
**PAGE 2**

**PROOF OF SERVICE**

I hereby certify that on May 24, 2012, I caused the **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO (A) DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969; (B) STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE; AND (C) EXTEND TIME TO ANSWER REMAINING COUNTERCLAIM ALLEGATIONS** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following person(s):

Michael A. Tomasulo
tomasulom@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
2049 Century Park East, Suite 700
Los Angeles, CA  90067
T:  310-772-8300

Charles W. Saber
saberc@dicksteinshapiro.com
Salvatore P. Tamburo
tamburos@dicksteinshapiro.com
Megan S. Woodworth
woodworthm@dicksteinshapiro.com
S. Gregory Herrman
herrmang@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
1825 Eye Street Northwest
Washington, DC  20006
T:  202-420-2200

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on May 24, 2012, at San Diego, California.

Colleen Mensching

KFXL.064L
13219720_1
052312

-1-

Proof of Service
Case no. 11cv1698 DMS (BLM)