Michael A. Tomasulo (State Bar No. 179389)
TomasuloM@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067-3109
Phone:  (310) 772-8300
Facsimile:  (310) 772-8301

Charles W. Saber, admitted *pro hac vice*
SaberC@dicksteinshapiro.com
Salvatore P. Tamburo, admitted *pro hac vice*
TamburoS@dicksteinshapiro.com
Megan S. Woodworth, admitted *pro hac vice*
WoodworthM@dicksteinshapiro.com
S. Gregory Herrman, admitted *pro hac vice*
HerrmanG@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006
Phone:  (202) 420-2200
Facsimile:  (202) 420-2201

Attorneys for Defendant/Counterclaimant
ARTHREX, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KFX MEDICAL CORP.<br><br>          Plaintiff and Counterdefendant,<br><br>   vs.<br><br>ARTHREX, INC.<br><br>          Defendant and Counterclaimant. | Case No. 3:11-CV-01698 DMS-BLM<br><br>Hon. Dana M. Sabraw<br><br>**DEFENDANT ARTHREX, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO (A) DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969; (B) STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE; AND (C) EXTEND TIME TO ANSWER REMAINING COUNTERCLAIM ALLEGATIONS** |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................................................... 1

II.   LEGAL STANDARDS ....................................................................................... 3

III.  ARGUMENT ...................................................................................................... 5

    A.    Arthrex's Allegations That Mr. Melnick Misled the Examiner Into Believing the Scott Statement Had Already Been Considered By Another Examiner Are Legally Sufficient and Sufficiently Pled ........................................................................ 5

        1.    This Ground of Inequitable Conduct is Legally Supported ............................... 5

        2.    Arthrex Has Alleged Facts Supporting an Intent to Deceive the PTO With Regard to This Ground of Inequitable Conduct ................................. 11

    B.    Arthrex's Allegations Regarding KFx's Failure to Disclose the Actual Priority Date of the '969 Patent Are Legally Sufficient and Sufficiently Pled .............................. 13

        1.    This Ground of Inequitable Conduct is Legally Supported ............................... 13

        2.    Arthrex Has Alleged Facts Supporting an Intent to Deceive the PTO With Regard to This Ground of Inequitable Conduct ................................. 15

    C.    Arthrex's Allegations Regarding KFx's Failure to Have Arthrex's Invalidity Contentions Considered By the PTO Are Legally Sufficient and Sufficiently Pled . 17

    D.    At the Very Least, Arthrex *Should* Be Given Leave to Amend................................. 20

    E.    Dismissal of Arthrex's Allegations Regarding the Scott Statement and the '622 Application Priority Date is Premature Since Those Allegations Are Tied to KFx's Inequitable Conduct Regarding the '311 Patent ........................................................ 20

IV.   CONCLUSION.................................................................................................. 21

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

1

2

## TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

*American Calcar, Inc. v. American Honda Motor Co., Inc.*,
    2012 WL 1328640 (S.D. Cal. April 17, 2012)..............................................................19

*Apotex Inc. v. Cephalon, Inc.*,
    2011 WL 6090696 (E.D. Pa. Nov. 7, 2011) ................................................................18

*Barnes & Noble, Inc. v. LSI Corp.*,
    2012 WL 359713 (N.D. Cal. Feb. 2, 2012) .................................................................21

*Bayer Cropscience AG v. Dow Agrosciences LLC*,
    2012 WL 1253047 (D. Del. Apr. 12, 2012)....................................................................5

*Blue Nile, Inc. v. Ice.com, Inc.*,
    478 F. Supp. 2d 1240 (W.D. Wash. 2007)..................................................................21

*Cargill, Inc. v. Canbra Foods, Ltd.*,
    476 F.3d 1359 (Fed. Cir. 2007)..................................................................................19

*DaimlerChrysler AG v. Feuling Advanced Technologies, Inc.*,
    276 F. Supp. 2d 1054 (S.D. Cal. 2003) ......................................................................10

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
    655 F.3d 1337 (Fed. Cir. 2011)...............................................................................4, 12

*eSpeed, Inc. v. BrokerTec USA, L.L.C.*,
    480 F.3d 1129 (Fed. Cir. 2007).................................................................................9, 10

*Exergen Corp. v. Wal–Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009)...........................................................................4, 5, 12

*Federation of African American Contractors v. City of Oakland*,
    96 F.3d 1204 (9th Cir. 1996) .................................................................................3, 15

*Fiskars, Inc. v. Hunt Mfg. Co.*,
    221 F.3d 1318 (Fed. Cir. 2000)..................................................................................11

*Li Second Family Ltd. Partnership v. Toshiba Corp.*,
    231 F.3d 1373 (Fed. Cir. 2000)........................................................................14, 15, 16

*Onstar, LLC v. Micral, Inc.*,
    2010 WL 1433431 (N.D. Ohio Apr. 7, 2010)............................................................9, 12

*Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.*,
    984 F.2d 1182 (Fed. Cir. 1993).......................................................................9, 10, 12, 13

ii

DICKSTEIN
SHAPIRO LLP

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR
INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND
STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

*Polich v. Burlington Northern, Inc.*,
    942 F.2d 1467 (9th Cir. 1991) .................................................................20

*Purdue Pharma v. Boehring Ingelheim GMBH*,
    237 F.3d 1359 (Fed. Cir 2000).................................................................15

*Sanders v. The Mosaic Co.*,
    418 Fed. Appx. 914 (Fed. Cir. 2011) ...................................................5, 12

*Scripps Clinic & Research Found. v. Genentech, Inc.*,
    927 F.2d 1565 (Fed. Cir. 1991).................................................................11

*Sloan Valve Co. v. Zurn Industries, Inc.*,
    2012 WL 1108129 (N.D. Ill. Apr. 2, 2012) .............................................5

*Southco, Inc. v. Penn Engineering & Mfg. Corp.*,
    768 F. Supp. 2d 715 (D. Del. 2011) ...........................................................9

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) (en banc)........................................4, 5, 12

