Joseph F. Jennings (State Bar No. 145,920)
jjennings@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Phillip A. Bennett (State Bar No. 241,809)
phillip.bennett@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
12790 El Camino Real
San Diego, CA  92130
Phone: (858) 707-4000
Facsimile: (858) 707-4001

Attorneys for Plaintiff
KFx Medical Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KFX MEDICAL CORPORATION, a Delaware corporation,<br><br>　　　Plaintiff and Counterdefendant,<br><br>　　　v.<br><br>ARTHREX, INCORPORATED., a Delaware corporation,<br><br>　　　Defendant and Counterclaimant. | Case no. 11cv1698 DMS (BLM)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO (A) DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969; (B) STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE; AND (C) EXTEND TIME TO ANSWER REMAINING ALLEGATIONS**<br><br>Date:  July 13, 2012<br>Time:  1:30 p.m.<br>Courtroom 10, 2nd Floor<br>Honorable Dana M. Sabraw |

**TABLE OF CONTENTS**

**Page No.**

I.  INTRODUCTION .................................................................................................. 1

II. ARGUMENT......................................................................................................... 2

    A.    KFx's Submission and the Examiner's Express Consideration of the Scott Statement and Millett Article Foreclose Arthrex's First Theory of Inequitable Conduct .......................................................................... 2

    B.    Arthrex's Priority Claim Inequitable Conduct Theory is Legally Unsupported................................................................................................... 5

    C.    KFx's Submission of the '311 Patent Invalidity Contentions Served After Examination Closed Cannot Form the Basis for an Inequitable Conduct Defense............................................................................ 8

    D.    Arthrex's "Pattern" Argument Does Not Save Its Insufficient Claims ............................................................................................................ 10

III. CONCLUSION.................................................................................................... 10

# TABLE OF AUTHORITIES

**Page No(s).**

*American Calcar, Inc. v. American Honda Motor Co.*,
    2012 WL 1328640 (S.D. Cal. April 17, 2012) .............................................................. 9

*Apotex Inc. v. Cephalon, Inc.*,
    2011 WL 6090696 (E.D. Pa. Nov. 7, 2011) ............................................................. 8, 9

*Cargill, Inc. v. Canbra Foods, Ltd.*,
    476 F.3d 1359 (Fed. Cir. 2007) ................................................................................... 9

*eSpeed, Inc. v. BrokerTec USA, L.L.C.*,
    480 F.3d 1129 (Fed. Cir. 2007) ................................................................................... 5

*Interstate Natural Gas Co. v. Southern California Gas Co.*,
    209 F.2d 380 (9th Cir. 1953) ....................................................................................... 5

*Li Second Family Ltd. P'ship v. Toshiba Corp.*,
    231 F.3d 1373 (Fed. Cir. 2000) ................................................................................... 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).............................................. 10

*MGIC Indem. Corp. v. Weisman*,
    803 F.2d 500 (9th Cir. 1986) ....................................................................................... 4

*Molins PLC v. Textron, Inc.*,
    48 F.3d 1172 (Fed. Cir. 1995) ..................................................................................... 4

*Scripps Clinic & Research Found. v. Genentech, Inc.*
    927 F.2d 1565 (Fed. Cir. 1991) ................................................................................... 4

*Sightsound.com Inc. v. N2K, Inc.*,
    391 F. Supp. 2d 321 (W.D. Pa. 2003)........................................................................ 10

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) ....................................................................................... 4

*Therasense, Inc. v. Becton, Dickinson & Co.,*
    649 F.3d 1276 (Fed. Cir. 2011)(*en banc*) ................................................................ 1, 9

# TABLE OF AUTHORITIES
(*cont'd*)

**Page No(s).**

**OTHER AUTHORITIES**

MPEP § 202.02 ................................................................................................................. 7

MPEP § 706.02 ............................................................................................................. 7, 8

## I. INTRODUCTION

This motion is directed to Arthrex's inequitable conduct defense and counterclaim as to the '942 and '969 patents. Arthrex's opposition initially recites its accusations as to the original '311 patent. KFx will show in its summary judgment motion that Arthrex has no evidence to support those allegations, but that is not the issue on this motion.

