1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11 | KFX MEDICAL CORP.,

12                                  Plaintiff,

13            vs.

14

15 | ARTHREX, INC.,

16                             Defendant.

CASE NO. 11cv1698 DMS (BLM)

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM**

**[Docket No. 32]**

17       This case comes before the Court on Plaintiff KFx Medical Corp.'s ("KFx") motion to dismiss

18 Defendant Arthrex, Inc.'s ("Arthrex") counterclaim of inequitable conduct. Arthrex filed an opposition

19 to the motion, and KFx filed a reply. For the following reasons, KFx's motion is granted in part and

20 denied in part.

21                                        **I.**

22                        **BACKGROUND**

23       KFx filed the present case against Arthrex for infringement of United States Patent Number

24 7,585,311 ("'311 Patent"). After KFx filed the lawsuit, it was awarded two additional patents, United

25 States Patent Numbers 8,100,942 ("'942 Patent") and 8,109,969 ("'969 Patent"), and added these patents

26 to the lawsuit. KFx is the assignee of the patents in suit. (Answer ¶ 10.) All three patents share the same

27 name: "System and Method for Attaching Soft Tissue to Bone." (*Id.* ¶¶ 6-8.)  Arthrex counterclaims

28 that

1 | / / /

the patents are unenforceable due to inequitable conduct committed before the United States Patent and Trademark Office ("PTO") during the prosecution of all three patent applications. (*Id*. ¶ 78.)

Paul C. Steinhardt filed the application for the '311 Patent on June 1, 2005. (*Id*. ¶ 81.) In or about August 2005, while the application for the '311 Patent was pending, KFx CEO Tate Scott contacted Peter J. Millet, co-author of an October 2004 article entitled "Mattress Double Anchor Footprint Repair: A Novel Arthroscopic Rotator Cuff Repair Technique." ("Millet article") (*Id*. ¶¶ 83, 85, 87, 109.) During that contact, Mr. Millet informed  Mr. Scott that the procedures referenced in the Millet article had been performed as early as March 2003, long before the publication of the article. (*Id*. ¶ 109.) This information was not disclosed to the PTO prior to the issuance of the '311 Patent. (*Id*. ¶¶ 109,118.) Instead, on January 30, 2007, Ryan Melnick, attorney for KFx, filed an information disclosure statement ("IDS") that included the Millet article. The '311 Patent issued on September 8, 2009. (*Id*. ¶ 81.)

In 2011 the PTO  reexamined the '311 Patent. (*Id*. ¶¶ 92-94.) In response to the reexamination notice, Mr. Melnick submitted another IDS on April 12, 2011, which included a statement by Mr. Scott ("Scott Statement"). (*Id*. ¶ 95.) The Scott Statement provided that Mr. Millet told Mr. Scott the procedures referenced in the Millet article had been performed in the two years preceding publication of the article. (*Id*. ¶¶ 96-97, 100.) The PTO refused to consider the April 12, 2011 IDS containing the Scott Statement, however, partly because "[t]here is no showing as to when the patent owner first became aware of the existence of the items of information now being submitted, and no explanation as to why the information could not have been submitted earlier. (*Id*. ¶¶ 104-08.)

On September 26, 2011, Mr. Melnick filed the applications for the '942 and '969 Patents. (*Id*. ¶ 119.) Both applications claim priority to the '311 Patent. (*Id*. ¶ 120.) On December 1, 2011, Mr. Melnick filed an IDS for each application, both of which state the Scott Statement was "submitted in reexamination No. 90/011,430." (*Id*. ¶¶ 123, 128.) Neither IDS disclosed that the PTO refused to consider the Scott Statement during the reexamination or why the PTO refused to consider the Scott Statement. (*Id*. ¶¶ 129-31.)

1    That same day, Mr. Melnick participated in a telephonic interview with the examiner on the

2    pending applications (*Id.* ¶ 132.) During this interview, Mr. Melnick discussed United States Patent

3    Numbers 5,569,306 ("Thal") and 5,634,926 ("Jobe") with the examiner, but did not mention the Scott

4    Statement. (*Id.* ¶¶ 133, 136.)[1] Mr. Melnick also did not inform the examiner that the claims of the '969

5    Patent were entitled to a priority date of September 1, 2005. (*Id.* ¶ 141.) The '942 and '969 Patents

6    issued on January 24, 2012, and February 7, 2012, respectively. (*Id.* ¶ 119.) The PTO allowed both

7    patents for the same reasons as the '311 Patent. (*Id.* ¶¶ 144-47.)

