# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| KFX MEDICAL CORP., | CASE NO. 11cv1698 DMS (BLM) |
|---|---|
| Plaintiff, | |
| vs. | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENT NO. 7,585,311** |
| ARTHREX, INC., | |
| Defendant. | **[Docket No. 39]** |

This case comes before the Court on Plaintiff KFx Medical Corp.'s ("KFx") motion for summary judgment of no inequitable conduct in connection with U.S. Patent No. 7,585,311 ("the '311 Patent"). Arthrex filed an opposition to the motion, and KFx filed a reply. For the following reasons, the Court grants the motion.

## I.

## BACKGROUND

KFx alleges Arthrex is infringing three of its patents: United States Patent Number 7,585,311 ("311 Patent"), United States Patent Number 8,100,942 ("942 Patent") and United States Patent Number 8,109,969 ("969 Patent"). All three patents share the same name: "System and Method for Attaching Soft Tissue to Bone."

///

Arthrex contends the patents are unenforceable due to inequitable conduct. KFx moved to dismiss Arthrex's inequitable conduct claims against the '942 and '969 Patents, which the Court granted in part and denied in part. KFx now moves for summary judgment of no inequitable conduct in connection with the '311 Patent.

On April 5, 2005, Tate Scott joined KFx as CEO. (Decl. of Tate Scott in Supp. of Mot. ("Scott Decl.") ¶ 2.) He is currently President and CEO of KFx. (*Id.* ¶ 1.) KFx "was founded in 2003 with the goal of improving the quality and ease of a variety of orthopedic surgical procedures performed on the shoulder, knee, foot, and ankle by sports medicine surgeons." (*Id.* ¶ 3.) When Mr. Scott joined the company, KFx "had invented bone anchors and methods that enable tissue fixation with a minimum of suturing and manipulation with particular application to the repair of torn rotator cuffs." (*Id.*)

On June 1, 2005, KFx, with the help of Knobbe, Martens, Olson & Bear LLP, filed a patent application, which ultimately issued as the '311 Patent. (*Id.* ¶ 9.) Mr. Scott and others at KFx worked with counsel in connection with this application. (*Id.*) Mr. Scott was aware that KFx had "filed provisional applications prior to [his] joining the company and prior to this patent application." (*Id.*)

Upon joining KFx, Mr. Scott reviewed lots of material, including an article by Dr. Peter Millett and others entitled "*Mattress Double Anchor Footprint Repair: A Novel, Arthroscopic Rotator Cuff Repair Technique*." (*Id.* ¶ 10.) That article was published in the October 2004 issue of "Arthroscopy: The Journal of Arthroscopic and Related Surgery." (Scott Decl., Ex. A.) Mr. Scott "thought the KFx approach was a substantial improvement over the approach described in this article." (Scott Decl. ¶ 10.)

After reading the article, Mr. Scott met Dr. Millett. (*Id.* ¶ 11.) During that meeting, Mr. Scott showed Dr. Millett what KFx was doing with the hope he would be interested in KFx's products. (*Id.* ¶ 12.) Mr. Scott was also interested in the possibility of Dr. Millett joining KFx's Scientific Advisory Board. (*Id.*) During that meeting, Mr. Scott also learned that the procedures referenced in Dr. Millett's article had been performed in the two years prior to its publication.

During prosecution of the application that resulted in the '311 Patent, KFx submitted the Millett article to the PTO. However, KFx and Scott did not disclose the details of Mr. Scott's conversation with Dr. Millett, and specifically, when the procedures described in the article were performed.

///

The '311 Patent issued on September 8, 2009. Thereafter, the PTO granted a request for reexamination of the '311 Patent. During the reexamination, KFx submitted an Information Disclosure Statement ("IDS") that included a statement from Mr. Scott concerning his meeting with Dr. Millett, and specifically, when the procedures described in the article were performed. The PTO refused to consider that IDS, but issued a reexamination certificate on September 13, 2011. (Decl. of Phillip A. Bennett in Supp. of Mot., Ex. 13.)

