Joseph F. Jennings (State Bar No. 145,920)
joe.jennings@knobbe.com
Brian Horne (State Bar No. 205,621)
brian.horne@knobbe.com
Sean M. Murray (State Bar No. 213,655)
sean.murray@knobbe.com
Sarah Lampton (State Bar No. 282,404)
sarah.lampton@knobbe.com
Marissa Calcagno (State Bar No. 279,783)
marissa.calcagno@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
KFx Medical Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KFX MEDICAL CORPORATION, a Delaware corporation,<br><br>    Plaintiff and Counterdefendant,<br><br>    v.<br><br>ARTHREX, INCORPORATED, a Delaware corporation,<br><br>    Defendant and Counterclaimant. | Case no. 11cv1698 DMS (BLM)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENT NOS. 8,100,942 & 8,109,969**<br><br>Date:  June 28, 2013<br>Time:  1:30 p.m.<br>Courtroom 13A<br>Honorable Dana M. Sabraw |

# **TABLE OF CONTENTS**

**Page No.**

I.     INTRODUCTION ................................................................................1

II.    FACTUAL BACKGROUND ...............................................................3

    A.   The Asserted KFx Patents................................................................3

    B.   The Millett Article And The Scott Statement..................................5

    C.   Arthrex's Allegations Of Inequitable Conduct...............................6

    D.   Procedural History ..........................................................................8

III.   LEGAL STANDARDS .....................................................................10

    A.   The Legal Standard for Summary Judgment ..................................10

    B.   Inequitable Conduct Requires Materiality and Intent.....................10

IV.    ARGUMENT .....................................................................................11

    A.   Arthrex Has Failed To Adduce Evidence From Which
        Deceptive Intent Can Be Inferred ..................................................11

        1.   Melnick Had No Duty To Call The Examiner's
            Attention To The Millet Article Or Scott Statement............11

        2.   Melnick's Priority Claim In The '969 Patent
            Application Was Entirely Proper...........................................12

        3.   The Evidence Supports The Inference That
            Melnick Acted Without Deceptive Intent In
            Describing The Scott Statement ...........................................13

        4.   The Court Has Already Found That KFx Acted
            Without Deceptive Intent In Connection With The
            '311 Patent ...........................................................................15

    B.   Arthrex Has No Evidence That Melnick's Alleged
        Misconduct Was Material ...............................................................16

V.     CONCLUSION ..................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page No(s).**

*Augustine Med., Inc. v. Gaymar Indus., Inc.*,
    181 F.3d 1291 (Fed. Cir. 1999) ...............................................................13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .........................................................................10, 17

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009) ...............................................................10

*Fiskars, Inc. v. Hunt Mfg. Co.*,
    221 F.3d 1318 (Fed. Cir. 2000) ...............................................................12

*Fugitsu Ltd. v. Tellabs Operations, Inc.*,
    No. 09 C 4530, 2012 WL 3133548 (N.D. Ill. July 31, 2012) ...................14

*Lucent Technologies, Inc. v. Gateway, Inc.*,
    543 F.3d 710 (Fed. Cir. 2008) .................................................................12

*Mformation Techs., Inc. v. Research In Motion Ltd.*,
    830 F.Supp.2d 815 (N.D. Cal. 2011) ..................................................14, 15

*Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*,
    237 F.3d 1359 (Fed. Cir. 2001) ...............................................................12

*Scripps Clinic & Research Found. v. Genentech, Inc.*,
    927 F.2d 1565 (Fed. Cir. 1991) ...............................................................16

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) (*en banc*).........................................passim

## OTHER AUTHORITIES

35 U.S.C. § 112...............................................................................................13

37 C.F.R. § 1.555..............................................................................................6

Fed. R. Civ. P. 56 ...........................................................................................10

MPEP § 706.02.................................................................................................13

MPEP § 609.05.................................................................................................16

# I.  **INTRODUCTION**

Arthrex has asserted an inequitable conduct defense as to KFx's '942 and '969 patents based on two theories.  First, Arthrex alleges that KFx attorney Ryan Melnick should have drawn the examiner's attention to certain prior art materials – the Millett article and the related Scott Statement – that were properly submitted to the Patent Office and considered by the Patent Office examiner.  Second, Arthrex alleges that Melnick failed to disclose "the actual priority date" of the claims in the '969 patent application.

