1  Joseph F. Jennings (State Bar No. 145,920)
   jjennings@knobbe.com
2  KNOBBE, MARTENS, OLSON & BEAR, LLP
   2040 Main Street
3  Fourteenth Floor
   Irvine, CA  92614
4  Phone: (949) 760-0404
   Facsimile: (949) 760-9502
5
   Phillip A. Bennett (State Bar No. 241,809)
6  phillip.bennett@knobbe.com
   KNOBBE, MARTENS, OLSON & BEAR, LLP
7  12790 El Camino Real
   San Diego, CA  92130
8  Phone: (858) 707-4000
   Facsimile: (858) 707-4001
9
   Attorneys for Plaintiff
10 KFx Medical Corporation

11

12

13              IN THE UNITED STATES DISTRICT COURT

14            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

15  _____

16  KFX MEDICAL CORPORATION, a          )  Case no. 11cv1698 DMS (BLM)
    Delaware corporation,                )
17                                       )  **DECLARATION OF TATE SCOTT IN**
           Plaintiff and Counterdefendant, )  **SUPPORT OF PLAINTIFF'S MOTION**
18                                       )  **FOR SUMMARY JUDGMENT OF NO**
           v.                            )  **INEQUITABLE CONDUCT IN**
19                                       )  **CONNECTION WITH U.S. PATENT**
    ARTHREX, INCORPORATED., a Delaware  )  **NO. 7,585,311**
20  corporation,                         )
                                         )
21         Defendant and Counterclaimant. )  Date:  September 10, 2012
                                         )  Time:  9:00 a.m.
22  _____ )  Courtroom 10, 2nd Floor
                                         )  Honorable Dana M. Sabraw

23

24

25

26

27

28

I, Tate Scott, declare and state as follows:

1.    I am the President and CEO of KFx Medical Corporation ("KFx") in this action.  I submit this Declaration in Support of KFx's Motion for Summary Judgment of No Inequitable Conduct in Connection with U.S. Patent No. 7,585,311.   The following statements are based on my personal knowledge unless otherwise indicated.

2.    I joined KFx, which was then called 3i Medical, on April 5, 2005 as CEO. During my career I have had over 30 years of experience in drugs, devices and combination products.  I have held positions with American Hospital Supply and Johnson & Johnson.  I have also been Chairman of Orquest, Inc. (Orthobiologics) through its sale in 2003 to DePuy, a Johnson and Johnson Company, President of Situs Corporation, President at ATI Corporation, President of Luther Medical Products (NASDAQ:LUTH), and currently on the board of Scott Laboratories.  I have attended countless surgeries and labs with surgeons over the years, including numerous rotator cuff procedures and labs.  I hold an AB and MBA degrees from Duke University.

3.    KFx was and is a privately held startup company headquartered in Carlsbad, California.  KFx was founded in 2003 with the goal of improving the quality and ease of a variety of orthopedic surgical procedures performed on the shoulder, knee, foot, and ankle by sports medicine surgeons.  By the time I joined the company, KFx had invented bone anchors and methods that enable tissue fixation with a minimum of suturing and manipulation with particular application to the repair of torn rotator cuffs.

4.    Rotator cuff repairs originally had been performed as "open" surgery, requiring large incisions to be made in the shoulder.   Advances in arthroscopic surgery allowed surgeons to begin performing rotator cuff repairs arthroscopically.    These arthroscopic procedures involve making several tiny incisions in the shoulder and inserting tube-like devices through the incisions to act as portals into the surgical site.  A small camera is inserted through one of the portals to allow the surgeon to view the surgical site on a television monitor.  Because arthroscopic repairs involve only tiny incisions in the shoulder,

///

1   they are far less traumatic and invasive than open repairs, and lead to shorter, less expensive

2   hospital stays and faster recoveries.

3          5.      Prior to the inventions of the '311 patent, arthroscopic techniques for repairing

4   torn rotator cuffs were difficult to execute and required exceptional skill and dexterity on the

5   part of the surgeon.   For example, because the arthroscopic procedures were performed

6   through tiny incisions in the shoulder, it was difficult to manipulate the sutures within the

7   surgical site.   Among other difficulties, this created difficulties in tying suture knots with

8   proper tension for ensuring that the repaired rotator cuff would remain in place and not re-

9   separate from the bone.

10         6.      Shortly before joining the company in 2005 and for the next several months

11  after I joined I became familiar with KFx's technology, including knotless products and

12  techniques for treatment of rotator cuff tears.   Certain of these products and techniques later

13  were referred to under the brand name SutureCross™.   This approach involved the use

14  "knotless" bone anchors in a "double row" rotator cuff repair procedure.   "Double row" refers

15  to the use of at least two points of attachment, typically a "medial" and "lateral" point of

16  attachment.

17         7.      The knotless "double row" procedure generally involved the use of a first bone

18  anchor inserted underneath the rotator cuff tendon (also referred to as "medial" placement)

19  and a second anchor was inserted beyond the edge of the tendon ("lateral" placement).   A

20  suture that was attached to the first bone anchor was passed through the tendon and over the

21  tendon toward the second bone anchor.   The suture was tensioned and attached to the second

22  bone anchor without tying knots.

23         8.      Upon joining the company I met with many potential investors to generate

24  interest in KFx and its technology.   I also met with many members of the relevant surgical

25  community to demonstrate KFx's technology, learn about the MD's perspective on anatomic

26  reattachment of the rotator cuff and generate interest in KFx and its products.   In 2005 this

27  included at least the following surgeons: Dr. JP Warner, Dr. James Esch, Dr. Peter Millett,

28  / / /

1  Dr. Ken Yamaguchi, Dr. Joseph Tauro, Dr. Russ Warren, Dr. Chris Behr, Dr. Eric Carson and

2  others.   Many of these surgeons had publications in the area of rotator cuff repair.

3       9.    Shortly after I joined the company KFx filed a patent application on June 1,

4  2005.  This application ultimately issued as the '311 patent in this case.  I and others at KFx

5  worked with counsel in connection with the filing of this application.  I was informed that

6  KFx had filed provisional applications prior to my joining the company and prior to this

7  patent application.   At the time I did not have any occasion to review those provisional

8  applications and I do not recall ever substantively reviewing the contents of the provisional

9  applications.

