1 | Joseph F. Jennings (State Bar No. 145,920)
joe.jennings@knobbe.com
2 | Brian Horne (State Bar No. 205,621)
brian.horne@knobbe.com
3 | Sean M. Murray (State Bar No. 213,655)
sean.murray@knobbe.com
4 | Sarah Lampton (State Bar No. 282,404)
sarah.lampton@knobbe.com
5 | Marissa Calcagno (State Bar No. 279,783)
marissa.calcagno@knobbe.com
6 | KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
7 | Fourteenth Floor
Irvine, CA  92614
8 | Phone: (949) 760-0404
Facsimile: (949) 760-9502
9 |
10 | Attorneys for Plaintiff
KFx Medical Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KFX MEDICAL CORPORATION, a Delaware corporation,<br><br>　　　　Plaintiff and Counterdefendant,<br><br>　　　　v.<br><br>ARTHREX, INCORPORATED, a Delaware corporation,<br><br>　　　　Defendant and Counterclaimant. | Case no. 11cv1698 DMS (BLM)<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENT NOS. 8,100,942 & 8,109,969**<br><br>Date:  June 28, 2013<br>Time:  1:30 p.m.<br>Courtroom 13A<br>Honorable Dana M. Sabraw |

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION .............................................................................................. 1

II.  ARTHREX HAS FAILED TO RAISE A GENUINE FACTUAL DISPUTE REGARDING DECEPTIVE INTENT .................. 3

    A.   Arthrex Misstates The Legal Standard That Governs Inequitable Conduct's Intent Prong ..................................................... 3

    B.   Arthrex's Numerous Unsupported Assertions Fail To Raise A Factual Issue Regarding Deceptive Intent .......................... 4

    C.   Arthrex Omits Key Facts Which Show That Melnick Properly Described All The Prior Art On The IDS Forms ............... 6

    D.   Melnick's Deposition Testimony Does Not Support An Inference Of Deceptive Intent ............................................................. 7

    E.   Arthrex Incorrectly Argues That Melnick's Deceptive Intent Is Evident From The Materiality Of Millett's Work's ................................................................................................ 8

    F.   Arthrex Presents No Evidence That Melnick Sought To Deceive The Patent Office With The '969 Patent's Priority Claim ..................................................................................... 9

III. ARTHREX HAS FAILED TO RAISE A GENUINE FACTUAL DISPUTE REGARDING MATERIALITY ......................... 10

## TABLE OF AUTHORITIES

**Page No(s).**

*Alcon Research, Ltd. v. Apotex, Inc.*,
   2013 WL 2244338 (S.D. Ind. May 21, 2013) ........................................ 3, 4

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   2013 WL 265602 (E.D. Va. Jan. 22, 2013) ................................................ 4

*Carl Zeiss Vision Int'l GMBH v. Signet Armorlite, Inc.*,
   2011 WL 6372785 (S.D. Cal. Dec. 19, 2011) ............................................ 4

*Carpenter Tech. Corp. v. Allegheny Techs. Inc.*,
   2013 WL 2250121 (E.D. Penn. May 22, 2013) ......................................... 4

*eSpeed, Inc. v. BrokerTec USA, LLC*,
   480 F.3d 1129 (Fed. Cir. 2007) ................................................................ 10

*Fujitsu Ltd. v. Tellabs Operations, Inc.*,
   2012 WL 3133548 (N.D. Ill. July 31, 2012) .......................................... 4, 6

*Interwoven, Inc. v. Vertical Computer Sys.*,
   2013 WL 75770 (N.D. Cal. Jan. 4, 2013) ................................................... 8

*Mformation Techs., Inc. v. Research In Motion Ltd.*,
   830 F. Supp. 2d 815 (N.D. Cal. 2011) ....................................................... 4

*In re Rosuvastatin Calcium Patent Litigation*,
   703 F.3d (Fed. Cir. 2012) .......................................................................... 7

