Joseph F. Jennings (State Bar No. 145,920)
joe.jennings@knobbe.com
Brian Horne (State Bar No. 205,621)
brian.horne@knobbe.com
Sean M. Murray (State Bar No. 213,655)
sean.murray@knobbe.com
Sarah Lampton (State Bar No. 282,404)
sarah.lampton@knobbe.com
Marissa Calcagno (State Bar No. 279,783)
marissa.calcagno@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
KFx Medical Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KFX MEDICAL CORPORATION, a Delaware corporation, | Case no. 11cv1698 DMS (BLM) |
| Plaintiff and Counterdefendant, | **SUPPLEMENTAL DECLARATION OF SEAN M. MURRAY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT IN CONNECTION WITH U.S. PATENT NOS. 8,100,942 & 8,109,969** |
| v. | |
| ARTHREX, INCORPORATED, a Delaware corporation, | |
| Defendant and Counterclaimant. | |
| | Date:  June 28, 2013 |
| | Time:  1:30 p.m. |
| | Courtroom 13A |
| | Honorable Dana M. Sabraw |

I, Sean M. Murray, declare and state as follows:

I am a partner in the law firm of Knobbe Martens Olson & Bear, LLP, and I am counsel of record for Plaintiff KFx Medical Corporation in this action. I submit this declaration in support of Plaintiff's Motion for Summary Judgment of No Inequitable Conduct in Connection with U.S. Patent Nos. 8,100,942 & 8,109,969. The following statements are based on my personal knowledge.

1.    Attached hereto as Exhibit 20 is a true and correct copy of a May 6, 2011 document entitled "Full First Action Interview Program." The document is signed by U.S. Patent and Trademark Office Director David Kappos and is available at http://www.uspto.gov/patents/init_events/faipp_full_preog.pdf.

2.    Attached hereto as Exhibit 21 is a true and correct copy of excerpts from the Manual of Patent Examining Procedure (July 2010 revision) including Section 706.02.

Executed on June 21, 2013 in Irvine, California.

Sean M. Murray

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **<u>TABLE OF EXHIBITS</u>**

**<u>Page No.</u>**

Exhibit 20. ...................................................................................240

Exhibit 21. ...................................................................................249

KFXL.064L
15610655

# EXHIBIT 20

### Full First Action Interview Pilot Program

**I. Summary:** The United States Patent and Trademark Office (USPTO) conducted the Enhanced First Action Interview Pilot Program in which utility applicants in certain art areas could participate. *See Enhanced First Action Interview Pilot Program*, 1347 *Off. Gaz. Pat. Office* 173 (October 20, 2009). The USPTO indicated in the notice the program would run until April 1, 2010. The USPTO extended the program to run until April 1, 2011. *See Extension of the Enhanced First Action Interview Pilot Program*, 1354 *Off. Gaz. Pat. Office* 51 (May 4, 2010) and *Second Extension of the Enhanced First Action Interview Pilot Program*, 1360 *Off. Gaz. Pat. Office* 56 (November 2, 2010). Under the program, participants were permitted to conduct an interview with the examiner after reviewing a Pre-Interview Communication providing the result of a prior art search conducted by the examiner. Participants experienced many benefits including: (1) the ability to advance prosecution of an application; (2) enhanced interaction between applicant and the examiner; (3) the opportunity to resolve patentability issues one-on-one with the examiner at the beginning of the prosecution process; and (4) the opportunity to facilitate possible early allowance. Based upon comments and suggestions from the public, including participants and non-participants, as well as the Patent Office Professional Association (POPA), the Office is expanding the Enhanced First Action Interview Pilot Program to all utility art areas. The Full First Action Interview Pilot Program will continue until **May 16, 2012**.

Normally, granting an interview before first action on the merits of a new application is within the discretion of the examiner and a showing may be required to justify the granting of the interview. *See* Manual of Patent Examining Procedure (MPEP) § 713.02. As in the Enhanced First Action Interview Pilot Program, the Full First Action Interview Pilot Program will continue to provide a procedure which, if followed, makes the granting of an interview non-discretionary.

For those applicants who are eligible and wish to participate in the pilot program, applicants must file a request electronically[1]. When the application is taken up for examination, the examiner will conduct a prior art search and provide applicant a Pre-Interview Communication that includes citations to prior art references from the prior art search (similar to a search report) and an identification of any rejections and/or objections, if at least one claim is not allowable.

Once the applicant reviews the prior art references, applicant must either file a request to <u>not</u> have a first action interview with the examiner, or schedule the interview and file a proposed amendment or remarks (arguments), within one month or thirty days, whichever is longer, from the mailing or notification date[2] of the Pre-Interview Communication. If applicant chooses not to have a first action interview, a First Action Interview Office Action will be promptly entered and applicant will have one month or thirty days, whichever is longer, to reply. If an interview is scheduled, applicant must be prepared to discuss issues related to the patentability of the claims. If the applicant and the examiner reach agreement during the interview on all claims at issue in

---

[1] *See* the Requirements section of this notice for more information on other requirements for the pilot program.
[2] The mailing or notification date is indicated on the form PTOL-90 accompanying the Office communication. For those applicants that are participating in the Electronic Office Action Program (e-Office Action), the Office communication will not be mailed, rather an e-mail notification will be sent to the applicants who will retrieve the communication through Private Patent Application Information Retrieval (PAIR).

**EXHIBIT 20**
**PAGE 240**

regard to patentability, a Notice of Allowability will be issued promptly after the interview. If agreement is not reached on all claims in regard to patentability, at the conclusion of the interview, applicant may be given a courtesy copy of a First Action Interview Office Action, which will set forth the requirements, objections, and rejections. Applicant will be given one month or thirty days, whichever is longer, from the mailing or notification date of the First Action Interview Office Action to reply, with limited extensions of time.

**II. Effective Date:** Any request for a First Action Interview filed on or after April 1, 2011, and before May 16, 2012, will be granted if all of the requirements set forth in Section III (Requirements) of this notice are satisfied.

