Joseph F. Jennings (State Bar No. 145,920)
joe.jennings@knobbe.com
Brian Horne (State Bar No. 205,621)
brian.horne@knobbe.com
Sean M. Murray (State Bar No. 213,655)
sean.murray@knobbe.com
Sarah Lampton (State Bar No. 282,404)
sarah.lampton@knobbe.com
Marissa Calcagno (State Bar No. 279,783)
marissa.calcagno@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
KFx Medical Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KFX MEDICAL CORPORATION, a Delaware corporation, | Case No. 11cv1698 DMS (BLM) |
| Plaintiff and Counterdefendant, | **KFX'S TRIAL BRIEF PURSUANT TO LOCAL RULE 16.1(f)(9)(a)** |
| v. | Trial Date:  August 19, 2013 |
| ARTHREX, INCORPORATED, a Delaware corporation, | Time:        9:00 A.M. Courtroom 13A |
| Defendant and Counterclaimant. | Honorable Dana M. Sabraw |

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION .................................................................. 1

II. DISPUTED ISSUES ............................................................. 1

    A. Arthrex Has Willfully Infringed the KFx Patents ............................ 1

        1. Performance of the SutureBridge and SpeedBridge Technique Directly Infringes the Asserted Claims of the KFx Patents ..................................... 2

            a. The '311 Patent ............................................... 2

            b. The '942 Patent ............................................... 3

            c. The '969 Patent ............................................... 4

        2. Arthrex Actively Induced Infringement of the KFx Patents ....................................................... 5

        3. Arthrex's Infringement Is Willful ........................... 6

    B. The KFx Patents Are Valid ........................................... 7

        1. The Asserted Claims of the KFx Patents Are Not Anticipated ................................................ 7

        2. The Asserted Claims of the KFx Patents Are Not Obvious .................................................... 8

        3. Claims 1 and 3 of the '969 Patent Are Supported by an Adequate Written Description ................... 9

    C. KFx Is Entitled to Damages for Arthrex's Willful Infringement ............................................................ 10

        1. KFx Is Entitled to a Reasonable Royalty for Arthrex's Infringement of the KFx Patents ................ 10

        2. Enhancement of Damages ................................. 12

        3. Arthrex Should Pay KFx's Attorneys' Fees ............... 12

    D. Arthrex Should Be Permanently Enjoined From Continuing To Infringe The KFx Patents ........................ 12

III. PROCEDURAL ISSUES ........................................................ 13

IV. EVIDENTIARY ISSUES ....................................................... 13

    A. Background – Arthrex's Method Patent (DX 5987) ..................... 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS
(continued)

Page No.

B.    Arthrex's Method Patent Is Legally Irrelevant And Should Be Excluded Under Rule 402 ............................................ 14

C.    Arthrex Should Be Precluded Under Rule 403 From Introducing Or Referring To Its Irrelevant Method Patent .............................................................................................. 15

# TABLE OF AUTHORITIES

Page No(s).

*Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.,*
    2000 WL 34334583 (N.D. Cal. Mar. 31, 2000)........................................ 17

*Advanced Respiratory, Inc. v. Electromed, Inc.,*
    2003 WL 25674810 (D. Minn. June 27, 2003) .................................. 15, 17

*Ariad Pharms., Inc. v. Eli Lilly & Co.,*
    598 F.3d 1336 (Fed. Cir. 2010) (*en banc*).................................... 9

*Atlas Powder Co. v. E. I. Du Pont De Mours & Co.,*
    750 F.2d 1569 (Fed. Cir. 1984) ................................................. 14

*Beatrice Foods Co. v. New England Printing & Lithographing Co.,*
    923 F.2d 1576 (Fed. Cir. 1991) ................................................. 12

*Bio-Technology Gen. Corp. v. Genentech, Inc.,*
    80 F.3d 1553 (Fed. Cir. 1996) .................................................. 14

*Commil USA, LLC v. Cisco Sys., Inc.,*
    No. 2012-1042, 2013 WL 3185535 (Fed. Cir. June 25, 2013) .................. 5

*DSU Med. Corp. v. JMS Co., Ltd.,*
    471 F.3d 1293 (Fed. Cir. 2006) (*en banc*).................................... 5

*eBay Inc. v. MercExchange, L.L.C.,*
    547 U.S. 388, 126 S. Ct. 1837 (2006) ........................................ 12

*Fiskars, Inc. v. Hunt Mfg. Co.,*
    221 F.3d 1318 (Fed. Cir. 2000) ................................................. 15

