FILED

OCT 09 2013

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KFx MEDICAL CORP., ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | No. 11CV1698-DMS |
| ARTHREX, INC., ) | |
| Defendants. ) | |

**JURY INSTRUCTIONS**
**PHASE II**

DATED: _10-7-13_

_____
DANA M. SABRAW
UNITED STATES DISTRICT JUDGE

INSTRUCTION NO.: 1

## DAMAGES – GENERALLY

KFx must prove its damages by a preponderance of the evidence, which means it is more likely than not that KFx has proven its damages.

If proven by KFx, the amount of those damages must compensate KFx for the infringement. The purpose of a damage award is to put KFx in about the same financial position it would have been in if the infringement had not happened. But, the damage award cannot be less than a reasonable royalty.

You may not add anything to the amount of damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

INSTRUCTION NO.: 2

## REASONABLE ROYALTY-GENERALLY

KFx seeks reasonable royalty damages in this case. A royalty is a payment made to a patent owner by someone else in exchange for the rights to use a patented method.

The patent law provides that the amount of damages that Arthrex should pay KFx for infringing the KFx patents must be enough to compensate for the infringement, but may not be less than a reasonable royalty for the use of KFx's invention.

INSTRUCTION NO.: 3

## REASONABLE ROYALTY DEFINITION –
## USING THE "HYPOTHETICAL NEGOTIATION" METHOD

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between KFx and Arthrex. Of course, we know that they did not agree to a license and royalty payment. But, in order to decide on the amount of reasonable royalty damages, you should assume that the parties did negotiate a license just before the infringement began. This is why it is called a "hypothetical" license negotiation. You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and both were willing to enter into a license.

INSTRUCTION NO.: 4

## RELEVANT FACTORS IF USING
## THE HYPOTHETICAL NEGOTIATION METHOD

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

1. Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.
2. The rates paid by Arthrex to license other patents comparable to the KFx patents.
3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.
4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.
5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.
6. The effect of selling the patented product in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.
7. The duration of the KFx patents and the term of the license.
8. The established profitability of the product made under the KFx patents, its commercial success, and its current popularity.

9. The utility and advantages of the patented invention over the old modes or devices, if any that had been used for achieving similar results.
10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.
11. The extent to which Arthrex has made use of the invention; and any evidence that shows the value of that use.
12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.
13. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.
14. The opinion testimony of qualified experts.
15. The amount that a licensor (such as KFx) and a licensee (such as Arthrex) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.
16. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

INSTRUCTION NO.: 5

## REASONABLE ROYALTY – TIMING

Although the relevant date for the hypothetical license negotiation is just before the infringement began, you may consider any actual profits made by Arthrex due to its infringement and any commercial success of the patented invention after that date. You may only consider this information, however, if those sales and profits were foreseeable just before the infringement began. In addition, the royalty may not be limited or increased based on the actual profits Arthrex made.

INSTRUCTION NO.: 6

## REASONABLE ROYALTY – AVAILABILITY OF NON-INFRINGING SUBSTITUTES

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of non-infringing substitutes for the patented invention. A non-infringing substitute must be a product or method that does not infringe the patent because it is licensed under the patent or it does not include all the features required by the claims of the patent.

A non-infringing substitute is available if Arthrex had all the necessary equipment, materials, know-how, and experience to design and manufacture the substitute and sell the substitute instead of its infringing method at the time the infringing method was performed. The substitute also must be acceptable to the specific users of the infringing method, not the public in general.

The test is whether buyers of Arthrex's products bought the products for use in the infringing method because of the patented features. If so, non-infringing methods without those patented features would not be "acceptable non-infringing substitutes," even if they could compete in the marketplace with the patented method.

INSTRUCTION NO.: __7__

## DAMAGES CANNOT BE SPECULATIVE

A patent holder is not entitled to damages that are remote or speculative. While a patent holder is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.