1  Joseph F. Jennings (State Bar No. 145,920)
   joe.jennings@knobbe.com
2  Brian Horne (State Bar No. 205,621)
   brian.horne@knobbe.com
3  Sean M. Murray (State Bar No. 213,655)
   sean.murray@knobbe.com
4  Sarah Lampton (State Bar No. 282,404)
   sarah.lampton@knobbe.com
5  Marissa Calcagno (State Bar No. 279,783)
   marissa.calcagno@knobbe.com
6  KNOBBE, MARTENS, OLSON & BEAR, LLP
7  2040 Main Street
   Fourteenth Floor
8  Irvine, CA  92614
   Phone: (949) 760-0404
9  Facsimile: (949) 760-9502

Attorneys for Plaintiff
KFx Medical Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KFX MEDICAL CORPORATION, a Delaware corporation,<br><br>    Plaintiff and Counterdefendant,<br><br>    v.<br><br>ARTHREX, INCORPORATED, a Delaware corporation,<br><br>    Defendant and Counterclaimant. | Case No. 11cv1698 DMS (BLM)<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND THE JUDGMENT AND MAKE ADDITIONAL FINDINGS**<br><br>Date:  January 31, 2014<br>Time:  1:30 p.m.<br>Courtroom 13A<br>Honorable Dana M. Sabraw |

# **TABLE OF CONTENTS**

**Page No.**

I. INTRODUCTION ..................................................................................... 1

II. ARGUMENT ............................................................................................ 2

    A. The Court Should Award Prejudgment Interest at the California Statutory Rate of 7% ........................................................ 2

    B. An On-Going Royalty Should Be Awarded To Compensate KFx For Continued Infringement ............................... 3

        1. Arthrex's Modified Activities Do Not Avoid Future Infringement ................................................................. 3

        2. The Inconsistent Guides And Materials Will Lead To Future Infringement ........................................................ 6

        3. Dr. Millett's Demonstration Had A Very Limited Audience And Did Not Promote Any Changes To SpeedBridge ....................................................................... 7

    C. An Injunction Should Be Entered Absent An On-Going Royalty .................................................................................... 8

        1. An Injunction Is Necessary To Prevent Uncompensated Infringement ............................................... 8

        2. An Injunction Should Bar Further Use Of The Brands Used To Promote Infringement ................................. 8

        3. Irreparable Harm Exists Absent Monetary Damages ............................................................................. 9

        4. The Alleged Delay Does Not Justify Denial Of An Injunction .......................................................................... 10

III. CONCLUSION ...................................................................................... 10

# TABLE OF AUTHORITIES

**Page No(s).**

*Accentra Inc. v. Staples, Inc.*,
    851 F.Supp.2d 1205 (C.D. Cal 2011) ................................................................ 2

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012) ......................................................................... 9

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
    678 F.3d 1314 (Fed. Cir. 2012) ....................................................................... 10

*Bio-Rad Labs. v. Nicolet Instr. Corp.*,
    807 F.2d 964 (Fed. Cir. 1986) ...................................................................... 2, 3

*Braintree Labs., Inc. v. Nephro-Tech, Inc.*,
    81 F. Supp. 2d 1122 (D. Kan. 2000), *aff'd*, 15 F. App'x 799
    (Fed. Cir. 2001) ............................................................................................ 8, 9

*Cordance Corp. v. Amazon.com., Inc.*,
    730 F. Supp. 2d 333 (D. Del. 2010) .................................................................. 9

*Electro Scientific Indus., Inc. v. General Scanning Inc.*,
    247 F.3d 1341 (Fed. Cir. 2001) ......................................................................... 3

*Fractus, S.A. v. Samsung Electronics Co., Ltd.*,
    876 F. Supp. 2d 802 (E.D. Tex. 2012) .............................................................. 9

*Lam, Inc. v. Johns-Manville Corp.*,
    718 F.2d 1056 (Fed. Cir. 1983) ......................................................................... 2

*Mass Engineered Design, Inc. v. Ergotron, Inc.*,
    633 F. Supp. 2d 361 (E.D. Tex. 2009) .............................................................. 8