*U.S. S.E.C. v. Sachdeva*,
    No. 10–C–747, 2011 WL 933967 (E.D. Wis. Mar. 16, 2011).................4

*W.L. Gore & Associates, Inc. v. Medtronic, Inc.*,
    2012 WL 368272 (E.D. Va. Feb. 3, 2012)..................................9, 11, 16

*Wyeth Holdings Corp. v. Sandoz, Inc.*,
    2012 WL 600715 (D. Del. Feb. 3, 2012) ...................................................5

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

DICKSTEIN
SHAPIRO LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      INTRODUCTION

In its original complaint, plaintiff KFx Medical Corp. ("KFx") asserted U.S. Patent No. 7,585,311 ("the '311 patent") against defendant Arthrex, Inc. ("Arthrex").  In its original answer and counterclaims, Arthrex alleged that KFx's CEO, Mr. Tate Scott, committed inequitable conduct on the PTO by his failure to disclose -- both during prosecution and reexamination of the '311 patent -- that he knew the work described in a prior art reference, known as the Millett article, had actually been performed by Dr. Millett prior to the earliest provisional application filing date of the '311 patent (*i.e.,* prior to June 2, 2004).

This omission was highly material because, on its face, the Millett article was *not* obviously prior art to the application for the '311 patent – it has a publication date of October 2004, which is later than June 2, 2004.  Thus, without the benefit of Mr. Scott's withheld information, two separate Examiners (one during prosecution and one during reexamination) had no reason to apply the Millett article to reject the claims -- and indeed, they did not.  Arthrex also alleged that Mr. Scott's omission was highly material because the Millett article disclosed the exact same limitations the prosecution Examiner found missing in the two prior art references he *did* apply and that had both Examiners known when Dr. Millett actually performed his work (the information Mr. Scott failed to provide), they would not have allowed the claims in the '311 patent.

On April 3, 2012, KFx amended its complaint to assert two newly issued patents; U.S. Patent Nos. 8,100,942 ("the '942 patent") and 8,109,969 ("the '969 patent").  In its answer to KFx's amended complaint, Arthrex alleged three additional grounds for inequitable conduct regarding the newly asserted patents.

Arthrex's first two grounds stem from Mr. Scott's original failure to disclose the withheld information regarding the Millett article during prosecution and reexamination of the '311 patent.  In short, and as explained in detail below, Arthrex's first ground alleges that KFx's prosecution counsel

1

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR
INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND
STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE                                    3:11-cv-1698

1  misled the Examiner during prosecution of the '942 and '969 patents into believing that Mr. Scott's

2  withheld information was actually considered by another Examiner during reexamination of the '311

3  patent, and thus, there was no reason for the Examiner to actually consider and apply that

4  information to reject the claims of the '942 and '969 patents.  Arthrex's second ground, as explained

5  more fully below, alleges that KFx's counsel failed to disclose to the PTO the fact that the '969

6  patent is only entitled to a priority date of June 1, 2005.  The reason why this is important is because

7  had the Examiner known that fact, he would have applied the Millett article itself (which is dated

8  October 2004) as prior art to reject the claims even though he had not actually considered Mr.

9  Scott's withheld information (since he thought another Examiner had already done so).  Thus, he did

10  not need to be aware of the withheld information (which KFx's counsel coaxed him into not

11  reviewing) in order to apply the Millett article itself.

12          Arthrex's third ground is independent of Mr. Scott's withheld information and instead deals

13  with KFx's counsel's failure to disclose Arthrex's highly material invalidity contentions (from this

14  case) to the PTO in connection with the '969 patent.  In short, the reason why this amounts to

15  inequitable conduct is because the contentions were highly material as they alleged anticipation of

16  the claims, KFx's counsel knew they alleged anticipation, KFx's counsel had a continuing Rule 56

17  obligation to disclose any information material to patentability yet failed to do so even though the

18  PTO provided step-by-step instructions for having that material information actually considered.

19          In its motion, KFx asserts that each of Arthrex's three separate grounds of inequitable

20  conduct cannot support a claim of inequitable conduct as a matter of law.  As explained below, KFx

21  is wrong -- each of Arthrex's three grounds for inequitable conduct are legally supported and

22  sufficiently pled.

23          To make its "insufficient legal theory" arguments, KFx tells only half a story, essentially

24  ignoring material facts included in Arthrex's Answer and Counterclaims (Ex. 1)--*material facts that*

2

*must be accepted as true and construed in a light most favorable to Arthrex*--and then attacks the legal theory based on KFx's incomplete version of the allegations.  KFx Mem. at 9-11, 12-16, 18-19. When the allegations are considered in their entirety and in their proper context, as shown below, they are long-recognized as supporting claims of inequitable conduct.

KFx also asserts that Arthrex insufficiently pled materiality and/or intent in connection with its three grounds of inequitable conduct.  KFx Mem. at 11-12, 16-17, 18-20.  The short answer is Arthrex's inequitable conduct allegations span ninety (90) paragraphs and more than seventeen (17) pages of its affirmative defenses and counterclaims.  Ex. 1 at 6-16, 18-26.  These allegations explain in painstaking detail not only the "who," "what," "where," "when," and "how" regarding each separate allegation, but they also allege detailed facts that more than meet the "reasonable inference" standard required to plead materiality and intent.   But, to the extent there is any doubt regarding the sufficiency of Arthrex's extensive allegations as pleaded, Arthrex should be given leave to amend its Answer and Counterclaims to bring them into compliance.

Lastly, it is far too early in the case for the drastic result of dismissing one of Arthrex's affirmative defenses and counterclaims.  At the very least, discovery should take its course before these defenses are stricken.  KFx itself recognizes it is too early to move on Arthrex's inequitable conduct allegations regarding the '311 patent.  As mentioned above, and described in detail below, Arthrex's first two grounds in connection with the '942 and '969 patents are inextricably connected to the facts of the '311 patent's inequitable conduct.  Thus, it is also too early to move on Arthrex's new grounds of inequitable conduct regarding the '942 and '969 patents.