As to the '942 and '969 patents at issue on this motion, the facts alleged in Arthrex's pleading do not support a cognizable theory of inequitable conduct nor the conclusory allegation of an intent to deceive reflected in those allegations. Arthrex's opposition extrapolates from its allegations to now weave a fanciful tale of active deceit that is untethered to the facts as alleged. Arthrex's insufficient allegations of inequitable conduct and its overstated opposition to the instant motion are a prime example of the type of litigation conduct the Federal Circuit has repeatedly attempted to reign in, most recently in its *Therasense* decision. *Therasense, Inc. v. Becton, Dickinson & Co.,* 649 F.3d 1276 (Fed. Cir. 2011)(*en banc*).

As to Arthrex's first theory of inequitable conduct, the Millett Article was submitted and expressly considered by the Examiner during prosecution. Similarly, the Scott Statement was submitted and expressly considered by the Examiner during prosecution. These facts end any legitimate debate. Arthrex's labeling of the submitted information as "Withheld Information" and its over-the-top conclusions that KFx's patent attorney schemed to "take the Examiner off of the trail of" and "diverted the Examiner's attention away from" the submitted information cannot change these fundamental dispositive facts. Further, Arthrex's assertion that this Court must accept as true its allegation directly contradicting the Examiner's statement that he considered the Scott Statement is legally and logically flawed. Arthrex has not and cannot raise a legally sufficient defense of inequitable conduct as to the submitted and considered information.

Arthrex's theory of inequitable conduct concerning the priority date is also legally unsupported. Arthrex can cite to no case, either before or after *Therasense*, where an applicant's mere reference to prior applications in a priority claim was held to form the

1  grounds for an inequitable conduct defense. Additionally, the priority date is wholly
2  immaterial here according to Arthrex's own allegations, because, as indicated in the Scott
3  Statement considered by the Examiner, the date of the Millett work was prior to any of KFx's
4  possible filing dates.
5      Finally, Arthrex's third theory of inequitable conduct, based on the '311 patent
6  invalidity contentions in this case, is premised on a supposed duty that does not exist. KFx
7  was not required to withdraw the '969 patent from issuance when '311 patent invalidity
8  contentions were served after examination of the '969 patent application had closed. Arthrex
9  cites no case imposing such a duty or finding inequitable conduct where an applicant
10 submitted information received after examination had closed without withdrawing the patent
11 from issuance. And further, Arthrex also has failed to meet the pleading requirements
12 regarding the alleged materiality of the '311 patent invalidity contentions as to the claims of
13 the '969 patent.
14     For these reasons and as explained more fully below, Arthrex's inequitable conduct
15 defense and counterclaim as to the '942 and '969 patents should be dismissed.

## II. ARGUMENT

**A.   KFx's Submission and the Examiner's Express Consideration of the Scott Statement and Millett Article Foreclose Arthrex's First Theory of Inequitable Conduct**

20     There are two facts that are material to Arthrex's first theory of inequitable conduct:
21 (1) the Millett Article and Scott statement were submitted to the Examiner in connection with
22 the '942 and '969 patents; and (2) the Examiner considered each of these items and recorded
23 his consideration in the file history.
24     Despite these facts, Arthrex labels the submitted and considered information
25 "Withheld Information" and asserts, using various pejorative characterizations, that Mr.
26 Melnick, the attorney who submitted these items, actually concocted a scheme designed to
27 prevent the Examiner from considering this submitted information. None of the alleged facts
28 support Arthrex's characterizations or conclusions.

1   Arthrex's pleading allegations and over-the-top response to this motion stem entirely
2   from the following alleged facts: (1) the Scott statement was identified in the IDS as a
3   "Statement of Tate Scott, dated April 12, 2011, submitted in Re-Examination No.
4   90/011,430;" and (2) KFx's counsel did not affirmatively raise certain prior art with the
5   Examiner during an interview.

6   As to the first fact, the label identifying the Scott Statement in the IDS listing was
7   true. The Scott Statement was prepared and submitted in connection with the reexamination.
8   Arthrex cannot and does not allege otherwise. Nonetheless, Arthrex goes on to assert that
9   this truthful and accurate label identifying the Scott Statement in the IDS was the result of
10  Mr. Melnick going "out of his way to make misleading statements designed to take the
11  Examiner off the trail of the highly material Withheld Information." Opp. at 8. Arthrex
12  continues on to assert that the truthful and accurate identification of the Scott Statement "was
13  *designed to mislead the Examiner into believing Mr. Scott's statement had already been*
14  *considered* by another Examiner at the PTO and that there was no need for this Examiner to
15  review it again." *Id.* (emphasis in original) Arthrex cites to nothing in making these
16  accusations in its Opposition.