8    On January 30, 2012, after the PTO issued a notice of allowance on the '942 and '969 Patents

9    and after Mr. Melnick filed the issue fee payment, Arthrex served its preliminary invalidity contentions

10   in this case regarding the '311 Patent ("Invalidity Contentions"). (*Id.* ¶ 155.) The Invalidity Contentions

11   allege each asserted claim of the '311 Patent is anticipated under 35 U.S.C. § 102 by information and

12   documents previously known to KFx and not previously considered by the PTO during prosecution of

13   the patents. (*Id.* ¶¶ 155-56.) On February 6, 2012, Mr. Melnick filed an IDS that included the Invalidity

14   Contentions. (*Id.* ¶ 158.) Mr. Melnick requested that the references be placed in the file for consideration.

15   (*Id.* ¶ 160.)

16                                                **II.**

17                                          **DISCUSSION**

18   Arthrex claims KFx committed four instances of inequitable conduct during the prosecution of

19   the patents in suit. Arthrex first claims that KFx committed inequitable conduct when KFx's CEO Mr.

20   Scott failed to disclose to the PTO that he knew the work described in the Millet article had actually

21   been performed by Mr. Millet prior to the provisional application filing date of the '311 Patent. (Opp'n

22   to Mot. at 1:4-9.) After the '942 and '969 Patents were added to KFx's lawsuit, Arthrex made three

23   additional charges of inequitable conduct. These three charges are at issue in the present motion.

24   Arthrex's first charge alleges that during prosecution of the '942 and '969 Patents, KFx's attorney Mr.

25   Melnick misled the examiner into believing that the Scott Statement and other information was being

26   considered by another examiner during reexamination of the '311 Patent. (*Id.* at 2:1-4.) The second

27   _____

28          [1] The examiner considered the Thal and Jobe Patents during prosecution of the '311 Patent, and
     allowed the claims over both references. (*Id.* ¶¶ 134, 146-147.)

1  charge alleges that KFx failed to disclose to the PTO the fact that the '969 Patent is entitled to a priority

2  date of June 1,

3  / / /

4  2005. (*Id*. at 2:5-7.) The third charge alleges that KFx failed to disclose Arthrex's '969 Patent Invalidity

5  Contentions to the PTO. (*Id*. at 2:13-15.)

6  **A.      Standard of Review**

7          In two recent opinions, the Supreme Court established a more stringent standard of review for

8  12(b)(6) motions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v.*

9  *Twombly*, 550 U.S. 544 (2007).  To survive a motion to dismiss under this new standard, "a complaint

10  must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

11  face.'"  *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility

12  when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

13  defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

14          "Determining whether a complaint states a plausible claim for relief will ... be a context-specific

15  task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950

16  (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)).  In *Iqbal*, the Court began this task "by

17  identifying the allegations in the complaint that are not entitled to the assumption of truth."  *Id.* at 1951.

18  It then considered "the factual allegations in respondent's complaint to determine if they plausibly

19  suggest an entitlement to relief."  *Id.* at 1951.

20  **B.      Inequitable Conduct**

21          The Federal Circuit recently "tighten[ed] the standards for finding both intent and materiality

22  in order to redirect a doctrine that has been overused to the detriment of the public." *Therasense, Inc.*

23  *v. Becton Dickinson and Co.,* 649 F.3d 1276, 1290 (Fed. Cir. 2011). Under these new standards, "the

24  accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Id.*

25  (citing *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)). Gross

26  negligence and negligence no longer suffice. *Id.*  Furthermore,

27          to meet the clear and convincing evidence standard, the specific intent to deceive must
         be "the single most reasonable inference able to be drawn from the evidence."  Indeed,
28          the evidence "must be sufficient to *require* a finding of deceitful intent in the light of

- 4 -

all the circumstances." Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found.

*Id.* at 1290-91 (citations omitted).  With respect to materiality, the court adjusted that standard to one of:

> but-for materiality.  When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.  Hence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference. In making this patentability determination, the court should apply the preponderance of the evidence standard and give claims their broadest reasonable construction.