## II.

## DISCUSSION

KFx moves for summary judgment of no inequitable conduct in connection with the '311 Patent. It argues Arthrex has no evidence to meet either of the elements of inequitable conduct, namely intent to deceive and materiality. Arthrex asserts there are genuine issues of material fact sufficient to withstand summary judgment.[1]

**A.     Summary Judgment**

"Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005) (citing Fed. R. Civ. P. 56(c)). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). To meet this burden, the moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this initial burden, then the burden shifts to the opposing party to show that summary judgment is not appropriate. *Id.* at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). *See also IPXL*, 430 F.3d at 1380 (quoting *Chiuminatta Concrete Concepts, Inc. v. Cardinal*

---

[1] Arthrex also asserts this motion is premature, but it failed to submit a declaration pursuant to Federal Rule of Civil Procedure 56(d). Absent such a declaration, the Court rejects this argument.

*Indus.*, 145 F.3d 1303, 1307 (Fed. Cir. 1998)) (stating "'evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent.'") However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.* More than a "metaphysical doubt" is required to establish a genuine issue of material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B.     Inequitable Conduct**

In a recent decision, the Federal Circuit reassessed the doctrine of inequitable conduct. *See Therasense, Inc. v. Becton Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (*en banc*). In *Therasense*, the court laid out the origins of the doctrine, which involved cases that "dealt with particularly egregious misconduct, including perjury, the manufacture of false evidence, and the suppression of evidence." *Id.* at 1287. The court followed the evolution of the doctrine away from that narrow class of cases to cases involving "a broader scope of misconduct, including not only egregious affirmative acts of misconduct intended to deceive both the PTO and the courts, but also the mere nondisclosure of information to the PTO." *Id.* The court also noted the expansion of the remedy to "unenforceability of the entire patent rather than mere dismissal of the instant suit." *Id.*

With this evolution of the doctrine, "inequitable conduct came to require a finding of both intent to deceive and materiality[,]" the standards for which "have fluctuated over time." *Id.* At one point, the court "espoused low standards for meeting the intent requirement, finding it satisfied based on gross negligence, or even negligence." *Id.* at 1287-88. The court "also previously adopted a broad view of materiality, using a 'reasonable examiner' standard based on the PTO's 1977 amendment to Rule 56." *Id.* at 1288. The court explained it "embraced these reduced standards for intent and materiality to foster full disclosure to the PTO." *Id.* The court noted, however, that the focus on full disclosure "had numerous unforeseen and unintended consequences. Most prominently, inequitable conduct has become a significant litigation strategy[,]" which "expands discovery into corporate practices before patent filing and disqualifies the prosecuting attorney from the patentee's litigation team." *Id.* It also "discourages settlement and deflects attention from the merits of validity and infringement issues[,]" and

"'increas[e][s] the complexity, duration and cost of patent infringement litigation that is already notorious for its complexity and high cost.'" *Id.* (quoting Br. and Appendix of Am. Bar Ass'n as Amicus Curiae at 9). In essence, the court described inequitable conduct as "the 'atomic bomb' of patent law[,]" not only for its effects on litigation, but also because a finding of inequitable conduct "regarding any single claim renders the entire patent unenforceable[,]" *id.* (citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 877 (Fed. Cir. 1988)), and "can spread from a single patent to render unenforceable other related patents and applications in the same technology family." *Id.*

In light of these "far-reaching consequences," the *Therasense* court "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." *Id.* at 1290. Under these new standards, "the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Id.* (citing *Star Scientific Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)). Gross negligence and negligence no longer suffice. *Id.* Furthermore,

> to meet the clear and convincing evidence standard, the specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." Indeed, the evidence "must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances." Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found.

*Id.* at 1290-91 (citations omitted). With respect to materiality, the court adjusted that standard to one of:

> but-for materiality. When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art. Hence, in assessing the materiality of a withheld reference, the court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference. In making this patentability determination, the court should apply the preponderance of the evidence standard and give claims their broadest reasonable construction.

*Id.* at 1291-92. In addition, the court made it clear that "[i]ntent and materiality are separate requirements." *Id.* at 1290 (citing *Hoffman-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1359 (Fed. Cir. 2003)). Thus, district courts should no longer "use a 'sliding scale where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa." *Id.*

1    Here, KFx argues there is no evidence of intent to deceive. Arthrex asserts that is "not true," and it relies primarily on Mr. Scott's Declaration. Specifically, Arthrex relies on Mr. Scott's statement that he reviewed the Millett article when he joined KFx in 2005. Thereafter, Mr. Scott met Dr. Millett and they had a conversation about Dr. Millett's work and KFx's new method for performing rotator cuff surgery. During that conversation, Dr. Millett told Mr. Scott that he performed the work described in his article in the two years prior to its publication. Mr. Scott did not disclose this conversation, and specifically, the timing of Dr. Millett's work, to the PTO until 2011, when the '311 Patent was under reexamination.