Ruling on KFx's motion to dismiss, this Court found that Arthrex had alleged facts which, if proved, could establish its allegations of inequitable conduct.  It is now apparent that Arthrex cannot prove those allegations.  Fact discovery has closed, and Arthrex has produced no evidence to support its claim of inequitable conduct.  Accordingly, KFx is entitled to summary judgment on Arthrex's inequitable conduct defenses and counterclaims.

To establish inequitable conduct, Arthrex must prove by clear and convincing evidence that Melnick made a material misrepresentation or omission, and that he did so with the specific intent to deceive the Patent Office. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (*en banc*).  Arthrex can prove neither prong of this exacting standard.

First, the record evidence precludes a finding that Melnick acted with deceptive intent.  Under the law, Melnick was under no obligation to call the examiner's specific attention to any prior art reference.  It sufficed that he properly submitted all the prior art materials to the Patent Office.  Likewise, Melnick did nothing wrong when he included a general priority claim in the specification of the '969 patent application.  While a patent applicant must specify the prior applications to which the pending ***application*** claims priority, it is the examiner's responsibility to determine the priority dates to which the individual ***claims*** are entitled.

Arthrex attempts to bolster its case for deceptive intent by twisting a routine action by Melnick to cast it in a sinister light.  Specifically, Arthrex alleges that Melnick identified the Scott Statement as "***submitted*** in Re-Examination No. 90/011,430" during the prosecution of the '942 and '969 patent applications, even though the Scott Statement was never substantively ***considered*** in that reexamination.  According to Arthrex, Melnick's intent was to cause the examiner not to consider the Scott Statement and Millet article in connection with the '942 and '969 patent applications.

However, Melnick explained at his deposition that he identified the Scott Statement as "submitted in Re-Examination No. 90/011,430" because this was accurate.  And Patent Office records confirm that Melnick accurately identified the Scott Statement by title, by date and by the administrative proceeding in which it was created, just as he did with many other documents on the same Patent Office form.  No evidence produced in discovery contradicts Melnick's testimony or otherwise supports Arthrex's accusation that Melnick was attempting to divert the Patent Office from the Scott Statement.  Thus, because one may reasonably infer from the record evidence that Melnick acted without deceptive intent, there can be no finding of deceptive intent as a matter of law.

Finally, Arthrex has produced no evidence in discovery that Melnick's alleged misconduct was material.  Arthrex alleges that Melnick's actions caused the Patent Office to not consider the Millett article or the Scott Statement.  But the file histories show that the examiner signed the page of the Information Disclosure Statement ("IDS") listing the Millett article as well as the page listing the Scott Statement.  The examiner also wrote down the "date considered" for each of these pages.  This evidence, which establishes beyond reasonable dispute that the examiner did consider these prior art materials, is not contradicted by any actual evidence.  Arthrex's ***supposition*** that the examiner

/ / /

would have discussed the Millett article had he considered the article is not clear and convincing evidence of materiality.

The Federal Circuit in *Therasense* described the habit of charging inequitable conduct as a "plague" and deplored the fact that "[r]eputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds…." *Therasense*, 649 F.3d at 1289.  The court could have been describing this case.  In prosecuting the '942 and '969 patents, Ryan Melnick withheld no prior art, submitted no false declaration, made no statement that was even inaccurate.  The charges of fraud that have been leveled at him are grounded entirely in speculation and innuendo.  Such grounds are far too slender to satisfy *Therasense's* tightened standard for proving inequitable conduct.

## II.  **FACTUAL BACKGROUND**

### A.    **The Asserted KFx Patents**

The three asserted patents describe knotless bone anchors and methods that allow soft tissue to be attached to bone without the tying of knots.  Tying knots with suture is particularly difficult during arthroscopic surgery, as the surgeon must tie each knot with instruments inserted through very small incisions and can only watch the process by means of a video monitor.  Tate Scott Decl. ¶¶ 4-5.[1]  By eliminating knot tying, KFx's inventions simplify the process of attaching soft tissue to bone and make it more reliable.  *Id.* ¶ 13-14.

KFx has asserted U.S. Patent No. 7,585,311 ("the '311 patent") and two continuation patents: U.S. Patent Nos. 8,100,942 ("the '942 patent) and 8,109,969 ("the '969 patent").  Exs. 1-3.[2]  All three patents share the same

---

[1] The July 13, 2012 Declaration of Tate Scott (D.I. 41), submitted in support of KFx's prior motion for summary judgment, is being resubmitted in support of the present motion.