10       10.    Among the many materials I reviewed in 2005 when I joined the company was

11  an article by Dr. Peter Millett and others entitled "Mattress Double Anchor Footprint Repair:

12  A Novel, Arthroscopic Rotator Cuff Repair Technique", which I understand was published in

13  *Arthroscopy: The Journal of Arthroscopic and Related Surgery* in October 2004.  A copy of

14  the article is attached as Exhibit A.  This was one of a number of articles published at the time

15  that supported the concept of double row rotator cuff repairs to provide anatomic

16  reattachment of the rotator cuff.  I thought the KFx approach was a substantial improvement

17  over the approach described in this article.  The main drawback to the approach described in

18  the article was that it was a very complicated procedure involving suture passing and knot-

19  tying (all through a cannula while only able to watch the instruments on a TV-like screen)

20  that only the most expert surgeon could possibly perform.  I understood that relatively few

21  surgeons at the time were proficient with all-arthroscopic rotator cuff repairs, and expected

22  even fewer would be comfortable with this very complicated approach to arthroscopic rotator

23  cuff repairs, involving in many cases twice as many anchors, and at least twice as many

24  knots.

25       11.    As I mentioned above, Dr. Millett was one of the many surgeons I met with

26  after I joined KFx.  I recall my first meeting with him was in the summer of 2005 in Vail,

27  Colorado.

28  / / /

12.     As I recall, I was introduced to Dr. Millett by a member of the KFx Board of Directors, Dr. John Savarese.  I reached out to Dr. Millett to show him what KFx was doing and hopefully get him interested in our products and to help us move forward in the marketplace.  I was also interested in exploring the possibility of having him join our Scientific Advisory Board.  At that time, KFx's Scientific Advisory Board included a number of surgeons.  The Board was chaired by Dr. Joseph Tauro, a named inventor on the KFx '311 patent and one of the first surgeons to perform an arthroscopic rotator cuff repair and the first to publish in a peer-reviewed journal on 2-3 year follow-up data on the arthroscopic repair of a torn rotator cuff.

13.     During the course of my very pleasant conversation with Dr. Millett we talked about what he had done with arthroscopic rotator cuff repairs while at Harvard before he left to join the Steadman Clinic in Vail, Colorado.  As would be expected, his description was entirely consistent with what I had recalled reading in his paper.  After I described the KFx method for performing a double row approach without having to tie the many knots, Dr. Millett said he had not thought of doing his procedures in a knotless fashion.  He added that he wished he had.  He also told me that he had discussed his idea for a double row surgical method using a knot-tying approach with the Harvard Tech Transfer group and was told his method was "not patentable."

14.     The majority of our conversation was about the potential clinical advantages of an anatomic like rotator cuff repair and how the KFx SutureCross approach could simplify the procedure so that more surgeons could perform the procedure.  Dr. Millett expressed an interest in the KFx technology and we went on to set up several labs at his clinic where he and other surgeons used our products and provided feedback to us.  Dr. Millett also agreed to join our Scientific Advisory Board since he believed his Consulting Agreement with Arthrex did not preclude him from working products/procedures that Arthrex did not have.  However, after we announced in September 2006 that he would be joining our Scientific Advisory Board, Dr. Millett called and told me that Arthrex had objected.  Although Dr. Millett and I discussed our common understanding that Arthrex had no knotless double-row rotator cuff

product in competition with KFx.  I suggested and Dr. Miller agreed it would be best if we simply terminated the Scientific Advisory Board arrangement rather than cause any difficulties for Dr. Millett.

15.    It never crossed my mind to even consider saying anything about my conversation with Dr. Millett to the Patent Office.  It was my practice and experience in working in the medical device industry for the past thirty years that relevant background literature and patents would all be submitted to the Patent Office, but I had never submitted a description of a conversation.  As far as I understood, the Millett article either had been or would be submitted to Patent Office in connection with the KFx patent application.  I always understood the KFx knotless approach was a substantial advance over what Dr. Millett described in his article, especially after Dr. Millet told me he wished he had though of it.  Further, I did not believe Millett told me anything of substance about his work that was not already in the article.

16.    I understand that Arthrex has alleged that I intentionally deceived the Patent Office by not relaying to them something that was mentioned in my conversation with Dr. Millett.  This is not true.  The point I was interested in by approaching Dr. Millett was discussing the potential clinical outcomes that might be achieved with a double row approach.  I did not believe Millett told me anything of substance about his work that was not already in the article.  The fact of when Dr. Millett did his work described in the article was of no interest to me and I never even thought of mentioning it in relation to KFx's pending patent application.  I fail to see how anyone could read the article and not conclude he did the work well before the article was published.

17.    KFx was in discussions with Smith and Nephew regarding a possible license to the '311 patent following its issuance on September 8, 2009.  Smith and Nephew told us they had "prior art" and during one telephone call Smith and Nephew representatives raised three references to us.  These were: (1) the above-referenced Millett article from October 2004; (2) an abstract that Smith and Nephew said was presented in Quebec, which I later learned was presented at the 2004 Annual meeting of the American Orthopaedic Society for

Sports Medicine held June 24-27, 2004; and (3) an article titled "Arthroscopic Single-Row vs. Double-Row Suture Anchor Rotator Cuff Repair", which was published in *The American Journal of Sports Medicine*, Vol. 33, No. 12 (2005). The two "new" references were related to the October 2004 Article. And I later learned the abstract was specifically referenced in the Article. See Ex. A at 879, Note 10.

18.     Smith and Nephew never suggested to us that further information about when Dr. Millett performed the work described in the publications was relevant. The call involved patent lawyers for both Smith and Nephew and KFx.

19.     We told Smith and Nephew that I was familiar with the 2004 article and that it had already been submitted to the PTO. We also informed Smith and Nephew that we would look at the others and consider submitting them in KFx's pending applications. We promptly did exactly that. For example, on December 8, 2009, we submitted the two other references in our pending Application No. 549,105. A copy of the IDS is attached hereto as Exhibit B. The references at issue are Nos. 172 and 173.

20.     Our negotiations with Smith and Nephew continued. The above references never came up again. Ultimately we did not agree to a license with Smith and Nephew.

21.     I met with Dr. Millett again on or about January 27, 2011. At the time I knew that the KFx patent was being infringed and I understood from my earlier conversations with Dr. Millett that he could buttress the validity of the patent. I understood that if we could get further more detailed documentation that Dr. Millett's procedures were performed using a knot-tying method that this might be useful to us. (Of course, I knew that any such documentation would have to be redacted to comply with HIPAA.) During this conversation Dr. Millett confirmed again that his procedures were all done with knot tying as he published, but he was not interested in pulling together the archived documentation. He added that he would not even know where to begin to search for the documentation. He suggested that whatever documents might exist they likely would be in some boxes in a basement somewhere at Harvard and "contained nothing more than what was in the article." He also

/ / /

1  indicated that someone else had asked him for the documents and that he had refused them as

2  well.