*Schering Corp. v. Mylan Pharms., Inc.*,
   2011 WL 3736503 (D.N.J. Aug. 22, 2011) ................................................ 8

*Therasense, Inc. v. Becton, Dickinson & Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) (*en banc*) ............................................. 3, 8

## OTHER AUTHORITIES

MPEP § 706.02 ................................................................................... 2, 9, 10

## I. INTRODUCTION

Arthrex's opposition weaves a fanciful story of intentional deceit out of baseless accusations that have no foundation in the evidence of record. For example, Arthrex asserts that Ryan Melnick "steered clear from the Scott Statement" during his interview with the examiner and "forced a discussion" of the Thal and Jobe references. Opp. Br. at 13-14. ***But Arthrex cites no record evidence to support these assertions.*** Rather, Arthrex attempts to create an impression of evidentiary support by weaving into its narrative various uncontested historical facts, such as the fact that Melnick requested an interview. When stripped of Arthrex's unfounded assertions, such facts standing alone do not support, let alone require, an inference of deceptive intent.

Arthrex's opposition also ignores key facts that contradict its allegation that Melnick intentionally "diverted" the examiner away from Millett's work. For example, it is undisputed that Melnick timely submitted ***all*** of the relevant prior art to the Patent Office – including the Millett article and the Scott Statement – in prosecuting the '942 and '969 patent applications. Indeed, Melnick even submitted Arthrex's answer in this case, a document that expressly states that the Scott statement was never substantively considered in the reexamination. These facts alone support a reasonable inference that Melnick never intended to suggest that the Scott Statement had been considered during reexamination or to divert the examiner from Millett's work.

Where Arthrex's opposition does address evidence, it misconstrues either the record or the law. For example, Arthrex contends that Melnick intended to deceive the examiner by describing the Scott Statement as "submitted in Reexamination No. 90/011,430" because Melnick did not describe two other references as "submitted in Reexamination No. 90/011,430" when they were. On the contrary, those other two references were publications, not documents created in an administrative proceeding like the Scott Statement. The record

confirms that Melnick described all publications consistently, and that he likewise described all documents from administrative proceedings consistently.

In another instance, Arthrex argues that Melnick intended to deceive the examiner with his priority claim because Melnick, an experienced practitioner, surely knew that examiners are instructed to assign an application the priority date of the provisional. However, Arthrex's argument is based on a misleading cropping of MPEP § 706.02. When read in its entirety, that provision actually instructs the examiner to determine on a claim-by-claim basis whether the application's claims are entitled to the date of the provisional.

Because Arthrex has failed to identify evidence suggesting that Melnick acted with an intent to deceive the examiner, and because Melnick's good faith is supported by his testimony and his timely submission of all relevant documents to the Patent Office, no reasonable fact finder could conclude that the record *requires* an inference that Melnick acted with the specific intent to deceive the Patent Office. Accordingly, Arthrex cannot establish the "deceptive intent" prong of the inequitable conduct standard as a matter of law.

Nor has Arthrex raised a genuine factual issue regarding the materiality prong of that standard. KFx's opening brief demonstrated that, because the examiner initialed and dated the pages of the IDS form listing the Millett article and Scott Statement, there could be no genuine dispute that he considered these references. Arthrex's opposition brief does not identify a single piece of record evidence that the examiner was actually "diverted away" from considering them. Instead Arthrex continues to rely on mere *supposition* that the examiner would have rejected the claims based on these references had he considered them. But such supposition is not evidence on which a reasonable fact finder could rely to find materiality. Accordingly, there is no genuine issue of fact regarding materiality. This is a second, independent reason why KFx is entitled to summary judgment of no inequitable conduct.

## II. ARTHREX HAS FAILED TO RAISE A GENUINE FACTUAL DISPUTE REGARDING DECEPTIVE INTENT

Arthrex devotes the bulk of its opposition brief to the deceptive intent prong of the inequitable conduct standard. However, Arthrex's discussion applies the wrong legal standard, relies on unsupported factual assertions, misstates the evidence it does discuss, and is fraught with legal error.