**III. Requirements:** A request for a first action interview will be granted in a patent application for the Full First Office Action Interview Pilot Program if the following conditions are satisfied:

(1) The application must be a non-reissue, non-provisional utility application filed under 35 U.S.C. 111(a), or an international application that has entered the national stage in compliance with 35 U.S.C. 371(c).

(2) The application must contain three or fewer independent claims and twenty or fewer total claims. The application must not contain any multiple dependent claims. For an application that contains more than three independent claims or twenty total claims, or multiple dependent claims, applicants may file a preliminary amendment in compliance with 37 CFR 1.121 to cancel the excess claims and/or the multiple dependent claims when attempting to make the application eligible for the pilot program.

(3) The claims must be directed to a single invention. If the Office determines that the claims are directed to multiple inventions (*e.g.*, in a restriction requirement), the applicant must make an election without traverse or withdraw the application from the pilot program.

(4) The request for a first action interview must be filed electronically using the USPTO's electronic filing system, EFS-Web. Applicant should use form PTO/SB/413C, which is available on the USPTO Web site at http://www.uspto.gov/web/forms/index.html.

(5) The request must be filed at least one day before a first Office action on the merits of the application appears in the Patent Application Information Retrieval (PAIR) system (*i.e.*, at least one day prior to the date when a first Office action on the merits, notice of allowability or allowance, or action under Ex parte Quayle, 1935 Dec. Comm'r Pat. 11 (1935) appears in the PAIR system). Applicant may check the status of the application using the PAIR system.

(6) The request for a first action interview must include a statement that applicant agrees not to file a request for a refund of the search fee and any excess claim fees paid in the application after the mailing or notification date of the Pre-Interview Communication. *See* form PTO/SB/413C. Any petition for express abandonment under 37 CFR 1.138(d), request for a refund of search fee, and any excess claim fees filed after the mailing or notification date of a Pre-Interview Communication will not be granted.

The application under the Full First Action Interview Pilot Program will <u>not</u> be advanced out of turn for examination, but most likely will be taken up for examination in the order of its effective United States filing date in accordance with MPEP § 708. Thus, a petition to make special under 37 CFR 1.102(c) is not required for an application to be eligible for the Full First Action Interview Pilot Program. Furthermore, no additional fees are required for participation in the Full First Action Interview Pilot Program.

**IV. Improper Requests for First Action Interviews:** If applicant files a Request for the Full First Action Interview Pilot Program (PTO/SB/413C) that does not comply with the requirements set forth in this notice, the Office will notify the applicant of the deficiency by issuing a Notice of Non-Compliant First Action Interview Request (PTOL-413NC). If applicant still wishes to participate in the Full First Action Interview Pilot Program, applicant must file a proper request and make appropriate corrections within one month or thirty days, whichever is longer. This time period for reply is <u>not</u> extendable under 37 CFR 1.136(a). If applicant fails to correct the deficiency indicated in the Notice of Non-Compliant First Action Interview Request and timely file a request for reconsideration at least one day before a first Office action on the merits of the application appears in the PAIR system (see item 5 of Section III above) or within the time period set forth in the Notice of Non-compliant First Action, whichever is longer, the examiner will proceed with the preparation of a first Office action on the merits of the application in due course, and the application will not be eligible for the Full First Office Action Interview Pilot Program.

**V. Requirement for Restriction:** If the application contains two or more independent and distinct inventions, the examiner may make a requirement for restriction in accordance with current restriction practice prior to conducting a search. The examiner will contact the applicant and follow the procedure for the telephone restriction practice set forth in MPEP § 812.01. If applicant makes an election during the telephone interview, the election must be made without traverse in order to stay in the pilot program. When an oral election is made, the examiner will provide a complete record of the telephone election, including the restriction requirement and applicant's election, as an attachment to the Pre-Interview Communication on the elected invention.

If applicant cannot make an election over the phone, or the examiner cannot reach the applicant after a reasonable effort (not to exceed three business days), the examiner will issue a restriction requirement in accordance with current policy and practice. *See* MPEP § 814 *et seq.* When applicant makes an election in response to the written restriction, the election must be made without traverse in order to stay in the pilot program. After an appropriate election is made without traverse in an application with a compliant request for a First Action Interview, the examiner will proceed with the preparation of the Pre-Interview Communication.

**VI. Pre-Interview Communication:** If the application contains only one invention or applicant has elected one invention without traverse, the examiner will conduct a prior art search for the claimed invention under consideration. If the examiner determines that the application is in condition for allowance or the application could be placed in condition for allowance with minor

corrections or a possible amendment or submission, a First Action Interview under the Full First Action Interview Pilot Program will not be necessary. The examiner may allow the application, or contact the applicant and conduct a regular interview in accordance with MPEP § 713 to discuss any possible amendment or submission to place the application in condition for allowance.

Otherwise, the examiner will prepare a Pre-Interview Communication (PTOL-413FP) and a Notice of References Cited (PTO-892) citing the prior art references and identifying any rejections or objections. The Pre-Interview Communication will set forth a time period of one month or thirty days, whichever is longer. The Office will permit applicant to extend this time period for reply pursuant to 37 CFR 1.136(a) for one additional month under the Full First Action Interview Pilot Program. *See* section VII, subsection B (Applicant's Options and Reply to Pre-Interview Communication) and subsection C (Failure to Respond to Pre-Interview Communication).

The examiner's typical working schedule will also be provided with the Pre-Interview Communication so applicant will be aware of the examiner's availability when scheduling the interview.

## VII. Post Pre-Interview Communication

**A. Amendments Filed After Pre-Interview Communication:** Once a Pre-Interview Communication has been entered in an application, applicant no longer has a right to amend the application until the first action interview is conducted and the First Action Interview Office Action is mailed. Therefore, any amendments filed before the interview and the mailing or notification date of a First Action Interview Office Action (PTOL-413FA), will not be entered, unless approved by the examiner or in accordance with the procedure of the Full First Action Interview Pilot Program in section VII, subsection B(2), or section VIII, subsection B(3), of this notice. This is because the examiner has devoted a significant amount of time to the preparation of the Pre-Interview Communication. *See* 37 CFR 1.115(b) and MPEP § 714.01(e). The Office may enter the amendment if it is clearly limited to: cancellation of claims; adoption of examiner suggestions; placement of the application in *prima facie* condition for allowance; and/or correction of informalities (similar to the treatment of an after-final amendment). Amendments will be entered solely at the examiner's discretion.