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
    318 F. Supp. 1116 (S.D.N.Y. 1970) ........................................... 10

*Glaros v. H.H. Robertson Co.,*
    797 F.2d 1564 (Fed. Cir. 1986) ................................................. 16

*Herman v. Youngstown Car Mfg. Co.,*
    191 F. 579 (6th Cir. 1911)...................................................... 14

*In re Seagate Tech., LLC,*
    497 F.3d 1360 (Fed. Cir. 2007) (*en banc*)............................... 6, 12

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) .................................................................. 5

*Mintz v. Dietz & Watson, Inc.*,
    679 F.3d 1372 (Fed. Cir. 2012) .................................................................. 8

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
    545 F.3d 1359 (Fed. Cir. 2008) .................................................................. 7

*Osram Sylvania, Inc. v. Am. Induction Techs., Inc.*,
    701 F.3d 698 (Fed. Cir. 2012) .................................................................. 8

*Schumer v. Lab. Computer Sys., Inc.*,
    308 F.3d 1304 (Fed. Cir. 2002) .................................................................. 7

*Sciele Pharma Inc. v. Lupin Ltd.*,
    684 F.3d 1253 (Fed. Cir. 2012) .................................................................. 8

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*,
    665 F.3d 1269 (Fed. Cir. 2012) .................................................................. 9

*TypeRight Keyboard Corp. v. Microsoft Corp.*,
    374 F.3d 1151 (Fed. Cir. 2004) .................................................................. 7

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) .................................................................. 10

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*,
    239 F.3d 1225 (Fed. Cir. 2001) .................................................................. 2

*Whitserve, LLC v. Computer Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012) .................................................................. 12

## OTHER AUTHORITIES

35 U.S.C. § 103 .................................................................. 8

35 U.S.C. § 271 .................................................................. 5

35 U.S.C. § 282 .................................................................. 7

35 U.S.C. § 283 .................................................................. 12

35 U.S.C. § 284 .................................................................. 10, 12

35 U.S.C. § 285 .................................................................. 12

Pursuant to Local Rule 16.1(f)(9)(a) and paragraph 7 of the Court's July 19, 2013, Order Regarding Trial [D.I. 138], Plaintiff KFx Medical Corporation ("KFx") submits this trial brief.

## I.  INTRODUCTION

KFx owns U.S. Patent Nos. 7,585,311 ("the '311 patent"), 8,100,942 ("the '942 patent"), and 8,109,969 ("the '969 patent") (collectively, "the KFx patents").  The KFx patents concern a method of attaching soft tissue, such as a tendon, to bone.  The patented methods can be used in a number of applications, but primarily have been used for arthroscopically repairing a torn rotator cuff.

In this trial, KFx will demonstrate that Defendant Arthrex, Inc. ("Arthrex") has willfully infringed claims 1, 20 and 28 of the '311 patent, claims 1 and 18 of the '942 patent, and claims 1 and 3 of the '969 patent by making, selling, offering for sale, and promoting the accused SutureBridge and SpeedBridge surgical procedures.  KFx will also establish that it is entitled to a reasonable royalty on Arthrex's sales of the products used in the infringing procedures and a permanent injunction to prevent further infringement.  Because Arthrex's infringement was and continues to be willful, the Court should award KFx up to three times the damages awarded at trial, as well as KFx's reasonable attorneys' fees.

## II.  DISPUTED ISSUES

### A.  Arthrex Has Willfully Infringed the KFx Patents

Arthrex sells products that are marketed for use in its SutureBridge double-row rotator cuff repair technique and its SpeedBridge knotless double-row footprint reconstruction surgical technique.  Performance of either Arthrex's SutureBridge or SpeedBridge procedure directly infringes the asserted claims of the KFx patents.  Arthrex willfully infringes the asserted claims of the KFx patents by actively inducing surgeons to perform the SutureBridge and SpeedBridge procedures, thereby infringing the KFx patents.

1.     **Performance of the SutureBridge and SpeedBridge Technique Directly Infringes the Asserted Claims of the KFx Patents**

To prove infringement, a patentee must establish by a preponderance of the evidence that every limitation of the patent claim be found in the accused method.  *See Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225 (Fed. Cir. 2001).