*Medical Instr. & Diagnostic Corp. v. Elektra AB*,
    2002 U.S. Dist. LEXIS 26812 (S.D. Cal. September 6, 2002) ........................ 2

*Paice LLC v. Toyota Motor Corp.*,
    504 F.3d 1293 (Fed. Cir. 2007) ......................................................................... 7

*PGBA, LLC v. United States*,
    389 F.3d 1219 (Fed. Cir. 2004) ....................................................................... 10

# TABLE OF AUTHORITIES
## (*cont'd*)

**Page No(s).**

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
   659 F.3d 1142 (Fed. Cir. 2010) ............................................................................ 9

*Smith & Nephew v. Synthes (U.S.A.)*,
   466 F. Supp. 2d 978 (W.D. Tenn. 2006) .............................................................. 5

*Transmatic, Inc. v. Gulton Indus., Inc.*,
   180 F.3d 1343 (Fed Cir. 1999) ......................................................................... 2, 3

*Unites States v. Loew's Inc.*,
   371 U.S. 38 (1962) overruled in part, on other grounds, by *Ill. Tool Works Inc. v. Indep. Ink. Inc.*, 547 U.S. 28, 126 S. Ct. 1281 (2006) ................................................................................................................ 6

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*,
   842 F.2d 1275 (Fed. Cir. 1988) ............................................................................ 8

## OTHER AUTHORITIES

28 U.S.C. §1746 ............................................................................................................. 5

35 U.S.C. §284 ............................................................................................................... 2

# I. INTRODUCTION

Arthrex did not oppose two points in KFx's motion: (1) that KFx is entitled to $1,891,706 in damages based on Arthrex's relevant sales from July 1, 2013 through September 30, 2013, and (2) that KFx is entitled to post-judgment interest at the statutory rate.

As to the other points, Arthrex initially argues that pre-judgment interest should be assessed at the statutory post-judgment T-bill rate. The argument is premised on the misapplication of a Ninth Circuit standard, which does not apply in this patent case. Even applying that standard, however, the California statutory rate of 7% is justified here based on the costs KFx incurred in borrowing and raising capital during the infringement period.

Arthrex next opposes any on-going royalty, or alternatively contends the rate should decrease over time. Arthrex has not halted the infringement that its actions have caused. After training a huge number of surgeons to perform SutureBridge and SpeedBridge procedures in an infringing manner and creating what it referred to as a "mania," Arthrex's limited remedial actions have been insufficient to prevent continued infringement. An on-going royalty, at least starting at the rate set by the jury, is appropriate if Arthrex is to continue promoting SutureBridge and SpeedBridge.

Finally, Arthrex opposes entry of an injunction even if no on-going royalty is awarded. Infringement will continue if Arthrex continues to market SpeedBridge and SutureBridge to the universe of surgeons trained to preform those procedures in an infringing manner. In arguing an alleged lack of irreparable harm, Arthrex ignores that KFx only seeks an injunction in the absence of an on-going royalty. Thus, by definition, KFx would not be receiving adequate monetary damages for the continued infringement.

///

///

## II. ARGUMENT

### A. The Court Should Award Prejudgment Interest at the California Statutory Rate of 7%

Arthrex is mistaken when it relies on a presumption in the Ninth Circuit that the statutory post-judgment T-Bill rate should be used to calculate pre-judgment interest. This is a patent case, and a patentee's entitlement to damages, including interest, is governed by the patent law. *See* 35 U.S.C. §284. And the Federal Circuit has repeatedly held that when determining prejudgment interest under the patent law, the district court has wide discretion to set an interest rate. *See Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983) ("Under section 284, the district court has discretion to award prejudgment interest and the amount of that award."); *see also Bio-Rad Labs. v. Nicolet Instr. Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) ("The rate of prejudgment interest . . . are matters left largely to the discretion of the district court.") Indeed, in the seven patent cases that KFx cited in which the courts used the California rate (Memo. at 3-4), the courts never followed a Ninth Circuit presumption that the T-Bill rate applies.