## II.   LEGAL STANDARDS

When making a determination under Fed. R. Civ. P. 12(b)(6), "[a]ll allegations of material fact must be taken as true and construed in the light most favorable to the non-moving party." *Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).

3

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE                    3:11-cv-1698

A claim of inequitable conduct has "facial plausibility" when facts are pled that "allow[] the court to draw the reasonable inference that" the alleged inequitable conduct occurred.  *Iqbal*, 556 U.S. at 678. (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement.'"  *Id.*  In other words, to be sufficiently pled, one alleging inequitable conduct must merely "nudge[ the inequitable conduct] claims . . . 'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).

"The standard for deciding a motion to strike an affirmative defense as 'insufficient' is the same as for a motion to dismiss a complaint for failure to state a claim." *U.S. S.E.C. v. Sachdeva*, No. 10–C–747, 2011 WL 933967, at *1 (E.D. Wis. Mar. 16, 2011) (citing *Renalds v. S.R.G. Rest. Grp*, 119 F. Supp. 2d 800, 802 (N.D. Ill.2000)).

The Federal Circuit established the requirement for pleading inequitable conduct in *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009).  "To plead the 'circumstances' of inequitable conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1328.  In addition, "although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29.

Further, although *Therasense, Inc. v. Becton, Dickinson & Co.,* 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc) heightened the intent requirement for ultimately *proving* inequitable conduct after *Exergen*, the Federal Circuit has since affirmed *Exergen's* requirement of a "reasonable inference" of intent at the pleading stage.  *See Delano Farms Co. v. Cal. Table Grape Comm'n*, 655

4

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR
INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND
STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

DICKSTEIN
SHAPIRO LLP

F.3d 1337, 1350 (Fed. Cir. 2011) (citing *Exergen*, 575 F.3d at 1318, 1330; citing generally *Therasense*) (emphasis added).  *See also Sanders v. The Mosaic Co.*, 418 Fed. Appx. 914, 919 (Fed. Cir. 2011) ("*At the pleading stage* the proponent of the inequitable conduct theory *need only plead facts supporting a reasonable inference* that a specific individual knew of the misrepresentation and had the specific intent to deceive the PTO." (citing *Exergen*, 575 F.3d at 1328–29) (emphasis added)); *Bayer Cropscience AG v. Dow Agrosciences LLC*, 2012 WL 1253047 *4 (D. Del. Apr. 12, 2012) ("The Court will not determine whether this is the single most reasonable inference to be drawn from the well pleaded facts."); *Sloan Valve Co. v. Zurn Industries, Inc.*, 2012 WL 1108129, *5, n.5 (N.D. Ill. Apr. 2, 2012); *Wyeth Holdings Corp. v. Sandoz, Inc.*, 2012 WL 600715, *7 (D. Del. Feb. 3, 2012).  "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Exergen*, 575 F.3d at 1329 n. 5.

This lower pleading standard is significant because, as the Federal Circuit noted, especially at the pleading stage, "direct evidence of deceptive intent is rare" so "a district court may infer intent from indirect and circumstantial evidence." *Therasense,* 649 F.3d at 1290.

## III.    ARGUMENT

As described above, Arthrex alleges three new separate grounds of inequitable conduct in connection with the '942 and '969 patents.  Below, each separate ground is described in detail.  And for each separate ground, we show that it is both legally supported as a claim of inequitable conduct and that it was sufficiently pled.

### A.    Arthrex's Allegations That Mr. Melnick Misled the Examiner Into Believing the Scott Statement Had Already Been Considered By Another Examiner Are Legally Sufficient and Sufficiently Pled

#### 1.    This Ground of Inequitable Conduct is Legally Supported

This first ground of inequitable conduct has its roots in Mr. Scott's (KFx's CEO), failure to

5

disclose *to two different Examiners* when he first became aware that Dr. Millett actually performed the work described in his article prior to when KFx filed any of its patent applications.  As shown below, dating back to the '311 patent prosecution, there has been a pattern of deceptive behavior all designed to prevent the Examiner from actually considering the work described in the Millett article. That behavior continued into prosecution of the '942 and '969 patents where KFx's counsel made affirmatively misleading statements intended to have the Examiner believe that the information had already been considered by another Examiner, so there was no need for him to do so.

We begin with the prosecution of the '311 patent, during which KFx's prosecution counsel, Mr. Melnick, filed an Information Disclosure Statement ("IDS") citing the Millett article.[1]  The Millett article, on its face, has a publication date of October 2004.  (Ex. 1 at ¶¶ 83, 85[2]).  The '311 patent claims priority on its face to three provisional applications, the earliest of which is dated June 2, 2004 (¶ 87).  Since the earliest priority dates on the application were earlier than the publication date on the Millett article, the Examiner had no reason to believe the Millett article was prior art, and therefore, did not apply it in rejecting the claims.  (¶ 89).

Also during prosecution of the '311 patent, KFx's CEO, Mr. Tate Scott, learned that Dr. Millett actually performed the work described in the Millett article prior to when any of the provisional applications were filed and at least as early as March 2003.  Thus, Mr. Scott knew the work described in the Millett article was prior art to his application ("the Withheld Information") yet he failed to disclose this material information to the Examiner during prosecution of the '311 patent. (¶¶ 96-100, 109, 117)).  The reason why the Withheld Information is material to patentability is

---

[1]     "Mattress Double Anchor Footprint Repair: A Novel Arthroscopic Rotator Cuff Repair Technique;" Arthroscopy: The Journal of Arthroscopic and Related Surgery, Vol. 20, No. 8 (October), 2004: pp. 875-879.

[2]     All cites to paragraph numbers refer to the specific numbered paragraphs included in Arthrex's Answer to Plaintiff KFx Medical Corp.'s First Amended Complaint for Patent Infringement and Counterclaims.  Ex. 1.