17  Melnick's truthful and accurate identification of the Scott Statement as a statement
18  submitted in the identified reexamination does not support Arthrex's accusations. Further, it
19  is illogical to suggest an Examiner of one application would think that he did not need to
20  consider any information merely because it had been considered by another Examiner who
21  examined a different application. If that were the case, there would be no need to examine
22  continuation applications so long as there was no additional art cited in connection with the
23  continuation application.

24  Further, and perhaps most galling of Arthrex's unsupported accusations surrounding
25  the submission of the Scott Statement, Melnick did submit information to the Examiner
26  informing him that the Scott Statement was not considered in the reexamination. Melnick
27  submitted Arthrex's Answer in this action. *See* Bennett Decl., Ex. 4 at 115 and Ex. 5 at 125
28  (IDS's listing as item No. 183 Arthrex's Answer). The Answer recited, among other things,

the following:

> 34. On April 12, 2011, an Information Disclosure Statement was filed by Ryan E. Melnick of Knobbe, Martens, Olson & Bear LLP in the Reexamination ("April 12 IDS").
> 35. The April 12 IDS included a Statement of Tate Scott, dated April 12, 2011 ("the Scott Statement").
>
> * * *
>
> 43. The PTO refused to consider the April 12 IDS.
> 44. On April 28, 2011, a Petition under 37 C.F.R. § 1.182 was filed on behalf of KFx and signed by Ryan E. Melnick ("the Petition").
>
> * * *
>
> 47. On July 15, 2011, the PTO issued a Decision on Petition dismissing the April 28 Petition in part because "[t]here is no showing as to when <u>patent owner</u> first became aware of the existence of the items of information now being submitted, and no explanation as to why the information could not have been submitted earlier." [emphasis in original].

*See* D.I. No. 8 at 12, 13. And the Examiner acknowledged his consideration of the Answer. *See* Bennett Decl. Ex. 8 at 141 and Ex. 9 at 148. Thus, there is no basis for Arthrex's assertion that Melnick mislead the Examiner in relation to the Scott Statement.

Arthrex several times asserts that its "allegation that the Examiner did not consider the Scott Statement due to Mr. Melnick's misleading statements, must be taken as true and correct." Opp. at 17; *see* also Opp. at 15. The law is not so. The Examiner explicitly indicated that he considered the Scott Statement and references submitted in the IDS. Thus, "it can not be deemed to have been withheld." *Scripps Clinic & Research Found. v. Genentech, Inc.* 927 F.2d 1565, 1582 (Fed. Cir. 1991); *see also Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1185 (Fed. Cir. 1995).

A court "need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) (affirming a motion to dismiss when pleadings contained uncontested facts sufficient to rebut plaintiff's conclusory allegations); s*ee also MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 503 (9th Cir. 1986) (affirming dismissal where memorandum dispelled any doubt that the allegations were untrue). In addition, a court may take judicial notice of records and reports of administrative

bodies, such as the PTO, and not accept facts that "are revealed to be unfounded." *Interstate Natural Gas Co. v. Southern California Gas Co.,* 209 F.2d 380, 385 (9th Cir. 1953) (affirming dismissal of pleading after taking judicial notice of documents on file with Federal Power Commission, which defeated the allegations).

Arthrex cites *eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129 (Fed. Cir. 2007), but that case has no relation to the facts alleged here. The patentee there submitted a "blizzard of paper" to the PTO in conjunction with a false declaration concerning the information. The Federal Circuit affirmed the district court's finding of inequitable conduct in view of the false statement. *Id* at 1137.