*Id.* at 1291-92. In addition, the court made it clear that "[i]ntent and materiality are separate requirements."  *Id.* at 1290 (citing *Hoffman-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1359 (Fed. Cir. 2003)).  Thus, district courts should no longer "use a 'sliding scale' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa."  *Id.*

### 1.    The Scott Statement

Arthrex first charges that Mr. Melnick misled the examiner away from material information during the prosecution of the '942 and '969 Patents. Specifically, Arthrex alleges that Mr. Melnick's December 1, 2011 IDS misled the examiner away from the material information contained in the Scott Statement when it provided that the Scott Statement was "submitted in the Re-examination," but did not disclose that the PTO refused to consider the Scott Statement during the reexamination or why the PTO refused to consider it. (Answer ¶¶ 123, 128-29.) Additionally, Arthrex alleges that Mr. Melnick, knowing the PTO had not yet considered the material information, failed to mention the Scott Statement or Millet article during the phone interview with the examiner, and instead discussed the Thal and Jobe references which the '311 Patent overcame. (*Id.* ¶¶ 133-36.) KFx contends that the Millet article and Scott Statement were both submitted to the examiner in the December, 1, 2011 IDS for each of the '942 and '969 Patents, and inequitable conduct cannot result from submitting information and not bringing it to the specific attention of the examiner. (Mem. of P. & A. in Supp. of. Mot. at 6:1-2, 9:18-20.) KFx also argues that the examiner considered the Scott Statement, therefore KFx did not actually withhold any material information. (*Id.* at 11:1.)

"A charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may *reasonably infer* that a specific

individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO." *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed Cir. 2011) (citing *Exergen v. Wal-Mart Stores, Inc*., 575 F.3d 1312, 1318, 1330 (Fed. Cir.2009)) (emphasis added), *pet. for cert. filed*, 80 U.S.L.W. 3652 (U.S. May 11, 2012) (No. 11-1371, 11A832). The Federal Circuit has also held that, "[b]ecause direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence. " *Therasense*, 649 F.3d at 1290. Here, Arthrex has sufficiently pled both materiality and specific intent.

Arthrex has alleged that Mr. Melnick and KFx deceptively misled examiners away from material information on multiple different occasions, dating back to the '311 Patent prosecution and reexamination (which the ''942 and '969 Patents relate back to) and continuing into the prosecution of the '942 and '969 Patents. Arthrex argues that the Scott Statement, the Millet article and the work performed for the Millet Article are all material because the information disclosed limitations that would render the '311, '942 and '969 Patent claims unpatentable. (Answer ¶¶ 113-15, 120.) The fact that the examiner did not consider the Scott Statement or the Millet article (even though he checked it off on the IDS) is evidenced by his decision to allow the '942 and '969 Patents for the same reasons as he allowed the '311 Patent, and those reasons identify limitations disclosed in the work described by the Millet article. (*Id*. ¶¶ 112-14, 146-49.) Further, Mr. Scott's and Mr. Melnick's alleged pattern of withholding information and affirmatively misleading PTO examiners in connection with the '311, '942, and '969 Patents allows for a reasonable inference of specific intent to deceive the PTO. (*Id*. ¶ 153.) KFx's defense that inequitable conduct cannot occur when the information is disclosed is unpersuasive. Arthrex alleges that KFx intentionally misled the examiner away from material information, not that KFx failed to disclose it. Accordingly the Court denies KFx's motion to dismiss this inequitable conduct charge.

**2.     The Priority Date**

Arthrex next alleges KFx committed inequitable conduct when Melnick  failed to disclose the actual priority date of the '969 Patent. Specifically, Arthrex alleges '969 Patent claims priority back to three provisional applications, one of which was filed as early as June 2, 2004, pre-dating the Millet article published in October 2004. (Opp'n to Mot. at 13:20-22.) However, the '969 Patent was actually entitled

to a priority date of June 1, 2005. (Answer ¶ 141.) Arthrex claims the Millet article is material because it discloses the same limitations the examiner identified as missing from the Thal and Jobe references he considered. (Opp'n to Mot. at 13:26, 14:1.) Arthrex also claims that Mr. Melnick knew, but did not inform the examiner of the correct priority date because if the examiner knew that the Millet article was prior art to the '969 Patent then he would have applied the Millet article in rejecting the claims.  (*Id.* at 13:23-25, 14:2-3.)