Arthrex argues this evidence is sufficient to raise a reasonable inference of intent to deceive the PTO, but the Court disagrees. In cases such as this, where the patentee is accused of failing to disclose information to the PTO, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id.* The reference, or information, at issue here is when Dr. Millett performed the work underlying his article. Mr. Scott does not dispute he knew this information while the application for the '311 Patent was pending, but there is insufficient evidence he knew this information was material or that he made a deliberate decision to withhold it.

Information is material "if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* at 1291. Here, KFx argues Mr. Scott did not know the information was material because "[i]t was no different than what any reasonable reader would have concluded from the Millett Article itself." (Mem. of P. & A. in Supp. of Mot. at 11.) In other words, Mr. Scott believed the information was cumulative, and therefore not material. That is a reasonable inference to draw from these facts. As with any article in a medical journal, especially one that describes a new surgical technique, the reader must know the underlying work was not performed simultaneously with, but rather prior to, publication. Indeed, the Millett article evidences this fact by reference to the "more than 50 cases" in which the technique has been used, and the "biomechanical testing" that was "performed and shows this technique to be as strong as traditional single-row techniques with better restoration of surface area and less chance for bone failure." (Scott Decl., Ex. A at 4.)

1    Arthrex argues it is equally reasonable to infer that Mr. Scott knew the information was material
2    because he "admitted that the only difference between the withheld information and the KFx alleged
3    invention was knot tying." (Opp'n to Mot. at 16.)  However, that argument goes to the substance of the
4    article itself, not when the work was performed, and Arthrex's inequitable conduct claim does not rest
5    on the substance of the article because the article itself was disclosed to the PTO.  Rather, its claim rests
6    on the timing of the work underlying the article, and this argument does not speak to that point.  In other
7    words, Mr. Scott's "admission" about the difference between *the technique* described in the article and
8    the KFx method does not allow for an inference that Mr. Scott knew *the timing* of the underlying work
9    was material.

10    Arthrex raises another argument that is more persuasive.  Specifically, Arthrex asserts Mr. Scott
11    knew the timing of the work was material because he disclosed that information during the
12    reexamination of the '311 Patent.  KFx argues this fact does not support an inference of deceptive intent
13    in the reexamination, but Arthrex does not allege inequitable conduct during the reexamination.  Rather,
14    its claim is limited to the prosecution of the '311 Patent.  Mr. Scott's submission of the information
15    during the reexamination allows for an inference that he knew the information was material, even during
16    the prosecution.

17    That the evidence allows for this inference, however, is insufficient to defeat KFx's motion.  As
18    discussed above, the evidence also allows for an inference that Mr. Scott did not believe the information
19    was material because it was cumulative to information that was available to the examiner.  Both of these
20    inferences are reasonable, and they preclude a finding of intent to deceive.  Because Arthrex has not
21    shown that the evidence requires a finding that Mr. Scott knew the information was material, and that
22    he therefore acted with intent to deceive the PTO, KFx is entitled to judgment as a matter of law of no
23    inequitable conduct.  *See Mformation Techs., Inc. v. Research in Motion Ltd.*, 830 F.Supp.2d 815, 830-
24    31 (N.D. Cal. 2011) (granting motion for summary judgment of no inequitable conduct where
25    defendants failed to show evidence "requires" finding of deceitful intent).[2]
26    / / /
27
28    [2] Because the Court concludes Arthrex has not met its burden on the intent element, the Court does not address the issue of materiality.

1  / / /

2  / / /

3  / / /

4  / / /

## III.

## CONCLUSION AND ORDER

For these reasons, the Court grants KFx's motion for summary judgment of no inequitable conduct in connection with the '311 Patent.

**IT IS SO ORDERED**.

DATED: October 15, 2012

HON. DANA M. SABRAW
United States District Judge