[2] All exhibit citations are to the Declaration of Sean M. Murray unless otherwise indicated.

specification.  The anchors and methods described in the asserted patents can be used in a variety of procedures, but they are especially useful for repairing a torn rotator cuff.   Ex. 1 at col. 1, ll. 50-52.   A typical rotator cuff repair involves reattaching the rotator cuff tendon to the shoulder bone with suture that extends between two bone anchors inserted in the shoulder bone.  Figure 2 from the asserted patents shows rotator cuff tendon 12 attached to shoulder bone 16 via suture 10 and bone anchors 20 and 22.   In Figure 2, the bone anchor 20 lies underneath the rotator cuff tendon 12.



FIG. 2

*Id.* at Fig. 1.

Rotator cuff repairs are typically performed arthroscopically to avoid the large incisions and lengthy hospital stays associated with traditional "open" surgery.  Scott Decl. ¶ 4.  However, prior arthroscopic techniques for repairing rotator cuffs required the surgeon to attach suture to bone anchors by tying knots, a task requiring exceptional skill and dexterity on the part of the surgeon. *Id.* at ¶ 5.  And if a knot is not tied with the proper tension, the rotator cuff can re-separate from the bone.  Ex. 1 at col. 1, lines 35-42.

The knotless bone anchors described in KFx's patents allow suture to be easily secured to a pair of bone anchors without tying knots. *Id.* at Figs. 2, 3 A-C, 16 A-F.  The patents describe a "double row" procedure in which a first bone anchor is placed in a portion of the shoulder bone lying underneath the rotator cuff tendon ("medial" placement) and a second anchor is placed in a portion of the bone beyond the edge of the tendon ("lateral" placement). *See, e.g.*, Ex. 1 at

col. 12, l. 50 – col. 13, l. 16 and Figs 16A-F.  Suture is extended from the first anchor to the second anchor, tensioned appropriately to compress the tendon to the bone, and then attached to the second bone anchor without tying knots.  *Id.* (especially Figs. 16E-F).

**B.     The Millett Article And The Scott Statement**

The allegations of inequitable conduct in Arthrex's answer relate to an article by Peter J. Millett that was published in October 2004.[3]  The Millett article describes methods of attaching soft tissue to bone through tying knots.  Ex. 4 at 108-09.  The article also states that its authors "have used the technique clinically in more than 50 cases without any adverse effects."  *Id.* at 109.  KFx submitted the Millett article to the Patent Office during the prosecution of the '311 patent and then twice more during the prosecution of the '942 and '969 patents.  Exs. 5-7 (IDS forms).

In about August 2005, KFx CEO Tate Scott had a conversation with Peter Millett which included a discussion of the work described in the October 2004 Millett article.  Scott Decl. ¶¶ 11-14.  Millett told Scott that this work had been performed in the two years prior to the article's publication.  *Id.* ¶¶ 12-13, 23.  It never crossed Scott's mind to inform the Patent Office about his conversation with Millet because he had never submitted a description of a conversation to the Patent Office, because he understood that the Millet article had been or would be submitted to the Patent Office, and because Millet had said nothing of substance about his work that was not already in the article.  *Id.* ¶ 15.  The Millet article itself was properly submitted to the Patent Office on January 30, 2007, and the '311 patent issued on September 8, 2009.  Ex. 5 (IDS); Ex. 1 ('311 patent).

---

[3] Peter J. Millett *et al.*, Mattress Double Anchor Footprint Repair: A Novel, Arthroscopic Rotator Cuff Repair Technique" and published in October 2004 in *Arthroscopy: The Journal of Arthroscopic and Related Surgery*, Vol. 20, No. 8.  Ex. 4

After an anonymous third party petitioned for reexamination of the '311 patent, the Patent Office granted the petition on February 16, 2011.  Ex. 8.  Under the relevant federal regulations, KFx had two months to submit any relevant prior art to the Patent Office on an IDS form.  Ex. 9 (37 C.F.R. § 1.555(a)).  But on March 28, 2011, before the two-month period had elapsed, the Patent Office issued an early notice of intent to issue a reexamination certificate for the '311 patent.  Ex. 10.  KFx proceeded to submit its IDS form on April 12, 2012, within the required two-month period.  Ex. 11.  Included with the IDS form was a "Statement of Tate Scott" that described Tate's conversation with Millet.  Ex. 11 at 167 (IDS listing Scott Statement); Ex. 12 (Scott Statement).  However, the examiner declined to consider any materials submitted after its notice of intent to issue a reexamination certificate, so KFx formally petitioned the Patent Office to consider the those materials.  Ex. 13.  The Patent Office denied the petition.  Ex. 14.