3      22.     By about early March 2011, I expected we would be submitting an

4  Information Disclosure Statement ("IDS") in connection with the pending reexamination

5  initiated at the request of an anonymous third party on January 11, 2011 that was granted by

6  the Patent Office on or about February 16, 2011.  In connection with that, I expected that I

7  would be submitting a short statement to the Patent Office concerning my conversation with

8  Dr. Millett.  I had never considered the issue before.  I also expected that we would submit

9  the two additional Millett references brought to our attention by Smith and Nephew in 2009

10 after the '311 patent issued, which is exactly what we did back in December 2009.  Before an

11 IDS was filed, however, we received the Notice of Intent to Issue the Reexamination

12 Certificate.

13     23.     We submitted the IDS on April 12, 2011.  This included my statement, a copy

14 of which is attached hereto as Exhibit C.  The statement provided as follows:

> An Information Disclosure Statement was filed on January 30, 2007 in the
> application that issued as U.S. Patent No. 7,585,311.  That Information Disclosure
> Statement included as item #147 an article authored by Peter Millett et al., entitled
> "Mattress double anchor footprint repair: a novel, arthroscopic rotator cuff repair
> technique," *Arthroscopy: The Journal of Arthroscopic and Related Surgery*,
> 20(8):875-879 (2004).

> An Information Disclosure Statement is being filed herewith in the above-
> identified re-examination that includes an abstract of which Peter Millett is a co-
> author (Mazzocca et al., Arthroscopic Single versus Double Row Suture Anchor
> Rotator Cuff Repair, abstract of presentation made on June 25, 2004 at 2004
> Annual Meeting of the American Orthopaedic Society for Sports Medicine in
> Quebec, Canada, publication date unknown) and another article of which Peter
> Millett is a co-author (Mazzocca et al., "Arthroscopic Single-Row Versus Double-
> Row Suture Anchor Rotator Cuff Repair," *The American Journal of Sports
> Medicine*, 33:1861 (2005)).

> I had a conversation with Peter Millett during which he told me that the
> procedures referenced in the 2004 article had been performed in the two years
> preceding publication of the article.

> He also confirmed that all of the procedures were performed by tying
> knots as described in the 2004 article.

24.     I understand the Patent Office refused to consider the IDS because it came after the Notice of Intent to Issue the Reexamination Certificate.   We thereafter filed a petition to have the Patent Office consider it because the IDS was filed within the two-month deadline specified in the Patent Office regulations, i.e. within two months of the February 16, 2012 Order Granting the Request for Ex Parte Reexamination.   At the time I was not familiar with these rules relating to the timing of an IDS or this apparent conflict in the rules.   A copy of the petition is attached hereto as Ex. D.   The Patent Office denied that petition.   That decision is attached hereto as Exhibit E.

25.     I understand that Arthrex has alleged that I intentionally delayed the filing of my statement included in the reexamination IDS in order to deceive the Patent Office into allowing the '311 patent reexamination to issue.   This is not true.  I have never done anything or failed to do anything to deceive or attempt to deceive the Patent Office.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 11, 2012 in Carlsbad, California.

_____
            Tate Scott

**PROOF OF SERVICE**

I hereby certify that on July 13, 2012, I caused the **DECLARATION OF TATE SCOTT IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENT NO. 7,585,311** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following person(s):

Michael A. Tomasulo
tomasulom@docksteinshapiro.com
DICKSTEIN SHAPIRO LLP
2049 Century Park East, Suite 700
Los Angeles, CA  90067
T:  310-772-8300

Charles W. Saber
saberc@dicksteinshapiro.com
Salvatore P. Tamburo
tamburos@dicksteinshapiro.com
Megan S. Woodworth
woodworthm@dicksteinshapiro.com
S. Gregory Herrman
herrmanG@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
1825 Eye Street Northwest
Washington, DC  20006
T:  202-420-2200

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on July 13, 2012, at San Diego, California.

Colleen Mensching

KFXL.064L
13520914_1
062612

### TABLE OF EXHIBITS

**Page No.**

Exhibit A........................................................................................1

Exhibit B........................................................................................6

Exhibit C.......................................................................................14

Exhibit D.......................................................................................16

Exhibit E.......................................................................................35

# EXHIBIT A

Technical Note

# Mattress Double Anchor Footprint Repair: A Novel, Arthroscopic Rotator Cuff Repair Technique

Peter J. Millett, M.D., M.Sc., Augustus Mazzocca, M.D., and Carlos A. Guanche, M.D.

**Abstract:** In an effort to increase the immediate strength of a rotator cuff repair and to simulate the standard open reconstruction with its effective suture fixation, we have developed a novel technique for suture anchor reconstruction of the rotator cuff. The technique, termed mattress double anchor (MDA), is simple and adaptable. It makes use of 2 suture anchors that are placed independently and then connected by a suture loop. The technique produces a repair construct that distributes the stress across 2 anchors. The method also restores a large surface area for healing between the rotator cuff and the tuberosity. **Key Words:** Suture anchor—Rotator cuff repair—Rotator cuff footprint—Double row.

The surgical approach to the rotator cuff has evolved over the last several years and there is great interest in arthroscopic repair of rotator cuff tears. There are many techniques that have been developed to improve the initial strength of the repair. By increasing the initial repair strength, earlier and more aggressive rehabilitation can be allowed. Immobilization is decreased, which hastens recovery and return of function. Concerns about failure of fixation at the cuff-bone and the cuff-suture interface often lead surgeons to limit early motion.

The weak links in rotator cuff repair are at the cuff-suture interface and at the suture-bone interface. Several techniques have been developed to address these issues. Historically, the most notable are (1) the transosseous

suture configuration, which compresses the cuff onto the tuberosity, and (2) the modified Mason-Allen suture grasping technique, which maximizes resistance to suture-tendon pullout.[1] In addition to strength, the technique of the repair has also been shown to affect the surface area of the repair, which undoubtedly affects the potential for healing between the cuff tendon and the underlying bone.[2] The footprint of the rotator cuff on the tuberosity is quite broad[3] at approximately 15 mm, and double row fixation has been advocated as a means to restore this surface area for healing.[4,5]

Most modern arthroscopic repair techniques have used suture anchors because of the technical difficulties with transosseous techniques.[6-8] Furthermore, most of the arthroscopic techniques rely on simple sutures through the rotator cuff tendon, which are undoubtedly a weak link.