### A. Arthrex Misstates The Legal Standard That Governs Inequitable Conduct's Intent Prong

Arthrex repeatedly asserts that a specific intent to deceive the Patent Office need only be the "most reasonable" inference from the evidence. Opp. Br. at 12, 16, 17, 23. Arthrex reaches this conclusion by taking *Therasense's* statement that deceptive intent must be "the single most reasonable inference" and reading out the word "single." *Id.* at 12. However, that very passage in *Therasense* explains what "the single most reasonable inference" means:

> However, to meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence. Indeed, the evidence must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances. Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found.

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290-91 (Fed. Cir. 2011) (*en banc*) (citations omitted) (emphasis in original). Thus *Therasense* expressly bars a finding of deceptive intent when deceptive intent is merely one reasonable inference among multiple reasonable inferences. Put another way, if a fact finder can reasonably draw different inferences, the evidence does not *require* that any particular inference be drawn.

Citing *Alcon Research, Ltd. v. Apotex, Inc.*, 2013 WL 2244338 at *8 (S.D. Ind. May 21, 2013), Arthrex suggests that the standard is more lenient when the patentee moves for summary judgment. Opp. Br. at 17. But in

finding inequitable conduct, *Alcon* never states that deceptive intent need only be the most reasonable among reasonable inferences. Nor does the decision indicate that there were reasonable inferences other than the inference of deceptive intent. Because the patentee submitted favorable test results to the Patent Office while concealing unfavorable results, *see Alcon*, 2013 WL 2244338 at *6-*8, there was likely only one reasonable inference to be drawn.

Moreover, this Court and numerous other courts have held on summary judgment that the presence of multiple reasonable inferences precludes a finding of deceptive intent. *See Carl Zeiss Vision Int'l GMBH v. Signet Armorlite, Inc.*, 2011 WL 6372785 at *6 (S.D. Cal. Dec. 19, 2011) (granting summary judgment of no inequitable conduct because "there is more than one reasonable inference that may be drawn"); *Carpenter Tech. Corp. v. Allegheny Techs. Inc.*, 2013 WL 2250121 at *7 (E.D. Penn. May 22, 2013); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 2013 WL 265602 (E.D. Va. Jan. 22, 2013); *Fujitsu Ltd. v. Tellabs Operations, Inc.*, 2012 WL 3133548 at *3, *4 (N.D. Ill. July 31, 2012); *Mformation Techs., Inc. v. Research In Motion Ltd.*, 830 F. Supp. 2d 815, 830-31 (N.D. Cal. 2011). These decisions make good sense. To allow an inequitable conduct claim to proceed to trial whenever reasonable minds could disagree would vitiate *Therasense's* "tightened" standard for inequitable conduct. *See Amdocs*, 2013 WL 265602 at *30. Thus, deceptive intent cannot be found if other reasonable inferences may be drawn, even if deceptive intent is deemed the "most reasonable" of the reasonable inferences.

**B.    Arthrex's Numerous Unsupported Assertions Fail To Raise A Factual Issue Regarding Deceptive Intent**

Regardless of the applicable legal standard, Arthrex has failed to produce sufficient evidence to create a question of fact. Arthrex tells a remarkable story to establish that an inference of deceptive intent is the "most reasonable" inference, but its story is rife with factual assertions that are completely

unsupported by record evidence. For example, Arthrex asserts that, during the interview, Melnick "was careful to steer clear from the Scott Statement and instead focused the Examiner's attention on the less relevant Thal and Jobe combination." Opp. Br. at 13-14. Melnick supposedly "was able to control the dialogue" and "focus the examiner" on the Thal/Jobe combination. *Id.* at 13. And Arthrex alleges that Melnick "consciously decided not to tell" the examiner that the Scott Statement had not been considered during the reexamination. *Id.* at 7.