**B. Applicant Options and Reply to Pre-Interview Communication:** Upon receipt of a Pre-Interview Communication, the applicant has three options:

(1) File a request to NOT have a first action interview waiving the first action interview;
(2) File a reply under 37 CFR 1.111 waiving the first action interview and First Action Interview Office Action – applicant is accepting that the Pre-Interview Communication is the first Office action on the merits; or
(3) Schedule the first action interview – applicant must file an Applicant Initiated Interview Request Form (PTOL-413A) electronically via EFS-Web, accompanied by a proposed amendment or arguments, and schedule the interview to be conducted within two months

or sixty days, whichever is longer, from the filing of the Applicant Initiated Interview Request.

**1. Request to Not Have a First Action Interview:**  If applicant wishes not to have the first action interview, applicant should electronically file a letter requesting to not have a first action interview within the time period set forth in the Pre-Interview Communication.  For this situation, a first action interview will not be conducted and the examiner will provide the First Action Interview Office Action to set forth the requirements, objections, and rejections, in due course.  However, such a request will not preclude the examiner from contacting the applicant and conducting a regular interview in accordance with MPEP § 713 to discuss any issues or possible amendment to place the application in condition for allowance.  To ensure that the request will be processed and recognized timely, applicant should file the request electronically via EFS-Web, selecting the document description "Request to Not Have a First Action Interview" on the EFS-Web screen.

Once a Pre-Interview Communication has been prepared (one day before it appears in PAIR), withdrawal from the program is not permitted.  The Office will treat a request for withdrawal from the pilot program filed after the mailing or notification of a Pre-Interview Communication as a request to not conduct an interview, and enter a First Action Interview-Office Action, in due course.

**2. File a Reply under 37 CFR 1.111, Waiving the First Action Interview and First Action Interview Office Action:**  Under the Full First Action Interview Pilot Program, the Office is permitting applicants to file, in conjunction with a request to not conduct the interview, a reply in compliance with 37 CFR 1.111(b)-(c) to address every rejection, objection and requirement set forth in the Pre-Interview Communication, thereby waiving the first action interview and First Action Interview Office Action.  The reply under 37 CFR 1.111 must be filed within the time period for reply set forth in the Pre-Interview Communication.  To ensure that the request will be processed and recognized timely, applicant should file the request electronically via EFS-Web, selecting the document description "Reply under 1.111 to Pre-Interview Communication" on the EFS-Web screen.

In this situation, a first action interview will not be conducted and a First Action Interview Office Action will not be provided to the applicant.  The Pre-Interview Communication will be deemed the first Office action on the merits.  The examiner will consider the reply under 37 CFR 1.111 and provide an Office action in response to the reply, in due course.  The Office action will be the second Office action on the merits, and thus it could be a final Office action, a notice of allowability, or other appropriate action.

**3. Schedule the First Action Interview:**  If applicant wants a first action interview with the examiner, applicant must timely file an Applicant Initiated Interview Request Form (PTOL-413A), <u>electronically using EFS-Web</u>, accompanied by a proposed amendment and/or arguments (as an attachment to the request).  To ensure that the request will be processed and recognized timely, applicant should select the document description "First Action Interview – Schedule Interview Request."

Applicant must also designate a proposed date to conduct the interview to facilitate scheduling of the first action interview. The applicant's proposed date to conduct the interview must be within two months or sixty days, whichever is longer, from the filing of the Applicant Initiated Interview Request Form. Applicant should consult the examiner's work schedule provided in the Pre-Interview Communication and discuss with the examiner the best date for conducting the interview.

After filing the Applicant Initiated Interview Request Form, applicant must contact the examiner to confirm the interview date. The applicant's <u>failure to conduct an interview within two months</u> or sixty days, whichever is longer, from the filing of Applicant Initiated Interview Request Form <u>will be treated as a failure to respond to the Pre-Interview Communication</u>. *See* section VII, subsection C (Failure to Respond to Pre-Interview Communication). The interview may be in person, telephonic or a video-conference. Applicant must provide written authorization to conduct any Internet e-mail communications with the examiner. *See* MPEP § 502.03 for more information.

The proposed amendment or arguments must be clearly labeled as "**PROPOSED**" at the header or footer of each page of the proposed amendment or arguments and filed electronically via EFS-Web as an attachment to respond to the Applicant Initiated Interview Request Form. The proposed amendment or arguments will <u>not</u> be entered as a matter of right. The examiner, based upon discussions, feedback and agreement with applicant during the interview may at his or her discretion enter the amendment if found sufficient to advance prosecution on the merits. *See* MPEP §§ 713.01 III and 713.04; *see also* MPEP §§ 714 and 1302.04. If the examiner denies entry of the proposed amendment, the proposed amendment will be placed in the application file.

<u>Preparation for the Interview</u>: Applicant must be prepared to fully discuss the prior art of record, any of the relevant interview talking points and any rejections or objections with the intent to clarify and resolve all issues with respect to patentability during the interview. Applicant must also be prepared to discuss any proposed amendment or arguments previously submitted and discuss and resolve any relevant issues that arise. A non-exhaustive listing of potential topics for discussion in a first action interview is available to the public and the patent examining corps to assist and facilitate comprehensive and effective first action interviews. *See* the Interview Talking Points posted on the USPTO Web site at http://www.uspto.gov/web/offices/pac/dapp/opla/preognotice/fai_talking_points.pdf.

Multiple proposed amendments or sets of arguments are <u>not</u> permitted.

<u>Inventor Participation</u>: Inventor participation in the interview process is encouraged, as it may assist in the resolution of outstanding rejections and/or objections.