At trial, KFx will demonstrate by a preponderance of the evidence that the accused SutureBridge and SpeedBridge procedures directly infringe claims 1, 20 and 28 of the '311 patent, claims 1 and 18 of the '942 patent, and claims 1 and 3 of the '969 patent.  Performance of the SutureBridge and SpeedBridge procedures meets every limitation of the asserted claims of the KFx patents.

a.     **The '311 Patent**

Performance of the SutureBridge and SpeedBridge procedures directly infringes claims 1, 20 and 28 of the '311 patent.  KFx will present evidence that each limitation of claim 1 is performed when Arthrex's customers practice the SutureBridge and SpeedBridge procedures as taught by Arthrex.  These procedures involve first inserting a first anchor into bone such that it is positioned underneath the soft tissue and that no part of the anchor extends beyond an edge of the soft tissue.  Second, a length of suture is passed over the tendon, and third, a second anchor (a PushLock or SwiveLock anchor) is inserted into bone so that it is positioned beyond the edge of the soft tissue and is not underneath the soft tissue.  Fourth, the length of suture is tensioned to compress an area of tissue to bone between the edge of soft tissue and the first anchor after the second anchor is inserted.  Finally the suture is fixedly secured to the second anchor without tying any knots.

Claim 20 incorporates the method of claim 1, but includes two additional anchors (*i.e.*, four total suture anchors—two medial and two lateral) and adds an additional requirement that the suture passing from the second medial anchor to

the second lateral anchor crosses over the suture passing from the first medial anchor to the first lateral anchor.  Claim 28 also incorporates the method of claim 1, and further requires that the inserting, passing, and fixedly securing steps be conducted arthroscopically.  KFx will present evidence to show that the accused procedures perform the additional steps recited in these dependent claims.

### b.    The '942 Patent

Performance of the SutureBridge and SpeedBridge procedures directly infringes claims 1 and 18 of the '942 patent.  KFx will present evidence that each limitation of claim 1 is performed when Arthrex's customers practice the SutureBridge and SpeedBridge procedures as taught by Arthrex.  First, a first anchor is inserted into bone such that it is positioned underneath the soft tissue, and second, suture is passed through and over the rotator cuff tissue.  Third, a second anchor that has a distal member and a proximal member is inserted into bone at a position beyond an edge of the soft tissue.  The second (lateral) anchor in the SutureBridge and SpeedBridge procedures includes a distal member and a proximal member because the PushLock and SwiveLock anchors are two-piece anchors with an eyelet portion (the distal member) and a body portion (the proximal member).  Fourth, after inserting the distal member of the second anchor, the length of suture from the first anchor is tensioned to compress an area of tissue to bone between the edge of the soft tissue and the first anchor.  Finally, the techniques each include the step of fixedly securing the length of suture at the second anchor position, without tying any knots, by moving the proximal member distally toward the distal member.   In the infringing techniques, this is done when the anchor body (proximal member) is screwed or tapped into the bone until it is adjacent to the eyelet portion (distal member).

Claim 18 recites the method of claim 1, but includes a second medial anchor, which is referred to as the third anchor in the claim.  KFx will present

1  evidence to show that the accused procedures include the additional
2  requirements recited in this claim.

### c.    The '969 Patent

4  Performance of the SutureBridge and SpeedBridge procedures directly
5  infringes claims 1 and 3 of the '969 patent.  KFx will present evidence that each
6  limitation of claim 1 is performed when Arthrex's customers practice the
7  SutureBridge and SpeedBridge procedures as taught by Arthrex.  First, a first
8  anchor is inserted into bone such that it is positioned underneath the soft tissue,
9  and second, suture is passed through and over the rotator cuff tissue.  Third, a
10 portion of a second anchor (the distal or eyelet portion of the Pushlock or
11 SwiveLock two-piece anchor) is inserted into bone so that it is positioned
12 beyond the edge of the soft tissue.  Fourth, the length of suture is tensioned to
13 compress an area of tissue to bone between the edge of soft tissue and the first
14 anchor after the portion of the second anchor is inserted.  Fifth, the techniques
15 each include the step of fixedly securing the length of suture at the second
16 anchor position without tying any knots.  Finally, PushLock and SwiveLock
17 anchors each include an anchor tip (the distal eyelet portion of the anchor) and a
18 hollow cylinder (the proximal body portion of the anchor), and the distal eyelet
19 portion includes an aperture through which suture material is threaded prior to
20 insertion of the anchor.[1]

21 Claim 3 recited the method of claim 1, but further requires that the anchor
22 tip comprises an anchor inserter attachment member.  KFx will present evidence
23 to show that the accused procedures include the additional requirement recited
24 in this claim.