Arthrex cites to one district court case, *Accentra Inc. v. Staples, Inc.*, 851 F.Supp.2d 1205, 1241 (C.D. Cal 2011), which does hold that Ninth Circuit law applies to prejudgment interest in a patent case. In reaching this conclusion, however, the court misapplied *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343 (Fed Cir. 1999). *Transmatic* merely held that regional circuit law applies to determine "the correct dividing line for calculating pre- and postjudgment interest." *Transmatic*, 180 F.3d at 1347-48. Indeed, in *Medical Instr. & Diagnostic Corp. v. Elektra AB*, 2002 U.S. Dist. LEXIS 26812, *29 (S.D. Cal. September 6, 2002), a case cited by Arthrex and decided after *Transmatic*, this Court held that it "has found no rule requiring the [Ninth Circuit rule regarding prejudgment interest] when dealing with patent cases . . . ." Further, after

*Transmatic*, the Federal Circuit has cited to *Bio-Rad* and reiterated that the district courts have discretion to set a prejudgment interest rate. *See Electro Scientific Indus., Inc. v. General Scanning Inc.*, 247 F.3d 1341, 1354 (Fed. Cir. 2001).

Moreover, even if there were a presumption in favor of the T-Bill rate, the presumption would be rebutted here. Arthrex does not dispute that, when infringement began, (1) KFx was paying 13% interest on $1.9 million of an outstanding loan, (2) KFx could not borrow additional funds even at 13%, and (3) KFx was forced to raise over $19 million at an effective rate much higher than the California statutory rate of 7%. Arthrex also does not dispute that KFx could have paid down its $1.9 million loan and would not have needed to raise additional capital if Arthrex had licensed KFx's patents. These facts, supported by the declarations from Messrs. Scott and Tibbitts explaining the amount, time period, and cost of debt that KFx maintained or acquired after infringement began, distinguish this case from those Arthrex cites in which the presumption was not rebutted. *See* Scott Decl. ¶¶ 6-14; Tibbitts Decl. ¶¶ 8-20.

For all of these reasons, KFx should be awarded prejudgment interest at the California statutory rate of 7%, which is a conservative and equitable rate given KFx's much greater borrowing rates.

**B.   An On-Going Royalty Should Be Awarded To Compensate KFx For Continued Infringement**

**1.   Arthrex's Modified Activities Do Not Avoid Future Infringement**

As the jury found, Arthrex promoted SutureBridge and SpeedBridge methods that infringe KFx's patents. These methods included the claimed steps of inserting the lateral anchor, tensioning the suture to get the correct compression of the tissue to the bone, and then fixedly securing the suture to the lateral anchor without tying knots. Arthrex actively promoted the advantages of

performing these procedures in this infringing manner. *See, e.g.,* Ex. 482 ("pearl"); Ex. 510 (explaining how pre-tensioning of sutures leads to anchor pullout); Ex. 539 (Dr. Millett's video explaining that tensioning after insertion was "really important"); *see also* Ticker Decl. ¶¶ 5, 6; Tr. at 325:16–326:7.[1]

Arthrex modified its promotional activities following the verdict. As of the filing of KFx's motion, the apparent changes were little more than posting modified technique guides and the removal of instructional videos from the Arthrex website. These changes certainly would have little effect on surgeons who have been using the infringing method for years.

Arthrex has now come forward with evidence that it has made additional modifications of its practices and plans to do further. But consistent with Arthrex's view that the patented method was a "pearl" and that pre-tensioning of sutures led to anchor pullout, Arthrex's promotion of a modification to the techniques has been subtle. More specifically, Arthrex still uses the SpeedBridge and SutureBridge brands and has not made any affirmative communication specifically alerting surgeons that the techniques have been changed and the surgeons should now change what they had been doing.