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

DICKSTEIN
SHAPIRO LLP

because it disclosed *the same subject matter the Examiner stated was missing from the two main references he did specifically apply in an Office Action*:  the Thal and Jobe references.  (¶148).  Mr. Scott also knew the Withheld Information was material.  (¶ 113).  And had the Examiner known of the Withheld Information, he would have rejected the pending claims because it would have been obvious to combine any missing limitations from Thal and Jobe with the Withheld Information.  (¶ 115).  Instead, Mr. Scott said nothing and the '311 patent issued.  (¶ 90).

Mr. Scott had yet another opportunity to disclose the Withheld Information to the PTO during reexamination of the '311 patent, but he failed to do so again.  (¶¶ 95-109, 118).  During reexamination of the '311 patent, Mr. Melnick filed an IDS including a sworn statement by Mr. Scott stating that he knew the work performed in the Millett article had been performed in the two years preceding publication of the article ("the Scott Statement").  (¶¶ 95-98, 100).  But because KFx filed its IDS too late in the process, the PTO refused to consider it.  (¶¶ 103, 104).

Mr. Melnick himself acknowledged that the Scott Statement was material to patentability by telling the Examiner that "consideration of this information by the Examiner is appropriate."  (¶¶ 105-107).  The PTO refused to consider the IDS, stating that "there is no showing as to when patent owner first became aware of the existence of the items of information now being submitted, and no explanation as to why the information could not have been submitted earlier."  (¶ 108).  Thus, Mr. Scott failed twice (once during prosecution of the '311 patent, and again during reexamination of the '311 patent) to disclose the Withheld Information and when he first learned of the Withheld Information.  (¶¶ 117-118).

The result was that, at the end of the reexamination process for the '311 patent, the PTO *still* had not actually considered and applied the work described in the Millett article even though Mr. Scott and Mr. Melnick had, at that point, known for years that the Withheld Information was material to patentability.  But KFx's deception regarding the Withheld Information did not end there.

7

DICKSTEIN
SHAPIRO LLP

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR
INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND
STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

When it came time to prosecute the '942 and '969 patents, as shown below, Mr. Melnick actually went out of his way to make misleading statements designed to take the Examiner off of the trail of the highly material Withheld Information.  Specifically, during prosecution of the '942 and '969 patents, Mr. Melnick filed an IDS stating that Mr. Scott's statement was "submitted in the Re-examination," *but he failed to inform the Examiner that the PTO refused to consider Mr. Scott's statement because KFx filed it too late.*  (¶¶ 123, 128, 129).  This statement was *designed to mislead the Examiner into believing Mr. Scott's statement had already been considered* by another Examiner at the PTO and that there was no need for this Examiner to review it again.

Making matters worse, Mr. Melnick then requested an interview with the Examiner to ostensibly discuss the most relevant prior art references.  (¶¶131-132).  But Mr. Melnick did not bring up the Scott Statement or the Withheld Information during that interview *even though he knew the PTO had not yet considered or applied that material information.*  Rather, Mr. Melnick chose to discuss the same two prior art references (Thal and Jobe) that had already been overcome during prosecution of the '311 patent, which had claims with limitations similar to those also included in the '942 and '969 patents.  (¶¶ 133-136).

Due to Mr. Melnick's misleading statement and his attempt during the interview to divert the Examiner's attention *away* from the highly material Withheld Information, in favor of discussing the much less material Thal and Jobe references, the PTO once again did not specifically apply the work described in the Millett article to reject the claims.  (¶ 140).  The fact that the Examiner did not actually consider the Scott Statement (even though he checked it off on the IDS) is obvious since the Examiner pointed to the exact same "reasons for allowance" he pointed to in allowing the '311 patent – *and those reasons specifically identify limitations disclosed in the work described by the Millett article, as acknowledged by Mr. Scott himself.*  (¶¶ 112-113, 146-149, 153).

The Federal Circuit has found inequitable conduct where, in situations just like this one, the

8

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR
INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND
STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

applicant has made misleading statements about a disclosed reference that "left the examiner with the impression that the examiner did not need to conduct any further investigation" regarding the disclosed reference. *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129, 1138 (Fed. Cir. 2007). Mr. Melnick's misleading statement regarding the Scott Statement did just that – left the Examiner with the impression he did not need to review it again. But as we know, that was not the case.

Throughout the entire history described above, including the prosecution and reexamination of the '311 patent, and the prosecution of the '942 and '969 patents, both Mr. Scott and Mr. Melnick worked to ensure that neither Examiner (the prosecution Examiner, nor the reexamination Examiner) would actually consider and apply the Withheld Information, and thereby, the work described in the Millett article. Their motives and intent to deceive the PTO are clear. (¶ 153). They knew that the Millett article disclosed the very same limitations the PTO found missing in Thal and Jobe. And had the Examiner actually paid attention to the Scott Statement, he would have applied the work described in the Millett article to reject the claims. (¶ 143).

Patterns of deceit, such as those alleged in this case, are routinely found sufficient to support a claim of inequitable conduct. *See, e.g.*, *Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.*, 984 F.2d 1182, 1194 (Fed. Cir. 1993) ("The prosecution of the patent application in this case, viewed in its entirety, demonstrates an overriding pattern of misconduct sufficient to support the district court's finding of culpable intent."); *W.L. Gore & Associates, Inc. v. Medtronic, Inc.*, 2012 WL 368272 at *4 (E.D. Va. Feb. 3, 2012) (refusing to dismiss or strike an inequitable conduct pleading where the defendant alleged intentional mischaracterization of material information and "a pattern of deception"); *Southco, Inc. v. Penn Engineering & Mfg. Corp.*, 768 F. Supp. 2d 715 (D. Del. 2011) (denying motions to dismiss and strike inequitable conduct defenses because the plaintiff's "alleged misrepresentations affected the Examiner's evaluation of the patents-in-suit"); *Onstar, LLC v. Micral, Inc.*, 2010 WL 1433431, at *11 (N.D. Ohio Apr. 7, 2010) (finding

9

DICKSTEIN
SHAPIRO LLP

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

1
2
3

inequitable conduct where the "inequitable conduct was not limited to a single instance and represents a pattern of intentional deception"); *DaimlerChrysler AG v. Feuling Advanced Technologies, Inc.*, 276 F. Supp. 2d 1054 (S.D. Cal. 2003).