Turning to the second fact supposedly supporting Arthrex's theory, namely that Melnick did not draw the Examiner's specific attention to the submitted information during an interview, this also cannot support a claim of inequitable conduct. KFx cited controlling authority explaining that an applicant cannot be deemed guilty of withholding material information from the Examiner by not drawing the Examiner's specific attention to the submitted information. *See* Motion at 9-10. The sole basis for Arthrex's attempt to distinguish this authority is its accusation that Melnick actively mislead the Examiner based upon the manner in which the Scott Statement was listed in the IDS. *See* Opp. at 11. That theory, however, has been completely discredited as described above.

Finally, any alleged scheme designed to convince the Examiner he should not consider the submitted information ultimately was unsuccessful because the Examiner did consider it. Accordingly, there can be no "but for" materiality.

In sum, there are no facts that have been, or could be, pled that support Arthrex's first theory of inequitable conduct.

B. **Arthrex's Priority Claim Inequitable Conduct Theory is Legally Unsupported**

As KFx explained in its opening brief, Arthrex's second theory of inequitable conduct presupposes a rule that an applicant is obligated to affirmatively state the date of priority for each claim in an application where the application includes reference to one or more earlier applications. There is no such rule. And Arthrex has cited no case supporting its theory of

inequitable conduct.

Arthrex relies on *Li Second Family Ltd. P'ship v. Toshiba Corp.*, 231 F.3d 1373 (Fed. Cir. 2000). *See* Opp. at 14-16. The case, however, does not remotely support Arthrex's argument. In that case, the application included a priority claim to various prior applications. *See Li Second Family Ltd. P'ship*, 231 F.3d at 1375-76. An Examiner rejected the pending claims over three prior art references. *Id.* at 1376. Li attempted to eliminate the three references as prior art by asserting that his claims were entitled to the benefit of the filing date of the referenced earlier applications. *Id.* The Examiner rejected Li's arguments. *Id.* Li appealed to the PTO Board of Appeals, which concluded that the claims of the application were not entitled to the benefit of an earlier filing date, and therefore held the three references were available as prior art against the claims. *Id.*

During the later prosecution of a related application before a different Examiner, however, Li continued to assert that his claims were entitled to the earlier filing date and he was ultimately awarded a patent. *Id.* at 1377. Li did not submit the Board's prior decision regarding priority dates to the new Examiner. The district court concluded that Li not only failed to disclose the Board's decision to the later Examiner, but that he also affirmatively and repeatedly argued to the Examiner that the claims of the application were entitled to the benefit of earlier filing dates inconsistent with the Board's decision. *Id.* at 1379. The Federal Circuit affirmed the finding of inequitable conduct.

The facts of the instant case plainly bear no resemblance to *Li Second Family Ltd. P'ship*. Arthrex's inequitable conduct theory here is premised on the mere fact KFx referenced the prior applications in its priority claim. Arthrex cites no case finding this could constitute inequitable conduct.

Additionally, KFx's motion pointed out the reasons an applicant makes reference to prior applications in a priority claim beyond potentially establishing an earlier filing date. *See* Motion at 15 (permitting the applicant to maintain continuity of priority in order to claim in a later continuation application what was disclosed in the earliest application with an effective filing date of that earliest application; affecting the date an application or patent

6                    Reply re Motion to Dismiss, Strike and Extend
                                        Case no. 11cv1698 DMS (BLM)

1  effectively becomes prior art as to other applications).  These facts, which Arthrex ignores in
2  its Opposition, render implausible Arthrex's conclusion of deceptive intent based on the mere
3  reference to the prior applications in KFx's priority claim.

4        The MPEP similarly renders Arthrex's allegation of deceptive intent implausible.  The
5  MPEP provides that "[t]he inclusion of prior application information in the patent does not
6  necessarily indicate that the claims are entitled to the benefit of the earlier filing date."
7  MPEP § 202.02.  Arthrex attempts to distinguish this MPEP provision by calling it a "truism"
8  and then reinterpreting it.  Opp. at 16.  This Patent Office rule plainly defeats the inference
9  Arthrex attempts to draw, namely that mere inclusion of prior application data should be
10  taken as an affirmative representation that claims are entitled to priority of the referenced
11  prior applications.