KFx contends that Arthrex has failed to state a claim based on the '969 Patent priority date for several reasons. Most notably, KFx contends that it disclosed the Scott Statement and informed the examiner that the Millet work described in the Scott Statement predated all KFx applications; therefore, it is immaterial what date KFx listed as the priority date. (Mem. of P. & A. in Supp. of. Mot. at 12:24-27, 13:13-17.) Accordingly, any failure to affirmatively inform the examiner of the June 1, 2005 priority date is immaterial and would not have impacted patent prosecution. (*Id*. at 13:16-17.)

The Manual of Patent Examining Procedure (MPEP) states that if an application "properly claims benefit under 35 U.S.C. 119(e) to a provisional application, the effective filing date is the filing date of the provisional application." MPEP § 706.02 (2012). All relevant information made available to the public in any form before the effective filing date constitutes prior art, and thus would be considered material to a patent's claims of originality. *See* 35 U.S.C. § 102 (2012). Here, Arthrex sufficiently pleads facts necessary to state a claim of inequitable conduct based on KFx's allegedly deceptive practice of listing an invalid priority date. Accepting Arthrex's allegation that the examiner did not consider the Scott Statement as true, the failure to disclose the actual priority date is material because the June 2, 2004 priority date eliminated the Millet article as prior art, and therefore the examiner did not consider it during the '969 Patent prosecution. (Opp'n to Mot. at 15:4-7) Furthermore, Arthrex's allegation of KFx's pattern of misconduct surrounding all three patents allows for a reasonable inference of specific intent with this inequitable conduct claim as well.  Thus, KFx's claim that the date is immaterial because the examiner knew of the work from the Millet article fails. Arthrex also alleges that the examiner did not consider the Scott Statement because Mr. Melnick misled him into believing that another examiner had already

1  considered it. (*Id*. at 14:24, 15:1.) Accordingly, KFx's motion to dismiss this inequitable conduct charge

2  is denied.

3      **3.    The Invalidity Contentions**

4      Finally, Arthrex alleges Mr. Melnick committed inequitable conduct when he failed to have

5  Arthrex's invalidity contentions considered by the PTO during prosecution of the '969 Patent. (*Id*. at

6  17:15-17.) When Arthrex served its '311 Patent invalidity contentions on KFx, the PTO already filed an

7  notice of allowance for the '969 Patent and KFx paid the issue fee; however, the '969 Patent had not yet

8  been issued. (Answer ¶¶ 154-55.) Arthrex alleges the invalidity contentions are material to the '942 and

9  '969 Patent claims since the contentions included anticipatory references and other invalidity contentions

10 not yet considered by the PTO. ( *Id.*  ¶¶ 156-57.) Additionally, Arthrex alleges that Mr. Melnick knew he

11 had an ongoing duty of candor and good faith to disclose all material information to the PTO, and

12 deliberately chose not to disclose the contentions to the PTO. (Opp'n to Mot. at 19:5-9.)

13     KFx contends that failure to withdraw their application because of Arthrex's invalidity contentions

14 is not inequitable conduct because the law imposes no duty to withdraw an application from issuance in

15 response to invalidity contentions; therefore, Arthrex did not sufficiently allege that material information

16 has been withheld or misrepresented. (Mem. of P & A. in Supp. of Mot. at 18:9-13.) The Court agrees with

17 KFx. Absent an affirmative duty to withdraw an approved patent application in light of newly filed

18 invalidity contentions, an assignee cannot be held to have committed inequitable conduct for the failure

19 to withdraw the patent after invalidity contentions are filed. Accordingly, KFx's motion to dismiss this

20 third charge of inequitable conduct is granted.

21                    **III.**

22           **CONCLUSION AND ORDER**

23     For these reasons, the Court grants in part and denies in part KFx's motion to dismiss.

24 Specifically, the Court grants KFx's motion to dismiss the third charge of inequitable conduct and

25 denies KFx's motion to dismiss the first and second charges.  Consistent with its request, Arthrex is

26 granted leave to amend its allegations on the third charge of inequitable conduct.  That amendment shall

27 be filed on or before August 24, 2012.  If Arthrex's amended answer and counterclaim does not cure

28

1  the pleading deficiencies set forth herein, that charge will be dismissed with prejudice and without leave

2  to amend.    **IT IS SO ORDERED**.

3  DATED:  August 15, 2012

4  _____

5  HON. DANA M. SABRAW
   United States District Judge