KFx later submitted the Scott Statement to the Patent Office on two additional occasions: in the prosecution of the '942 patent and the prosecution of the '969 patent.  Ex. 6 at 127 (IDS form - '942 prosecution); Ex. 7 at 135 (IDS form - '969 prosecution).  The line of each IDS form listing the Scott Statement identified it as follows: "Statement of Tate Scott, dated April 12, 2011, submitted in Re-Examination No. 90/011,430."  Ex. 6; Ex 7.

## C.   Arthrex's Allegations Of Inequitable Conduct

Arthrex made a number of inequitable conduct allegations in its answer.  In connection with the '311 patent, Arthrex alleged that KFx intentionally submitted the Scott Statement late in the '311 patent reexamination so that the statement would not be considered by the Patent Office in connection with the '311 patent.  D.I. 28 at ¶¶ 81-118.  That allegation of inequitable conduct was dismissed by the Court on KFx's prior motion for summary judgment.

/ / /

Arthrex also made three broad allegations of inequitable conduct in connection with the '942 and '969 patents. First, Arthrex alleged that, during the prosecution of the '942 and '969 patents, KFx's attorney Ryan Melnick intentionally diverted the examiner from the Millet article by not calling the examiner's attention to the Millet article and Scott Statement, and by describing the Scott Statement as "submitted in Re-Examination No. 90/011,430." *Id.* at ¶¶ 123-140, 144-153. Arthrex alleges that Melnick's description of the Scott Statement as "submitted in Re-Examination No. 90/011,430" was designed to mislead the examiner into believing that the statement had been considered in that reexamination and therefore did not need to be considered in the prosecution of the '942 and '969 patent applications. *Id.*

Second, Arthrex alleged that Melnick improperly included in the '969 patent application a claim for priority to three provisional applications, even though the claims of this patent are entitled to the later date of KFx's first non-provisional application. *Id*. ¶¶ 120-22, 141-43, 153. Arthrex contended that, because Melnick did not inform the examiner that the claims of the '969 patent were entitled to a later priority date, the examiner was misled into believing that Millett article was not prior art to these claims. *Id.* at ¶¶ 141-43.

Third, Arthrex alleged that Melnick committed inequitable conduct in connection with Arthrex's invalidity contentions in this case. *Id.* at ¶¶ 154-68. Arthrex served those contentions after the '942 patent had issued, after the Patent Office had issued a notice of allowance for the '969 patent, and after KFx had paid the issue fee for the '969 patent. *Id.* ¶¶ 145, 154-55; Ex. 2. Although Melnick promptly submitted these contentions to the Patent Office, Arthrex asserted that Melnick should have petitioned the Patent Office to withdraw the allowed patent from issuance so the examiner could consider Arthrex's contentions. D.I. 28 at ¶¶ 156-58, 164-65.

/ / /

**D.   <u>Procedural History</u>**

In May 2012, KFx filed a motion to dismiss all three of Arthrex's inequitable conduct claims relating to the '942 and '969 patents.  D.I. 30.  The Court granted the motion in part and denied it in part.  D.I. 49.  Specifically, the Court dismissed Arthrex's third ground for inequitable conduct, which alleged that Melnick should have petitioned the Patent Office to withdraw the '969 patent from issuance so that the examiner could consider Arthrex's invalidity contentions.  *Id.* at 8.  However, the Court found that Arthrex's first and second grounds for inequitable conduct satisfied the pleading standard.  *Id.* at 5-7.  That is, the Court found that Arthrex had sufficiently alleged that KFx intentionally misled the Patent Office away from material information and misled the examiner regarding the priority date of the '969 patent claims.  *Id.*  With regard to the intent prong of the inequitable conduct standard, the Court stated that "Arthrex's allegation of KFx's pattern of misconduct surrounding all three patents allows for a reasonable inference of specific intent" to deceive the Patent Office.  *Id.* at 7.