In an effort to address many of these issues, we have developed a novel repair strategy that closely approximates both the transosseous suture configuration and the modified Mason-Allen tissue-grasping technique in an arthroscopic fashion. The technique simplifies suture management and eliminates the need to pass sutures multiple times. The purpose of this article is to describe the technique that we have termed the mattress double anchor technique (MDA).

*From the Harvard Shoulder Service, Harvard Medical School, Brigham & Women's Hospital, Boston, Massachusetts (P.J.M.); the Shoulder Service, University of Connecticut, Farmington, Connecticut (A.M.); and the Southern California Orthopaedic Institute, Van Nuys, California (C.A.G.), U.S.A.*

*Address correspondence and reprint requests to Peter J. Millett, M.D., M.Sc., Harvard Shoulder Service/Sports Medicine, Brigham & Women's Hospital, 75 Francis St, Boston, MA 02115, U.S.A. E-mail: pmillett@partners.org*

*© 2004 by the Arthroscopy Association of North America*
*0749-8063/04/2008-4344$30.00/0*
*doi:10.1016/j.arthro.2004.07.015*

**EXHIBIT A**
**PAGE 1**   KFX0015066

876                                                    P. J. MILLETT ET AL.



FIGURE 1.   The medial anchor is placed in the medial border of the footprint at the articular margin and the sutures are passed in a mattress configuration so that there are anterior and posterior limbs. The sutures should be passed through the tendon 10 to 15 mm medial to the edge so that the desired amount of tendon will be repaired over the footprint.

## TECHNIQUE

The standard approaches are used with respect to patient selection and decision-making regarding the possibility of an arthroscopic repair.[6-8] Once the decision is made to perform this type of repair, the surgeon should perform a thorough debridement of the rotator cuff, prepare the tuberosity by removing soft tissues, and plan the repair.

Following debridement of the edges of the cuff from an intra-articular and extra-articular position, a thorough bursectomy is performed. An acromioplasty is performed as needed. The rotator cuff footprint is re-established by debriding the greater tuberosity down to bleeding corticocancellous bone.

No attempt is made to decorticate the area or to create a trough so as to avoid weakening the fixation points for the anchors.

The first anchor, termed the medial anchor, is placed at the articular margin. Tingart et al.[9] have recently shown



medial

lateral

FIGURE 2.   Illustration showing how the suture anchors are linked with a single suture. The lateral anchor must be preloaded with a loop of suture before insertion.



articular margin. This area has the best bone quality of the tuberosity and ensures that the medial insertion of the rotator cuff will be re-established. This orientation of the anchor allows the sutures to be passed so that there will be anterior and posterior suture limbs that will slide easily (Fig 1). Suture passage through the rotator cuff is accomplished using any one of a variety of standard techniques.

The second anchor, termed the lateral anchor, is placed about 1 cm lateral to the first anchor. This anchor can be either a 5.0- or 6.5-mm Biocorkscrew, depending on the bone quality. This anchor should be inserted with a loop of suture across the eyelet, rather than 2 single limbs. The sutures should be preloaded in this configuration before insertion (Fig 2). One of the loops will be used to pass a suture from the medial anchor through the eyelet of the lateral in situ anchor (Fig 3). It is essential to assure that the suture is passed

**FIGURE 3.** The lateral anchor is placed laterally on the tuberosity. One limb from the medial suture is pulled through the loop and then shuttled through the eyelet of the lateral anchor.

that this bone has the best quality with the highest bone mineral density.[9] The medial anchor is a 5.0-mm Biocorkscrew anchor (Arthrex, Naples, FL), although in cases where bone quality is an issue, a 6.5-mm Biocorkscrew anchor may be used. It is imperative to use an anchor with a suture eyelet because the technique requires that the sutures slide easily through the eyelets and requires the passage of a suture through the eyelet of the lateral anchor after the anchor has been inserted (in situ). An anchor with this type of eyelet design is essential. A metal eyelet will not permit passage of the sutures in situ and, furthermore, will not allow the sutures to slide easily, resulting in abrasion and possible breakage. The medial anchor should be loaded with 2 sutures (No. 2 Fiberwire, Arthrex) in order to repair the rotator cuff tendon with the use of a tissue-grasping technique.

As the medial anchor is placed, care is taken to align the eyelet of the anchor perpendicular to the



**FIGURE 4.** The suture linked between 2 anchors is then secured using standard arthroscopic knot tying techniques. The tendon is compressed onto the tuberosity and a broad footprint is recreated. In the coronal view, the configuration is similar to that achieved with transosseous techniques.

878                                      *P. J. MILLETT ET AL.*



FIGURE 5.   An alternative suture configuration with interlocking of the sutures to prevent cutout from the tendon.

in a medial-to-lateral direction through the lateral anchor, to avoid twisting the suture in the lateral anchor eyelet, because this would inhibit sliding and potentially compromise the repair. Knot tying is then accomplished with standard sliding locking knot techniques. This creates a mattress suture pattern between the 2 anchors that compresses the underlying rotator cuff, hence the term mattress double anchor (Fig 4).

One set of 2 anchors is used per centimeter.[7] The spacing of multiple anchors should be carefully planned to avoid overcrowding of the anchors in the tuberosity.

Alternative suture configurations can be used where a second suture is tied in a mattress configuration medially, where the sutures are oriented in a suture-grasping configuration similar to that described by P. St. Pierre (personal communication, October 2003) for a single-anchor technique (Fig 5), or where the sutures criss-cross between 2 sets of anchors creating maximum compression over a large surface area (Fig 6).

## BIOMECHANICAL AND CLINICAL RESULTS

Biomechanical testing has been performed and shows this technique to be as strong as traditional single-row techniques with better restoration of surface area and less chance for bone failure.[10] It has strength similar to other double-row anchor patterns with fewer passes of suture through the rotator cuff. The authors have used the technique clinically in more than 50 cases without any adverse effects.

## DISCUSSION

The MDA technique simulates a traditional transosseous repair with a tendon-grasping suture configura-



FIGURE 6.   The complex criss-cross configuration where sutures from 4 separate anchors can be interlocked to maximize tendon compression and repair site surface area.

KFX0015069

tion, yet it can be performed arthroscopically. The technique allows the reapproximation of the rotator cuff tendon solidly onto the greater tuberosity while increasing the area available for healing. Furthermore, the cross-linking of the anchors compresses the rotator cuff, decreases the risk of bone failure, minimizes the number of passes of sutures through the tendon, and eliminates prominent edges to the cuff. It seems likely that the construct decreases the chances of bone failure because of the increased number of fixation points.