Arthrex points to no evidence supporting its version of what occurred during the telephone interview. Instead, Arthrex attempts to convey the impression that its story has an evidentiary basis by weaving in a number of unobjectionable historical facts. For example, because the record demonstrates that Melnick requested an interview, Arthrex has *some* evidentiary basis for stating: "Mr. Melnick purposely requested an interview with the Examiner, and during that interview, focused the Examiner's attention on the less relevant Thal and Jobe combination…." Opp. Br. at 1. But when one excises all the baseless allegations (Melnick behaved badly in the interview), the historical facts that remain (Melnick requested an interview) are not probative of deceptive intent.

The most probative evidence is never mentioned in Arthrex's story. Arthrex does not deny that Melnick timely submitted the Millett article and the Scott Statement during the prosecution of the '942 patent application and the '969 patent application. Ex. 6 at 126, 127; Ex. 7 at 134, 135 (IDS forms).[1] Melnick also submitted Arthrex's answer in each case. Ex. 6 at 126; Ex. 7 at 134. That answer expressly states that Melnick listed the Scott Statement on an

---

[1] Exhibits 1-19 are attached to the Declaration of Sean M. Murray submitted with KFx's moving papers. Exs. 20-21 are attached to the Supplemental Declaration of Sean M. Murray submitted with KFx's reply. All references to exhibits to the Declaration of Charles W. Saber take the form: "Saber Ex. #."

April 12, 2011 IDS in the reexamination but that "[t]he PTO refused to consider the April 12 IDS." *See* D.I. 8 at 12-13. The answer also describes how Melnick ***unsuccessfully*** petitioned the Patent Office to consider that IDS. *Id.* Had Melnick truly wished to divert the Patent Office from Millett's work, he never would have submitted those documents to the Patent Office. That Melnick did submit them supports a reasonable inference that he acted without deceptive intent, notwithstanding Arthrex's groundless accusations. *See Fujitsu*, 2012 WL 3133548 at *3 (observing that, if the inventors had wanted to conceal the subject matter of a withheld reference, they would not have submitted a very similar reference).

### C. **Arthrex Omits Key Facts Which Show That Melnick Properly Described All The Prior Art On The IDS Forms**

Arthrex contends that, while "Mr. Melnick went out of his way to point out that the Scott Statement was 'submitted in reexamination,' *he did not do the same thing for the other two references that were also submitted during the reexamination*." Opp. Br. at 7 (emphasis in original). Arthrex neglects to mention that those two references were publications, not documents created during an administrative proceeding. Saber Ex. 18 at 152-54 (discussing items 188 and 189 on the '942 patent IDS); Ex. 6 (IDS identifying items 188 and 189 as an article and abstract by Mazzocca *et al.*).

As the IDS form shows, Melnick consistently described publications by listing the article's author, its title, the name of the publication in which it appeared, the volume/pages of the publication, and the date of publication. *See, e.g.*, Ex. 6 at item nos. 187 (Lo article), 188 (Mazzocca article), 189 (Mazzocca abstract), 190 (Millett article), 195 (Robbe article), 200 (Waltrip article) and 201 (Yian article). Melnick also consistently described documents created in administrative proceedings. Those are always identified by title, by date, and by the administrative proceeding in which the document was created. *See, e.g., id.*

at item nos. 185-86, 192-94. Thus, Melnick acted reasonably when he identified the Mazzocca article and abstract without mentioning the '311 reexamination. Those publications are not documents created in that reexamination.

### D. Melnick's Deposition Testimony Does Not Support An Inference Of Deceptive Intent

Arthrex insinuates that Melnick lied in his deposition when he testified that the examiner initiated their interview. Opp. Br. at 8, 14. But Melnick never denied that he filed a written request for a "first action interview," a special pilot program procedure that guarantees an applicant an interview with the examiner before the first office action. *See* Ex. 20 at 1 (describing the pilot program); Saber Exs. 19-20 (requests for first action interview). Under the pilot program, a qualified applicant who requests a first action interview receives a Pre-Interview Communication that includes citations to relevant prior art references. Ex. 20 at 1. After reviewing the Pre-Interview Communication, an applicant who still desires a first action interview must schedule the interview. *Id.* However, as Melnick explained in his deposition, the examiner simply called him "out of the blue," informed him that the phone call would constitute the "first action interview," and stated that all claims would be allowed. Saber Ex. 18 at 150. Thus, Melnick's testimony that the examiner initiated their phone call is consistent with Melnick having filed forms requesting a "first action interview."