**C. Failure to Respond to Pre-Interview Communication:** Under the Full First Action Interview Pilot Program, if applicant fails to: (1) respond to the Pre-Interview Communication within the time period for reply, or (2) conduct the interview within two months or sixty days, whichever is longer, from the filing of the Applicant Initiated Interview Request Form, the

Office will enter a First Action Interview Office Action. Therefore, the consequence for failure to respond is issuance of a First Action Interview Office Action without the benefit of an interview.

## VIII. First-Action Interview and First-Action Interview Office Action

**A. First Action Interview:** The interview will be conducted in accordance with the procedure provided in MPEP § 713 except as otherwise provided in this notice. The interview should focus on and include:

1. A discussion to assist the examiner in developing a better understanding of the invention;
2. A discussion to establish the state of the art at the time the invention was made, including the prior art references cited by the applicant and the examiner; and
3. A discussion of the features of the claimed subject matter which make the invention patentable, including any proposed amendments to the claims.

## B. There are Three Possible Outcomes of a First-Action Interview:

**1. An agreement is reached and all claims are in condition for allowance.** At the conclusion of the interview, if applicant and the examiner reach agreement that the application is in condition for allowance, the examiner must complete an Interview Summary (PTOL-413), enter and attach any necessary amendments or arguments (*e.g.*, the proposed amendment and/or an examiner's amendment), generate a notice of allowability (PTOL-37), and attach a copy of the completed Applicant Initiated Interview Request Form. If the examiner agrees to enter the proposed amendment, the examiner must annotate the proposed amendment (*e.g.*, "OK to enter") on the first page of the proposed amendment. In a personal interview, a courtesy copy of the completed forms will be given to the applicant at the conclusion of the interview. The completed forms will then be promptly made of record with a Notice of Allowance and Fees Due (PTOL-85).

**2. An agreement as to allowability is not reached.** If the applicant and the examiner do not reach agreement during the interview, the examiner will set forth the requirements, objections, and rejections in the First Action Interview Office Action. The examiner will also complete an Interview Summary, and attach a copy of the completed Applicant Initiated Interview Request Form and any proposed amendments or arguments. In a personal interview, a courtesy copy of the completed forms may be given to the applicant at the conclusion of the interview. The completed forms will be promptly made of record.

For this situation, the First Action Interview Office Action is the first Office action on the merits. Because the requirements, objections and grounds of rejection are provided in the Pre-Interview Communication and the First Action Interview Office Action, applicant has sufficient notice of the requirements, objections and grounds of rejection. To avoid abandonment of the application, applicant must, within one month or thirty days, whichever is longer, from the mailing or notification date of the First Action Interview Office Action, file a reply in compliance with

37 CFR 1.111(b)-(c). This time period for reply is extendable under 37 CFR 1.136(a) for only one additional month.

**3. An agreement as to allowability is not reached and applicant wishes to convert the previously submitted proposed amendment into a reply under 37 CFR 1.111(b) and waive receipt of a First Action Interview Office Action.**

Under the Full First Action Interview Pilot Program, the Office is permitting applicants to request the Office to enter the previously filed proposed amendment and/or arguments as a reply under 37 CFR 1.111 to address every rejection, objection and requirement set forth in the Pre-Interview Communication, waiving a First Action Interview Office Action, if the proposed amendment and/or arguments comply with the requirements of 37 CFR 1.121 and 37 CFR 1.111(b)-(c). If the examiner agrees to enter the proposed amendment as the reply under 37 CFR 1.111 to the Pre-Interview Communication, the examiner must annotate the proposed amendment (*e.g.*, "OK to enter") on the first page of the proposed amendment, and provide a statement in the Interview Summary (*e.g.*, "Applicant requested to enter the proposed amendment as a reply under 37 CFR 1.111 to the Pre-Interview Communication, waiving the First Action Interview Office Action"). Applicant cannot file any additional amendment and/or arguments until the mailing or notification of the next Office action.

In this situation, a First Action Interview Office Action will <u>not</u> be provided to the applicant. The Pre-Interview Communication and the interview will be deemed the first Office action on the merits. The examiner will enter the proposed amendment and/or arguments, consider it as the reply under 37 CFR 1.111, and provide an Office action in response to the reply. The Office action will be the second Office action on the merits, and thus it could be a final Office action, a notice of allowability, or other appropriate action.

**C. Substance of Interview Must be Made of Record:** A complete written statement as to the substance of the interview with regard to the merits of the application must be made of record in the application, whether or not an agreement with the examiner was reached at the interview. It is the responsibility of applicant to make the substance of an interview of record and it is the examiner's responsibility to see that such a record is made and to correct inaccuracies, including those which bear directly on the question of patentability. *See* MPEP § 713.04.

**IX. Forms**

**A. Forms for Applicants to Use:**
1. Request for First Action Interview Pilot Program (PTO/SB/413C); and
2. Applicant Initiated Interview Request Form (PTOL-413A).

**B. Forms for USPTO Personnel to Use:**
1. Notice of Non-Compliant First Action Interview Request (PTOL-413NC);
2. Pre-Interview Communication (PTOL-413FP);
3. Notice of References Cited (PTO-892);
4. First Action Interview Office Action (PTOL-413FA);

5. Interview Summary (PTOL-413);
6. Notice of Allowability (PTOL-37); and
7. Notice of Allowance and Fees Due (PTOL-85).

**X. Contact Information:** Any inquiries concerning the Office's electronic filing system (EFS-Web) or the Patent Application Information Retrieval (PAIR) system should be directed to the Electronic Business Center at (866) 217-9197.

Any inquiries concerning a specific application should be directed to the appropriate Technology Center. Any questions concerning this notice may be directed to Joseph Weiss, Legal Advisor, Office of Patent Legal Administration (by phone (571) 272-7759, or e-mailed to PatentPractice@USPTO.gov). Any inquiries regarding this pilot program can be e-mailed to first.action.interview@uspto.gov.