---

26 [1] KFx also asserted a doctrine of equivalents argument as to the "hollow cylinder"
limitation.  To simplify the case, however, the parties reached the following agreement.  KFx
27 will not present the doctrine of equivalents argument and Arthrex will not contest that the
"hollow cylinder" limitation is met by the accused procedures.  In other words, Arthrex will
28 not challenge that it is met but KFx will not tell the jury that Arthrex has conceded it.

## 2. Arthrex Actively Induced Infringement of the KFx Patents

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." To establish induced infringement, the patentee must show by a preponderance of the evidence that the defendant acted with specific intent to induce infringement of the patent. *See DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc*). This requires the patentee to prove that the defendant knew of the patent or was willfully blind to its existence, and knew or was willfully blind to the fact that the acts it induced, if taken, would constitute infringement of the patent. *See Commil USA, LLC v. Cisco Sys., Inc.*, No. 2012-1042, 2013 WL 3185535, at *3-*4 (Fed. Cir. June 25, 2013). The patentee must also demonstrate that someone directly infringed at least one patent claim. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009).

KFx will demonstrate by a preponderance of the evidence that Arthrex's SutureBridge and SpeedBridge procedures directly infringe the asserted claims of the KFx patents. KFx will also show that Arthrex knew of the KFx patents and acted with specific intent to induce infringement of the KFx patents. For example, at least as early as September 2006, John Schmieding, Arthrex's in-house counsel, was aware of the KFx patent application that issued as the '311 patent. Arthrex emails from August 2009 prove that Arthrex knew of the '311 patent claims one month before the patent issued, and additional emails from September 2009 prove that Arthrex knew that the patent had issued. Despite this knowledge, Arthrex has provided multiple teaching guides, animations, and surgical videos on its website that demonstrate for surgeons how to perform the SutureBridge and SpeedBridge procedures, procedures which include the steps in the asserted claims of the KFx patents. Moreover, in addition to selling individual components for use in the infringing procedures, Arthrex has also sold kits especially adapted for those procedures. Arthrex has also extensively

trained its sales representatives to teach surgeons how to perform the SutureBridge and SpeedBridge procedures and has extensively advertised these procedures.   Through this and other evidence, KFx will demonstrate that Arthrex knew or was willfully blind to the knowledge that performance of the SutureBridge and SpeedBridge procedures would infringe the '311 patent.

Similarly, when the '942 and '969 patents issued, Arthrex knew or was willfully blind to the fact that the accused SutureBridge and SpeedBridge procedures also infringed these patents because Arthrex was already aware of its infringement of the '311 patent by virtue of this lawsuit.

### 3.   <u>Arthrex's Infringement Is Willful</u>

To establish willful infringement, a patentee must show by clear and convincing evidence that the defendant, with knowledge of the patent, acted despite an objectively high likelihood that its actions constituted infringement. *See In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*). The patentee must also demonstrate that the objectively high risk was either known or so obvious that it should have been known to the defendant. *Id.*

KFx will show by clear and convincing evidence that Arthrex knew of the KFx patents and acted despite an objectively high likelihood that its actions constituted infringement.   KFx will also demonstrate that the objectively high risk was known or so obvious it should have been known to Arthrex. Notwithstanding Arthrex's knowledge of the risk that the accused procedures infringe the KFx patents, Arthrex has done nothing to change its business practices.   Rather, Arthrex continues to violate KFx's intellectual property rights.

Although Arthrex obtained legal opinion letters regarding the KFx patents, those opinions were not sought until years after KFx's '311 patent issued and well after KFx filed this lawsuit.   KFx will show that these opinion letters were untimely and cannot negate Arthrex's knowledge of the objective

high risk of infringement.   Moreover, the opinions were so fundamentally flawed that they could not have provided a reasonable basis for Arthrex to conclude that the SutureBridge and SpeedBridge procedures did not infringe the KFx patents or that the patents were invalid.

**B.    The KFx Patents Are Valid**

Patents are presumed to be valid.  35 U.S.C. § 282.  To overcome this presumption, the party challenging the validity of a patent must prove facts supporting a determination of invalidity by clear and convincing evidence.  *See Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002).  At trial, Arthrex will not be able to meet its burden of demonstrating invalidity by clear and convincing evidence.

**1.    The Asserted Claims of the KFx Patents Are Not Anticipated**

To establish that a patent is invalid based upon anticipation, the party challenging the validity of the patent must prove by clear and convincing evidence that the claimed inventions are not new.  *See* 35 U.S.C. § 282; *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004).  For a claim to be invalid because it is not new, each and every element in the claim must be present *in a single item of prior art*, and arranged or combined in the same way as recited in the claim.  *See Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008) (emphasis added).