For example, according to Arthrex, Drs. Millett and Burkhart have each performed SpeedBridge surgical demonstrations in which they did not tension sutures after inserting the lateral anchors. Opp. at 6. This does not suggest surgeons should change their practices learned over the last several years. Dr. Hanypsiak also states, "Since October 1, 2013, approximately 500 surgeons have been instructed to perform these techniques by only tensioning the suture with the eyelet outside the hole." Hanypsiak Decl. ¶ 6. The circumstances of this instruction are not explained at all so it is unclear whether this was any

---

[1] All numbered exhibits are admitted trial exhibits. The cited trial transcript pages have been previously submitted with the Declaration of Brian C. Horne.

different than a demonstration such as done by Drs. Millett and Burkhart where the "pearl" of tensioning the suture after inserting the anchor was simply omitted.[2]

Moreover, absent specific instructions to change what they are doing, as well as a reason to do so, a surgeon trained and comfortable using the Arthrex products, *e.g.* SpeedBridge kits, in an infringing manner would have no reason to consult promotional materials and learn a new method. Arthrex's actions since the judgment are not sufficient to cause the huge base of surgeons previously trained to perform SpeedBridge and SutureBridge procedures to change overnight and adopt a non-infringing method.

This case is therefore much like *Smith & Nephew v. Synthes (U.S.A.)*, 466 F. Supp. 2d 978, 986-89 (W.D. Tenn. 2006), where the district court found that "[m]erely modifying the instructional materials will not undo the years of infringement" and doctors who have used the products for years in an infringing manner are not likely to stop infringing based on modified instructions. Arthrex's attempt to distinguish *Smith & Nephew* based on the extent to which the infringing step was required is unavailing. Opp. at 10. In *Smith & Nephew*, the step that led to infringement was "not always essential and can be achieved in a variety of ways." *Smith & Nephew*, 466 F. Supp. 2d at 989. Arthrex argues the same facts are present here. And a modification of instructional materials here is even less likely to undo years of infringement because Arthrex has long taught that the step that leads to infringement is the best way to perform the method. *See, e.g.,* Ex. 482, 510, 539; *see also* Ticker Decl. ¶¶ 5, 6; Tr. at 325:16–326:7. Further, the infringing method is particularly important when using Arthrex's self-punching anchors. *See* Ticker Decl. ¶ 10.

---

[2] Further, all of Arthrex declarations are deficient because they were not subscribed as true as required by 28 U.S.C. §1746, which KFx presumes was an oversight that ought to be corrected.

### 2. The Inconsistent Guides And Materials Will Lead To Future Infringement

As KFx explained in its opening brief, Arthrex's revised guides are internally inconsistent and thus would not be perceived by surgeons to suggest they should change from the infringing method. Memo. at 10-11. For example, the new guides state that a self-punching anchor may be used in either a SpeedBridge (infringing double row) or SpeedFix (non-accused single row). The guides then show the anchor's use in the single row procedure. Ex. 6144 at ARTH_1257955. That use is consistent with the "pearl" that led to the infringement here, *i.e.*, intentionally leaving extra slack in sutures during insertion of the anchor and then tensioning the sutures after insertion. Arthrex claims it has no obligation to change how it promotes its single-row technique in these guides. Opp. at 11. That might be so if Arthrex were writing on a clean slate. But it is not. Arthrex has induced infringement for years with the SpeedBridge procedure. And the inconsistency in how these closely related "Speed" techniques are promoted within the same guide shows that Arthrex is not sending a clear message that will avoid future infringement.

The message of the revised guides is not likely an accident. For all the reasons Dr. Ticker explained, Arthrex would not want to suggest that self-punching anchors should be removed if suture tension is not right. Ticker Decl. ¶ 10. So even though the single-row SpeedFix procedure is not infringing, the manner in which it is promoted in the same guide with the related double-row SpeedBridge procedure will lead to continued infringement. Because this Court has the authority to require modifications of even permissible activities to ensure effectual relief, *see Unites States v. Loew's Inc.*, 371 U.S. 38, 53 (1962), overruled in part, on other grounds, by *Ill. Tool Works Inc. v. Indep. Ink. Inc.*, 547 U.S. 28, 126 S. Ct. 1281 (2006), it certainly can award a royalty where such permissible activities will lead to future infringement.

### 3. Dr. Millett's Demonstration Had A Very Limited Audience And Did Not Promote Any Changes To SpeedBridge

Arthrex's recent activities have not been as extensive as suggested. Arthrex notes that the November AANA conference "was attended by approximately 800 surgeons," *see* Opp. at 6, Sodeika Decl. ¶ 8, but Arthrex did not mention that Dr. Millett's breakout session was limited to no more than 20 attendees. Second Scott Decl., Ex. P. Moreover, the description of Dr. Millett's presentation does not suggest anything about a change to the previously taught SpeedBridge technique, but is focused on "using a new collagen fibertape" suture. *Id.* at 15.