4
5
6
7
8
9
10
11
12
13

KFx ignores most of the above-described facts and instead argues that there can be no inequitable conduct as long as a reference was submitted to the Examiner in an IDS and the Examiner initialed the reference. KFx Memorandum ("KFx Mem.") at 9-10. KFx also argues there can be no inequitable conduct where the applicant failed to specifically point out the relevance of a reference. KFx Mem. at 10-11. Both of these arguments miss the point. Arthrex is not alleging that Mr. Melnick failed to disclose the Scott Statement during prosecution of the '942 and '969 patents. Arthrex is also not merely alleging that Mr. Melnick should have pointed out the Scott Statement to the Examiner during prosecution. KFx Mem. at 9-11.

14
15
16
17
18
19

Rather, as explained above, Arthrex is alleging that Mr. Melnick went out of his way to point out the Scott Statement and then mislead the Examiner into believing another Examiner (the one handling the reexamination) actually reviewed and considered the Scott Statement and that the Examiner therefore did not need to. Mr. Melnick's telling the Examiner that the Scott Statement was "submitted in the Reexamination" was a *"classic example of a half-truth." Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.*, 984 F.2d 1182, 1192 (Fed. Cir. 1993) (emphasis added).

20
21
22
23
24
25
26
27
28

And to the extent KFx argues for some sort of "per se" rule that there can be no inequitable conduct regarding a reference that was submitted and initialed by the Examiner (KFx Mem. at 9-10), that is simply incorrect. What *does* matter is what the applicant says about a reference that has been submitted. If the applicant makes misleading statements about a reference that was submitted and initialed by the Examiner, such as in this case, there most certainly can be a finding of inequitable conduct. *See, e.g.*, *eSpeed*, 480 F.3d at 1138 (finding inequitable conduct where applicant made misleading statements about prior art that was considered by the Examiner); *W.L. Gore &*

10

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

*Associates, Inc.,* 2012 WL 368272 at *4 (court did not dismiss inequitable conduct defense alleging

misleading statements regarding prior art references submitted in an IDS and initialed by the

Examiner).

The cases relied upon by KFx involve very different facts than those involved here.  For

example, KFx relies upon *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565

(Fed. Cir. 1991), for the proposition that a reference cannot be "withheld" from the examiner if it

was before the Examiner.  KFx Mem. at 9-10.  It is nothing more than a garden-variety case where

the Federal Circuit held that you cannot argue inequitable conduct based on failure to disclose if the

reference was before the Examiner.  But *Scripps Clinic* does not deal with facts remotely like those

here where inequitable conduct is based on actions by KFx which affirmatively misled the Examiner

regarding those materials in an attempt to ensure that Mr. Scott's statement and the work described

in the Millett article would not be applied in rejecting the claims.

KFx also relies upon *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318 (Fed. Cir. 2000) for the

proposition that there cannot be inequitable conduct where the applicant failed to "stress the

relevance" of certain references to the Examiner, even if those references were submitted but not

considered by the Examiner.  KFx Mem. at 10.  Again, this misses the point as Arthrex alleges much

more than this.  Not only did Mr. Melnick fail to point out the relevance of Mr. Scott's statement,

but he created the false impression that another Examiner at the PTO had already considered it

through a series of misleading acts.

### 2.    Arthrex Has Alleged Facts Supporting an Intent to Deceive the PTO With Regard to This Ground of Inequitable Conduct

KFx asserts that Arthrex "does not allege specific facts demonstrating an intent to deceive on

the part of Melnick" and that Arthrex "only generally avers an intent to deceive, stating only that

Melnick's actions were 'done knowingly, deliberately, and with the specific intent to deceive the

11

DICKSTEIN
SHAPIRO LLP

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR
INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND
STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

PTO as to which references were the most material." KFx Mem. at 11. In making this assertion, KFx points to a single paragraph of Arthrex's 90-paragraph inequitable conduct allegations and ignores the rest.

The Federal Circuit made clear that although *Therasense* heightened the intent requirement for ultimately *proving* inequitable conduct after *Exergen*, only a "reasonable inference" of intent is required at the pleading stage. *Delano Farms Co.,* 655 F.3d at 1350; *Sanders,* 418 Fed. Appx. at 919. "A reasonable inference is one that is plausible and that flows logically from the facts alleged." *Exergen*, 575 F.3d at 1329 n.5. This is important because, as the Federal Circuit noted, especially at the pleading stage "direct evidence of deceptive intent is rare," so "a district court may infer intent from indirect and circumstantial evidence." *Therasense,* 649 F.3d at 1290.

Contrary to KFx's assertion, Arthrex alleged much more than the one paragraph to which KFx points in its motion. Arthrex established a long-term pattern of deceit dating back to the prosecution of the '311 patent, where Mr. Scott failed to disclose Dr. Millett's prior work. *Supra* at 6-7. It then continued through reexamination of the '311 patent where both Mr. Scott and Mr. Melnick again failed to disclose the same information. *Supra* at 7. It still continued into prosecution of the '942 and '969 patents where Mr. Melnick, by his acts, misled the Examiner into believing the Scott Statement had already been considered. *Supra* at 8. As described above, throughout that entire time, Mr. Scott and Mr. Melnick worked to prevent the PTO from actually considering the Scott Statement and the work described in the Millett article. *Supra* at 8.

Courts have routinely found a reasonable inference of intent when such patterns of deceit are alleged. *Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.*, 984 F.2d 1182, 1193 (Fed. Cir. 1193) ("The prosecution of the patent application in this case, viewed in its entirety, demonstrates an overriding pattern of misconduct sufficient to support the district court's finding of culpable intent."); *Onstar, LLC v. Micral, Inc.*, 2010 WL 1433431, at *6-8 (N.D. Ohio Apr. 7, 2010).

12

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

Court have also found a reasonable inference of intent to deceive where, as here, the applicant has affirmatively misled the Examiner regarding information material to patentability.  *Paragon Podiatry Laboratory, Inc.,* 984 F.2d at 1191.