12        Arthrex then cites another section of the MPEP in an attempt to support its case.
13  Specifically, Arthrex cites Section 706.02, contending it "instructs the Examiner to compare
14  the date on a prior art reference to the 'effective filing date' of the application, and that the
15  effective filing date of an application 'is the filing date of the provisional application.'"
16  Arthrex Opp. at 14; *see also* Opp. at 17  ("MPEP Section 706.02 instructs Examiner that he is
17  to consider the date of the provisional the effective filing date of the application.")  This
18  assertion, created by cropping quotes, is not true.  The cited section of the MPEP actually
19  explains how the Examiner is to *determine* the effective filing date of an application:

> **VI.  *DETERMINING* THE EFFECTIVE
> FILING DATE OF THE APPLICATION**
>
> The effective filing date of a U.S. application *may be determined* as follows:
>
> * * *
>
> (D)   If the application properly claims benefit under 35 U.S.C. § 119(e) to a provisional application, the effective filing date is the filing date of the provisional application *for any claims which are fully supported under the first paragraph of 35 U.S.C. § 112 by the provisional application.*

26  ///
27  ///
28  ///

7      Reply re Motion to Dismiss, Strike and Extend
Case no. 11cv1698 DMS (BLM)

*See* Supp. Bennett Decl. Ex. 11 at 157 (MPEP §706.02(VI)) (italics added).[1]  Thus, the MPEP plainly explains how the Examiner determines if an application is entitled to the benefit of an earlier application by considering whether the claims are supported by a written description in the earlier application that complies with the relevant requirements of the patent statute.  The Examiner is not, as Arthrex contends, instructed to blindly use a particular filing date.

Finally, Arthrex's allegations have not, and cannot, satisfy the 'but for' materiality element of inequitable conduct because, by Arthrex's own allegations, the Millett work was prior to any of KFx's possible filing dates as indicated in the Scott Statement considered by the Examiner.

In sum, Arthrex's second theory of inequitable conduct also fails to state a viable claim for inequitable conduct.

C.  **KFx's Submission of the '311 Patent Invalidity Contentions Served After Examination Closed Cannot Form the Basis for an Inequitable Conduct Defense**

Arthrex's third theory of inequitable conduct would require that this Court expand the doctrine of inequitable conduct to impose a duty on an applicant to withdraw a patent from issuance if the applicant learns after examination is closed of information that another party might later argue is material to the patentability of the allowed claims.  Thus, it is not surprising that Arthrex cites no case finding inequitable conduct where a party submits information received after examination was closed without affirmatively withdrawing the patent from issuance.

Arthrex equates its allegations with *Apotex Inc. v. Cephalon, Inc.,* 2011 WL 6090696 (E.D. Pa. Nov. 7, 2011), but that case has nothing to do with the allegations at issue here. That case involved the patentee's failure to disclose the role of a third party in developing the patented product before the application was ever filed and the patentee's affirmative misrepresentation regarding its own role in developing the invention.  *See Apotex*, 2011 WL

---

[1] A copy of the cited portions of the MPEP is submitted for the Court's reference as Exhibit 11 to the Supplemental Declaration of Phillip Bennett filed concurrently herewith.

6090696 at *26-27.[2]

Arthrex's opposition also glosses over its failure to allege materiality in relation to the '969 patent claims. Arthrex points to its allegation that the invalidity contentions anticipate the '311 patent. *See* Opp. at 17 citing Answer at ¶156. But Arthrex makes no allegation concerning how the invalidity contentions for the '311 patent supposedly are "but for" material as to the claims of the later '969 patent. The later claims include a number of limitations not present in the earlier '311 patent. For example, the two independent claims, i.e. the broadest claims of the '969 patent, include the following limitations not present in the '311 patent:

> 1. A method of attaching soft tissue to bone, comprising:
> \*\*\*
> inserting a distal member of a second anchor into bone at a position beyond an edge of the soft tissue, wherein the second anchor comprises said distal member and a proximal member;
> \*\*\*
> after tensioning the first length of suture, moving the proximal member of the second anchor distally towards the distal member of the second anchor, thereby fixedly securing the first length of suture at the second anchor position without tying any knots.
>
> 19. A method of attaching soft tissue to bone, comprising:
> \*\*\*
> coupling the first length of suture to a second anchor, wherein the second anchor comprises a distal member and a proximal member, wherein said proximal member is cylindrically shaped and comprises a central bore extending therethrough.
> \*\*\*
> after tensioning the first length of suture, moving the proximal member of the second anchor distally towards the distal member of the second anchor, thereby fixedly securing the first length of suture at the second anchor position without tying any knots, wherein inserting the distal member of the second anchor and moving the proximal member of the second anchor distally toward the distal member comprises using an anchor inserter comprising a handle, a tube, and an inner member, wherein the inner member extends through the