In July 2012, KFx filed a motion for summary judgment on Arthrex's allegation of inequitable conduct in connection with the '311 patent, *i.e.*, the allegation that KFx committed inequitable conduct by failing to submit the Scott Statement earlier in the reexamination of the '311 patent.  D.I. 39.  KFx's motion was based on the Declaration of Tate Scott, which has been resubmitted in support of the present motion.  As noted above, Scott testified that it had never crossed his mind to submit the Scott Statement to the Patent Office.  *Id.* at ¶ 15.  While he had submitted documents to the Patent Office on numerous occasions, he had never submitted a description of a conversation before.  *Id*.  Moreover, when he spoke with Millett, Scott had no interest in when Millett did his work – his primary concern was to solicit Millet's thoughts on KFx's

/ / /

technology and to generate interest in that technology in the marketplace.  *Id.* at ¶¶ 8, 11-16.  Scott further testified:

> I did not believe Millett told me anything of substance about his work that was not already in the article.  …  I fail to see how anyone could read the article and not conclude he did the work well before the article was published.

*Id.* at ¶ 16.

The Court granted KFx's motion for summary judgment on October 15, 2012.  D.I. 65.  The Court held that the evidence "allows for an inference that Mr. Scott did not believe the information was material because it was cumulative to information that was available to the examiner."  *Id.* at 7.  Because the evidence did not require an inference that Scott knew the information was material and intentionally withheld it, the Court held that a finding of intent to deceive was precluded by the applicable legal standards.  *Id.*

After the Court's October 15, 2012 order, the only grounds for inequitable conduct remaining in the case are the first two of Arthrex's three grounds for inequitable conduct in connection with the '942 and '969 patents, *i.e.*, its allegations that KFx intentionally misled the Patent Office away from material information and misled the examiner regarding the priority date of the '969 patent claims.  Arthrex took the deposition of Ryan Melnick on December 4, 2012, and fact discovery closed on December 21, 2012.  KFx now brings the present motion seeking summary judgment on Arthrex's remaining two grounds for inequitable conduct.  KFx's motion is based on Melnick's testimony, controlling Federal Circuit precedent, and Arthrex's failure to produce any evidence in discovery to prove either materiality or intent to deceive.

/ / /

/ / /

/ / /

# III.  LEGAL STANDARDS

## A.    The Legal Standard for Summary Judgment

If the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact, then the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56 (c).  If the non-moving party has the burden of proof at trial, the moving party does not have the burden to produce evidence showing the absence of a genuine issue of material fact.  "Instead . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## B.    Inequitable Conduct Requires Materiality and Intent

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent."  *Therasense,* 649 F.3d at 1285.  "The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO [Patent and Trademark Office]."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009).  Because intent and materiality are separate elements, a strong showing on one element cannot compensate for an insufficient showing on the other.  *Therasense*, 649 F.3d at 1290.  Accordingly, "a district court may not infer intent solely from materiality."  *Id.*

The Federal Circuit recently "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public."  *See Therasense*, 649 F.3d at 1290.  The Court imposed a "but-for" standard for materiality.  *Id.* at 1291.  In other words, the

information must be so material that, "but for" the information being withheld from the Patent Office, the patent would not have been granted.  As for intent to deceive the Patent Office, the Federal Circuit held that the evidence "must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances."  *Id.* at 1290 (emphasis provided by the court).  Thus, if multiple reasonable inferences may be drawn from the evidence, deceptive intent cannot be found.  *Id.* at 1290-91.

## IV.  ARGUMENT

Summary judgment is appropriate because Arthrex produced no evidence in discovery that could establish its claim that Ryan Melnick committed inequitable conduct in prosecuting the '942 and '969 patent applications by intentionally diverting the Patent Office from the Millett work or by intentionally misleading the examiner about the priority date of the '969 patent claims.

### A.  Arthrex Has Failed To Adduce Evidence From Which Deceptive Intent Can Be Inferred

It is undisputed that, in prosecuting the '942 and '969 patent applications, Melnick timely provided the Patent Office with both the Millett article and the Scott Statement.  Exs. 6-7 (IDS forms).  Arthrex nevertheless asserts that Melnick engaged in a "pattern" of misconduct aimed at diverting the examiner from these materials.   On the contrary, for each supposed act of misconduct cited by Arthrex, the evidence of record permits the reasonable inference that Melnick acted without deceptive intent.