The strength of the MDA and its restoration of the rotator cuff footprint are excellent. The MDA repair is as strong as traditional suture anchor techniques with better restoration of the footprint. The MDA technique is reproducible and easily performed by surgeons proficient in arthroscopic rotator cuff repairs. While the MDA technique is adaptable and can be carried out in different suture configurations and in open procedures, there are certain tears, such as chronic retracted tears, that may be better treated with single-row fixation or margin convergence to avoid excess tension on the repair.

In summary, the MDA technique is a novel arthroscopic rotator cuff repair strategy that restores the anatomy and allows the creation of a tendon-grasping and a bone-grasping construct. The surface area for healing is maximized and early stability is achieved. The technique depends on an anchor that has suture eyelets that allow suture passage in situ and also allows excellent suture sliding. The MDA technique minimizes the number of suture passes through the rotator cuff tissue. We find the technique to be repro-ducible and simple to use, while optimizing the initial strength and geometry of the rotator cuff repair construct.

## REFERENCES

1. Gerber C, Schneeberger A, Beck M, Schlegel U. Mechanical strength of repairs of the rotator cuff. *J Bone Joint Surg Br* 1994;76:371-380.
2. Apreleva M, Ozbaydar M, Fitzgibbons PG, Warner JJ. Rotator cuff tears: The effect of the reconstruction method on three-dimensional repair site area. *Arthroscopy* 2002;18:519-526.
3. Dugas JR, Campbell DA, Warren RF, Robie BH, Millett PJ. Anatomy and dimensions of rotator cuff insertions. *J Shoulder Elbow Surg* 2002;11:498-503.
4. Lo IK, Burkhart SS. Double-row arthroscopic rotator cuff repair: Re-establishing the footprint of the rotator cuff. *Arthroscopy* 2003;19:1035-1042.
5. Waltrip RL, Zheng N, Dugas JR, Andrews JR. Rotator cuff repair. A biomechanical comparison of three techniques. *Am J Sports Med* 2003;31:493-497.
6. Snyder SJ. Technique of arthroscopic rotator cuff repair using implantable 4-mm Revo suture anchors, suture shuttle relays, and No. 2 nonabsorbable mattress sutures. *Orthop Clin North Am* 1997;28:267-275.
7. Gartsman GM, Khan M, Hammerman SM. Arthroscopic repair of full-thickness tears of the rotator cuff. *J Bone Joint Surg Am* 1998;80:832-840.
8. Tauro JC. Arthroscopic rotator cuff repair: Analysis of technique and results at 2 and 3-year follow-up. *Arthroscopy* 1998;14:45-51.
9. Tingart MJ, Apreleva M, Zurakowski D, Warner JJ. Pullout strength of suture anchors used in rotator cuff repair. *J Bone Joint Surg Am* 2003;85:2190-2198.
10. Mazzocca AD, Millett PJ, Santangelo SA, Arciero RA. Arthroscopic single versus double row suture anchor rotator cuff repair. Presented at the American Orthopaedic Society for Sports Medicine Annual Meeting, Quebec City, Canada, 2004.

# EXHIBIT B

Docket No.: KFX.003DV1                                      **Customer No. 20995**

---

### INFORMATION DISCLOSURE STATEMENT

| | | |
|---|---|---|
| Applicant | : | Green et al. |
| App. No | : | 12/549,105 |
| Filed | : | August 27, 2009 |
| For | : | SYSTEM AND METHOD FOR ATTACHING SOFT TISSUE TO BONE |
| Examiner | : | Unknown |
| Art Unit | : | 3773 |
| Conf No. | : | 8338 |

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

 Enclosed for filing in the above-identified application is a PTO/SB/08 Equivalent listing 178 references; 169 of these references are of record in U.S. patent application No. 11/143,007 filed June 1, 2005, which is relied upon for an earlier filing date under 35 U.S.C. § 120. Accordingly, copies of the references are not submitted pursuant to 37 C.F.R. § 1.98(d), with the exception of Reference numbers 172 and 173 which are new and are submitted herewith.

 This Information Disclosure Statement is being filed before the receipt of a first Office Action on the merits, and presumably no fee is required.  If a first Office Action on the merits was mailed before the mailing date of this Statement, the Commissioner is authorized to charge the fee set forth in 37 C.F.R. § 1.17(p) to Deposit Account No. 11-1410.

        Respectfully submitted,

        KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: _12-8-09_     By: _____

        Ryan E. Melnick
        Registration No. 58,621
        Attorney of Record
        Customer No. 20995
        (619) 235-8550

8144174/stk  111909

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| | Application No. | 12/549105 |
| | Filing Date | August 27, 2009 |
| | First Named Inventor | Green et al. |
| | Art Unit | 3773 |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 1 OF 7 | Attorney Docket No. | KFX.003DV1 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example:  1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | Re. 36,289 | 08-31-1999 | Le et al. | |
| | 2 | 3,623,192 | 05-05-1969 | Button | |
| | 3 | 4,210,148 | 07-01-1980 | Stivala | |
| | 4 | 4,532,926 | 08-06-1985 | O'Holla | |
| | 5 | 4,796,612 | 01-10-1989 | Reese | |
| | 6 | 4,898,156 | 02-06-1990 | Gatturna et al. | |
| | 7 | 5,013,316 | 05-07-1991 | Goble et al. | |
| | 8 | 5,192,303 | 03-09-1993 | Gatturna et al. | |
| | 9 | 5,219,359 | 06-15-1993 | McQuilkin et al. | |
| | 10 | 5,224,946 | 07-06-1993 | Hayhurst et al. | |
| | 11 | 5,269,784 | 12-14-1993 | Mast | |
| | 12 | 5,336,240 | 08-09-1994 | Tornier et al. | |
| | 13 | 5,372,604 | 12-13-1994 | Trott | |
| | 14 | 5,417,712 | 05-23-1995 | Whittaker et al. | |
| | 15 | 5,423,858 | 06-13-1995 | Bolanos et al. | |
| | 16 | 5,423,860 | 06-13-1995 | Lizardi et al. | |
| | 17 | 5,472,452 | 12-05-1995 | Trott | |
| | 18 | 5,478,353 | 12-26-1995 | Yoon | |
| | 19 | 5,500,001 | 03-19-1996 | Trott | |
| | 20 | 5,527,341 | 06-18-1996 | Gogolewski et al. | |
| | 21 | 5,527,343 | 06-18-1996 | Bonutti | |
| | 22 | 5,543,012 | 08-06-1996 | Watson et al. | |
| | 23 | 5,545,180 | 08-13-1996 | Le et al. | |
| | 24 | 5,569,306 | 10-29-1996 | Thal, R. | |
| | 25 | 5,575,801 | 11-19-1996 | Habermeyer et al. | |
| | 26 | 5,578,057 | 11-26-1996 | Wenstrom, Jr. | |
| | 27 | 5,584,835 | 12-17-1996 | Greenfield, J. | |
| | 28 | 5,591,207 | 01-07-1997 | Coleman | |
| | 29 | 5,634,926 | 06-03-1997 | Jobe | |