Arthrex also observes that the examiner's interview summary states that Thal and Jobe were discussed, while Melnick testified that no prior art was discussed. Opp. Br. at 8. However, this discrepancy could easily be due to a mistake by one of the parties involved. As everyone knows, the participants in a conversation often remember it differently. Thus, no reasonable fact finder could conclude that this discrepancy requires an inference of deceptive intent. *See In re Rosuvastatin Calcium Patent Litigation*, 703 F.3d at 511, 522 (Fed.

Cir. 2012) (explaining that mistake, poor judgment, negligence or the improper performance of an act is insufficient to establish deceptive intent).[2]

### E. Arthrex Incorrectly Argues That Melnick's Deceptive Intent Is Evident From The Materiality Of Millett's Work's

Arthrex also argues that Melnick "had every incentive" to divert the examiner away from Millett's work because that work was more relevant than the Thal/Jobe combination and was the closest prior art to KFx's invention. Opp. Br. at 14. Arthrex believes Millett is the closest prior art because, unlike Thal, it discloses tensioning the suture after inserting the second anchor. *Id.* However, it is undisputed that Millett discloses a method that requires tying knots, while KFx's patents seek to avoid knot tying. Moreover, the technical evidence on which Arthrex relies explains that Millett involves tensioning after insertion only because tying knots inherently involves such tensioning. *See* Saber Ex. 7 at ¶ 107. Thus, if Millett were somehow modified to eliminate knot tying, as required by KFx's claims, it would no longer teach tensioning after insertion. Arthrex therefore exaggerates Millett's relevance. Indeed, Arthrex's own summary judgment motion discusses Thal before Millett. D.I. 81-1.

More fundamentally, Arthrex's argument improperly relies on the alleged materiality of Millett's work as evidence that Melnick acted with deceptive intent. Arthrex's argument is contrary to law. *See Therasense*, 649 F.3d at 1290 ("a district court may not infer intent solely from materiality").

---

[2] Arthrex asserts that a question of fact exists because "Mr. Melnick's credibility has been called into serious question." Opp. Br. at 3; *see also id.* at 17-18. But Melnick's credibility has not been "called into question" either by a single mistake of fact (if indeed it was Melnick's mistake) or by Arthrex's barrage of groundless accusations. Nor do Arthrex's cases require that summary judgment of no inequitable conduct be denied whenever the credibility of the alleged bad actor is challenged. Opp. Br. at 18. *Interwoven, Inc. v. Vertical Computer Sys.*, 2013 WL 75770 (N.D. Cal. Jan. 4, 2013) is inapposite because the court denied summary judgment to the patent challenger, not the patentee. It is naturally very difficult to prove inequitable conduct as a matter of law. And *Schering Corp. v. Mylan Pharms., Inc.*, 2011 WL 3736503 (D.N.J. Aug. 22, 2011) never recited or applied *Therasense's* "single most reasonable inference" standard.

### F. Arthrex Presents No Evidence That Melnick Sought To Deceive The Patent Office With The '969 Patent's Priority Claim

KFx's opening brief noted that Arthrex had adduced no evidence in discovery which suggests that the priority claim in the '969 application was improper or deceptive. Br. at 12-13. Citing binding Federal Circuit precedent, KFx explained that an examiner does not simply assign the application's priority date to all of its claims, but determines the priority date of each claim individually. *Id.* Consequently, Melnick could not have believed that the examiner would simply accord all claims the priority date of the application. *Id.*