Date: 5/6/11

David J. Kappos
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

EXHIBIT "43"

# Manual of
# PATENT
# EXAMINING
# PROCEDURE

Original Eighth Edition, August 2001
Latest Revision July 2010



## U.S. DEPARTMENT OF COMMERCE
## United States Patent and Trademark Office

Rev. 8, July 2010

**EXHIBIT 21**
**PAGE 249**

The U.S. Patent and Trademark Office does not handle the sale of the Manual, distribution of notices and revisions, or change of address of those on the subscription list. Correspondence relating to existing subscriptions should be sent to the Superintendent of Documents at the following address:

> Superintendent of Documents        Telephone:   202-512-2267
> Mail List Section, Washington, DC 20402

Inquiries relating to purchasing the Manual should be directed to:

> Superintendent of Documents        Telephone:   202-512-1800
> United States Government Printing Office
> Washington, DC 20402

Orders for reproduced copies of individual replacement pages or of previous revisions of the Manual should be sent to the following address:

> Mail Stop Document Services        Telephone:   1-800-972-6382 or 571-272-3150
> Director of the U.S. Patent and Trademark Office
> P.O. Box 1450
> Alexandria, VA 22313-1450

Previous editions and revisions of the Manual are available on microfilm in the Patent Search Room. The Manual is available on CD-ROM and on diskette from:

> U.S. Patent and Trademark Office        Telephone:   571-272-5600
> Office of Electronic Information Products
> MDW 4C18,  P.O. Box 1450
> Alexandria, VA 22313-1450

Employees of the U.S. Patent and Trademark Office should direct their requests for the Manual, replacement pages, notices, and revisions to the Office of Patent Training.        Telephone:   571-272-7222

Pursuant to the Patent and Trademark Office Efficiency Act (PTOEA) (Pub. L. 106-113, 113 Stat. 1501A-572), the head of the United States Patent and Trademark Office (USPTO) is the "Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office." The Director is assisted by the "Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the United States Patent and Trademark Office." The patent operations of the USPTO are now headed by the "Commissioner for Patents." The trademark operations of the USPTO are now headed by the "Commissioner for Trademarks." Under section 4741(b) of the PTOEA, any reference to the Commissioner of Patents and Trademarks, the Assistant Commissioner for Patents, or the Assistant Commissioner for Trademarks is deemed to refer to the Director, the Commissioner for Patents, or the Commissioner for Trademarks, respectively. See "Reestablishment of the Patent and Trademark Office as the United States Patent and Trademark Office" published in the *Federal Register* at 65 FR 17858 (Apr. 5, 2000), and in the *Official Gazette of the United States Patent and Trademark Office* at 1234 O.G. 41 (May 9, 2000).

Additions to the text of the Manual are indicated by arrows (><) inserted in the text.   Deletions are indicated by a single asterisk (*) where a single word was deleted and by two asterisks (**) where more than one word was deleted. The use of three or five asterisks in the body of the laws, rules, treaties, and administrative instructions indicates a portion of the law, rule, treaty, or administrative instruction which was not reproduced.

> First Edition, November 1949
> Second Edition, November 1953
> Third Edition, November 1961
> Fourth Edition, June 1979
> Fifth Edition, August 1983
> Sixth Edition, January 1995
> Seventh Edition, July 1998
> Eighth Edition, August 2001
>    Revision 1, February 2003
>    Revision 2, May 2004
>    Revision 3, August 2005
>    Revision 4, October 2005
>    Revision 5, August 2006
>    Revision 6, September 2007
>    Revision 7, July 2008
>    Revision 8, July 2010

**EXHIBIT 21**
**PAGE 250**

3.   This form paragraph must be followed by form paragraph 7.28, where the amendment is made to the specification and/or drawings and introduces new matter into the disclosure, and/or form paragraph 7.31.01, where the amendment adds new matter to the claims or affects the claims.

4.   If the amendment is an after-final amendment, an advisory action should be issued indicating that the amendment raises new issues because it is not in compliance with 37 CFR 1.57(a).

5.   This form paragraph should <u>not</u> be used if there is an express incorporation by reference since applicant would not need to comply with the requirements of 37 CFR 1.57(a).

<

## 202    Cross-Noting

**

## 202.02    Notation in File History Regarding Prior U.S. Applications, Including Provisional Applications [R-3]

For Image File Wrapper (IFW) processing, see the IFW Manual.**>The front page of a printed patent identifies all prior applications for which benefits are claimed under 35 U.S.C. 119(e), 120, 121, or 365(c) in continuation-in-part, continuation, divisional, substitute, and reissue applications. Therefore, the identifying data of all prior applications for which benefits are claimed should be reviewed by the examiner to ensure that the data is accurate and provided in either the first sentence(s) of the specification or in an application data sheet. See 37 CFR 1.78(a) and MPEP § 201.11. For example, the reference to a prior nonprovisional application must include the appropriate relationship (e.g., continuation, divisional, or continuation-in-part) between the nonprovisional applications.<

The *>front page< of a printed patent issuing on a continued prosecution application (CPA) filed under 37 CFR 1.53(d) will identify the application number and filing date of the most recent noncontinued prosecution application (but not the filing date of the CPA) as well as all **>prior applications< from which *>benefit< was claimed in the most recent noncontinued prosecution application.

Where ** prior application data, including provisional application data, is preprinted ** on the PALM bib-data sheet **, the examiner should check that data for accuracy, including whether the application is, in fact, copending with the *>prior< nonprovisional

application or applications *>for< which *>benefit< is claimed. >Similarly, the application number of any provisional application for which benefit is claimed should be printed on the PALM bib-data sheet.< If applicant claims benefit under 35 U.S.C. 119(e) to a prior provisional application, and states that the provisional application claims priority to earlier domestic or foreign application(s), the earlier application(s) should not be reflected on the ** PALM bib-data sheet because a provisional application is not entitled to the right of priority of any other application. See 35 U.S.C. 111(b)(7).