Arthrex cannot meet its burden of proving by clear and convincing evidence that a single item of prior art, *i.e.*, a single prior art procedure or prior art disclosure of a procedure, discloses all elements of the asserted method claims of the KFx patents.  Arthrex contends that a collection of items it labels the "ElAttrache/Arthrex work" anticipates the asserted claims of the KFx patents.  Yet Arthrex has not—and cannot—identify *a single item of prior art* from within this collection that discloses each and every limitation of the asserted claims with the limitations arranged in the same way as recited in the

asserted claims.  For example, this work did not include, *inter alia*, the step of tensioning suture after inserting the Bio-Tenodesis screw, or any portion thereof, into bone and also included tying knots over the screw to secure the suture thereto.  Moreover, because the Bio-Tenodesis is a single-piece anchor, it cannot meet any of the limitations requiring a two-piece anchor.  And much of Arthrex's evidence of the "ElAttrache/Arthrex work" does not constitute prior art or evidence of an item of prior art under any subsection of 35 U.S.C. § 102.

## 2.    The Asserted Claims of the KFx Patents Are Not Obvious

To establish that a patent is invalid as obvious in view of the prior art, the party challenging the validity of the patent must show by clear and convincing evidence that the claimed invention would have been obvious to persons of ordinary skill in the art at the time the invention was made.  *See* 35 U.S.C. § 103; *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012). Obviousness is a question of law based on underlying factual findings including the scope and content of the prior art, the differences between the claims and the prior art, the level of ordinary skill in the art at the time the invention was made, and "secondary considerations" or "objective evidence" of nonobviousness.  *See Osram Sylvania, Inc. v. Am. Induction Techs., Inc.*, 701 F.3d 698, 706 (Fed. Cir. 2012).   Objective evidence of nonobviousness includes evidence of copying, commercial success, praise by others, failure of others, and long-felt need.  *See Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1379 (Fed. Cir. 2012).

Arthrex will not be able to prove by clear and convincing evidence that the invention claimed by the KFx patents would have been obvious to a person of ordinary skill in the art at the time the invention was made.  For example, Arthrex's alleged prior art does not teach or otherwise suggest the invention recited in the claims of the KFx patents, and there is no reason to combine the various prior art references in the manner Arthrex alleges.  The only reasons provided by Arthrex's technical expert, Dr. Jonathan Greenleaf, for combining

the prior art references as suggested by Arthrex are (1) that the prior art references are in the same technical field, (2) that they all relate to attaching soft tissue to bone, and (3) that they are pertinent to problems addressed in or the devices disclosed in the specification of the KFx patents.  This is insufficient to establish a reason for combining the references in the manner alleged by Arthrex.  Moreover, Dr. Greenleaf's third proposed reason to combine – that the KFx patent provides a reason for combining the alleged prior art references – is a legally impermissible reason to combine prior art references.  Arthrex cannot provide a reason to combine the alleged prior art references and therefore cannot meet its high burden of proving by clear and convincing evidence that the invention claimed by the KFx patents would have been obvious to a person of ordinary skill in the art at the time the invention was made.

Moreover, KFx will present evidence at trial regarding various secondary considerations of non-obviousness, including evidence that the inventions of the KFx patents met a long-felt but unresolved need.  KFx will also present evidence that its patented methods have been commercially successful as a result of the patented features.  KFx will also show that Arthrex recognized a need for KFx's invention after KFx had made its invention.

### 3.    Claims 1 and 3 of the '969 Patent Are Supported by an Adequate Written Description

To establish invalidity for failing to comply with the written description requirement, the party challenging validity must show by clear and convincing evidence that the written description of the invention in the patent is not adequate.  *See Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1354 (Fed. Cir. 2010) (*en banc*).  The written description requirement is satisfied if a person of ordinary skill in the field of the invention would recognize, from reading the patent specification, that the inventor possessed the subject matter finally claimed in the patent.  *See Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665

F.3d 1269, 1285 (Fed. Cir. 2012).  It is unnecessary to spell out every detail of the invention in the specification, however, and specific examples are not required to comply with the written description requirement.  *Id.*

Arthrex cannot prove by clear and convincing evidence that the written description of the KFx patents does not adequately describe the invention recited in claims 1 and 3 of the '969 patent.  These claims require an anchor tip comprising an aperture through which suture is threaded prior to inserting the anchor into bone.  The specification of the '969 patent demonstrates that the inventors were in possession of a method of attaching soft tissue to bone where at least one anchor comprises an anchor tip having an aperture through which suture material is threaded prior to insertion of that anchor.