In sum, Arthrex's modified practices since the verdict in this case would, at most, justify an on-going royalty that decreased over time as Arthrex suggests. Opp. at 14-15. The modified practices are insufficient to prevent future infringement. KFx is entitled to compensation for that continued infringement caused by Arthrex. Accordingly, KFx respectfully requests that the Court award an on-going royalty starting (for the last quarter of 2013) at the rate awarded by the jury.[3] Because Arthrex has promised additional changes, *see, e.g.*, Hanypisak Decl. ¶¶4-7, KFx appreciates the difficulty the Court would have in determining how the rate should taper in the future in view of possible future changes. Accordingly, KFx suggests the Court order the parties to first negotiate how the rate should taper going forward. If the parties could not agree, only then would the Court have to issue a further ruling as to an on-going royalty. This would be consistent with the Federal Circuit's recommended negotiate-first approach in connection with on-going royalties generally. *See Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007).

---

[3] Arthrex suggests, without support, that KFx's determination of the rate is wrong. As explained in KFx's motion, the rate accounts for any dispute regarding the rate or base. Memo. at 13-14.

### C. An Injunction Should Be Entered Absent An On-Going Royalty

#### 1. An Injunction Is Necessary To Prevent Uncompensated Infringement

Arthrex initially argues that no injunction should issue because it is no longer inducing infringement and has taken all possible steps to avoid future infringement. But, as described above, infringement will continue despite Arthrex's modified practices. Moreover, even if the infringement had been discontinued, that would not suffice to avoid an injunction to prevent future infringement. "[T]he fact that the defendant has stopped infringing is generally *not* a reason for denying an injunction against future infringement unless the evidence is *very persuasive* that further infringement will not take place." *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 842 F.2d 1275, 1281-82 (Fed. Cir. 1988) (emphasis added) (concluding that the district court abused its discretion in refusing to enter an injunction where, among other things, the infringer did not demonstrate that it had no intention of resuming its infringing activities and lacked the capacity to make the infringing product); *see also Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 394 (E.D. Tex. 2009).

#### 2. An Injunction Should Bar Further Use Of The Brands Used To Promote Infringement

In opposing an injunction barring use of the SpeedBridge and SutureBridge brands, Arthrex cannot distinguish this case from *Braintree Labs., Inc. v. Nephro-Tech, Inc.*, 81 F. Supp. 2d 1122, 1138 (D. Kan. 2000), *aff'd*, 15 F. App'x 799 (Fed. Cir. 2001). The district court there reasonably ordered the defendant to change the name of the infringing product because that name was associated with an infringing use and those in the medical community had become accustomed to using the product in an infringing manner. *Id*. at 1137-38. That is precisely the case here, as Arthrex has extensively promoted its brands and the "pearls" of using its branded techniques in an infringing manner.

*See, e.g.,* Ex. 482 ("pearl"); Ex. 510 (explaining how pre-tensioning of sutures leads to anchor pullout); Ex. 539 (Dr. Millett's video explaining that tensioning after insertion was "really important"); *see also* Ticker Decl. ¶¶ 5, 6; Tr. at 325:16–326:7.  Without a change in the name, surgeons would have no reason to relearn, for example, a non-infringing method of doing a SpeedBridge.

Arthrex attempts to distinguish *Braintree* based on a footnote in the district court's opinion explaining that the suggestive nature of the product name was an "additional reason" to order the name change. *See Braintree Labs.,* 81 F. Supp. 2d at 1138, n. 8; Opp. at 9.  Granted, the names here may not be as suggestive of the infringement in the abstract, but here the surgeons have been taught for years to do the procedures in an infringing manner.  Arthrex has created the connection between infringement and the brands.  Ticker Decl. ¶¶ 4, 6.  It will enjoy the benefits of continued infringement if it is not forced to change the brand name and create a different association in the medical community.  Accordingly, absent an on-going royalty, an injunction should be entered requiring a change in the SutureBridge and SpeedBridge brand names.