> **B.**  **Arthrex's Allegations Regarding KFx's Failure to Disclose the Actual Priority Date of the '969 Patent Are Legally Sufficient and Sufficiently Pled**

> **1.**  **This Ground of Inequitable Conduct is Legally Supported**

As described above, Mr. Melnick's statement to the Examiner that the Scott Statement was "submitted in the Reexamination" of the '311 patent misled the Examiner into believing that another Examiner had already considered the Scott Statement, and therefore, there was no reason for him to review it.  *Supra* at 7.  And, in fact, there is no reason to believe the Examiner actually reviewed the Scott Statement, and every reason to believe he did not.  *Supra* at 6-8.

But even though the Examiner did not review the Scott Statement, KFx had another opportunity to make sure Millett was considered, and it took steps to ensure that did not happen. The Examiner still would have applied the Millett article in rejecting the claims *if he had known the Millett article was prior art to the '969 patent*.  But, as described below, Mr. Melnick never told the Examiner the correct priority date of the '969 patent, and thus, the Examiner never knew the Millett article was prior art to the '969 patent.

As Arthrex alleged in its Answer, the '622 application, which issued as the '969 patent, claims priority back to three provisional applications, one of which was filed as early as June 2, 2004.  (¶ 120).  The Millett article was published in October 2004; thus, the Examiner had no reason to believe it was prior art to the '622 application.  (¶¶ 142, 142).  At the time, however, Mr. Melnick knew, but did not inform the Examiner, that the '622 application is only entitled to a priority date of June 1, 2005, thus making the Millett article prior art to the '622 application.  (¶ 141).  As explained above, there is no question that the Millett article is material because it discloses the same exact

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

DICKSTEIN SHAPIRO LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

limitations the Examiner identified as missing from the Thal and Jobe references he *did* consider. (¶¶ 146-147).  If the Examiner knew that the Millett article was prior art to the '622 application, he would have applied the Millett article in rejecting the claims.  (¶ 143).

When deciding which cited references are prior art to an application, the Manual of Patent Examining Procedure (MPEP) section 706.02 instructs the Examiner to compare the date on a prior art reference to the "effective filing date" of the application, and that the effective filing date of an application "is the filing date of the provisional application."  MPEP § 706.02.[3]  Since Mr. Melnick never told the Examiner that the priority date of June 2, 2004 was incorrect, the Examiner had every reason to believe the priority claim was correct.  Mr. Melnick's failure to disclose the correct priority date resulted in the Examiner not applying the Millett article to reject the claims.

In *Li Second Family Ltd. Partnership v. Toshiba Corp.*, 231 F.3d 1373 (Fed. Cir. 2000), the Federal Circuit found inequitable conduct where, as in this case, the applicant failed to disclose the actual priority date to which his application was entitled and that failure resulted in the elimination of what would otherwise have been a material prior art reference.  *Id*. at 1380.  In that case, the Federal Circuit found the omitted priority date information "highly material."  *Id*.

KFx argues that the failure to disclose the priority date of the '622 application is not material since "the Millett work described in the Scott Statement predated all KFx applications."  KFx Mem. at 12-13.  Essentially, KFx argues that the Millett article would have been cumulative of *the work described in* the Millett article, which, according the KFx, the Examiner already considered because he had already considered the Scott Statement.

But as Arthrex explained above, the Examiner *did not* consider the Scott Statement because

---

[3]    KFx asserts that Arthrex cannot be certain the Examiner relied on the September 17, 2004 provisional date rather than one of the other two provisional dates (i.e., June 2, 2004 or December 7, 2004).  KFx Mem. at 16.  As mentioned above, however, the most likely date the Examiner relied upon was June 2, 2004, pursuant to MPEP section 706.02.

14

Mr. Melnick misled him into believing that another Examiner had already considered it.  *Supra* at 7.

These allegations as pled must be accepted as true for purposes of this motion.  *Federation of*

*African American Contractors,* 96 F.3d at 1207.  And accepting as true the fact that the Examiner

*did not* consider the Scott Statement, the priority date of the '622 application becomes highly

material because had the Examiner known of the actual priority date, he would have instantly

noticed it is later than the date on the Millett article.  This failure to disclose was "highly material"

since it eliminated the Millett article as a reference.  *Li Second Family Ltd. Partnership,* 231 F.3d at

1380.

KFx's reliance upon *Purdue Pharma v. Boehring Ingelheim GMBH*, 237 F.3d 1359 (Fed. Cir

2000), is misplaced.  First, it applies a standard not applicable to this case.  The inquiry in that case

dealt with whether the inequitable conduct had "substantial merit" for purposes of granting a

preliminary injunction, and not whether a reasonable inference of inequitable conduct was

sufficiently plead.  *Id.* at 1366-67.  Further, in that case, unlike here, *the Examiner acknowledged*

*that the application may have a later priority date.  See*, *id.* at 1367 ("In fact, the examiner himself

recognized that the claims of the '912 patent were based on 'additional disclosure not presented in

the ['331 parent],' which suggests that the examiner did not assume that the claims are entitled to the

priority date of the '331 parent.") (alterations in original).  The facts here are much different.  Here,

the Examiner did not have any reason to believe the claims of the '622 application were not entitled

to the priority date of the provisional application.  And Mr. Melnick's failure to disclose the actual

priority date was "highly material."  *Li Second Family Ltd. Partnership,* 231 F.3d at 1380.

### 2.     Arthrex Has Alleged Facts Supporting an Intent to Deceive the PTO With Regard to This Ground of Inequitable Conduct

As explained above, Mr. Scott's misconduct dates back to the '311 patent where he failed to

disclose the fact that the work performed in the Millet article was prior art to his application.  Mr.

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR
INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND
STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

DICKSTEIN
SHAPIRO LLP

Melnick and Mr. Scott also made certain the PTO would not consider the Scott Statement during the '311 patent reexamination by waiting too long to file it in an IDS.  Then during prosecution of the '622 application, Mr. Melnick misled the Examiner into believing the Scott Statement had already been considered by another Examiner during reexamination, so he did not apply it to reject the claims, as is obvious by his statement of reasons for allowance.  Even though Mr. Melnick still had a last opportunity to have the Examiner actually consider the Millett article, he made certain the Examiner did not have the information necessary for him to make the determination by failing to disclose the actual priority date for the '622 application.