---

[2] Arthrex also cites this Court's decision in *American Calcar, Inc. v. American Honda Motor Co.*, 2012 WL 1328640, at *9-11 (S.D. Cal. April 17, 2012) and the Federal Circuit's decision on *Cargill, Inc. v. Canbra Foods, Ltd.,* 476 F.3d 1359, 1366-67 (Fed. Cir. 2007). Neither of these cases relate to the submission of information received after examination had closed. Further, the inference of intent to deceive in *Cargill*, based upon high materiality, would not stand today in view of *Therasense*. *See Cargill*, 476 F.3d at 1366; *Therasense*, 649 F.3d at 1290.

> tube and the central bore in the proximal member of the second anchor and is removably coupled to the distal member of the second anchor.

*See* Bennett Decl. Ex. 3.

In sum, Arthrex's third theory of inequitable conduct finds no support in the case law and, in any event, is insufficiently plead.

### D.     Arthrex's "Pattern" Argument Does Not Save Its Insufficient Claims

Arthrex characterizes its allegations as demonstrating a "pattern" of misconduct. But this, like virtually all of Arthrex's arguments, would require this Court to accept the mislabeling of the submitted and considered Scott Statement as "Withheld Information" and Arthrex's false allegation that the Examiner did not consider it. Arthrex's allegations do not raise a "pattern", but rather stem from a flawed foundation from which Arthrex attempts to string inference upon inference in its attempt to justify its accusations of misconduct. *See Sightsound.com Inc. v. N2K, Inc.*, 391 F. Supp. 2d 321, 363 (W.D. Pa. 2003)(rejecting an inequitable conduct claim premised on a single fact and then a "string of inference-upon-inference [that] creates no more than the air of 'metaphysical doubt' against which the Supreme Court has cautioned. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)."). Adding a series of insufficient bases together does not save Arthrex's claims, particularly where they start from a false premise.

### III.  CONCLUSION

For the foregoing reasons, KFx respectfully requests that Arthrex's counterclaims and affirmative defenses of inequitable conduct as to the '942 and '969 patents be dismissed with prejudice. As shown above, Arthrex has not stated a claim of inequitable conduct under any of its three theories. Further, any amendment would be futile and should not be permitted.

/ / /

/ / /

/ / /

/ / /

/ / /

|    |                              |                                                        |
|----|------------------------------|--------------------------------------------------------|
| 1  |                              | Respectfully submitted,                                |
| 2  |                              |                                                        |
| 3  |                              | KNOBBE, MARTENS, OLSON & BEAR, LLP                     |
| 4  |                              |                                                        |
| 5  | Dated: July 6, 2012          | By: s/Joseph F. Jennings                               |
| 6  |                              |     Joseph F. Jennings<br>Phillip A. Bennett           |
| 7  |                              | Attorneys for Plaintiff<br>KFx Medical Corporation     |

## PROOF OF SERVICE

I hereby certify that on July 6, 2012, I caused the **PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO (A) DISMISS DEFENDANT'S COUNTERCLAIM FOR INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENTS 8,100,942 AND 8,109,969; (B) STRIKE THE CORRESPONDING AFFIRMATIVE DEFENSE; AND (C) EXTEND TIME TO ANSWER REMAINING ALLEGATIONS** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following person(s):

Michael A. Tomasulo
tomasulom@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
2049 Century Park East, Suite 700
Los Angeles, CA  90067
T:  310-772-8300

Charles W. Saber
saberc@dicksteinshapiro.com
Salvatore P. Tamburo
tamburos@dicksteinshapiro.com
Megan S. Woodworth
woodworthm@dicksteinshapiro.com
S. Gregory Herrman
herrmang@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
1825 Eye Street Northwest
Washington, DC  20006
T:  202-420-2200

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on July 6, 2012, at San Diego, California.

Colleen Mensching

KFXL.064L
13526178
062712

Proof of Service
Case no. 11cv1698 DMS (BLM)