#### 1.  Melnick Had No Duty To Call The Examiner's Attention To The Millet Article Or Scott Statement

Arthrex seeks to infer deceptive intent from actions which, under controlling precedent, cannot be deemed improper.  First, Arthrex claims that Melnick should have called the examiner's attention to the Millett article and

Scott Statement, either in the examiner's interview or in his comments on the examiner's reasons for allowance. However, in *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318 (Fed. Cir. 2000), the Federal Circuit expressly rejected the contention that an applicant has an obligation to bring references to the specific attention of the examiner. *See id.* at 1327. Thus Melnick had no duty to call the examiner's attention to the Millet article or any other reference that was properly submitted to the Patent Office. Arthrex cannot accuse Melnick of acting deceptively because he failed to comply with a duty that the law does not impose.

### 2. Melnick's Priority Claim In The '969 Patent Application Was Entirely Proper

Melnick also acted properly when he included in the '969 patent a claim of priority to KFx's provisional applications. Here Arthrex's allegations muddle the analysis by failing to distinguish between the application and its claims. A non-provisional *application* should claim priority to an earlier provisional application – even if the application's claims are not entitled to the priority date of the provisional – if only to ensure that the later patent will be considered prior art as of the date of the provisional. *See Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1367 (Fed. Cir. 2001) ("it was logical for Purdue to claim priority to the '331 parent, even if the claims of the asserted patents are not entitled to the earlier priority date"). Thus, Melnick properly included in the '969 patent a claim of priority to KFx's provisional applications. *Id.*

The priority date for an application's *claims* need not be the earliest date to which the *application* claims priority. *See id.* "Patent claims are awarded priority on a claim-by-claim basis based on the disclosure in the priority applications." *Lucent Technologies, Inc. v. Gateway, Inc.*, 543 F.3d 710, 718 (Fed. Cir. 2008). Specifically, a claim is entitled to the filing date of the earliest

application that properly discloses the subject matter recited in the claim.  *See Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1302 (Fed. Cir. 1999).  The Manual of Patent Examining Procedure (MPEP) instructs examiners that only claims supported by the disclosure of a provisional application are entitled to the provisional's filing date.  Ex. 15 at 202 (MPEP §706.02) ("the effective filing date is the filing date of the provisional application *for any claims* which are fully supported under the first paragraph of 35 U.S.C. § 112 by the provisional application") (emphasis added).  Therefore, that the '969 *application* properly claimed priority to KFx's provisional applications told the examiner nothing about the priority date that should be accorded to the *individual claims* in the application.  Thus, Melnick could not possibly have expected that the priority claim in the '969 patent application would mislead the examiner regarding the priority date of the '969 patent claims.

### 3.    The Evidence Supports The Inference That Melnick Acted Without Deceptive Intent In Describing The Scott Statement

The centerpiece of Arthrex's alleged "pattern" of misconduct is its allegation that Melnick intended to mislead the examiner when he described the Scott Statement as "submitted in Re-Examination No. 90/011,430."  The record evidence, however, fails to support this allegation.  When Melnick submitted the Scott Statement to the Patent Office, he identified it as "Statement of Tate Scott, dated April 12, 2011, submitted in Re-Examination No. 90/011,430."  Ex. 6 at 127; Ex. 7 at 135.  Thus he identified the Scott Statement by listing its title, its date, and the proceeding in which it was created.  Melnick's identification was entirely accurate.  Moreover, it was consistent with how he identified other documents created in administrative or judicial proceedings.  For example, on line 194 of the same IDS forms, three lines above the entry for the Scott Statement, Melnick identified a document as "PCT Invitation to Pay Additional Fees, dated May 13, 2008, for International Application No.

PCT/US2007/083662." *See, e.g.*, Ex. 7 at 135 (cite no. 194).  Other documents were similarly identified by title, date and relevant proceeding.  *See, e.g., id.* at 134-35 (cite nos. 183-186, 192-94).