| Examiner Signature | Date Considered |
|---|---|
| | |

*Examiner:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| | |
|---|---|
| | Application No. — 12/549105 |
| **INFORMATION DISCLOSURE** | Filing Date — August 27, 2009 |
| **STATEMENT BY APPLICANT** | First Named Inventor — Green et al. |
| | Art Unit — 3773 |
| *(Multiple sheets used when necessary)* | Examiner — Unknown |
| SHEET 2 OF 7 | Attorney Docket No. — KFX.003DVI |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 30 | 5,683,419 | 11-04-1997 | Thal | |
| | 31 | 5,690,676 | 11-25-1997 | DiPoto et al. | |
| | 32 | 5,697,950 | 12-16-1997 | Fucci et al. | |
| | 33 | 5,720,765 | 02-24-1998 | Thal | |
| | 34 | 5,725,557 | 03-10-1998 | Gatturna et al. | |
| | 35 | 5,769,894 | 06-23-1998 | Ferragamo | |
| | 36 | 5,800,436 | 09-01-1998 | Lerch | |
| | 37 | 5,814,072 | 09-29-1998 | Bonutti | |
| | 38 | 5,891,168 | 04-06-1999 | Thal | |
| | 39 | 5,948,001 | 09-07-1999 | Larsen | |
| | 40 | 5,948,002 | 09-07-1999 | Bonutti | |
| | 41 | 5,951,590 | 09-14-1999 | Goldfarb | |
| | 42 | 5,964,769 | 10-12-1999 | Wagner et al. | |
| | 43 | 6,010,525 | 01-04-2000 | Bonutti et al. | |
| | 44 | 6,013,077 | 01-11-2000 | Harwin | |
| | 45 | 6,013,083 | 01-11-2000 | Bennett | |
| | 46 | 6,027,523 | 02-22-2000 | Schmieding | |
| | 47 | 6,045,573 | 04-04-2000 | Wenstrom, Jr. et al. | |
| | 48 | 6,056,751 | 05-02-2000 | Fenton, Jr. | |
| | 49 | 6,063,106 | 05-16-2000 | Gibson | |
| | 50 | 6,093,201 | 07-25-2000 | Cooper et al. | |
| | 51 | 6,093,301 | 07-25-2000 | Van Atta | |
| | 52 | 6,099,547 | 08-08-2000 | Gellman et al. | |
| | 53 | 6,110,207 | 08-29-2000 | Eichhorn et al. | |
| | 54 | 6,117,160 | 09-12-2000 | Bonutti | |
| | 55 | 6,117,161 | 09-12-2000 | Li et al. | |
| | 56 | 6,126,677 | 10-03-2000 | Ganaja et al. | |
| | 57 | 6,149,669 | 11-21-2000 | Li | |
| | 58 | 6,200,330 | 03-13-2001 | Benderev et al. | |

| Examiner Signature | | Date Considered |
|---|---|---|
| | | |

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 12/549105 |
|---|---|---|
| | Filing Date | August 27, 2009 |
| | First Named Inventor | Green et al. |
| | Art Unit | 3773 |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 3 OF 7 | Attorney Docket No. | KFX.003DV1 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 59 | 6,241,749 B1 | 06-05-2001 | Rayhanabad | |
| | 60 | 6,245,082 B1 | 06-12-2001 | Gellman et al. | |
| | 61 | 6,280,474 B1 | 08-28-2001 | Cassidy et al. | |
| | 62 | 6,293,961 B2 | 09-25-2001 | Schwartz et al. | |
| | 63 | 6,296,659 | 10-02-2001 | Foerster | |
| | 64 | 6,306,159 B1 | 10-23-2001 | Schwartz et al. | |
| | 65 | 6,319,271 B1 | 11-20-2001 | Schwartz et al. | |
| | 66 | 6,328,758 B1 | 12-11-2001 | Tornier et al. | |
| | 67 | 6,391,030 B1 | 05-21-2002 | Wagner et al. | |
| | 68 | 6,423,065 B2 | 07-23-2002 | Ferree | |
| | 69 | 6,432,123 B2 | 08-13-2002 | Schwartz et al. | |
| | 70 | 6,464,713 B2 | 10-15-2002 | Bonutti | |
| | 71 | 6,491,714 B1 | 12-10-2002 | Bennett | |
| | 72 | 6,514,274 B1 | 02-04-2003 | Boucher et al. | |
| | 73 | 6,518,200 | 02-11-2003 | Lin | |
| | 74 | 6,520,980 B1 | 02-18-2003 | Foerster | |
| | 75 | 6,524,317 B1 | 02-25-2003 | Ritchart et al. | |
| | 76 | 6,527,794 | 03-04-2003 | McDevitt et al. | |
| | 77 | 6,533,795 B1 | 03-18-2003 | Tran et al. | |
| | 78 | 6,540,770 B1 | 04-01-2003 | Tornier et al. | |
| | 79 | 6,547,800 B2 | 04-15-2003 | Foerster et al. | |
| | 80 | 6,551,330 B1 | 04-22-2003 | Bain et al. | |
| | 81 | 6,554,852 B1 | 04-29-2003 | Oberlander | |
| | 82 | 6,569,187 B1 | 05-27-2003 | Bonutti et al. | |
| | 83 | 6,575,987 B2 | 06-10-2003 | Gellman et al. | |
| | 84 | 6,582,453 B1 | 06-24-2003 | Tran et al. | |
| | 85 | 6,585,730 B1 | 07-1-2003 | Foerster | |
| | 86 | 6,660,023 | 12-09-2003 | McDevitt et al. | |
| | 87 | 6,605,096 B1 | 08-12-2003 | Ritchart | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T¹ - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| | |
|---|---|
| INFORMATION DISCLOSURE | Application No. — 12/549105 |
| STATEMENT BY APPLICANT | Filing Date — August 27, 2009 |
| | First Named Inventor — Green et al. |
| | Art Unit — 3773 |
| *(Multiple sheets used when necessary)* | Examiner — Unknown |
| SHEET 4 OF 7 | Attorney Docket No. — KFX.003DV1 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example:  1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 88 | 6,635,073 B2 | 10-21-2003 | Bonutti | |
| | 89 | 6,638,279 B2 | 10-28-2003 | Bonutti | |
| | 90 | 6,652,561 B1 | 11-25-2003 | Tran | |
| | 91 | 6,660,008 B1 | 12-09-2003 | Foerster et al. | |
| | 92 | 6,673,094 | 01-06-2004 | McDevitt et al. | |
| | 93 | 6,712,830 | 03-30-2004 | Vermon S. Esplin | |
| | 94 | 6,770,076 B2 | 08-03-2004 | Foerster | |
| | 95 | 6,780,198 B1 | 08-24-2004 | Gregoire et al. | |
| | 96 | 6,855,157 B2 | 02-15-2005 | Foerster et al. | |
| | 97 | 6,984,241 B2 | 01-10-2006 | Lubbers et al. | |
| | 98 | 6,986,781 B2 | 01-17-2006 | Smith | |
| | 99 | 7,041,120 | 05-09-2006 | Li et al. | |
| | 100 | 7,056,333 B2 | 06-06-2006 | Walshe | |
| | 101 | 7,081,126 | 07-25-2006 | McDevitt et al. | |
| | 102 | 7,090,690 B2 | 08-15-2006 | Foerster et al. | |
| | 103 | 7,083,638 B2 | 08-01-2006 | Foerster | |
| | 104 | 7,144,415 | 12-05-2006 | Del Rio et al. | |
| | 105 | 7,153,312 B1 | 12-26-2006 | Torrie et al. | |
| | 106 | 7,156,864 B2 | 01-02-2007 | Lintner | |
| | 107 | 7,232,455 | 06-19-2007 | Pedlick et al. | |
| | 108 | 7,235,100 | 06-26-2007 | Martinek | |
| | 109 | 2001/0008971 A1 | 07-19-2001 | Schwartz et al. | |
| | 110 | 2001/0018597 A1 | 08-30-2001 | Gellman et al. | |
| | 111 | 2001/0051815 A1 | 12-13-2001 | Esplin | |
| | 112 | 2001/0051816 A1 | 12-13-2001 | Enzerink et al. | |
| | 113 | 2002/0019649 A1 | 02-14-2002 | Sikora et al. | |
| | 114 | 2002/0029066 A1 | 03-07-2002 | Foerster | |
| | 115 | 2002/0077631 A1 | 06-20-2002 | Lubbers et al. | |
| | 116 | 2002/0111653 A1 | 08-15-2002 | Foerster | |