Arthrex's opposition presents no actual evidence that Melnick intended to deceive the Patent Office with the priority claim in the '969 application. Instead, Arthrex relies on MPEP § 706.02, which Arthrex misleadingly crops to suggest that, when a patent application claims priority to a provisional application, the examiner accords the entire application the priority date of the provisional. Opp. Br. at 21. But when subsection (D) of Section 706.02 is read in its entirety, it confirms that the examiner determines priority on a claim-by-claim basis:

> The effective filing date of a U.S. application *may be determined* as follows:
> …
> (D) If the application properly claims benefit under 35 U.S.C. § 119(e) to a provisional application, the effective filing date is the filing date of the provisional application *for any claims* which are fully supported under the first paragraph of 35 U.S.C. § 112 by the provisional application.

Ex. 21 at 254-55 (emphasis added). Thus, the '969 *application's* priority claim could not have deceived the examiner as to the priority date of the *claims*.

In sum, Arthrex has identified no evidence whatsoever that Melnick acted with the intent to deceive the Patent Office. On this record, no reasonable jury could conclude that the evidence requires an inference of deceptive intent.

## III. ARTHREX HAS FAILED TO RAISE A GENUINE FACTUAL DISPUTE REGARDING MATERIALITY

Arthrex does not dispute that the examiner was required to consider each and every reference submitted on the IDS forms, including the Millett article, Scott Statement and Arthrex answer. Opp. Br. at 16. Nor does Arthrex dispute that the examiner actually initialed and dated the pages of the IDS forms listing these documents. Instead, Arthrex cites *eSpeed, Inc. v. BrokerTec USA, LLC*, 480 F.3d 1129, 1137 (Fed. Cir. 2007) for the proposition that, even if a reference is disclosed and initialed, an examiner can be misled into not reviewing it. Opp. Br. at 19. But in *eSpeed,* no one argued that the examiner had never reviewed the prior art. Rather, the false declaration in *eSpeed* was material because the examiner relied on the declaration in reviewing the prior art. *Id.* at 1133. In this case, Arthrex's claim that the examiner never even considered Millet's work is simply inconsistent with the record evidence.

Finally, Arthrex presents no probative evidence that the priority claim in the '969 application caused the examiner to conclude that the application's claims were entitled to the filing date of the provisional. Once again, Arthrex incorrectly argues that MPEP § 706.02 instructs the examiner to accord the claims the filing date of the provisional. Opp. Br. at 24. Arthrex also argues that the examiner would have given the '969 patent the priority date of the '942 patent because he treated them "the same" by, *inter alia*, discussing them in the same interview and with respect to the same prior art. *Id.* Arthrex's argument has no support in logic or the law. Holding one interview is a matter of convenience, and the Thal and Jobe patents were prior art to both patents, regardless of the priority date, because they predate the earliest KFx provisional.

In brief, Arthrex presents no evidence from which a reasonable jury could find that Melnick's actions caused the examiner to not consider Millett's work or assign the wrong priority date to the claims of the '969 patent.

|   |   |
|---|---|
| 1 | Respectfully submitted, |
| 2 | KNOBBE, MARTENS, OLSON & BEAR, LLP |
| 4 Dated: May 17, 2013 | By: s/*Joseph F. Jennings* |
|   | Joseph F. Jennings<br>Brian Horne<br>Sean M. Murray<br>Sarah Lampton<br>Marissa Calcagno |
|   | Attorneys for Plaintiff<br>KFx Medical Corporation |

# PROOF OF SERVICE

I hereby certify that on June 21, 2013, I caused the within **PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENT NOS. 8,100,942 & 8,109,969** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following person(s):

Lawrence La Porte
laportel@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067
T: 310-772-8300

Charles W. Saber
saberc@dicksteinshapiro.com
Salvatore P. Tamburo
tamburos@dicksteinshapiro.com
Megan S. Woodworth
woodworthm@dicksteinshapiro.com
S. Gregory Herrman
herrmang@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
1825 Eye Street Northwest
Washington, DC 20006
T: 202-420-2200

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on June 21, 2013, at San Diego, California.

Colleen Mensching

KFXL.064L