Where the data is correct, the examiner should initial ** the PALM bib-data sheet ** in the provided space. Should there be error in the preprinted *>prior< application data, the ** correction or entry of the data in the PALM data base can be made by technical support staff of the Technology Center. Upon entry of the data, a new PALM bib-data sheet should be printed and **>scanned into< the file.

**

The inclusion of ** prior application information in the *>patent< does not necessarily indicate that the claims are entitled to the benefit of the earlier filing date.

See MPEP § 306 for work done by the Assignment Division pertaining to these particular types of applications.

In the situation in which there has been no reference to a *>prior< application because the benefit of its filing date is not desired, no notation as to the *>prior< application is made on the ** PALM bib-data sheet **.

## 202.03    Notation on File Wrapper When Priority Is Claimed for Foreign Application [R-3]

For Image File Wrapper (IFW) processing, see the IFW Manual. A ** PALM bib-data sheet should include the application number, country (or intellectual property authority), day, month, and year of each foreign application that the U.S. application is claiming the *>priority< of. The examiner should check this information for accuracy. Should there be error, the examiner should make the appropriate corrections directly ** on the PALM bib-data sheet, and have the information corrected in the Office computer systems by forwarding the information ** to the examiner's

**EXHIBIT 21**
**PAGE 251**

siders other documents in Office search files while conducting a search of the prior art in a proper field of search.

(1) For e-IDS, use the e-IDS icon on examiner's workstation to consider cited U.S. patents and U.S. patent application publications. See MPEP § 609.07 for more information on e-IDS.

(2) Initial the blank column next to the citation to indicate that the information has been considered by the examiner >, or use the alternative electronic signature method by inserting on each page of reference citations the phrase "All references considered except when lined through" along with the examiner's electronic initials, and providing the examiner's electronic signature on the final page of reference citations<.

(B) Draw a line through the citation to show that it has not been considered if the citation fails to comply with all the requirements of 37 CFR 1.97 and 37 CFR 1.98. - The examiner should inform applicant the reasons why a citation was not considered.

(C) Write "not considered" on an information disclosure statement if none of the information listed complies with the requirements of 37 CFR 1.97 and 37 CFR 1.98. - The examiner will inform applicant the reasons why the IDS was not considered by using form paragraphs 6.49 through 6.49.09.

(D) Sign and date the bottom of the IDS listing >, or use the alternative electronic signature method noted in item (A)(2) above<.

(E) Ensure that a copy of the IDS listing that is signed and dated by the examiner is entered into the file and mailed to applicant.

For discussion of electronic processing of IDS, see MPEP § 609.08.

# 609.02    Information Disclosure Statements in Continued Examinations or Continuing Applications [R-5]

>When filing a continuing application that claims benefit under 35 U.S.C. 120 to a parent application (other than an international application that designated the U.S.), it will not be necessary for the applicant to submit an information disclosure statement in the continuing application that lists the prior art cited by the examiner in the parent application unless the

applicant desires the information to be printed on the patent issuing from the continuing application (for continued prosecution applications filed under 37 CFR 1.53(d), see subsection A.1. below). The examiner of the continuing application will consider information which has been considered by the Office in the parent application.

When filing a continuing application that claims benefit under 35 U.S.C. 120 to an international application that designated the U.S. (see MPEP § 1895), it will be necessary for the applicant to submit an information disclosure statement complying with 37 CFR 1.97 and 1.98 in the continuing application listing the documents cited in the international search report and/or the international preliminary examination report of the international application if applicant wishes to ensure that the information be considered by the examiner in the continuing application.<

## IDS IN CONTINUED EXAMINATIONS OR CONTINUING APPLICATIONS

### A.    *IDS That Has Been Considered (1) in the Parent Application, or (2) Prior to the Filing of a Request for Continued Examination (RCE)*

#### 1.    Continued Prosecution Applications (CPAs) Filed Under 37 CFR 1.53(d)

Information which has been considered by the Office in the parent application of a continued prosecution application (CPA) filed under 37 CFR 1.53(d) will be part of the file before the examiner and need not be resubmitted in the continuing application to have the information considered and listed on the patent.

#### 2.    Continuation Applications, Divisional Applications, or Continuation-in-Part Applications Filed Under 37 CFR 1.53(b)

The examiner will consider information which has been considered by the Office in a parent application when examining: (A) a continuation application filed under 37 CFR 1.53(b), (B) a divisional application filed under 37 CFR 1.53(b), or (C) a continuation-in-part application filed under 37 CFR 1.53(b). A listing of the information need not be resubmitted in the continuing application unless the applicant desires the information to be printed on the patent.

EXHIBIT 21
PAGE 252

citations of other documents; (3) the application number of the application in which the information disclosure statement is being submitted on each page of the list; (4) a column that provides a blank space next to each document to be considered, for the examiner's initials; and (5) a heading that clearly indicates that the list is an information disclosure statement. The information disclosure statement has been placed in the application file, but the information referred to therein has not been considered.

**Examiner Note:**

If an IDS listing includes a copy of an initialed IDS listing from another application, the IDS listing would not comply with the requirements under 37 CFR 1.98(a)(1). This form paragraph is applicable for such an IDS submission.

¶   *6.49.09   Information   Disclosure   Statement   Not Considered, No Explanation of Relevance of Non-English Language Information*

The information disclosure statement filed **[1]** fails to comply with   37 CFR 1.98(a)(3)(i) because it does not include a concise explanation of the relevance, as it is presently understood by the individual designated in   37 CFR 1.56(c) most knowledgeable about the content of the information, of each reference listed that is not in the English language. It has been placed in the application file, but the information referred to therein has not been considered.

**>**

¶   *6.49.10    Information   Disclosure   Statement   Not Considered, Non-acceptable Electronic Medium*

The information disclosure statement filed **[1]** was submitted on an electronic medium that was not acceptable. It has been placed in the application file, but the information referred to therein has not been considered. Note that U.S. patents, U.S. application publications, foreign patent documents and non-patent literature cited in an information disclosure statement may be electronically submitted in compliance with the Office Electronic Filing System (EFS) requirements.