**C.**   **KFx Is Entitled to Damages for Arthrex's Willful Infringement**

   **1.**   **KFx Is Entitled to a Reasonable Royalty for Arthrex's Infringement of the KFx Patents**

Once liability for infringement has been established, a patentee is entitled to damages adequate to compensate for the infringement, which shall be no less than a reasonable royalty.  35 U.S.C. § 284.  A reasonable royalty is determined based upon a hypothetical negotiation between a willing licensor and a willing licensee occurring just before infringement began.  *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011).  An established method of evaluating the likely outcome of this hypothetical negotiation is to consider the 15 factors set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

KFx is entitled to a reasonable royalty on the revenue generated by Arthrex's sale of the products used in the accused procedures occurring after September 8, 2009, the issue date of the '311 patent.  Based on these sales, KFx's damages expert, Mr. George Strong, will testify that KFx is entitled to $61.6 million of damages for sales through June 2013.  This equals 11.7% of

Arthrex's revenue from products used in the infringing procedures.  KFx will also seek an accounting for damages due to any infringing sales from trial forward, and will seek pre-judgment and post-judgment interest on any damages award.

To determine the amount of damages owed to KFx, Mr. Strong first determined the number of accused procedures performed by surgeons using Arthrex's products.  Although Arthrex does not formally track the number of those procedures, Arthrex has estimated the number of those procedures at various times in the normal course of its business based upon certain assumptions.  Mr. Strong will testify that, using Arthrex's estimates and assumptions, as well as a regression analysis, he determined the anchor sales associated with the infringing procedures.  Mr. Strong also determined the profits that Arthrex earned from selling anchors for use in those procedures.

Mr. Strong will also rely on Dr. Jonathan Ticker, who is an orthopedic surgeon specializing in shoulder surgery and KFx's medical expert.  Dr. Ticker opined regarding the types of procedures that would have been available alternatives had the accused procedures not been available, *i.e.*, "but for" the infringement.  Dr. Ticker also opined regarding the frequency with which surgeons would have been expected at the time of the hypothetical negotiation to perform the various alternative procedures, each of which used different numbers and types of anchor.  Based on Dr. Ticker's determinations, Mr. Strong calculated the incremental profits that Arthrex earned from selling anchors to be used in the accused procedures instead of the alternative procedures.

Mr. Strong will further testify that parties to a hypothetical negotiation would have determined a reasonable royalty based on that incremental profit.  Mr. Strong will testify that, after considering the *Georgia Pacific* factors, an equal division of the incremental profits is the proper measure of a reasonable royalty in this case.

## 2.   Enhancement of Damages

Upon a finding of infringement and assessment of damages against the infringer, "the court may increase the damages up to three times the amount found or assessed."  35 U.S.C. § 284.  The decision to award such enhanced damages may be based on willful infringement or bad faith.  *See Seagate*, 497 F.3d at 1368 (citing *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 923 F.2d 1576, 1578 (Fed. Cir. 1991)).  Based on Arthrex's willful infringement of the KFx patents, KFx is entitled to up to three times the amount of damages awarded.

## 3.   Arthrex Should Pay KFx's Attorneys' Fees

In exceptional cases, the court may award reasonable royalties to the prevailing party.  35 U.S.C. § 285.  A defendant's willful infringement justifies an award of reasonable attorneys' fees.  *See Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 37 (Fed. Cir. 2012).  Based on Arthrex's willful infringement of the KFx patents, the Court should deem this case exceptional and award KFx its attorneys' fees.

## D.   Arthrex Should Be Permanently Enjoined From Continuing To Infringe The KFx Patents

After establishing infringement of a valid patent, a court may grant an injunction in accordance with the principles of equity to prevent continued infringement.  35 U.S.C. § 283.  To obtain a permanent injunction, the plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

KFx will demonstrate that it has suffered irreparable injury because of Arthrex's willful infringement of the KFx patents.  KFx will also show that remedies at law, such as monetary damages, are inadequate to compensate KFx for the injury suffered as a result of Arthrex's willful infringement of the KFx patents.  Additionally, KFx will show that, in considering the balance of hardships between KFx and Arthrex, a remedy in equity is warranted.  Finally, KFx will demonstrate that the public interest would not be disserved by permanently enjoining Arthrex from infringing the KFx patents.