### 3. **Irreparable Harm Exists Absent Monetary Damages**

Arthrex next argues that no injunction should issue based on the alleged lack of irreparable harm and cites cases where monetary damages, *i.e.*, an on-going royalty, would adequately compensate the patentee. *See* Opp. at 17 *citing ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.,* 694 F.3d 1312, 1340 (Fed. Cir. 2012) (patentee "can be adequately compensated by on-going royalty"); *Fractus, S.A. v. Samsung Electronics Co., Ltd.,* 876 F. Supp. 2d 802, 854 (E.D. Tex. 2012) (severing the on-going royalty determination to allow the parties to negotiate the royalty before the court sets it).[4]  This argument misses

---

[4] Arthrex also cites other cases on the irreparable harm point that are wholly irrelevant for other reasons. *See* Opp. at 17 *citing Robert Bosch, LLC v. Pylon Mfg. Corp.,* 659 F.3d 1142, 1151 (Fed. Cir. 2010) (reversing district court's denial of an injunction); *Cordance Corp. v. Amazon.com., Inc.,* 730 F.

the point. KFx only requests an injunction in the event the Court declines to award an on-going royalty. Thus, KFx's request for an injunction is premised on the assumption that it is not receiving adequate compensation for continued infringement.

### 4. The Alleged Delay Does Not Justify Denial Of An Injunction

Arthrex next argues that KFx's supposed delayed enforcement of its patent after issuance and its failure to seek a preliminary injunction in this case warrant the denial of a permanent injunction after a finding of infringement. Arthrex cites no relevant authority. *PGBA, LLC v. United States,* 389 F.3d 1219, 1229-1231 (Fed. Cir. 2004), for example, merely held that the Court of Claims did not abuse its discretion in refusing to set aside a government contract award based upon a host of reasons justifying the denial of the injunction. And in *Apple, Inc. v. Samsung Electronics Co., Ltd.,* 678 F.3d 1314, 1325 (Fed. Cir. 2012), the Federal Circuit addressed the denial of a *preliminary* injunction based, in part, on a patent owner's delay in seeking preliminary relief, which plainly involves a much different irreparable harm analysis.

Finally, KFx did not unreasonably delay enforcement of its patent. KFx was a small company that faced widespread infringement of its patent and also fended off reexamination at the PTO before promptly choosing to enforce the patent against Arthrex, the largest infringer in the marketplace.

### III. CONCLUSION

For the forgoing reasons, KFx respectfully requests that the Court grant its motion as described herein.

/ / /

/ / /

---

Supp. 2d 333, 339 (D. Del. 2010) (refusing to award an on-going royalty after liability was determined in a bifurcated case where damages had not yet been determined).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: January 10, 2014       By: s/*Joseph F. Jennings*
                                  Joseph F. Jennings
                                  Brian Horne
                                  Sean M. Murray
                                  Sarah Lampton
                                  Marissa Calcagno

                              Attorneys for Plaintiff
                              KFx Medical Corporation

**PROOF OF SERVICE**

I hereby certify that on January 10, 2014, I caused the REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND THE JUDGMENT AND MAKE ADDITIONAL FINDINGS to be electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following person(s):

Robert W. Dickerson
dickersonr@dicksteinshapiro.com
Lawrence La Porte
laportel@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
2049 Century Park East, Suite 700
Los Angeles, CA 90067
T: 310-772-8300

Charles W. Saber
saberc@dicksteinshapiro.com
Salvatore P. Tamburo
tamburos@dicksteinshapiro.com
Megan S. Woodworth
woodworthm@dicksteinshapiro.com
S. Gregory Herrman
herrmang@dicksteinshapiro.com
DICKSTEIN SHAPIRO LLP
1825 Eye Street Northwest
Washington, DC 20006
T: 202-420-2200

I certify and declare under penalty of perjury under the laws of the State of California that I am employed in the office of a member of the bar of this Court at whose direction the service was made, and that the forgoing is true and correct.

Executed on January 10, 2014, at San Diego, California.

Colleen Mensching

16862226
010914