Courts have found culpable intent, and inequitable conduct, when there is a pattern of alleged misconduct spanning *only a single* prosecution.  *W.L. Gore & Associates, Inc.*, 2012 WL 368272 at *4.  But the facts alleged in this case are much more egregious.  Here, Arthrex alleges that the pattern of misconduct spans not just one prosecution, but *two prosecutions and a reexamination*.  Since the Federal Circuit has found intent based on facts not quite as egregious as those alleged, and since the standard of pleading intent is lower than its actual burden of proof, there is no doubt that Arthrex more than meets the "reasonable inference" pleading standard.

KFx asserts there is no reasonable inference of intent to deceive because Mr. Melnick did not commit inequitable conduct merely by claiming priority to an earlier patent.  KFx Mem. at 17.  But as explained above, when the failure to disclose the priority date results in the elimination of an otherwise material prior art reference, the Federal Circuit has held otherwise.  *Li Second Family Ltd. Partnership,* 231 F.3d at 1380.

KFx also asserts there is no reasonable inference of intent to deceive since the PTO rules contemplate that the inclusion of a priority date does not necessarily indicate that the claims are entitled to the benefit of the earlier date.  KFx Mem. at 17.  KFx simply asserts a truism that not all claims of a patent will be entitled to the earliest priority date on the application.  Of course this is

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR
INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND
STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

correct (as we see first hand with the '622 application), but it misses the point.  MPEP section 706.02 instructs the Examiner that he is to consider the date of the provisional application as the effective filing date of the application.  Where, as here, the Examiner is not told that the claims are not entitled to that provisional filing date, the Examiner will be relying on an incorrect date.  And the reason why it matters in this case is because Mr. Melnick's silence eliminated a material prior art reference.

Lastly, KFx again relies on its submission of the Scott Statement as evidence that it did not intend to deceive the PTO.  KFx Mem. at 17.  But as explained above, Arthrex's allegation that the Examiner did not consider the Scott Statement due to Mr. Melnick's misleading statements, must be taken as true and correct.  Thus, KFx cannot rely on the Examiner having considered the Scott Statement.

C.   **Arthrex's Allegations Regarding KFx's Failure to Have Arthrex's Invalidity Contentions Considered By the PTO Are Legally Sufficient and Sufficiently Pled**

This ground of inequitable conduct has to do with Mr. Melnick's failure to have Arthrex's invalidity contentions actually considered by the PTO during prosecution of the '622 application (the '969 patent).  Arthrex served its invalidity contentions on KFx in connection with this litigation on January 30, 2012.  (¶ 155).  As of that date, the '622 application was allowed and the issue fee was paid, however the '622 application *had not yet issued* as the '969 patent.  (¶ 154).

At that time, Mr. Melnick had a Rule 56 continuing duty of candor and good faith to disclose all material information to the PTO.  (¶ 79).  Mr. Melnick knew that Arthrex's invalidity contentions were material to patentability since Arthrex alleged that the contentions included anticipatory references and other invalidity contentions not yet considered by the PTO.  (¶¶ 156-57).  Despite this, Mr. Melnick chose not to submit the invalidity contentions in a way where the Examiner would actually consider them.  Instead, he chose to merely have the contentions placed in the file where he

17

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

DICKSTEIN SHAPIRO LLP

knew they would never be considered.  (¶ 160).

Mr. Melnick took the "place the reference in the file" route even though the PTO prescribes a process for having a reference considered in exactly this same situation.  As the PTO describes, Mr. Melnick could have simply withdrew the '622 application from issue and filed a request for continued examination (RCE), pursuant to MPEP § 609.04(b).  (¶ 162, 163).  Instead, Mr. Melnick was in a rush to have the '969 patent issue so that KFx could assert it against Arthrex in this case without risk of having the claims rejected due to the invalidity contentions.  In light of these facts, Arthrex alleged that Mr. Melnick's failure to disclose the invalidity contentions was done knowingly, deliberately and with the specific intent to deceive the PTO.  (¶ 168).

Courts have recently found inequitable conduct based on allegations, such as these, where the applicant failed to comply with its Rule 56 obligation by failing to disclose material prior art.  *See, e.g., Apotex Inc. v. Cephalon, Inc.*, 2011 WL 6090696, at * 26 (E.D. Pa. Nov. 7, 2011) (finding applicants failure to disclose material prior art to the PTO violated applicant's rule 56 obligations, and was therefore inequitable conduct).

KFx does not deny Mr. Melnick had a continuing Rule 56 obligation to disclose all material information to the Examiner at that time (after the issue fee was paid but prior to issuance).  Nor can it.  The law is clear that the Rule 56 obligation is ongoing until the day the patent issues.  *Apotex Inc.*, 2011 WL 6090696 at * 26 ("The duty of disclosure continues from the date of filing to the date of issuance.").  Instead, KFx argues that "no material information has been alleged to have been withheld."  KFx Mem. at 18-19.  That allegation is clearly wrong.  As demonstrated above, Arthrex's Answer correctly alleged that the withheld invalidity contentions were "but for" material since they included anticipatory references and other invalidity contentions not yet considered by the PTO.  *Supra* at 17.

KFx next argues that Arthrex's allegations regarding intent are insufficient, and in doing so,

18

DICKSTEIN SHAPIRO LLP

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

attempts to make it appear as if Arthrex is basing "intent" merely on Mr. Melnick's incorrect statement that he was submitting the invalidity contentions "for consideration" when he never actually did so.  KFx Mem. at 19-20.  Notably, KFx never denies Mr. Melnick used these words, but instead argues this alone cannot be the basis for inequitable conduct.  But Arthrex's basis for intent goes far beyond this.  Mr. Melnick's misleading and inappropriate choice of words are merely a symptom of a much greater problem – he knew that the invalidity contentions were material, he knew he had an ongoing Rule 56 obligation to disclose them, yet he deliberately chose not to do so when there was a process for him to have the materials considered.