In his deposition, Melnick provided a straightforward and logical explanation for why he identified the Scott Statement as submitted in Re-Examination No. 90/011,430: "Because it was."  Ex. 16 at 113.  Melnick further testified that, in his view, an examiner would not consider it important that the Scott Statement was only submitted in the '311 re-examination, not considered there.  *Id.* at 116-17.  This is because an examiner has a duty to consider every item submitted on an IDS form regardless of whether it was previously considered in another proceeding.  *Id.*  Melnick's account supports the reasonable inference that his aim was to accurately identify the Scott Statement on the IDS forms, not to deceive the Patent Office.  Therefore deceptive intent cannot be found as a matter of law.  *See Therasense,* 649 F.3d at 1290-91 ("when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found"); *Fugitsu Ltd. v. Tellabs Operations, Inc.*, No. 09 C 4530, 2012 WL 3133548 at *3 (N.D. Ill. July 31, 2012); *Mformation Techs., Inc. v. Research In Motion Ltd.*, 830 F.Supp.2d 815, 830 (N.D. Cal. 2011).

Moreover, deceptive intent may not be found unless the evidence of record **requires** a finding of intent to deceive.  *See Therasense,* 649 F.3d at 1290-91; *Mformation*, 830 F.Supp.2d at 829-31.  Arthrex's assertion that an examiner could be confused by Melnick's accurate identification of the Scott Statement and that Melnick intended to create such confusion is pure speculation unsupported by any evidence.  An absence of evidence of deceit hardly "requires" an inference of deceit.

Further, Arthrex's theory makes no sense.  No examiner would think that a reference can be ignored simply because it was considered by another examiner in connection with a related application.  Even where applications

contain the same specification, they will contain different claims. Consequently, a reference that has little relevance to the claims in one application could be highly material to the claims in another. Melnick therefore could not have believed, as Arthrex suggests, that the examiner would assume that the Scott Statement was irrelevant to the '942 and '969 patent claims simply because another examiner had considered the statement in connection with different claims in a different application. Arthrex's theory of inequitable conduct is far too flawed to require a finding that Melnick intended to deceive the Patent Office. *See Therasense,* 649 F.3d at 1290-91; *Mformation,* 830 F.Supp.2d at 829-31.

### 4.   The Court Has Already Found That KFx Acted Without Deceptive Intent In Connection With The '311 Patent

Finally, Arthrex also relies on its allegation that KFx committed inequitable conduct by waiting to submit the Scott Statement to the Patent Office until after the examiner had mailed a notice of intent to issue a reexamination certificate. *See* D.I. 36 at 6-9 (Opp. to Motion to Dismiss). Arthrex has argued that this alleged inequitable conduct is part of a "pattern of deceit" that extended from the prosecution of the '311 patent all the way to the prosecution of the '969 patent. D.I. 36 at 6-9. But this Court ruled on October 15, 2012 that Arthrex had failed to prove inequitable conduct in connection with the '311 patent because the evidence permits the inference that Scott acted without any intent to deceive the Patent Office. D.I. 65 at 7. Specifically, the Court determined that the evidence permits the reasonable inference that Scott did not submit a description of his conversation with Millet earlier because he believed it was cumulative of information already available to the examiner. *Id.* at 7. Thus KFx's conduct in connection with the '311 patent does not support Arthrex's allegations that Melnick acted with deceptive intent during the prosecution of the '942 and '969 patents.

In sum, Arthrex has presented no evidence that requires a finding of deceptive intent by Melnick.  The acts of alleged misconduct on which Arthrex relies to prove a "pattern of misconduct" either permit an inference that Melnick acted without deceptive intent or are proper as a matter of law.  Accordingly, Arthrex cannot establish the intent element of the inequitable conduct standard.

**B.** **Arthrex Has No Evidence That Melnick's Alleged Misconduct Was Material**

Arthrex has also failed to produce any evidence that Melnick's alleged misconduct had the "but-for" materiality required by *Therasense*.  *See Therasense*, 649 F.3d at 1291.  Arthrex's first inequitable-conduct theory alleges that Melnick's actions "diverted" the examiner away from Millett's work, but the evidence of record shows that the examiner considered both the Millett article and the Scott Statement.  On the IDS form submitted in connection with the '942 patent, the examiner not only signed the page of the IDS form listing the Millett article and the page listing the Scott Statement, he also recorded 12/02/2011 as the "date considered" for each of these pages.  Ex. 17 at 216 and 217 (cite nos. 190 and 197).  The examiner did the same with the IDS form submitted in connection with the '969 patent, except that the "date considered" was 12/13/2011.  Ex. 18 at 223 and 224 (cite nos. 190 and 197).  This is conclusive evidence that the examiner considered both the Millet article and Scott Statement, especially in view of the MPEP's requirement that "Examiners must consider all references that are submitted in conformance with the rules…."  Ex. 15 at 201 (MPEP § 609.05(b)); *see also Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1582 (Fed. Cir. 1991) (stating that a reference submitted to the Patent Office "cannot be deemed to have been withheld from the examiner").