| Examiner Signature | Date Considered |
|---|---|
| | |

**\*Examiner:**  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 12/549105 |
|---|---|---|
| | Filing Date | August 27, 2009 |
| | First Named Inventor | Green et al. |
| | Art Unit | 3773 |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 5 OF 7 | Attorney Docket No. | KFX.003DV1 |

## U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example:  1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 117 | 2002/0128684 A1 | 09-12-2002 | Foerster | |
| | 118 | 2002/0169478 A1 | 11-14-2002 | Schwartz et al. | |
| | 119 | 2002/0188305 A1 | 12-12-2003 | Foerster et al. | |
| | 120 | 2003/0018358 A1 | 01-23-2003 | Saadat | |
| | 121 | 2003/0088270 A1 | 05-08-2003 | Lubbers et al. | |
| | 122 | 2003/0105591 | 06-05-2003 | Hagiwara | |
| | 123 | 2003/0149448 A1 | 08-07-2003 | Foerster et al. | |
| | 124 | 2003/0167072 A1 | 09-04-2003 | Oberlander | |
| | 125 | 2003/0181925 A1 | 09-25-2003 | Bain et al. | |
| | 126 | 2003/0191498 A1 | 10-09-2003 | Foerster et al. | |
| | 127 | 2003/0195528 A1 | 10-16-2003 | Ritchart | |
| | 128 | 2003/0195563 A1 | 10-16-2003 | Foerster | |
| | 129 | 2003/0195564 A1 | 10-16-2003 | Tran et al. | |
| | 130 | 2003/0204204 A1 | 10-30-2003 | Bonutti | |
| | 131 | 2003/0236555 A1 | 12-25-2003 | Thornes | |
| | 132 | 2004/0002735 A1 | 01-01-2004 | Lizardi et al. | |
| | 133 | 2004/0024420 A1 | 02-05-2004 | Lubbers et al. | |
| | 134 | 2004/0044366 A1 | 03-04-2004 | Bonutti et al. | |
| | 135 | 2004/0102779 A1 | 05-27-2004 | Nesper et al. | |
| | 136 | 2004/0116961 A1 | 06-17-2004 | Nesper et al. | |
| | 137 | 2004/0133238 A1 | 07-08-2004 | Cerier | |
| | 138 | 2004/0193217 A1 | 09-30-2004 | Lubbers et al. | |
| | 139 | 2004/0225325 A1 | 11-11-2004 | Bonutti | |
| | 140 | 2004/0243178 A1 | 12-02-2004 | Haut et al. | |
| | 141 | 2004/0254609 A1 | 12-16-2004 | Esplin | |
| | 142 | 2004/0267317 A1 | 12-30-2004 | Higgins et al. | |
| | 143 | 2005/0027307 A1 | 02-03-2005 | Schwartz et al. | |
| | 144 | 2005/005502 A1 | 03-10-2005 | Lombardo et al. | |
| | 145 | 2005/0240199 A1 | 10-27-2005 | Martinek et al. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 12/549105 |
|---|---|---|
| | Filing Date | August 27, 2009 |
| | First Named Inventor | Green et al. |
| | Art Unit | 3773 |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 6 OF 7 | Attorney Docket No. | KFX.003DV1 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 146 | 2005/0240226 A1 | 10-27-2005 | Foerster et al. | |
| | 147 | 2005/0245932 A1 | 11-03-2005 | Fanton et al. | |
| | 148 | 2005/0288682 A1 | 12-29-2005 | Howe | |
| | 149 | 2005/283158 A1 | 12-22-2005 | West | Para 0042, 0043, 0047, 0048 |
| | 150 | 2006/0106423 A1 | 05-18-2006 | Weisel et al. | |
| | 151 | 2006/0116719 A1 | 06-01-2006 | Martinek | |
| | 152 | 2006/0178702 A1 | 08-10-2006 | Pierce et al. | |
| | 153 | 2006/0235413 A1 | 10-19-2006 | Denham et al. | |
| | 154 | 2006/0271060 A1 | 11-30-2006 | Gordon | |
| | 155 | 2006/0271105 A1 | 11-30-2006 | Foerster et al. | |
| | 156 | 2006/0293710 A1 | 12-28-2006 | Foerster et al. | |
| | 157 | 2007/0142861 | 06-21-2007 | Burkhart | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Foreign Patent Document Country Code-Number-Kind Code Example: JP 1234567 A1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |
|---|---|---|---|---|---|---|
| | 158 | SU 1600713 | 10-23-1990 | Don Med Inst. | | |
| | 159 | WO 2001/54586 A1 | 08-02-2001 | Shoulderon Ltd. | Pg 9, lines 1-11; Pg 9 lines 23-27; Pg 10, lines 4-14; Figs 3-5 | |
| | 160 | WO 2001/67962 A2 | 09-20-2001 | Rösch | | |
| | 161 | WO 2002/11630 A | 02-14-2002 | Cleveland Clinic Foundation | | |
| | 162 | WO 2002/21998 A2 | 03-21-2002 | Axya Medical Inc. | Para 0033, 0037, 0043 | |
| | 163 | WO 2003/065904 A1 | 08-14-2003 | Opus Medical, Inc. | | |
| | 164 | WO 2004/062506 A1 | 07-29-2004 | Linvatec Biomaterials OY | | |
| | 165 | WO 2005/112786 A2 | 12-01-2005 | Ethicon Endo-Surgery, Inc. | | |
| | 166 | WO 2005/112788 A2 | 12-01-2005 | Arthrocare Corporation | | |
| | 167 | WO 2006/060035 A2 | 06-08-2006 | 3I Medical Corp. | | |
| | 168 | WO 2006/067548 A1 | 06-29-2006 | Arthrex, Inc. | | |
| | 169 | WO 2006/128092 A2 | 11-30-2006 | Arthrocare Corporation | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 12/549105 |
|---|---|---|---|
| | | Filing Date | August 27, 2009 |
| | | First Named Inventor | Green et al. |
| | | Art Unit | 3773 |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown |
| SHEET 7 OF 7 | | Attorney Docket No. | KFX.003DV1 |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Foreign Patent Document Country Code-Number-Kind Code Example:   JP 1234567 A1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |
|---|---|---|---|---|---|---|
| | 170 | WO 2007/084714 A2 | 07-26-2007 | Kim | Para 0031-0033; Para 0045; Figs 2, 6 | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |
|---|---|---|---|
| | 171 | Lo et al., Double-row arthroscopic rotator cuff repair: re-establishing the footprint of the rotator cuff, *Arthroscopy: The Journal of Arthroscopic and Related Surgery,* 19(9):1035-1042 (2003). | |
| | 172 | Mazzocca et al., "Arthroscopic Single-Row Versus Double-Row Suture Anchor Rotator Cuff Repair," *The American Journal of Sports Medicine,* 33:1861 (2005). | |
| | 173 | Mazzocca et al., Arthroscopic Single versus Double Row Suture Anchor Rotator Cuff Repair, abstract of presentation made on June 25, 2004 at 2004 Annual Meeting of the American Orthopaedic Society for Sports Medicine in Quebec, Canada, publication date unknown. | |
| | 174 | Millett et al., Mattress double anchor footprint repair: a novel, arthroscopic rotator cuff repair technique, *Arthroscopy: The Journal of Arthroscopic and Related Surgery,* 20(8):875-879 (2004). | |
| | 175 | Waltrip, Robert L., "A Biomechanical Comparison of Three Techniques," *The American Journal of Sports Medicine,* Vol. 31, No. 4, pp. 493-497. | |
| | 176 | International Search Report and Written Opinion of the International Searching Authority dated September 6, 2006 from PCT/US2005/019454. | |
| | 177 | International Preliminary Report on Patentability dated January 25, 2007 from PCT/US2005/019454. | |
| | 178 | PCT, Invitation to Pay Additional Fees, mailed May 13, 2008, for International Application No. PCT/US2007/083662. | |

8143591/stk
111909

| Examiner Signature | | Date Considered | |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

# EXHIBIT C

Docket No.: KFX.003RX                                           **Customer No. 20995**

---

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant | : | Michael L. Green, et al. |
| Re-exam. No. | : | 90/011430 |
| Filed | : | January 11, 2011 |
| For | : | SYSTEM AND METHOD FOR ATTACHING SOFT TISSUE TO BONE |
| Examiner | : | Clark, Jeanne Marie |
| Art Unit | : | 3993 |
| Conf No. | : | 1162 |

### STATEMENT OF TATE SCOTT

Commissioner of Patent
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

I, Tate Scott, declare and state that:

1.      I am CEO of KFx Medical Corp., the assignee of U.S. Patent No. 7,585,311 upon which the above-identified re-examination is based.

2.      An Information Disclosure Statement was filed on January 30, 2007 in the application that issued as U.S. Patent No. 7,585,311. That Information Disclosure Statement included as item #147 an article authored by Peter Millett et al., entitled "Mattress double anchor footprint repair: a novel, arthroscopic rotator cuff repair technique," *Arthroscopy: The Journal of Arthroscopic and Related Surgery*, 20(8):875-879 (2004).

3.      An Information Disclosure Statement is being filed herewith in the above-identified re-examination that includes an abstract of which Peter Millett is a co-author (Mazzocca et al., Arthroscopic Single versus Double Row Suture Anchor Rotator Cuff Repair, abstract of presentation made on June 25, 2004 at 2004 Annual Meeting of the American Orthopaedic Society for Sports Medicine in Quebec, Canada, publication date unknown) and another article of which Peter Millett is a co-author (Mazzocca et al., "Arthroscopic Single-Row Versus Double-

EXHIBIT C
PAGE 14                                                      KFX0000611

Application No.:   90/011430
Filing Date:      January 11, 2011

Row Suture Anchor Rotator Cuff Repair," *The American Journal of Sports Medicine*, 33:1861 (2005)).

    4.    I had a conversation with Peter Millett during which he told me that the procedures referenced in the 2004 article had been performed in the two years preceding publication of the article.

    5.    He also confirmed that all of the procedures were performed by tying knots as described in the 2004 article.

    6.    I declare that all statements made herein of my knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful statements may jeopardize the validity of the above-identified application and any patents issuing thereon.

Date: April 12, 2011

Tate Scott

-2-

EXHIBIT C
PAGE 15

KFX0000612