**Examiner Note:**

This form paragraph may be used when the IDS that includes patents and non-patent literature documents is submitted on compact discs or any other electronic medium, except via EFS. Only tables, sequence listings, and program listings may be submitted on CDs. See 37 CFR 1.52(a) and (e).

**<**

¶   *6.51   Time   for   Completing   Information   Disclosure Statement*

The information disclosure statement filed on **[1]** does not fully comply with the requirements of   37 CFR 1.98(b) because:   **[2]**. Since the submission appears to be *bona fide*, applicant is given **ONE (1) MONTH** from the date of this notice to supply the above-mentioned omissions or corrections in the information disclosure statement. NO EXTENSION OF THIS TIME LIMIT MAY BE GRANTED UNDER EITHER   37 CFR 1.136(a) OR (b). Failure to timely comply with this notice will result in the

above-mentioned information disclosure statement being placed in the application file with the non-complying information **not** being considered. See  37 CFR 1.97(i).

**Examiner Note:**

Use this form paragraph if an IDS complies with the timing requirements of 37 CFR 1.97 but part of the content requirements of 37 CFR 1.98(b) has been inadvertently omitted.

This practice does not apply where there has been a deliberate omission of some necessary part of an Information Disclosure Statement or where the requirements based on the time of filing the statement, as set forth in  37 CFR 1.97, have not been complied with.

# 609.05(b)   Complying Information Disclosure Statements [R-7]

The information contained in information disclosure statements which comply with both the content requirements of 37 CFR 1.98 and the requirements, based on the time of filing the statement, of 37 CFR 1.97 will be considered by the examiner. Consideration by the examiner of the information submitted in an IDS means that the examiner will consider the documents in the same manner as other documents in Office search files are considered by the examiner while conducting a search of the prior art in a proper field of search. The initials of the examiner placed adjacent to the citations on the PTO/SB/08A and 08B or its equivalent mean that the information has been considered by the examiner to the extent noted above.

>In addition, the following alternative electronic signature method may be used by examiners in information disclosure statements to indicate whether the information has been considered. Examiners will no longer initial each reference citation considered, but will continue to strikethrough each citation not considered. Each page of reference citations will be stamped by the examiner with the phrase "All references considered except where lined through" along with the examiner's electronic initials, and the final page of reference citations will include the examiner's electronic signature. <

Examiners must consider all citations submitted in conformance with the rules, and their initials when placed adjacent to the considered citations on the list or in the boxes provided on a form PTO/SB/08A and 08B >(or the examiner may use  the alternative electronic signature method noted above)< provides a clear record of which citations have been considered

**EXHIBIT 21**
**PAGE 253**

rejection. The rationale for this is several-fold. It is not uncommon for a full text document to reveal that the document fully anticipates an invention that the abstract renders obvious at best. The converse may also be true, that the full text document will include teachings away from the invention that will preclude an obviousness rejection under 35 U.S.C. 103, when the abstract alone appears to support the rejection. An abstract can have a different effective publication date than the full text document. Because all patentability determinations are fact dependent, obtaining and considering full text documents at the earliest practicable time in the examination process will yield the fullest available set of facts upon which to determine patentability, thereby improving quality and reducing pendency.

When <u>both</u> the abstract and the underlying document qualify as prior art, the underlying document should normally be used to support a rejection. In limited circumstances, it may be appropriate for the examiner to make a rejection in a non-final Office action based in whole or in part on the abstract only without relying on the full text document. In such circumstances, the full text document and a translation (if not in English) may be supplied in the next Office action. Whether the next Office action may be made final is governed by MPEP § 706.07(a).

## III.    >RELIANCE ON ADMITTED PRIOR ART IN SUPPORT OF REJECTION

A statement by an applicant  in the specification or made during prosecution identifying the work of another as "prior art" is an admission which can be relied upon for both anticipation and obviousness determinations, regardless of whether the admitted prior art would otherwise qualify as prior art under the statutory categories of 35 U.S.C. 102. *Riverwood Int'l Corp. v. R.A. Jones & Co.*, 324 F.3d 1346, 1354, 66 USPQ2d 1331, 1337 (Fed. Cir. 2003); *Constant v. Advanced Micro-Devices Inc.*, 848 F.2d 1560, 1570, 7 USPQ2d 1057, 1063 (Fed. Cir. 1988). See MPEP § 2129 for discussion on admissions as prior art. Where the admitted prior art anticipates the claim but does not qualify as prior art under any of the paragraphs of 35 U.S.C. 102, the claim may be rejected as being anticipated by the admitted prior art without citing to 35 U.S.C. 102.

## IV.    < REEXAMINATION

For scope of rejections in *ex parte* reexamination proceedings, see MPEP § 2258 and in *inter partes* reexamination, see MPEP § 2658.
*>

## V.    < DISTINCTION BETWEEN 35 U.S.C. 102 AND 103

The distinction between rejections based on 35 U.S.C. 102 and those based on 35 U.S.C. 103 should be kept in mind. Under the former, the claim is anticipated by the reference. No question of obviousness is present. In other words, for anticipation under 35 U.S.C. 102, the reference must teach every aspect of the claimed invention either explicitly or impliedly. Any feature not directly taught must be inherently present. Whereas, in a rejection based on 35 U.S.C. 103, the reference teachings must somehow be modified in order to meet the claims. The modification must be one which would have been obvious to one of ordinary skill in the art at the time the invention was made. See MPEP § 2131 - § 2146 for guidance on patentability determinations under 35 U.S.C. 102 and 103.
*>

## VI.    <  DETERMINING    THE    EFFECTIVE FILING DATE OF THE APPLICATION

The effective filing date of a U.S. application may be determined as follows:

(A) If the application is a continuation or divisional of one or more earlier U.S. applications or international applications and if the requirements of 35 U.S.C. 120 and 365(c), respectively, have been satisfied, the effective filing date is the same as the earliest filing date in the line of continuation or divisional applications.

(B) If the application is a continuation-in-part of an earlier U.S. application or international application, any claims in the new application not supported by the specification and claims of the parent application have an effective filing date equal to the filing date of the new application. Any claims which are fully supported under 35 U.S.C. 112 by the earlier parent application have the effective filing date of that earlier parent application.