## III.  PROCEDURAL ISSUES

KFx is not currently aware of any procedural issues that require resolution by the Court.

## IV.  EVIDENTIARY ISSUES

The parties have raised a number of objections to one another's exhibits and deposition designations.  However, one exhibit that Arthrex only recently added to its exhibit list, DX 5987, raises an important evidentiary issue that should be addressed prior to trial.  Because Arthrex only added DX 5987 to its exhibit list on August 9, 2013, the day the Court heard argument on motions *in limine*, KFx was not aware that Arthrex intended to use the exhibit when KFx prepared its motions *in limine*.  Nevertheless, DX 5987 should be excluded under Rules 402 and 403, and Arthrex should be precluded from making any reference to the exhibit at trial.[2]

### A.    Background – Arthrex's Method Patent (DX 5987)

DX 5987 is a copy of U.S. Patent No. 8,012,174, a patent that Arthrex obtained on the specific surgical procedures at issue in this case.  Appendix 1 (DX 5987).  The specification of the '174 patent expressly refers to and

---

[2]  DX 5987 is an Arthrex patent.  Arthrex also added the patent's file history (DX 5988) and publication (DX 5993) to its exhibit list on the same day, August 9, 2013.  These two exhibits should be excluded for the same reasons DX 5987 should be excluded.

describes Arthrex's PushLock and SwiveLock anchors, *id.* at col. 4, lines 8-15 and 54-59, and the claims of the '174 patent are limited to methods using anchors with certain specific features of the PushLock and SwiveLock, *id.* at cols. 6-10.  For example, the claims of the '174 patent all require a "cannulated interference device."  *Id.*

The provisional patent application that led to the '174 patent was filed on February 1, 2006, sixteen months after KFx filed the September 17, 2004 provisional application that led to the asserted KFx patents.  *Id.*  KFx's '311 patent is therefore prior art to the '174 patent and, in fact, the publication of KFx's June 1, 2005 patent application is listed among the "References Cited" on the front page of the '174 patent.  *Id.*

**B.** **Arthrex's Method Patent Is Legally Irrelevant And Should Be Excluded Under Rule 402**

The fact that Arthrex has a patent on a specific implementation of KFx's patented surgical method – one using the specific anchors marketed by Arthrex – is ***no defense*** to Arthrex's infringement of the KFx patents.  As the Federal Circuit explained long ago, "where [a] defendant has appropriated the material features of the patent in suit, infringement will be found even when those features have been supplemented and modified to such an extent that the defendant may be entitled to a patent for the improvement."  *Atlas Powder Co. v. E. I. Du Pont De Mours & Co.*, 750 F.2d 1569, 1580 (Fed. Cir. 1984) (quotation marks omitted); *see also Bio-Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) ("The existence of one's own patent does not constitute a defense to infringement of someone else's patent.").  This is because a patent is not a determination by the Patent Office that the patent owner has the right to practice his invention; rather, a patent only confers the right to exclude others from using the invention.  *See Atlas*, 750 F.2d at 1580-81 (citing *Herman v. Youngstown Car Mfg. Co.*, 191 F. 579 (6th Cir. 1911)).

Because Arthrex's patent on the infringing surgical procedures is no defense to infringement, that patent is irrelevant to any issue in the case and should be excluded.  *See Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000) (affirming the exclusion of the defendant's patent); *Bio-Technology*, 750 F.2d at 1559 (that the defendant had patented its specific method was "irrelevant"); *Advanced Respiratory, Inc. v. Electromed, Inc.*, 2003 WL 25674810, *1 (D. Minn. June 27, 2003) (excluding the defendants' patent because "issuance of the '749 patent is not relevant to the infringement issue").[3]

## C.    Arthrex Should Be Precluded Under Rule 403 From Introducing Or Referring To Its Irrelevant Method Patent

Arthrex's method patent should also be excluded because it would cause jury confusion and unfair prejudice to KFx, and because it would waste time and distract the jury.  Jurors unfamiliar with the law inevitably conclude, contrary to black-letter law, that the Patent Office would not have granted a defendant its own patent unless the defendant was entitled to practice that patent.  In this case, the law is counter-intuitive.  Thus, even well-instructed jurors tend to conclude that a defendant with a patent cannot infringe other patents, especially the patents considered by the Patent Office.  KFx's '311 patent publication was considered by the Patent Office during the prosecution of Arthrex's application, making it highly likely that jurors would become confused and improperly rely on DX 5987 as proof of noninfringement.  Such jury confusion would unfairly prejudice KFx.