Recently, this Court found intent to deceive on facts very similar to those here.  In *American Calcar, Inc. v. American Honda Motor Co., Inc.*, 2012 WL 1328640, at *9-11 (S.D. Cal. April 17, 2012), this Court found intent to deceive based on circumstantial evidence that the applicant knew the prior art was material and made a deliberate decision to withhold the prior art from the PTO.  The Federal Circuit also found intent to deceive where, as here, an applicant failed to disclose a reference he knew to be material.  *See e.g., Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1366-67 (Fed. Cir. 2007) (finding intent to deceive based on consideration of several factors including:  applicant should have known of the materiality of the prior art, applicant's motives for obtaining the patent, and the high degree of materiality of the prior art).

KFx also seems to present some sort of policy argument that it would be an "unworkable scenario" to require an applicant to withdraw an application from issue when the applicant learns of material information not yet considered by the PTO.  KFx Mem. at 18.  But this ignores the fact that the MPEP *already requires such actions by the applicant under Rule 56*.  And it ignores that the PTO has already considered this as being a *"workable" scenario* inasmuch as it provides a road map for doing exactly that in MPEP § 609.04(b).  There is nothing to KFx's argument.

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

DICKSTEIN
SHAPIRO LLP

**D.      At the Very Least, Arthrex *Should* Be Given Leave to Amend**

KFx's sole basis for asserting that Arthrex should not be given an opportunity to amend its allegations is because its allegations "are simply insufficient as a matter of law to set forth any viable claim of inequitable conduct." KFx Mem. at 20. But as demonstrated above, Arthrex's allegations *are* legally supported. Thus, KFx's argument should be rejected.

But to the extent the Court disagrees that Arthrex's allegations are legally supported, amendment rather than dismissal is the appropriate remedy. The Ninth Circuit has advised against dismissal without leave to amend stating that "[d]ismissal without leave to amend is improper unless it is clear . . . that the [pleading] could not be saved by any amendment." *Polich v. Burlington Northern, Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991). As shown above, even in the unlikely event that Arthrex's extensive pleadings are found to be insufficient, Arthrex has demonstrated that it can amend its Answer and supplement its allegations if necessary. Thus, since any alleged deficiencies in Arthrex's pleadings could "be saved by any amendment," at the very least, Arthrex should be given an opportunity to amend.

**E.      Dismissal of Arthrex's Allegations Regarding the Scott Statement and the '622 Application Priority Date is Premature Since Those Allegations Are Tied to KFx's Inequitable Conduct Regarding the '311 Patent**

KFx did not move to dismiss or strike Arthrex's allegations of inequitable conduct regarding the '311 patent because, according to KFx, "that defense is more appropriately resolved by considering evidence outside the pleadings and will therefore be the subject of a summary judgment motion." KFx Mem. at 1, n.1. As explained above, Arthrex's allegations that Mr. Melnick misled the Examiner regarding the Scott Statement (*supra* at 5-9, 12) and that he failed to disclose the highly material priority date for the '622 application (*supra* at 13-17) are inextricably connected to KFx's allegations regarding the '311 patent. *Supra* at 3, 5-9, 12. KFx provides no justification to artificially separate out one portion of the single timeline alleged by Arthrex, save for its argument

20

DICKSTEIN
SHAPIRO LLP

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

that Arthrex's allegations are not legally sufficient.  KFx Mem. at 20.  But as shown above, that is incorrect.

Because all of these allegations are inter-related, the parties should be permitted to take discovery on all of these issues and then, if appropriate, move for summary judgment, as suggested by KFx.  Fact discovery in this case closes on December 21, 2012.  Until then, both parties should be given an opportunity to conduct discovery on these issues as appropriate.  It is simply too early to dismiss the allegations at this early stage.  *See, e.g., Barnes & Noble, Inc. v. LSI Corp.*, 2012 WL 359713, at *15 (N.D. Cal. Feb. 2, 2012) ("Given the parties' factual dispute . . . striking this defense is premature."); *Blue Nile, Inc. v. Ice.com, Inc.*, 478 F. Supp. 2d 1240, 1245-46 (W.D. Wash. 2007) (denying motion to dismiss "at this early stage of the litigation" after noting benefit of making decision at later stage with "developed factual background on summary judgment").

Lastly, although KFx did not raise this issue during the parties' meet and confer, Arthrex consents to KFx's request to file a single answer to Arthrex's counterclaims following a decision on its motion.

## IV.   CONCLUSION

For the reasons set forth above, KFx's motion should be denied.


Dated:  June 29, 2012                          By:   _/s/  Salvatore P. Tamburo_____

                                               Salvatore P. Tamburo
                                               DICKSTEIN SHAPIRO LLP
                                               1825 Eye Street NW
                                               Washington, DC 20006-5403
                                               Tel: (202) 420-2200
                                               Fax: (202) 420-2201
                                               TamburoS@dicksteinshapiro.com

                                               Attorney for Defendant/Counterclaimant
                                               Arthrex, Inc.

ARTHREX'S OPPOSITION TO KFX'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM FOR
INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969 AND
STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE

3:11-cv-1698

# CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2012, **DEFENDANT ARTHREX, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO (A) DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969; (B) STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE; AND (C) EXTEND TIME TO ANSWER REMAINING COUNTERCLAIM ALLEGATIONS** electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record.

| **Counsel for Plaintiff KFx Medical Corporation** |
| --- |
| Joseph F Jennings<br>jjennings@kmob.com<br>Phillip A Bennett<br>phillip.bennett@kmob.com<br>KNOBBE MARTENS OLSON AND BEAR<br>LitKFXL.064L@kmob.com |

Dated: June 29, 2012            By:    /s/  Salvatore P. Tamburo

Salvatore P. Tamburo
DICKSTEIN SHAPIRO LLP

DICKSTEIN
SHAPIRO LLP