Arthrex has produced no evidence in discovery to counter the evidence in the file history that the examiner considered the Millett work.  Thus, Arthrex

must rely on its argument that the examiner could not have considered Millet because, if he had, he surely would have discussed the Millett article.  D.I. 36 at 8.  This is not evidence, but supposition.  There are many possible reasons for the examiner's decision to discuss other references instead of the Millet article.  Perhaps the examiner considered Millet less relevant because it disclosed techniques involving knot tying while the KFx patents expressly aim to eliminate knot tying.   Indeed, even Arthrex has recognized the significant disadvantages of repair techniques that require the tying of knots.  In a patent application that Arthrex filed in February 2007, Arthrex noted that "[t]ying knots during surgery is tedious and time-consuming," that "[t]here is a tendency for the knots to deform or collapse," that "suture knots often are exposed to abrasion or cutting," and that, "[a]ccordingly, a need exists for an improved method for attaching soft tissue to bone which does not require multiple suture knots."  Ex. 19 at ¶¶ 4-5.[4]  Thus, the examiner might well have considered other references more relevant and more worthy of discussion than the Millet article.

In any event, Arthrex cannot substitute speculation for actual evidence.  Under *Therasense*, Arthrex has the burden of proving by clear and convincing evidence that the alleged "diversion" was material because it caused the examiner not to consider a reference that would have prevented the patent from issuing.  *See Therasense*, 649 F.3d at 1291 (holding that the party alleging inequitable conduct must prove but-for materiality).  Because Arthrex cannot carry its burden of proving materiality by clear and convincing evidence, KFx is entitled to summary judgment.  *See Celotex*, 477 U.S. at 325.

Finally, Arthrex's second inequitable-conduct theory alleges that Melnick's priority claim in the '969 patent application was material because it caused the examiner to conclude, erroneously, that the Millett article was not

---

[4]  The Arthrex application claims priority to 2006.

prior art to the '969 patent claims.  In the first place, this argument is flatly inconsistent with Arthrex's other allegation, made in connection with its first inequitable-conduct theory, that the examiner was diverted away from the Millett article and never considered it at all.  But more importantly, Arthrex has adduced *no evidence whatsoever* that the examiner reached a conclusion about the priority date of the '969 patent claims, let alone clear and convincing evidence that the examiner accorded those claims the filing date of a provisional application.  Indeed, it would require overwhelmingly probative evidence to establish that a Patent Office examiner, an expert in the patent law, was so ignorant of the law and the MPEP as to assume that the claims of a patent application are necessarily entitled to the earliest filing date in the application's priority claim.

In sum, Arthrex's failure to produce evidence to support its allegations of materiality is a second and independent basis for granting summary judgment in favor of KFx.

## V. <u>CONCLUSION</u>

A party seeking to prove the serious charge of inequitable conduct has the burden of proving both intent to deceive and materiality by clear and convincing evidence.  Because Arthrex has failed to produce evidence sufficient to prove either of these elements of inequitable conduct, KFx requests entry of summary judgment dismissing Arthrex's counterclaims and affirmative defenses of inequitable conduct in connection with the '942 and '969 patents.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 17, 2013          By:  s/*Joseph F. Jennings*
                                  Joseph F. Jennings
                                  Brian Horne
                                  Sean M. Murray
                                  Sarah Lampton
                                  Marissa Calcagno

                             Attorneys for Plaintiff
                             KFx Medical Corporation

## PROOF OF SERVICE

I hereby certify that on May 17, 2013, I caused the within **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENT NOS. 8,100,942 & 8,109,969** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following person(s):

Lawrence La Porte
laportel@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
2049 Century Park East, Suite 700
Los Angeles, CA  90067
T:  310-772-8300

Charles W. Saber
saberc@dicksteinshapiro.com
Salvatore P. Tamburo
tamburos@dicksteinshapiro.com
Megan S. Woodworth
woodworthm@dicksteinshapiro.com
S. Gregory Herrman
herrmang@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
1825 Eye Street Northwest
Washington, DC  20006
T:  202-420-2200

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on May 17, 2013, at San Diego, California.

Colleen Mensching

KFXL.064L

-1-