**EXHIBIT 21**
**PAGE 254**

706.02(a)                   MANUAL OF PATENT EXAMINING PROCEDURE

(C) If the application claims foreign priority under 35 U.S.C. 119(a)-(d) or 365(a) or (b), the effective filing date is the filing date of the U.S. application, unless situation (A) or (B) as set forth above applies. The filing date of the foreign priority document is not the effective filing date, although the filing date of the foreign priority document may be used to overcome certain references. See MPEP § 706.02(b) and § 2136.05.

(D) If the application properly claims benefit under 35 U.S.C. 119(e) to a provisional application, the effective filing date is the filing date of the provisional application for any claims which are fully supported under the first paragraph of 35 U.S.C. 112 by the provisional application.

See MPEP § 1893.03(b) for determining the effective filing date of an application under 35 U.S.C. 371. See MPEP § 201.11(a) and § 1895 for additional information on determining the effective filing date of a continuation, divisional, or continuation-in-part of a PCT application designating the U.S. See also MPEP § 1895.01 and § 1896 which discuss differences between applications filed under 35 U.S.C. 111(a) and international applications that enter national stage under 35 U.S.C. 371.

# 706.02(a)   Rejections Under 35 U.S.C. 102(a), (b), or (e); Printed Publication or Patent  [R-3]

Once the examiner conducts a search and finds a printed publication or patent which discloses the claimed invention, the examiner should determine whether the rejection should be made under 35 U.S.C. 102(a), (b), or (e).

In order to determine which section of 35 U.S.C. 102 applies, the effective filing date of the application must be determined and compared with the date of the reference. See MPEP § 706.02 regarding determination of effective filing date of the application.

## I.   DETERMINING THE REFERENCE ISSUE OR PUBLICATION DATE

The examiner must determine the issue or publication date of the reference so that a proper comparison between the application and reference dates can be made. A magazine is effective as a printed publication under 35 U.S.C. 102(b) as of the date it reached the

addressee and not the date it was placed in the mail. *Protein Foundation Inc. v. Brenner,* 260 F. Supp. 519, 151 USPQ 561 (D.D.C. 1966). See MPEP § 707.05(f). For foreign patents see MPEP § 901.05. See MPEP § 2124, § 2126, and § 2128 - § 2128.02 for case law relevant to reference date determination.

## II.   DETERMINING WHETHER TO APPLY 35 U.S.C. 102(a), (b), or (e)

### A.   *35 U.S.C. 102(b)*

First, the examiner should consider whether the reference qualifies as prior art under 35 U.S.C. 102(b) because this section results in a statutory bar to obtaining a patent. If the publication or issue date of the reference is more than 1 year prior to the effective filing date of the application (MPEP § 706.02), the reference qualifies as prior art under 35 U.S.C. 102(b).

Where the last day of the year dated from the date of publication falls on a Saturday, Sunday or Federal holiday, the publication is not a statutory bar under 35 U.S.C. 102(b) if the application was filed on the next succeeding business day. *Ex parte Olah,* 131 USPQ 41 (Bd. App. 1960) (The Board in *Olah* held that 35 U.S.C. 21(b) is applicable to the filing of an original application for patent and that applicant's own activity will not bar a patent if the 1-year grace period expires on a Saturday, Sunday, or Federal holiday and the application's U.S. filing date is the next succeeding business day.) Despite changes to 37 CFR 1.6(a)(2) and 1.10 which permit the USPTO to accord a filing date to an application as of the date of deposit as "Express Mail" with the U.S. Postal Service in accordance with 37 CFR 1.10 (e.g., a Saturday filing date), the rule changes do not affect applicant's concurrent right to defer the filing of an application until the next business day when the last day for "taking any action" falls on a Saturday, Sunday, or Federal holiday (e.g., the last day of the 1-year grace period falls on a Saturday).

### B.   *35 U.S.C. 102(e)*

If the publication or issue date of the reference is too recent for 35 U.S.C. 102(b) to apply, then the examiner should consider 35 U.S.C. 102(e).

In order to apply a reference under 35 U.S.C. 102(e), the inventive entity of the application must be

**EXHIBIT 21**
**PAGE 255**

1

**PROOF OF SERVICE**

2      I hereby certify that on June 21, 2013, I caused the **SUPPLEMENTAL**

3  **DECLARATION   OF   SEAN   M.   MURRAY   IN   SUPPORT   OF**

4  **PLAINTIFF'S   MOTION   FOR   SUMMARY   JUDGMENT   OF   NO**

5  **INEQUITABLE   CONDUCT   IN   CONNECTION   WITH   U.S.   PATENT**

6  **NOS. 8,100,942 & 8,109,969** to be electronically filed with the Clerk of the

7  Court using the CM/ECF system which will send electronic notification of such

8  filing to the following person(s):

9

10                         Lawrence La Porte
                         laportel@dicksteinshapiro.com

11                         DICKSTEIN SHAPIRO LLP
                         2049 Century Park East, Suite 700

12                         Los Angeles, CA  90067
                              T:  310-772-8300

13

14                         Charles W. Saber
                         saberc@dicksteinshapiro.com

15                         Salvatore P. Tamburo
                         tamburos@dicksteinshapiro.com

16                         Megan S. Woodworth
                         woodworthm@dicksteinshapiro.com

17                         S. Gregory Herrman
                         herrmang@dicksteinshapiro.com

18                         DICKSTEIN SHAPIRO LLP

19                         1825 Eye Street Northwest
                         Washington, DC  20006

20                              T:  202-420-2200

21

22      I certify and declare under penalty of perjury under the laws of the State

23  of California that I am employed in the office of a member of the bar of this

24  Court at whose direction the service was made, and that the forgoing is true and

25  correct.

26      Executed on June 21, 2013, at San Diego, California.

27

28                                                  Colleen Mensching

Proof of Service
Case no. 11cv1698 DMS (BLM)