---

[3]   The courts have carved out one narrow exception to the rule that a defendant's patent on the accused product or method is irrelevant.  Specifically, a defendant's patent can sometimes be relevant to establishing that the differences between the accused product or method and the claimed invention are not insubstantial and therefore that the accused product or method is not equivalent to the claimed invention under the doctrine of equivalents.  However, that exception is inapplicable here.  KFx has dropped its claim of infringement under the doctrine of equivalents pursuant to an agreement between the parties.  The jury verdict form and jury instructions filed today by KFx reflect this streamlining of the case.

Moreover, introducing DX 5987 would distract the jury from the real issues in the case and result in much wasted time.  Before the Court set time limits of fifteen hours per side, KFx expected to address DX 5987, the issued '174 patent, in the course of addressing the patent application that led to the '174 patent.  The patent *application* is relevant because, as explained in KFx's opposition to Arthrex's summary judgment motion, Arthrex originally tried to obtain a broad patent directed to KFx's invention long after KFx had filed its own patent application.  Arthrex's broad patent application therefore constitutes praise for KFx's patented invention, a "secondary consideration" which indicates that KFx's invention is not obvious.  However, because KFx's application was filed first and was prior art to Arthrex's application, Arthrex was required to narrow its claims to cover only an alleged improvement to the KFx procedure.  The narrow patent that resulted, DX 5987, is not relevant to any issue in the case.  Only if KFx relied on the Arthrex patent application could the resulting issued patent arguably be admissible for completeness.

After the Court set time limits for trial, KFx recognized that it would not have time to explain to the jury the relevance of Arthrex's broad patent application *and* ensure that the jury understood that the narrower issued patent was not evidence of noninfringement.  Accordingly, KFx will not introduce or refer to the patent application.  The issued patent is therefore not necessary for completeness and thus has no relevance to any issue in the case.  If Arthrex is permitted to introduce or discuss this irrelevant patent, however, KFx will be forced to waste valuable time explaining the patent's file history, establishing the narrow scope of its claims, and ensuring that the jury understands that the patent is not proof of noninfringement.

Because of the risk of jury confusion and unfair prejudice to KFx, as well as the certainty of wasted time and distraction of the jury, the Court should preclude Arthrex from introducing or referring to DX 5987.  *See Glaros v. H.H.*

*Robertson Co.*, 797 F.2d 1564, 1572-73 (Fed. Cir. 1986) ("Introduction of [the defendant's patent and other evidence] would have injected frolics and detours and would have required introduction of counter-evidence, all likely to create side issues that would have unduly distracted the jury from the main issues."); *Advanced Respiratory,* 2003 WL 25674810 at *1 ("Aside from the great confusion that this would cause with the jury, it would also misdirect the jury's attention from the real issue of the case."); *Advanced Cardiovascular Sys., Inc. v. Medtronic*, Inc., 2000 WL 34334583, *6 (N.D. Cal. Mar. 31, 2000) ("presenting evidence to the jury that the [accused device] was covered by patents risked misleading the jury…").

In sum, pursuant to Rules 402 and 403 of the Federal Rules Of Evidence, Arthrex should be precluded from introducing or referring to DX 5987.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: August 12, 2013      By: s/ Joseph F. Jennings
                                 Joseph F. Jennings
                                 Brian Horne
                                 Sean M. Murray
                                 Sarah Lampton
                                 Marissa Calcagno

                                 Attorneys for Plaintiff
                                 KFx Medical Corporation

KFx's Trial Brief
Case no. 11cv1698 DMS (BLM)

**PROOF OF SERVICE**

I hereby certify that on August 12, 2013, I caused **PLAINTIFF'S TRIAL BRIEF PURSUANT TO LOCAL RULE 16.1(f)(9)(a)** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following person(s):

Robert W. Dickerson
dickersonr@dicksteinshapiro.com
Lawrence La Porte
laportel@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
2049 Century Park East, Suite 700
Los Angeles, CA  90067
T:  310-772-8300

Charles W. Saber
saberc@dicksteinshapiro.com
Salvatore P. Tamburo
tamburos@dicksteinshapiro.com
Megan S. Woodworth
woodworthm@dicksteinshapiro.com
S. Gregory Herrman
herrmang@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
1825 Eye Street Northwest
Washington, DC  20006
T:  202-420-2200

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on August 12, 2013, at San Diego, California.

Colleen Mensching

KFXL.064L
15844821
072213

1